IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| NPC INTERNATIONAL, INC., | § | Case No. 20-33353 (DRJ) |
| *et al.* | § | |
| | § | |
| Debtors.[1] | § | |

MOTION OF JACOB ROE FOR RELIEF FROM
AUTOMATIC STAY PURSUANT TO 11 U.S.C. § 362(d)(1)

> **THIS IS A MOTION FOR RELIEF FROM THE AUTOMATIC STAY. IF IT IS GRANTED, THE MOVANT MAY ACT OUTSIDE OF THE BANKRUPTCY PROCESS. IF YOU DO NOT WANT THE STAY LIFTED, IMMEDIATELY CONTACT THE MOVING PARTY TO SETTLE. IF YOU CANNOT SETTLE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY AT LEAST 7 DAYS BEFORE THE HEARING. IF YOU CANNOT SETTLE, YOU MUST ATTEND THE HEARING. EVIDENCE MAY BE OFFERED AT THE HEARING AND THE COURT MAY RULE.**
>
> **REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.**
>
> **THERE WILL BE A HEARING ON THIS MATTER ON SEPTEMBER 16, 2020 AT 2:00 P.M. (PREVAILING CENTRAL TIME) IN COURTROOM 400, 515 RUSK, 4TH FLOOR, HOUSTON, TEXAS 77002.**

COMES NOW, through undersigned counsel, Jacob Roe ("Mr. Roe"), and hereby moves

(this "Motion") this Honorable Court to grant relief from Debtors' automatic stay pursuant to 11

U.S.C. § 362(d)(1), Bankruptcy Rule 4001, and Rule 4001-1 of the Bankruptcy Local Rules for

the Southern District of Texas to allow Mr. Roe to proceed to litigate his claim in the state court

action *Jacob Roe v. Jessica Ward and NPC International, Inc.*, currently pending in the Circuit

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are NPC International, Inc. (7298); NPC Restaurant Holdings I LLC (0595); NPC Restaurant Holdings II LLC (0595); NPC Holdings, Inc. (6451); NPC International Holdings, LLC; (8234); NPC Restaurant Holdings, LLC (9045); NPC Operating Company B, Inc. (6498); and NPC Quality Burgers, Inc. (6457). The Debtors' corporate headquarters and service address is 4200 W. 115th Street, Suite 200, Leawood, KS 66211.

Court for the Fourth Judicial Circuit, In and for Duval County, Florida, No. 2019-CA-4734 (the "State Court Action"). In support of his Motion, Mr. Roe states as follows:

## JURISDICTION, VENUE, AND RELIEF REQUESTED

1.      This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. §§ 1334(b) and 157(b)(2)(G). The bases for the relief requested herein are 11 U.S.C. § 362(d)(1), Bankruptcy Rule 4001, and Rule 4001-1 of the Bankruptcy Local Rules for the Southern District of Texas.

2.      This Motion requests an order lifting the automatic stay and authorizing Mr. Roe to prosecute his claim to judgment in the State Court Action.

## FACTUAL AND PROCEDURAL BACKGROUND

3.      On or about June 10, 2018, Mr. Roe was struck by a motor vehicle driven by Jessica Ward ("Ms. Ward"), an employee of a Pizza Hut franchise operated by NPC International, Inc. ("NPC"), one of the Debtors in these Bankruptcy Cases. The accident occurred in Duval County, Florida.

4.      Ms. Ward was driving the motor vehicle in the course of her employment for NPC at the time of the accident.

5.      In his Complaint in the State Court Action, filed on July 1, 2019, attached hereto as **Exhibit A**, Mr. Roe asserted that the accident was the result of the negligent actions of Ms. Ward, who, in the course of her employment, struck Mr. Roe causing him significant injuries.

6.      Mr. Roe retained the services of a law firm in Duval County, Florida to pursue a state law automobile negligence claim against Ms. Ward and NPC, naming both as defendants (the "Defendants").

7.      NPC has retained counsel in the State Court Action.

2

8.      The trial in the State Court Action was set to begin on October 5, 2020. A true and correct copy of the Trial Order is attached hereto as **Exhibit B**.

9.      The Debtors are named insureds under the Republic – Vanguard Insurance Policy (the "Policy"), a true and correct copy of which is attached hereto as **Exhibit C**. The Policy contains the Self-Insured Retention and Corridor Self-Insured Retention Endorsement, which provides that the Debtors are self-insured in the amount of $1 million per accident.[2]

## THE DEBTORS' BANKRUPTCY FILINGS

10.     On July 1, 2020 (the "Petition Date"), NPC and its affiliates (collectively, the "Debtors") each filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of Texas, Houston Division. The Bankruptcy Cases are jointly administered under Case No: 20-33353 (DRJ).

11.     On July 6, 2020, a Notice of Bankruptcy and Imposition of Automatic Stay Pursuant to § 362(a) of the Bankruptcy Code was filed in the State Court Action. A true and correct copy of the Notice is attached hereto as **Exhibit D**. The filing of these Bankruptcy Cases operates as a stay of "the commencement or continuation, . . . of a judicial, administrative, or other action proceeding against the debtor." 11 U.S.C. § 362(a)(1).

12.     Mr. Roe, as a party in interest, hereby requests relief from the automatic stay under 11 U.S.C. § 362(d)(1) so that he may continue to litigate automobile negligence claim against the Debtors in the State Court Action.

---

[2] According to Ms. Ward's response to Mr. Roe's 14th Request for Production of Documents, the Policy provides for an additional $1 million under the Corridor Self-Insured Retention in excess of the Self-Insured Retention, and that the Policy applies as primary coverage and the James River policy applies to provide excess coverage once the $2 million in coverage is exhausted.

13.     The Debtors' self-insurance obligations for damages related to the claims in the State Court Action are capped at $1 million. The Debtors have insurance coverage for damages in excess of that $1 million for the claims raised in the State Court Action.[3]

14.     Mr. Roe asserts damages for the claims in the State Court Action that are well in excess of $1 million.

## ARGUMENT

15.     Under the Bankruptcy Code, the automatic stay applies only to actions against the debtor. 11 U.S.C. § 362(a)(1-8). "By its terms the automatic stay applies only to the debtor, not to co-debtors under Chapter 7 or Chapter 11 of the Bankruptcy Code nor to" co-defendants. *Reliant Energy Servs., Inc. v. Enron Canada Corp.*, 349 F.3d 816, 825 (5th Cir. 2003) (quoting *GATX Aircraft Corp. v. M/V Courtney Leigh*, 768 F.2d 711, 716 (5th Cir. 1985)). Thus, Section 362 of the Bankruptcy Code is "rarely . . . a valid basis on which to stay actions against non-debtors." *Arnold v. Garlock, Inc.* 278 F.3d 426, 436 (5th Cir. 2001).

16.     Even where the stay applies, bankruptcy courts have the authority to lift the automatic stay for "cause," as determined on a case-by-case basis. 11 U.S.C. § 362(d)(1). *See also In re Tonthat*, No. 07-30315-H3-13, 2009 WL 2461041, at *2 (Bankr. S.D. Tex. Aug. 7, 2009); *In re Wells*, No. 08-80206-G3-13, 2008 WL 4179238, at *1 (Bankr. S.D. Tex. Sept. 5, 2008); *In re Adebo*, No. 07-36371-H3-13, 2007 WL 3235122, at *2 (Bankr. S.D. Tex. Nov. 1, 2007); *In re Young*, No. 06-80397-G3-7, 2006 WL 3088225, at *2 (Bankr. S.D. Tex. Oct. 20, 2006). "Cause" within the context of Section 362(d)(1) is undefined, and as a result affords "flexibility to the bankruptcy courts." *In re Mirant corp.*, 440 F.3d 238, 253 (5th Cir. 2006) (quoting *In re Little*

---

[3] *But see* note 2, *supra*. The Debtors may claim an additional corridor of exposure of $1 million to the extent there is an ambiguity in the overlapping coverage.

*Creek Dev. Co.*, 779 F.2d 1068, 1072 (5th cir. 1986)); *In re Mosher*, 578 B.R. 765, 772 (Bankr.

S.D. Tex. 2017); *In re Texas State Optical, Inc.*, 188 B.R. 552, 556 (Bankr. E.D. Tex. 1995)

("'Cause' is an intentionally broad and flexible concept that permits the [b]ankruptcy [c]ourt, as a

court of equity, to respond to inherently fact-sensitive situations."); *In re Choice ATM*, No. 14-

44982-DML, 2015 WL 1014617, at *3 (Bankr. N.D. Tex. Mar. 4, 2015). "Congress itself provided

some guidance as to what constitutes 'cause,' specifically mentioning 'a desire to permit an action

to proceed to completion in another tribunal' and 'the lack of connection with or interference with

the pending bankruptcy case.'" *In re Choice ATM*, 2015 WL 1014617, at *3; (quoting H.R. REP.

No. 95–595, 343.44 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5787, 6300).

17.    "Allowing a matter to proceed in another forum may constitute cause." *See In re

Young*, No. 06-80397-G3-7, 2006 WL 3088225, at *2 (Bankr. S.D. Tex. Oct. 20, 2006) (citation

omitted); *In re Xenon Anesthesia of Texas, PLLC*, 510 B.R. 106, 112 (Bankr. S.D. Tex. 2014); *In

re The Consol. FGH Liquidating Tr.*, 419 B.R. 636, 647 (Bankr. S.D. Miss. 2009) (citation

omitted). Indeed, bankruptcy courts routinely lift the automatic stay to permit a party in litigation

with the debtor pre-petition to proceed to determine liability in a non-bankruptcy forum, rather

than to litigate the same issue in the claims process in bankruptcy. *See, e.g.*, *In re Wilson*, 116 F.3d

87, 91 (3d Cir. 1997) ("We perceive no great prejudice to the bankruptcy estate in granting relief

from the stay. Such relief will expedite the resolution of [the malicious prosecution claim] by

eliminating it if [the debtor] prevails on appeal, or by rendering it final and nondischargeable if

[the plaintiff] prevails. Moreover, [the malicious prosecution claim] can be resolved more quickly

in state court on appeal than in the bankruptcy proceedings, as the parties have already filed briefs

on appeal."); *In re SCO Group, Inc.*, 395 B.R. 852, 856-57 (Bankr. D. Del. 2007) (applying

equitable balancing test to allow litigation to proceed in a non-bankruptcy forum, noting that: "'It

will often be more appropriate to permit proceedings to continue in their place of origin, when no great prejudice to the bankruptcy estate would result, in order to leave the parties to their chosen forum and to relieve the bankruptcy court from any duties that may be handled elsewhere.'" (quoting H.R. Rep. No. 95-595, 95th Cong., 1st Sess. 341 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6297)).

18. In determining whether cause exists to lift the stay to allow litigation to proceed in another jurisdiction, bankruptcy courts in this district consider the following factors:

> 1) whether the relief will result in a partial or complete resolution of the issues; 2) lack of any connection with or interference with the bankruptcy case; 3) whether the other proceeding involves [d]ebtor as a fiduciary; 4) whether a specialized tribunal has been established to hear the particular cause of action; 5) whether the debtor's insurer has assumed full responsibility; 6) whether the action primarily involves third parties; 7) whether litigation in the other forum would prejudice the interests of other creditors; 8) whether the judgment claim arising from the other action is subject to equitable subordination; 9) whether movant's success would result in a judicial lien avoidable by the debtor; 10) interests of judicial economy and the expeditious and economical resolution of litigation; 11) whether the proceedings have progressed to the point that parties are ready for trial; and 12) impact of the stay on the parties and the balance of harm.

*See In re Mosher*, 578 B.R. at 772 (citing *In re Xenon Anesthesia of Texas, PLLC*, 510 B.R. at 112).[4] *See also In re Kao*, No. 15-31193-H3-13, 2015 WL 9412744, at *2 (Bankr. S.D. Tex. Dec. 21, 2015) (listing the following factors as the relevant ones: (i) great prejudice to the debtor or the bankruptcy estate; (ii) balance of hardships; and (iii) the creditor's probability of prevailing on the merits); *In re Samshi Homes, LLC*, No. 10-37643-H3-11, 2011 WL 3903054, at *3-4 (Bankr. S.D. Tex. Sept. 6, 2011) (listing the same three factors); *In re MCC Humble Auto Paint, Inc.*, No. 11-34994-H3-11, 2011 WL 3799764, at *3-4 (Bankr. S.D. Tex. Aug. 25, 2011) (same).

---

[4] Not all 12 factors are relevant here. Thus, only those factors that are relevant will be discussed.

6

19.     The "decision to lift the stay may be upheld on judicial economy grounds alone."

*In re Xenon Anesthesia of Texas*, 510 B.R. at 112 (citing *In re United States Brass Corp.*, 176 B.R.

11, 13 (Bankr. E.D. Tex. 1994)). *See also In re Young*, 2006 WL 3088225, at *2-3; *In re Kao*,

2015 WL 9412744, at *2. Further, whether relief from the stay would permit the resolution of

uniquely state law questions which necessarily must be decided as part of the case's administration,

cause will exist to lift the automatic stay for that purpose. *In re Adebo*, 2007 WL 3235122, at *2.

**A.      Mr. Roe is Seeking to Liquidate His Claim to Recover Under the Debtors' Insurance Policy**

20.     Bankruptcy courts regularly grant lift stay relief to allow victims to pursue personal

injury lawsuits when the intent is to liquidate the personal injury claim and seek collection of

damages from the debtor's insurance carrier. As one court observed:

> This Court, like all bankruptcy courts, routinely lifts the stay to
> allow tort suits to go forward in state court to determine the liability,
> if any, of the Debtor. Frequently, these actions are coupled with a
> pledge by the creditor that he only seeks to go forward to determine
> the liability and that such liability will be paid by the liability
> insurance carrier and there is no expense to the estate.

*In re Fowler*, 259 B.R. 856, 858 (Bankr. E.D. Tex. 2001). In *In re Fernstrom*, the Seventh Circuit

Court of Appeals affirmed a bankruptcy court's decision to lift the automatic stay to permit an

action to proceed in another forum, reasoning that the "debtors-defendants" suffer little prejudice

when they are sued by plaintiffs who seek nothing more than declarations of liability that can serve

as a predicate for a recovery against insurers, sureties, or guarantors." 938 F.2d 731, 736 (7th Cir.

1991). When a creditor seeks a recovery against the debtor's insurer, the bankruptcy estate is not

jeopardized. *See In re Edgeworth*, 993 F.2d 51, 55-56 (5th Cir. 1993) ("The overriding question

when determining whether insurance proceeds are property of the estate is whether the debtor

would have a right to receive and keep those proceeds when the insurer paid on a claim. When a

payment by the insurer cannot inure to the debtor's pecuniary benefit, then that payment should neither enhance nor decrease the bankruptcy estate. In other words, when the debtor has no legally cognizable claim to the insurance proceeds, those proceeds are not property of the estate. . . . [U]nder the typical liability policy, the debtor will not have a cognizable interest in the proceeds of the policy. Those proceeds will normally be payable only for the benefit of those harmed by the debtor under the terms of the insurance contract"); *In re Holtkamp*, 669, F.2d 508 (7th Cir. 1982) ("Allowing the civil action to go forward did not jeopardize [the debtor's] bankrupt estate because his insurance company assumed full financial responsibility for defending that litigation.").

21.     Similarly here, while Mr. Roe has sued the Defendants in the State Court Action, his intent with respect to this Motion is to liquidate his claim and seek to recover damages from the Debtors' insurance carrier. Thus, the Debtors are not prejudiced if the stay is lifted.

22.     As of the date of this filing, Mr. Roe has not filed a claim against the Debtors in the Bankruptcy Cases. While he does not waive his right to do so by the claims bar date (which has yet to be set) and intends to file a claim for the Debtors' self-insurance obligations, his primary goal is to expeditiously liquidate his claim in the State Court Action and seek payment on that claim from the Debtors' insurer(s). It would prejudicial for the Court to deny this relief as doing so would effectively extend the automatic stay to the Debtors' insurance company. *See In re Robertson*, 244 B.R. 880, 883 (Bankr. N.D. Ga. 2000).

**B.      Other Reasons Constitute Cause to Lift the Stay Under 11 U.S.C. 362(d)(1)**

**i.      Judicial Economy Favors Lifting the Stay**

23.     Lifting the stay and allowing the State Court Action to proceed is in the best interest of judicial economy and will result in an expeditious and economical resolution for the parties

involved. Lifting the automatic stay so as to permit the State Court Action to proceed to trial will result in a complete resolution of the issues.

24.     The parties have been litigating the State Court Action for over a year. *See* Complaint, *Ex.* A. The Parties have conducted extensive discovery and Mr. Roe has undergone a medical examination. The bulk of the search for and collection of responsive documents had already been carried out before the Debtors even commenced these Bankruptcy Cases.

25.     Moreover, the parties were just a couple of months away from a three-day jury trial when the Debtors commenced these Bankruptcy Cases. *See* Trial Order, Ex. B. The Trial Order was entered in January 2020. As a result, the Parties have already incurred significant time (indeed, over six months) and resources to prepare the State Court Action for trial. Similarly, the Florida circuit court has become intimately familiar with the facts and issues involved in the State Court Action.

26.     The longer the State Court Action is delayed as a result of the automatic stay, the more costly and burdensome it will be for the parties to ready themselves again for trial. See *In re SCO Group, Inc.*, 395 B.R. at 858. *In SCO Group*, "cause" existed to lift the automatic stay to allow litigation between debtors and creditor which had been pending for four years in nonbankruptcy forum, and which was ready for trial immediately prior to commencement of debtors' chapter 11 cases, to proceed in non-bankruptcy forum, where debtors, having already prepared litigation for trial, would suffer little prejudice if required to litigate claims in another forum, where creditor would suffer significant prejudice if stay were not lifted, and if it were required to start over in bankruptcy court, and where creditor demonstrated a reasonable probability of success on merits. *Id.*

27.     The Florida circuit court has extensive knowledge of the facts and issues involved in the State Court Action and is best suited to bring the matter to a complete, expeditious and economical resolution. *See generally In re American Spectrum Realty, Inc.*, 540 B.R. 730 (Bankr. C.D. Cal. 2015) ("Cause" existed to lift automatic stay to allow state court litigation that had been pending against a chapter 11 debtor for more than two years to proceed before state court that was very familiar with issues and parties, where litigation involved only state law claims which, while not novel, were most appropriately addressed by the state court, where there was no evidence that allowing the litigation to proceed in state court would interfere with bankruptcy proceedings, and where the state court litigation had progressed to point that the parties were ready for trial). Judicial economy weighs heavily in favor of lifting the automatic stay for the limited purpose of allowing the parties to bring the State Court Action to an economical and expeditious resolution.

C.      **Lifting the Stay Will Permit Resolution of Uniquely State Law Questions**

28.     The State Court Action involves for the most part issues of state law.[5] In particular, the issues to be determined concern, *inter alia*, negligence, proximate cause, whether Mr. Roe's injuries satisfy the threshold of the Florida Automobile Reparations Reform Act, joint and several liability pursuant to Florida Statutes 768, and the calculation, mitigation, and apportionment of damages. To be clear, the State Court Action does not involve bankruptcy law or the law of any other state. The issues presented in the State Court Action are best resolved by the Florida circuit court, particularly because the cause of action is not purely a common law one, but one that also involves the interpretation of Florida Statutes.

---

[5] While the State Court Action is an ordinary automobile negligence case, Ms. Ward and NPC raised two federal affirmative defenses, including The Graves Amendment and the federal preemption doctrine. Notwithstanding, the Florida circuit court can determine the validity of these affirmative defenses.

29.     While Congress intended the automatic stay to have broad application, the legislative history to Section 362 of the Bankruptcy Code clearly indicates Congress's recognition that the stay should be lifted in circumstances such as these. The Senate Report accompanying the Bankruptcy Reform Act states:

> It will often be more appropriate to permit proceedings to continue in their place of origin, when no great prejudice to the bankruptcy estate would result, in order to leave the parties to their chosen forum and to relieve the bankruptcy court from many duties that may be handled elsewhere.

*See* S. Rep. No. 989, 95th Cong., 2d Sess. 50 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5836. Allowing the parties to proceed in their chosen state-law forum will relieve this Court from resolving issues that do not implicate bankruptcy law and create the least amount of interference in the Bankruptcy Cases.

30.     Cause exists to lift the automatic stay because the requested relief would permit the resolution of an ordinary automatable negligence case by the Florida circuit court.

**D.        Lifting the Stay Will Not Result in Great Prejudice to the Debtors**

31.     Lifting the stay to allow the State Court Action to proceed would not result in any prejudice – much less great prejudice – to the Debtors or their estates. *See In re Curtis*, 40 B.R. 795, 806 (Bankr. D. Utah 1984) (looking at the "balance of hurt"). If the Court grants the relief requested, the parties will simply proceed with trial in the Florida circuit court in which NPC already has counsel and insurance coverage.  If Mr. Roe prevails in the State Court Action, he will proceed with collection efforts against the Debtors' insurance carrier for amounts in excess of his anticipated claim in the Bankruptcy Cases.

32.     Furthermore, Mr. Roe's anticipated claim in the Bankruptcy Cases would be handled through the claims process. This will prejudice neither the Debtors nor the interests of any other creditors in these Bankruptcy Cases.

33.     Mr. Roe's claim must be determined – the issue is merely whether making that determination in this Court or in the year-old State Court Action better serves judicial economy and fairness to the parties.

**E.      The Hardship to Mr. Roe by Continuing the Stay Considerably Outweighs Any Burden on the Debtors**

34.     The balance of harms clearly weighs in favor of Mr. Roe. The parties have already expended significant amounts of time, resources, and effort to litigate the State Court Action. The parties have completed all discovery in the State Court Action and have been preparing for trial for the last six months. Allowing the State Court Action to proceed in Florida will not lead to substantial discovery or delay the previously-scheduled jury trial. Nor will it distract the Debtors from these Bankruptcy Cases. If this Court allows the stay to continue, Mr. Roe will suffer the added expense of litigating these issues a second time in a forum that has never been presented with the facts and issues involved in the State Court Action.

35.     NPC also has separate litigation counsel who was in the midst of extensive trial preparation when the Debtors commenced these Bankruptcy Cases. Thus, preparation for trial in the State Court Action will not unduly burden the Debtors. The longer the State Court Action is delayed, the more burdensome it will be for the Parties to ready themselves again for trial. Continuing the automatic stay will result in wasted time, effort, legal fees, and judicial resources—all of which can be avoided if the stay is lifted.

**F.**       **Mr. Roe Has a Likelihood of Success on the Merits in the State Court Action**

36.     Even a slight possibility of success on the merits may suffice to warrant lifting the stay under the appropriate circumstances. *In re SCO Group, Inc.*, 395 B.R. at 859. The facts are clear: Ms. Ward was under the employ of NPC when she struck Mr. Roe during a delivery run. This is a casebook example of a negligent tort. As Mr. Roe will show at trial, Ms. Ward and NPC are liable. Mr. Roe has more than a slight likelihood of prevailing on the merits in the State Court Action if the automatic stay is lifted.

**G.**       **The Stay Does Not Apply to Ms. Ward**

37.     The State Court Action involves Mr. Roe as plaintiff, and Ms. Ward and NPC as the defendants. As Ms. Ward is not a debtor in these Bankruptcy Cases, she cannot benefit from the automatic stay. Indeed, the co-defendant stay does not apply in chapter 11 cases. *Reliant Energy Servs., Inc.*, 349 F.3d at 825 (quoting *GATX Aircraft Corp.*, 768 F.2d at 716.

## <u>CONCLUSION</u>

For the reason discussed above, Mr. Roe respectfully requests that this Court enter an order granting relief from the automatic stay pursuant to 11 U.S.C. § 362(d)(1) and allowing Mr. Roe to prosecute his claim to judgment in the State Court Action.

*[remainder of this page intentionally left blank]*

Dated: August 24, 2020

Respectfully submitted,

*/s/ Yelena Archiyan*
Yelena Archiyan
Texas SBN: 24119035
AKERMAN LLP
2001 Ross Avenue, Suite 3600
Dallas, Texas 75201
Telephone: (214) 720-4300
Facsimile: (214) 981-9339
yelena.archiyan@akerman.com

and

**AKERMAN LLP**
Jacob A. Brown (Admitted *Pro Hac Vice*)
50 North Laura Street, Suite 3100
Jacksonville, Florida 32202
Telephone: (904) 798-3700
Facsimile: (904) 798-3730
jacob.brown@akerman.com

Counsel for Jacob Roe

## <u>CERTIFICATE OF CONFERENCE</u>

Counsel for Mr. Roe, Jacob Brown, has complied with the meet and confer requirement in Rule 4001-1(a)(1) of the Bankruptcy Local Rules for the Southern District of Texas. Undersigned counsel conferred with Debtors' counsel, Phil DiDonato, via telephone and/or email on August 12, 16, 17, and 18, 2020 regarding this request for relief from the automatic stay, but has not been able to reach an agreement on the requested relief.

*/s/ Jacob Brown*
Jacob Brown

## CERTIFICATE OF SERVICE AND
## <u>CERTIFICATE OF COMPLIANCE WITH BLR 4001</u>

I hereby certify that a true and correct copy of the foregoing instrument was served upon all parties or counsel of record who have registered to receive electronic service by operation of the Court's electronic filing system and by electronic service or U.S. mail to the following:

NPC International, Inc.
4200 W. 115th Street, Suite 200
Leawood, KS 55211

Alfredo R. Perez
Weil Gotshal & Manges, LLP
2784, 700 Louisiana St., Ste 1700
Houston, TX 77002
*Attorney for Debtor*

Ray C. Schrock, P.C.
Kevin Bostel
Natasha Hwangpo
Weil Gotshal & Manges, LLP
767 Fifth Avenue
New York, NY 10153
*Attorneys for Debtor*

Office of the United States Trustee
515 Rusk Street, Suite 3516
Houston, TX 77002

Eric R. Wilson
Jason R. Adams
Maeghan J. McLoughlin
Sean T. Wilson
KELLEY DRYE & WARREN LLP
101 Park Avenue
New York, NY 10178
*Proposed Counsel to the Official Committee of*
*Unsecured Creditors of NPC International,*
*Inc., et al.*

International Pizza Hut Franchise Holders
Association
829 E. Rockhill # 201
Wichita, KS 67206
Attn: Joe Linot, Executive Director

Mayer Brown LLP
71 South Wacker Drive
Chicago, IL 60606
Attn: Sean T. Scott, Esq.
*Counsel to International Pizza Hut Franchise*
*Holders Association*

Jessica Padgett
14701 E. 42nd Street S
Independence, MO 64055

Burmeister Gilmore LLP
14701 E. 42nd Street S
Independence, MO 64055
Attn:  Brett T. Burmeister, Esq.
*Counsel to Jessica Padgett*

Realty Income Corporation
11995 El Camino
San Diego, CA 92130
Attn: Kirk Carson, Esq., AVP

Jessica Ward
c/o Sami R. Achem, Esq. and
Victoria M. Merritt, Esq.
Cole, Scott & Kissane, P.A.
4686 Sunbeam Road
Jacksonville, FL 32257

Jessica Ward
9855 Regency Square Blvd., Apt. 16
Jacksonville, FL 32225

The Republic Group
Attn: General Counsel
P.O. Box 809076
Dallas, TX 75380-9076

in compliance with Rule 4001-1(a)(4) of the Bankruptcy Local Rules for the Southern District of
Texas on this 24th day of August, 2020.

/s/ Yelena Archiyan
Yelena Archiyan

# **PROPOSED ORDER**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **In re:** | § | **Chapter 11** |
| | § | |
| **NPC INTERNATIONAL, INC.,** | § | **Case No. 20-33353 (DRJ)** |
| | § | |
| **Debtor.** | § | |
| | § | |

**ORDER ON MOTION OF JACOB ROE FOR RELIEF FROM
AUTOMATIC STAY PURSUANT TO 11 U.S.C. § 362(d)(1)**

Considering the *Motion of Jacob Roe for Relief from Automatic Stay Pursuant to 11 U.S.C. § 362(d)(1)* (the "Motion") [ECF No. ●];

After considering the Motion, the arguments of counsel, and the applicable law:

It is ORDERED, ADJUDGED, AND DECREED that:

1.      The automatic stay imposed by 11 U.S.C. § 362 is hereby lifted to allow Mr. Roe to continue to prosecute his claim to judgment in the State Court Action styled as *Jacob Roe v. Jessica Ward and NPC International, Inc.*, pending in the Circuit Court, Fourth Judicial Circuit, In and For Duval County, Florida, Case No. 2019-CA-004734 (the "State Court Action").

2.      Mr. Roe may immediately proceed to advance his claims in the State Court Action.

3.      This Order shall apply only to NPC International Inc. and shall not apply to the debtors of any other bankruptcy case.

SIGNED this _____ day of September, 2020.

_____
David Jones
United States Bankruptcy Judge

# EXHIBIT A

Filing # 91932768 E-Filed 07/01/2019 02:09:49 PM

IN THE CIRCUIT COURT, FOURTH
JUDICIAL CIRCUIT, IN AND FOR
DUVAL COUNTY, FLORIDA.

CASE NO.:
DIVISION:

**JACOB ROE**,

                Plaintiff,

vs.

**JESSICA WARD, and**
**NPC INTERNATIONAL, INC.,**
**a foreign corporation,**

                Defendants.

------------------------------------)

## COMPLAINT

Plaintiff, **JACOB ROE**, sues the Defendants, **JESSICA WARD and NPC INTERNATIONAL, INC.**, and alleges:

1.    This is an action for damages in excess of FIFTEEN THOUSAND AND NO/100 ($15,000.00) DOLLARS, exclusive of interest and costs.

2.    At all times material hereto, Plaintiff, **JACOB ROE,** was a resident of Jacksonville, Duval County, Florida, and is currently a resident of Yulee, Nassau County, Florida.

3.    At all times material hereto, Defendant, **JESSICA WARD**, was and is a resident of Jacksonville, Duval County, Florida or, in the alternative, is not available to local service of process.

4.    At all times material hereto, Defendant, **NPC INTERNATIONAL, INC.**, was and is a foreign corporation licensed to do business within the State of Florida, or, in the alternative, is available to local service of process.

5.    At all times mentioned and at all times material hereto, the Defendant, **NPC INTERNATIONAL, INC.,** acted by and through its agents, servants or employees, and Defendant,

**Exhibit A**

ACCEPTED: DUVAL COUNTY, RONNIE FUSSELL, CLERK, 07/02/2019 09:18:12 AM

**NPC INTERNATIONAL, INC.,** is liable for the negligent acts and omissions of its agents, servants, or employees while acting within the course and scope of their employment.

6.      At all times material hereto, Defendant, **NPC INTERNATIONAL, INC.,** was and is a franchisee of PIZZA HUT, including the PIZZA HUT location at 2771-13 Monument Road, Jacksonville, FL 32225.

7.      At all times material hereto, Defendant, **JESSICA WARD,** was an agent, servant, or employee of Defendant, **NPC INTERNATIONAL, INC.,** and worked at the PIZZA HUT franchise located at 2771-13 Monument Road, Jacksonville, FL 32225.

8.      At all times material hereto, Defendant, **JESSICA WARD**, was acting within the course and scope of her employment with Defendant, **NPC INTERNATIONAL, INC.**

9.      On or about June 20, 2018, the Defendant, **JESSICA WARD**, was operating a motor vehicle on Girvin Road at or near the intersection with Ashley Melisse Boulevard, in Jacksonville, Duval County, Florida, while making deliveries for and on behalf of Defendant, **NPC INTERNATIONAL, INC.**.

10.      At that time and place the Defendant, **JESSICA WARD**, negligently operated or maintained the motor vehicle so that it collided with Plaintiff, **JACOB ROE**, who was operating a bicycle.

11.      As a result, Plaintiff, **JACOB ROE**, suffered bodily injury and resulting pain and suffering, scarring, disfigurement, disability, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, loss of earnings, loss of ability to earn money, and aggravation of a previously existing condition.  Plaintiff will continue to suffer the losses in the future.  Plaintiff's personal property and chattels were damaged and as a result Plaintiff suffered loss of use.

**Exhibit A**

**WHEREFORE**, **JACOB ROE** demands judgment for damages and costs against the Defendants, and also demands trial by jury of all issues so triable by law.

## DESIGNATION OF EMAIL ADDRESSES FOR E-SERVICE

COMES NOW, Donald Ray Coleman, Jr., Esq., attorney for the Plaintiff, pursuant to Fla.R.Civ.P. 2.516(b)(1)(A), and hereby designates the following email addresses for e-service in this matter:

**PRIMARY ADDRESS: <u>PLEADINGS@RAYCOLEMANLAW.COM</u>**
**SECONDARY ADDRESS: <u>KELLY@RAYCOLEMANLAW.COM</u>**

## DESIGNATION OF EMAIL ADDRESSES FOR E-SERVICE

COMES NOW, Donald Ray Coleman III, Esq., attorney for the Plaintiff, pursuant to Fla.R.Civ.P. 2.516(b)(1)(A), and hereby designates the following email addresses for e-service in this matter:

**PRIMARY ADDRESS: <u>RAY.III@RAYCOLEMANLAW.COM</u>**
**SECONDARY ADDRESS: <u>KELLY@RAYCOLEMANLAW.COM</u>**

Law office of:
**DONALD RAY COLEMAN, JR., P.A.**

Date July 1, 2019.            */s/ DONALD RAY COLEMAN, JR.*

**DONALD RAY COLEMAN, JR., ESQUIRE**
Florida Bar No.: 357367
**DONALD RAY COLEMAN III, ESQUIRE**
Florida Bar No.: 114205
Attorneys for Plaintiff
400 East Duval Street
Jacksonville, FL 32202
(904) 355-0548 Phone
(904) 355-0402 Fax
Pleading service email:
Primary: pleadings@raycolemanlaw.com
Primary: ray.iii@raycolemanlaw.com
Secondary: Kelly@raycolemanlaw.com
Personal email address: raycolemanlaw@gmail.com
*personal email NOT to be used for pleading service

**Exhibit A**

# EXHIBIT B

IN THE CIRCUIT COURT OF THE
FOURTH JUDICIAL CIRCUIT, IN AND
FOR DUVAL COUNTY, FLORIDA

JACOB ROE,

      Plaintiff,

v.

JESSICA WARD, and NPC
INTERNATIONAL, INC., a foreign
corporation,

      Defendants.

CASE NO.:   2019-CA-4734
DIVISION:   CV-H

_____/

## TRIAL ORDER

This case is at issue and ready for trial. This Order sets several deadlines for the parties leading up to the trial in order to ensure the orderly administration of justice. Accordingly, it is, therefore,

ORDERED as follows:

### 1. TRIAL DATE.

This cause is hereby set for jury trial on **October 5, 2020, at 9:30 a.m.** Time allocated for trial is **three days.**

### 2. PRE-TRIAL CONFERENCE.

Pretrial Conference will be held in Chambers, **Hearing Room 712**, Duval County Courthouse, Jacksonville, Florida on **September 24, 2020, at 2:45 p.m.** in accordance with the provisions of Rule 1.200, Florida Rules of Civil Procedure. The Conference is scheduled for 15 minutes.

### 3. REQUIREMENTS PRIOR TO PRE-TRIAL CONFERENCE.

No later than seven days prior to the Pre-Trial Conference, attorneys for each party shall meet together by agreement instigated by counsel for the Plaintiff, to discuss the possibility of settlement; stipulate to as many facts and issues as possible; examine all exhibits and documents which may be used at trial; furnish opposing counsel the names and addresses of all witnesses who may testify at trial; review all video depositions or exhibits to be used at trial; review and

1

**Exhibit B**

prepare proposed jury instructions and verdict forms; and complete all other matters which may expedite both the Pre-Trial Conference and the Trial of this case.

## 4. REQUIREMENTS OF PRE-TRIAL STIPULATION.

Counsel shall prepare a Pre-Trial Stipulation which shall be filed with the Court at the Pre-Trial Conference and shall contain the following: (a) a concise factual statement of the nature of the action, which shall include the date and place of accrual, identity of the parties as they relate to the action, and a brief general statement of each party's case or contention. The statement shall be in such form and contain such necessary information for the Court to read to and apprise the jury of the claims to be tried, including any Counter-Claims, Cross-Claims, or Third-Party Claims; (b) a concise statement of those facts which are admitted and will require no proof at trial; (c) a concise statement of those issues of fact which remain to be litigated; (d) any proposed amendments to the pleadings; (e) a complete list of witnesses, including anticipated impeachment witnesses, specifying the name and address of each from whom testimony may be presented at trial; (f) a statement reflecting objections to specific portions of video depositions, testimony, or video exhibits which may be offered in evidence at trial; and (g) a list of any undisposed matters to be heard at the Pre-Trial Conference.

## 5. TRIAL EXHIBITS.

All exhibits intended to be offered at trial shall be exhibited to all opposing counsel prior to the Pre-Trial Conference. The Pre-Trial Stipulation shall contain a list of all exhibits which may be offered in evidence at trial, together with a statement of objections, if any, to exhibits offered by the opposing party. With respect to each item, the Pre-Trial Stipulation shall reflect whether or not the evidence will be stipulated into evidence, stipulated as to authenticity, with objection reserved for relevancy and materiality, or objected to in its entirety and the ground therefor. All exhibits which are the subject of any objection raised in the Pre-Trial Stipulation shall be brought to the Pre-Trial Conference.

## 6. RETAINED EXPERT WITNESSES.

No later than **180 days** prior to the Pre-Trial Conference, Plaintiff(s) shall serve on all opposing counsel and file with the Court a Notice containing the following information regarding each retained expert witness who will testify at trial on behalf of Plaintiff(s): (a) the name and address of the witness; (b) the area(s) of expertise of the witness; (c) the subject matter of the expected testimony of the witness; (d) the substance of the facts and opinions about which the witness is expected to testify; and (e) a summary of the grounds on which each of the opinions of the witnesses will be based. At the time of disclosure, Plaintiff(s) shall furnish opposing counsel with two alternative deposition dates within the following 45 days for each retained expert witness. No later than **150 days** prior to the Pre-Trial Conference, each Defendant shall serve on all other counsel and file with the Court a Notice containing the same information regarding each expert witness who will testify at trial on behalf of that defendant. At the time of disclosure, each Defendant shall furnish opposing counsel with two alternative deposition dates within the following 45 days for each retained expert witness. No later than 30 days after the plaintiff(s) is served with the defendant's expert witness disclosure, the plaintiff(s) may serve on all other counsel and file with the Court a notice containing the same information

**Exhibit B**

regarding retained rebuttal expert witnesses, if any, who will testify at trial on behalf of the plaintiff(s). At the time of disclosure, Plaintiff(s) shall furnish opposing counsel with two alternative deposition dates within the following 45 days for each retained expert witness. Any expert witness not included on the Notice as provided herein will not be allowed to testify without an order of the Court. All parties shall cooperate in the scheduling of expert depositions. Notwithstanding the foregoing, the Court expects the parties to truthfully and thoroughly answer interrogatories and other discovery. If interrogatories seeking information regarding expert witnesses have been served, the party answering such discovery shall do so in good faith and shall not delay furnishing the information regarding expert witnesses until the time such disclosure is required by this order.

Nothing in the foregoing should be interpreted to cause discovery regarding experts to commence on the deadlines referenced above. Should it be determined that a party failed to conduct discovery in good faith by refusing to identify expert witnesses or their opinions in a timely manner pursuant to interrogatories or other discovery, the Court may strike such experts' testimony.

## 6a. TREATING DOCTORS AND NON-RETAINED EXPERT WITNESSES.

No later than **120 days** prior to the pre-trial conference, all parties shall serve on all opposing counsel and file with the Court a notice containing the following information regarding each treating physician and non-retained expert witness who will testify at trial as an expert witness on behalf of a party: (a) the name and address of the witness; (b) the area(s) of expertise of the witness; (c) the subject matter of the expected testimony of the witness; (d) the substance of the facts and opinions about which the witness is expected to testify; and (e) a summary of the grounds on which each of the opinions of the witnesses will be based.

Nothing in the foregoing should be interpreted to cause discovery regarding experts to commence on the deadlines referenced above. Should it be determined that a party failed to conduct discovery in good faith by refusing to identify expert witnesses or their opinions in a timely manner pursuant to interrogatories or other discovery, the Court may strike such experts' testimony.

## 7. DISCOVERY.

All discovery shall be completed prior to the Pre-Trial Conference unless otherwise extended by Order of the Court.

## 8. EXPERT ISSUES.

All *expert* related motions or objections shall be filed and served at least 90 days prior to the first day the case is set for trial. A copy of all such motions shall be delivered to the Court at the same time they are filed and served. The party filing *expert* related motions or objections shall be responsible to do that which is necessary so that hearings regarding *expert* related evidence shall be noticed to be heard or agreed to by the parties no later than 30 days prior to the first day of the date the case is set for trial. Any *expert* related motions or objections shall state with particularity the grounds upon which they are based and the substantial matters of law to be

**Exhibit B**

argued and shall identify any evidence or supporting material on which the movant relies. Any *expert* related motions or objections not filed or noticed for hearing within the time referenced in this paragraph are denied and such objections are overruled. The Court may summarily rule on any *expert* related motion not written with particularity as described above.

### 9. MOTIONS IN LIMINE.

All case specific Motions *in Limine* shall be filed, served, noticed and heard or agreed to by the parties no later than 30 days prior to the first day the case is set for trial. A copy of all such motions shall be delivered to the Court at the same time they are filed and served. The Motion shall state with particularity the grounds upon which it is based and the substantial matters of law to be argued and shall identify any evidence or supporting material on which the movant relies. The Court may summarily rule on any Motions in Limine not written with particularity as described above.

### 10.    RULE 1.360 EXAMINATIONS.

No later than **120 days** prior to trial, all medical evaluations and other examinations pursuant to Fla. R. Civ. P. 1.360 shall have been completed. The examination is not a deposition so the examiner shall be limited to that information reasonably necessary to conduct the specialty-appropriate examination, including a brief medical history as well as present complaints. No invasive testing shall be performed without consent or Court order. The examinee will not be required to complete any lengthy information forms but may furnish the doctor with name, address and date of birth. Questions are permitted regarding the cause of the injury (e.g., car wreck, slip and fall, etc.) and the location on plaintiff's body where the plaintiff claims injury. Questions pertaining to fault, plaintiff's attorney, referrals to plaintiff's doctor and what plaintiff told others are NOT permitted. Also, the report of the examiner shall be provided to plaintiff's counsel no later than 30 days after the examination. In the event the defendant intends to call the medical or mental evaluator as an expert witness at trial, then at the time of serving the examiner's report, the defendant shall furnish opposing counsel with two alternative dates of witness availability for purpose of taking the examiner's deposition. The witness shall be available to be deposed within 30 days of rendering the report.

### 11. JURY INSTRUCTIONS AND VERDICT FORMS.

Typed proposed jury instructions and verdict forms shall be filed with the Court at the Pre-Trial Conference and may be supplemented prior to the Jury Instruction Conference. As set forth in Paragraph 3, the parties shall jointly prepare and review proposed jury instructions and verdict forms prior to the Pre-Trial Conference.

### 12. ATTORNEY REPRESENTATION.

The Pre-Trial meeting and the Pre-Trial Conference shall be attended by an attorney who will participate in the trial of the case, and all admissions and disclosures of fact made at those times shall be binding on the client.

**Exhibit B**

### 13. MEDIATION.

This matter is hereby referred to a Mediator.  The Mediator shall be **G. Michael Burnett.**  Mediation shall occur prior to the Pre-Trial Conference.  *If the case should settle, the mediator and all counsel for the Plaintiff(s) and Defendant(s) shall immediately contact the Judge's office and remove the trial and pretrial conference from the Judge's calendar.   Copy of mediation report is not sufficient to remove the case from the docket.*

### 14. ADMONITIONS.

Failure to comply with the requirement of this Order will subject the party or attorney to appropriate sanctions.

### 15. SETTLEMENT.

All counsel shall immediately notify this Court in the event of settlement or dismissal.  Additionally, the parties shall submit a stipulation for an order of dismissal or shall file a dismissal with prejudice of the case.  Counsel shall also notify the Court of any pending hearings that will be canceled as a result of the settlement.

**DONE AND ORDERED** in Chambers at Jacksonville, Duval County, Florida, this day of January 14, 2020.

ERIC C. ROBERSON
CIRCUIT JUDGE

Copies to counsel of record via electronic filing

**If you are a person with a disability who needs any accommodation in order to participate in this proceeding, you are entitled, at no cost to you, to the provision of certain assistance.  Please contact the ADA Coordinator at (904) 255-1695 or crtintrp@coj.net, at least 7 days before your scheduled court appearance, or immediately upon receiving this notification if the time before the scheduled appearance is less than 7 days.  If you are hearing or voice impaired, call 711.**

**Exhibit B**

# EXHIBIT C

**BUSINESS AUTO COVERAGE FORM**
**DECLARATIONS**

# Republic – Vanguard
## Insurance Company
### PHOENIX, ARIZONA

Policy Number
CNO555126200

**ITEM ONE—NAMED INSURED AND MAILING ADDRESS:**
NPC International, Inc
720 W. 20th St,
Pittsburg, KS 66762

FORM OF NAMED INSURED'S BUSINESS:
☒CORPORATION; ☐PARTNERSHIP; ☐INDIVIDUAL; or
☐OTHER: _____

AGENT NAME AND ADDRESS:
CRC Insurance Services, Inc.
7557 Rambler Road, Suite 300
Dallas, Texas  75231
(214) 363-7636

Agent No.:  4202129

POLICY PERIOD:  Policy covers  FROM  9/30/2017  TO  9/30/2018
**12:01 A.M. Standard Time at your mailing address shown above.**

IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.

**ITEM TWO—SCHEDULE OF COVERAGES AND COVERED "AUTOS"**

This insurance provides only those coverages where a charge is shown in the premium column below.  Each of these coverages will apply only to those "autos" shown as covered "autos." "Autos" are shown as covered "autos" for a particular coverage by the entry of one or more of the symbols from the COVERED "AUTOS" Section of the Business Auto Coverage Form next to the name of the coverage.

| COVERAGES | COVERED "AUTOS" (Entry of one or more of the symbols from the COVERED "AUTOS" Section of the Business Auto Coverage Form shows which "autos" are covered "autos.") | LIMIT THE MOST WE WILL PAY FOR ANY ONE ACCIDENT OR "LOSS" | | PREMIUM |
|---|---|---|---|---|
| LIABILITY    Bodily Injury   Property Damage   Combined Liability | 8,9 | $1,000,000    each accident Excess of the Self Insured Retention | | $324,500.00 |
| UNINSURED/UNDERINSURED MOTORISTS   Bodily Injury   Property Damage   Combined Liability | Not Covered | $    each person / $    $    each accident    $    each accident | each accident | $0 |

| PREMIUM:   AUDITABLE: Adjustable Per Store RATE: $285.65 | | |
|---|---|---|
| | Estimated Total Premium | $324,500.00 |
| | Policy Fee (Fully Earned) | $500.00 |
| | Surplus Lines Tax | $19,500.00 |
| | Total Premium | $344,500.00 |

Countersigned: _____January 17, 2018_____

By: _____

THESE DECLARATIONS TOGETHER WITH THE BUSINESS AUTO COVERAGE FORM, COMMON POLICY CONDITIONS AND FORMS AND ENDORSEMENTS, IF ANY, ISSUED TO FORM A PART THEREOF, COMPLETE THE ABOVE NUMBERED POLICY.

*In Witness Whereof*, this Company has executed and attested these presents; but this policy shall not be valid unless countersigned by an authorized Agent of this Company.

Corporate Secretary

President

**This policy is issued by an insurer not authorized to do business in Kansas and, as such, the form, financial condition, and rates are not subject to review by the Commissioner of Insurance and the insured is not protected by any guaranty fund.**

CA DS R002 03 15

**Exhibit C**

# SCHEDULE A

FORMS AND ENDORSEMENTS THAT APPLY TO THIS POLICY:

| FORM NUMBER | TITLE |
|---|---|
| **Mandatory Forms** | |
| **CA DS R002 03 15** | **Business Auto – Declarations** |
| **CA DS R003 03 15** | **Business Auto – Schedule A** |
| **CA  00 01 10 01** | **Business Auto Coverage Form** |
| **IL 00 17 11 98** | **Common Policy Conditions** |
| **IL 00 21 04 98** | **Nuclear Energy Liability Exclusion** |
| **CA R029 06 06** | **Minimum Earned Premium Endorsement** |
| **CA R024 05 12** | **Service of Process** |
| **ISO Forms** | |
| | |
| **SIR Endorsement** | |
| **CAR075 11 17  Self Insured Retention and Corridor Self Insured Retention Endorsement** | |
| | |
| **Additional Interests & Waiver of Subrogation** | |
| | |
| | |
| **Coverage & Limitations** | |
| | |
| | |
| | |
| | |
| **Exclusions** | |
| | |
| | |
| | |
| | |
| **State Mandatory Forms** | |
| | |
| | |
| **Other Forms** | |
| **CA R074 03 15  Named Insured Endorsement** | |
| | |

**Exhibit C**

COMMERCIAL AUTO
CA R074 03 15

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# NAMED INSURED ENDORSEMENT

| POLICY NUMBER<br>CNO555126200 | EFFECTIVE DATE<br>9/30/2017 | |
|---|---|---|
| NAMED INSURED:<br>NPC International, Inc. | | COMPANY:<br>REPUBLIC VANGUARD |

Agent Name:  CRC Insurance Services, Inc.

Endorsement

The Named Insured is completed to read:

NPC INTERNATIONAL, INC.
NPC Quality Burgers, Inc.
NPC Operating Company B, Inc.
NPC Restaurant Holdings, LLC
NPC International Holdings, Inc.
NPC QB LLC

CA R074 03 15                                                                                                    Page 1 of 1

**Exhibit C**

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# SELF-INSURED RETENTION AND CORRIDOR SELF-INSURED RETENTION ENDORSEMENT

This endorsement modifies the insurance provided under the following:

**BUSINESS AUTO COVERAGE FORM**

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

---

| | | |
|---|---|---|
| **SCHEDULE A – SELF-INSURED RETENTION** | | |
| Hired "Autos" Only | $1,000,000 | per "accident" |
| Nonowned "Autos" Only | $1,000,000 | per "accident" |
| **SCHEDULE B – CORRIDOR SELF-INSURED RETENTION Excess of Schedule A** | | |
| Hired "Autos" Only | $1,000,000 | per "accident" |
| Nonowned "Autos" Only | $1,000,000 | per "accident" |
| Schedule B Aggregate Self-Insured Retention | $1,000,000 | per "accident" |

---

This endorsement applies to the following: COVERED AUTOS LIABLITY COVERAGE, any uninsured motorist coverage underinsured motorist coverage, medical payments coverage, no-fault insurance and personal injury protection insurance provided by this policy:

**A.  Self-Insured Retention and Corridor Self-Insured Retention:**

For each "accident", you will pay all sums payable as damages, expenses, costs and benefits because of "bodily injury" or "property damage" to which this insurance applies, as well as any amounts payable as Supplementary Payments, up to the amount shown in the Schedule above as the Self-Insured Retention and "Corridor Self-Insured Retention".  Our obligation to pay damages, expenses, costs, or benefits because of "bodily injury" or "property damage" will apply only in excess of the Self-Insured Retention and "Corridor Self-Insured Retention" up to the applicable limit of insurance. We have no obligation under this policy unless there has been full compliance with the following provisions:

Exhibit C

1. You have made actual payment of all damages, expenses, costs, and benefits because of "bodily injury" or "property damage" to which this insurance applies until you have made payment of the full amount of the Self-Insured Retention and "Corridor Self-Insured Retention".

2. You will not reinsure the Self-Insured Retention and "Corridor Self-Insured Retention" without our knowledge and written consent.

We will have no obligation under any circumstances to assume or satisfy your obligation for the actual payment of damages, expenses, costs, and benefits, until the Self-Insured Retention and "Corridor Self-Insured Retention" have been exhausted.  Our obligation to pay damages, expenses, costs, or benefits under this policy will not be affected, modified or changed in the event of your bankruptcy.

We have the right to require you to settle any claim or "suit" for damages, expenses, costs and benefits, because of "bodily injury" or "property damage" to which this insurance applies, even if the damages, expenses, costs or benefits payable will not exceed the Self-Insured Retention and "Corridor Self-Insured Retention".

We at our discretion have the right to initiate or participate in:
- Investigation of any "accident";
- Defense of any insured against any "suit";
- Any settlement; and
- Appeal of any judgment, if such judgment may result in a payment under this insurance.

**B.  Payment of Interest:**

All interest applicable to damages for "bodily injury" or "property damage" which would otherwise be payable under **COVERED AUTOS LIABILITY COVERAGE** in excess of the Self-Insured Retention and "Corridor Self-Insured Retention" will be pro-rated in direct proportion to the amount of damages because of "bodily injury" or "property damage" payable by you and us.

**C.  Costs and Expenses Not Covered:**

You are responsible for any and all costs and expenses within the Self-Insured Retention and "Corridor Self-Insured Retention".  Such costs and expenses include all costs and expenses incurred by any "insured" in the investigation, defense, negotiation and settlement of any claim or "suit", including attorney's fees, attorney's expenses or court costs taxed  against the "insured".  In addition, we will not pay for any of the following:

1. Claims management or service company fees incurred by any "insured";

2. Wages, salaries and expenses of any employee or contractor of any "insured"; or

3. Operating expenses of any "insured".

**D.  Our Right to Reimbursement:**

We have the right but not the obligation to make payment for damages, costs, expenses, or benefits or to settle any claim or "suit" within the Self-Insured Retention and "Corridor Self-Insured Retention".  If we make payment of the Self-Insured Retention and "Corridor Self-Insured Retention", or any part of the Self-Insured Retention and "Corridor Self-Insured Retention", you will reimburse us for any payment we make.  You will reimburse us in full within ten (10) calendar days of your receipt of our notice of our payment of

**Exhibit C**

the Self-Insured Retention and "Corridor Self-Insured Retention", or any part of the Self-Insured Retention and "Corridor Self-Insured Retention".

For any paid sums recovered from other parties:

1.   The amount of recovery will first be applied against any amounts we paid within or in excess of the Self-Insured Retention and "Corridor Self-Insured Retention"; and

2.   The remainder of any amount recovered from other parties will be paid to you.

**E.  Amendment to Section IV—Business Auto Conditions:**

Subparagraphs 2.a. and 2.b of Paragraph A. 2 **Duties In The Event Of Accident, Claim, Suit or Loss**, of **SECTION IV – BUSINESS AUTO CONDITIONS**, are deleted and replaced by the following:

We have no obligation under this policy unless there has been full compliance with the following duties:

**2. a.**   You must give us or our authorized representative prompt written notice of any claim or "suit" for uninsured motorist coverage or underinsured motorist coverage.  For all other claims, "suits", or "accidents", you must give us or our authorized representative prompt written notice of such claim, "accident", or "suit" when you or your representative have set reserves which equal or exceed fifty percent (50%) of your Self-Insured Retention or if the "accident" involves or results in any of the following:

(1)   Spinal cord injury, whether complete, incomplete, permanent, temporary or partial;
(2)   Amputation of any body part;
(3)   Brain damage which affects mental or motor functioning, including but not limited to, disorientation, personality and behavior disorder, seizures, unconsciousness, aphasia (inability to speak);
(4)   Massive internal injuries;
(5)   Sensory Deficits:  Any injury that alleges permanent disability or impairment to any major sensory function, including, but not limited to, sight, hearing, taste, smell, or touch;
(6)   Nerve damage causing any loss of sensation, use of function;
(7)   Burns involving more than 10% of the body;
(8)   Multiple fractures involving more than one member or non-union;
(7)   Reflex Sympathetic Dystrophy (RSD);
(8)   Significant facial scarring;
(9)   Fatalities;
(10)  Single accidents involving multiple claimants;
(11)  Pedestrian knock down;
(12)  Any unusual exposure such as sexual molestation or rape, exposure to AIDS, toxic torts, asbestos, mold, construction defect, etc.;
(13)  Continuing exposure allegations involving bodily injury or property damage;
(14)  Any class action suit, or other complex litigation matters;
(15)  Claims with the potential to exceed the Self-Insured Retention;
(16)  Any written inquiry by a State or other regulatory authority, with respect to any claim, other than routine exchange of correspondence or forms;
(17)  MISCELLANEOUS MATTERS including:
  •   Any suit naming AmTrust as a defendant
  •   All punitive damages claims
  •   All bad faith handling claims

**Exhibit C**

- All uninsured / underinsured motorist claims
- Potential exposure under multiple policies or policy periods
- All claims where reservation or rights or coverage denial recommended
- All policy limit demands
- All claims with exposure to the insured above policy limits

Written notice of an "accident", "suit" or claim will include:

(1) How, when, and where the "accident" or "loss" occurred;

(2) The "insured's" name and address; and

(3) To the extent possible, the names and address of any injured person and any witnesses to the "accident".

**2. b.** Additionally, you and other "insureds" involved in an "accident", "suit" or claim must:

(1) Cooperate with us in the investigation, settlement or defense of such claim, "suit" or "accident";

(2) Assume no obligation, make no payment or incur no expense without our consent, except at the "insured's" own cost, if such obligation, payment, or expense relates to a claim or "suit" which on its own or when combined with any other claim or "suit" would exceed the Self-Insured;

(3) Submit to examination, at our expense, by a physician of our choice, as often as we reasonably require;

(4) Authorize us to obtain medical reports and other pertinent information;

(5) Promptly take all reasonable and necessary steps to prevent further injury or damage;

(6) Provide adequate defense and investigation of any action for or notice of any actual, potential or alleged "bodily injury" damages and "property damage" regardless of whether or not your Self-Insured Retention been exhausted;

(7) Accept any reasonable offer of settlement within your Self-Insured Retention and "Corridor Self-Insured Retention";

(8) Provide loss runs to us on a semi-annual basis.  The loss runs will include:

(a) Your file number;

(b) The date of the "accident" or "loss";

(c) A description of the "accident" or "loss";

(d) Vehicle identification;

(e) Driver's name;

(f) Claimant's name;

(g) Open indemnity reserves;

(h) Paid indemnity;

(i) Total payments resulting from all "accidents", "losses", "suits", or claims; and

**Exhibit C**

(j)  Status of all claims or "suits";

(9)  Provide us with access to all hard copy files, electronic files, and your claim system for on-site claim reviews on a semi-annual basis.


**F.  Medicare and Medicaid Reporting**

As a condition precedent to the issuance and continuation of this Policy you are responsible for complying with all Medicare and Medicaid reporting requirements, including the requirements of the Medicare Secondary Payer Act,  42 U.S.C. § 1395y.  You will obtain from us or our authorized representative all applicable Medicare and Medicaid reporting forms and you will complete such forms.   You will submit all completed Medicare and Medicaid reporting forms to us or our authorized representative for approval, and once our approval has been obtained you will file such forms in compliance with 42 U.S.C. § 1395y.

You will immediately defend, indemnify, and protect us and our representatives and hold us and our representatives harmless from any and all claims, demands, causes of actions, damages, costs, expenses, judgments, losses or liability, in law or in equity, of every kind and nature whatsoever (including, without limitation, attorneys' fees, disbursements, and court costs, and all other professional, expert or consultants' fees and costs, and general and administrative expenses) arising out of or in connection with your failure to comply with 42 U.S.C § 1395y and/or any lien or claim for payment by the Secretary of the Social Security Administration and/or the Medicare and/or Medicaid programs.  Our representatives include, but are not limited to, each of the following:  our officers, agents, employees, affiliates, parents, and subsidiaries.


**G. Amendment to Section V— Definitions:**

"Corridor self-insured retention" means the amount you must pay for damages, expenses, costs and benefits in addition to the "self-insured retention" for each "accident" before the limits of insurance of this policy apply. Claim-related expense incurred by you does not reduce the "corridor self-insured retention". The "corridor self-insured retention" aggregate shown in Schedule B is the total amount of damages, expenses, costs and benefits you must pay within the "corridor self-insured retention" before the "corridor self-insured retention" no longer applies.

**Exhibit C**

**COMMERCIAL AUTO**
**CA 00 01 10 01**

# BUSINESS AUTO COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the Company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **V** – Definitions.

## SECTION I – COVERED AUTOS

Item Two of the Declarations shows the "autos" that are covered "autos" for each of your coverages. The following numerical symbols describe the "autos" that may be covered "autos". The symbols entered next to a coverage on the Declarations designate the only "autos" that are covered "autos".

**A. Description Of Covered Auto Designation Symbols**

| Symbol | Description Of Covered Auto Designation Symbols | |
|:---:|---|---|
| **1** | Any "Auto" | |
| **2** | Owned "Autos" Only | Only those "autos" you own (and for Liability Coverage any "trailers" you don't own while attached to power units you own). This includes those "autos" you acquire ownership of after the policy begins. |
| **3** | Owned Private Passenger "Autos" Only | Only the private passenger "autos" you own. This includes those private passenger "autos" you acquire ownership of after the policy begins. |
| **4** | Owned "Autos" Other Than Private Passenger "Autos" Only | Only those "autos" you own that are not of the private passenger type (and for Liability Coverage any "trailers" you don't own while attached to power units you own). This includes those "autos" not of the private passenger type you acquire ownership of after the policy begins. |
| **5** | Owned "Autos" Subject To No-Fault | Only those "autos" you own that are required to have No-Fault benefits in the state where they are licensed or principally garaged. This includes those "autos" you acquire ownership of after the policy begins provided they are required to have No-Fault benefits in the state where they are licensed or principally garaged. |
| **6** | Owned "Autos" Subject To A Compulsory Uninsured Motorists Law | Only those "autos" you own that because of the law in the state where they are licensed or principally garaged are required to have and cannot reject Uninsured Motorists Coverage. This includes those "autos" you acquire ownership of after the policy begins provided they are subject to the same state uninsured motorists requirement. |
| **7** | Specifically Described "Autos" | Only those "autos" described in Item Three of the Declarations for which a premium charge is shown (and for Liability Coverage any "trailers" you don't own while attached to any power unit described in Item Three). |
| **8** | Hired "Autos" Only | Only those "autos" you lease, hire, rent or borrow. This does not include any "auto" you lease, hire, rent, or borrow from any of your "employees", partners (if you are a partnership), members (if you are a limited liability company) or members of their households. |
| **9** | Nonowned "Autos" Only | Only those "autos" you do not own, lease, hire, rent or borrow that are used in connection with your business. This includes "autos" owned by your "employees", partners (if you are a partnership), members (if you are a limited liability company), or members of their households but only while used in your business or your personal affairs. |

Exhibit C

**B. Owned Autos You Acquire After The Policy Begins**

1. If Symbols **1, 2, 3, 4, 5** or **6** are entered next to a coverage in Item Two of the Declarations, then you have coverage for "autos" that you acquire of the type described for the remainder of the policy period.

2. But, if Symbol **7** is entered next to a coverage in Item Two of the Declarations, an "auto" you acquire will be a covered "auto" for that coverage only if:

   a. We already cover all "autos" that you own for that coverage or it replaces an "auto" you previously owned that had that coverage; and

   b. You tell us within 30 days after you acquire it that you want us to cover it for that coverage.

**C. Certain Trailers, Mobile Equipment And Temporary Substitute Autos**

If Liability Coverage is provided by this Coverage Form, the following types of vehicles are also covered "autos" for Liability Coverage:

1. "Trailers" with a load capacity of 2,000 pounds or less designed primarily for travel on public roads.

2. "Mobile equipment" while being carried or towed by a covered "auto".

3. Any "auto" you do not own while used with the permission of its owner as a temporary substitute for a covered "auto" you own that is out of service because of its:

   a. Breakdown;

   b. Repair;

   c. Servicing;

   d. "Loss"; or

   e. Destruction.

## SECTION II – LIABILITY COVERAGE

**A. Coverage**

We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto".

We will also pay all sums an "insured" legally must pay as a "covered pollution cost or expense" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of covered "autos". However, we will only pay for the "covered pollution cost or expense" if there is either "bodily injury" or "property damage" to which this insurance applies that is caused by the same "accident".

We have the right and duty to defend any "insured" against a "suit" asking for such damages or a "covered pollution cost or expense". However, we have no duty to defend any "insured" against a "suit" seeking damages for "bodily injury" or "property damage" or a "covered pollution cost or expense" to which this insurance does not apply. We may investigate and settle any claim or "suit" as we consider appropriate. Our duty to defend or settle ends when the Liability Coverage Limit of Insurance has been exhausted by payment of judgments or settlements.

**1. Who Is An Insured**

The following are "insureds":

   a. You for any covered "auto".

   b. Anyone else while using with your permission a covered "auto" you own, hire or borrow except:

   (1) The owner or anyone else from whom you hire or borrow a covered "auto". This exception does not apply if the covered "auto" is a "trailer" connected to a covered "auto" you own.

   (2) Your "employee" if the covered "auto" is owned by that "employee" or a member of his or her household.

   (3) Someone using a covered "auto" while he or she is working in a business of selling, servicing, repairing, parking or storing "autos" unless that business is yours.

   (4) Anyone other than your "employees", partners (if you are a partnership), members (if you are a limited liability company), or a lessee or borrower or any of their "employees", while moving property to or from a covered "auto".

   (5) A partner (if you are a partnership), or a member (if you are a limited liability company) for a covered "auto" owned by him or her or a member of his or her household.

   © ISO Properties, Inc., 2000

**Exhibit C**

**c.** Anyone liable for the conduct of an "insured" described above but only to the extent of that liability.

**2. Coverage Extensions**

**a. Supplementary Payments**

In addition to the Limit of Insurance, we will pay for the "insured":

**(1)** All expenses we incur.

**(2)** Up to $2,000 for cost of bail bonds (including bonds for related traffic law violations) required because of an "accident" we cover. We do not have to furnish these bonds.

**(3)** The cost of bonds to release attachments in any "suit" against the "insured" we defend, but only for bond amounts within our Limit of Insurance.

**(4)** All reasonable expenses incurred by the "insured" at our request, including actual loss of earnings up to $250 a day because of time off from work.

**(5)** All costs taxed against the "insured" in any "suit" against the "insured" we defend.

**(6)** All interest on the full amount of any judgment that accrues after entry of the judgment in any "suit" against the "insured" we defend, but our duty to pay interest ends when we have paid, offered to pay or deposited in court the part of the judgment that is within our Limit of Insurance.

**b. Out-Of-State Coverage Extensions**

While a covered "auto" is away from the state where it is licensed we will:

**(1)** Increase the Limit of Insurance for Liability Coverage to meet the limits specified by a compulsory or financial responsibility law of the jurisdiction where the covered "auto" is being used. This extension does not apply to the limit or limits specified by any law governing motor carriers of passengers or property.

**(2)** Provide the minimum amounts and types of other coverages, such as no-fault, required of out-of-state vehicles by the jurisdiction where the covered "auto" is being used.

We will not pay anyone more than once for the same elements of loss because of these extensions.

**B. Exclusions**

This insurance does not apply to any of the following:

**1. Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the "insured".

**2. Contractual**

Liability assumed under any contract or agreement.

But this exclusion does not apply to liability for damages:

**a.** Assumed in a contract or agreement that is an "insured contract" provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement; or

**b.** That the "insured" would have in the absence of the contract or agreement.

**3. Workers' Compensation**

Any obligation for which the "insured" or the "insured's" insurer may be held liable under any workers' compensation, disability benefits or unemployment compensation law or any similar law.

**4. Employee Indemnification And Employer's Liability**

"Bodily injury" to:

**a.** An "employee" of the "insured" arising out of and in the course of:

**(1)** Employment by the "insured"; or

**(2)** Performing the duties related to the conduct of the "insured's" business; or

**b.** The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph **a.** above.

This exclusion applies:

**(1)** Whether the "insured" may be liable as an employer or in any other capacity; and

**(2)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

But this exclusion does not apply to "bodily injury" to domestic "employees" not entitled to workers' compensation benefits or to liability assumed by the "insured" under an "insured contract". For the purposes of the Coverage Form, a domestic "employee" is a person engaged in household or domestic work performed principally in connection with a residence premises.

© ISO Properties, Inc., 2000

**Exhibit C**

**5. Fellow Employee**

"Bodily injury" to any fellow "employee" of the "insured" arising out of and in the course of the fellow "employee's" employment or while performing duties related to the conduct of your business.

**6. Care, Custody Or Control**

"Property damage" to or "covered pollution cost or expense" involving property owned or transported by the "insured" or in the "insured's" care, custody or control. But this exclusion does not apply to liability assumed under a sidetrack agreement.

**7. Handling Of Property**

"Bodily injury" or "property damage" resulting from the handling of property:

**a.** Before it is moved from the place where it is accepted by the "insured" for movement into or onto the covered "auto"; or

**b.** After it is moved from the covered "auto" to the place where it is finally delivered by the "insured".

**8. Movement Of Property By Mechanical Device**

"Bodily injury" or "property damage" resulting from the movement of property by a mechanical device (other than a hand truck) unless the device is attached to the covered "auto".

**9. Operations**

"Bodily injury" or "property damage" arising out of the operation of any equipment listed in Paragraphs **6.b.** and **6.c.** of the definition of "mobile equipment".

**10. Completed Operations**

"Bodily injury" or "property damage" arising out of your work after that work has been completed or abandoned.

In this exclusion, your work means:

**a.** Work or operations performed by you or on your behalf; and

**b.** Materials, parts or equipment furnished in connection with such work or operations.

Your work includes warranties or representations made at any time with respect to the fitness, quality, durability or performance of any of the items included in Paragraphs **a.** or **b.** above.

Your work will be deemed completed at the earliest of the following times:

**(1)** When all of the work called for in your contract has been completed.

**(2)** When all of the work to be done at the site has been completed if your contract calls for work at more than one site.

**(3)** When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

**11. Pollution**

"Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

**a.** That are, or that are contained in any property that is:

**(1)** Being transported or towed by, handled, or handled for movement into, onto or from, the covered "auto";

**(2)** Otherwise in the course of transit by or on behalf of the "insured"; or

**(3)** Being stored, disposed of, treated or processed in or upon the covered "auto";

**b.** Before the "pollutants" or any property in which the "pollutants" are contained are moved from the place where they are accepted by the "insured" for movement into or onto the covered "auto"; or

**c.** After the "pollutants" or any property in which the "pollutants" are contained are moved from the covered "auto" to the place where they are finally delivered, disposed of or abandoned by the "insured".

Paragraph **a.** above does not apply to fuels, lubricants, fluids, exhaust gases or other similar "pollutants" that are needed for or result from the normal electrical, hydraulic or mechanical functioning of the covered "auto" or its parts, if:

**(1)** The "pollutants" escape, seep, migrate, or are discharged, dispersed or released directly from an "auto" part designed by its manufacturer to hold, store, receive or dispose of such "pollutants"; and

**(2)** The "bodily injury", "property damage" or "covered pollution cost or expense" does not arise out of the operation of any equipment listed in Paragraphs **6.b.** and **6.c.** of the definition of "mobile equipment".

© ISO Properties, Inc., 2000

**Exhibit C**

Paragraphs **b.** and **c.** above of this exclusion do not apply to "accidents" that occur away from premises owned by or rented to an "insured" with respect to "pollutants" not in or upon a covered "auto" if:

**(1)** The "pollutants" or any property in which the "pollutants" are contained are upset, overturned or damaged as a result of the maintenance or use of a covered "auto"; and

**(2)** The discharge, dispersal, seepage, migration, release or escape of the "pollutants" is caused directly by such upset, overturn or damage.

**12. War**

"Bodily injury" or "property damage" due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution. This exclusion applies only to liability assumed under a contract or agreement.

**13. Racing**

Covered "autos" while used in any professional or organized racing or demolition contest or stunting activity, or while practicing for such contest or activity. This insurance also does not apply while that covered "auto" is being prepared for such a contest or activity.

**C. Limit Of Insurance**

Regardless of the number of covered "autos", "insureds", premiums paid, claims made or vehicles involved in the "accident", the most we will pay for the total of all damages and "covered pollution cost or expense" combined, resulting from any one "accident" is the Limit of Insurance for Liability Coverage shown in the Declarations.

All "bodily injury", "property damage" and "covered pollution cost or expense" resulting from continuous or repeated exposure to substantially the same conditions will be considered as resulting from one "accident".

No one will be entitled to receive duplicate payments for the same elements of "loss" under this Coverage Form and any Medical Payments Coverage Endorsement, Uninsured Motorists Coverage Endorsement or Underinsured Motorists Coverage Endorsement attached to this Coverage Part.

**SECTION III – PHYSICAL DAMAGE COVERAGE**

**A. Coverage**

**1.** We will pay for "loss" to a covered "auto" or its equipment under:

**a. Comprehensive Coverage**

From any cause except:

**(1)** The covered "auto's" collision with another object; or

**(2)** The covered "auto's" overturn.

**b. Specified Causes Of Loss Coverage**

Caused by:

**(1)** Fire, lightning or explosion;

**(2)** Theft;

**(3)** Windstorm, hail or earthquake;

**(4)** Flood;

**(5)** Mischief or vandalism; or

**(6)** The sinking, burning, collision or derailment of any conveyance transporting the covered "auto".

**c. Collision Coverage**

Caused by:

**(1)** The covered "auto's" collision with another object; or

**(2)** The covered "auto's" overturn.

**2. Towing**

We will pay up to the limit shown in the Declarations for towing and labor costs incurred each time a covered "auto" of the private passenger type is disabled. However, the labor must be performed at the place of disablement.

**3. Glass Breakage – Hitting A Bird Or Animal – Falling Objects Or Missiles**

If you carry Comprehensive Coverage for the damaged covered "auto", we will pay for the following under Comprehensive Coverage:

**a.** Glass breakage;

**b.** "Loss" caused by hitting a bird or animal; and

**c.** "Loss" caused by falling objects or missiles.

However, you have the option of having glass breakage caused by a covered "auto's" collision or overturn considered a "loss" under Collision Coverage.

© ISO Properties, Inc., 2000

**Exhibit C**

4. **Coverage Extensions**

  a. **Transportation Expenses**

    We will pay up to $20 per day to a maximum of $600 for temporary transportation expense incurred by you because of the total theft of a covered "auto" of the private passenger type. We will pay only for those covered "autos" for which you carry either Comprehensive or Specified Causes of Loss Coverage. We will pay for temporary transportation expenses incurred during the period beginning 48 hours after the theft and ending, regardless of the policy's expiration, when the covered "auto" is returned to use or we pay for its "loss".

  b. **Loss Of Use Expenses**

    For Hired Auto Physical Damage, we will pay expenses for which an "insured" becomes legally responsible to pay for loss of use of a vehicle rented or hired without a driver, under a written rental contract or agreement. We will pay for loss of use expenses if caused by:

    (1) Other than collision only if the Declarations indicate that Comprehensive Coverage is provided for any covered "auto";

    (2) Specified Causes Of Loss only if the Declarations indicate that Specified Causes Of Loss Coverage is provided for any covered "auto"; or

    (3) Collision only if the Declarations indicate that Collision Coverage is provided for any covered "auto".

    However, the most we will pay for any expenses for loss of use is $20 per day, to a maximum of $600.

B. **Exclusions**

  1. We will not pay for "loss" caused by or resulting from any of the following. Such "loss" is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the "loss".

  a. **Nuclear Hazard**

    (1) The explosion of any weapon employing atomic fission or fusion; or

    (2) Nuclear reaction or radiation, or radioactive contamination, however caused.

  b. **War Or Military Action**

    (1) War, including undeclared or civil war;

    (2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

    (3) Insurrection, rebellion, revolution, usurped power or action taken by governmental authority in hindering or defending against any of these.

  2. We will not pay for "loss" to any covered "auto" while used in any professional or organized racing or demolition contest or stunting activity, or while practicing for such contest or activity. We will also not pay for "loss" to any covered "auto" while that covered "auto" is being prepared for such a contest or activity.

  3. We will not pay for "loss" caused by or resulting from any of the following unless caused by other "loss" that is covered by this insurance:

  a. Wear and tear, freezing, mechanical or electrical breakdown.

  b. Blowouts, punctures or other road damage to tires.

  4. We will not pay for "loss" to any of the following:

  a. Tapes, records, discs or other similar audio, visual or data electronic devices designed for use with audio, visual or data electronic equipment.

  b. Any device designed or used to detect speed measuring equipment such as radar or laser detectors and any jamming apparatus intended to elude or disrupt speed measurement equipment.

  c. Any electronic equipment, without regard to whether this equipment is permanently installed, that receives or transmits audio, visual or data signals and that is not designed solely for the reproduction of sound.

  d. Any accessories used with the electronic equipment described in Paragraph **c.** above.

© ISO Properties, Inc., 2000

**Exhibit C**

Exclusions **4.c.** and **4.d.** do not apply to:

**a.** Equipment designed solely for the reproduction of sound and accessories used with such equipment, provided such equipment is permanently installed in the covered "auto" at the time of the "loss" or such equipment is removable from a housing unit which is permanently installed in the covered "auto" at the time of the "loss", and such equipment is designed to be solely operated by use of the power from the "auto's" electrical system, in or upon the covered "auto"; or

**b.** Any other electronic equipment that is:

**(1)** Necessary for the normal operation of the covered "auto" or the monitoring of the covered "auto's" operating system; or

**(2)** An integral part of the same unit housing any sound reproducing equipment described in **a.** above and permanently installed in the opening of the dash or console of the covered "auto" normally used by the manufacturer for installation of a radio.

**5.** We will not pay for "loss" to a covered "auto" due to "diminution in value".

**C. Limit Of Insurance**

**1.** The most we will pay for "loss" in any one "accident" is the lesser of:

**a.** The actual cash value of the damaged or stolen property as of the time of the "loss"; or

**b.** The cost of repairing or replacing the damaged or stolen property with other property of like kind and quality.

**2.** An adjustment for depreciation and physical condition will be made in determining actual cash value in the event of a total "loss".

**3.** If a repair or replacement results in better than like kind or quality, we will not pay for the amount of the betterment.

**D. Deductible**

For each covered "auto", our obligation to pay for, repair, return or replace damaged or stolen property will be reduced by the applicable deductible shown in the Declarations. Any Comprehensive Coverage deductible shown in the Declarations does not apply to "loss" caused by fire or lightning.

**SECTION IV – BUSINESS AUTO CONDITIONS**

The following conditions apply in addition to the Common Policy Conditions:

**A. Loss Conditions**

**1. Appraisal For Physical Damage Loss**

If you and we disagree on the amount of "loss", either may demand an appraisal of the "loss". In this event, each party will select a competent appraiser. The two appraisers will select a competent and impartial umpire. The appraisers will state separately the actual cash value and amount of "loss". If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

**a.** Pay its chosen appraiser; and

**b.** Bear the other expenses of the appraisal and umpire equally.

If we submit to an appraisal, we will still retain our right to deny the claim.

**2. Duties In The Event Of Accident, Claim, Suit Or Loss**

We have no duty to provide coverage under this policy unless there has been full compliance with the following duties:

**a.** In the event of "accident", claim, "suit" or "loss", you must give us or our authorized representative prompt notice of the "accident" or "loss". Include:

**(1)** How, when and where the "accident" or "loss" occurred;

**(2)** The "insured's" name and address; and

**(3)** To the extent possible, the names and addresses of any injured persons and witnesses.

**b.** Additionally, you and any other involved "insured" must:

**(1)** Assume no obligation, make no payment or incur no expense without our consent, except at the "insured's" own cost.

**(2)** Immediately send us copies of any request, demand, order, notice, summons or legal paper received concerning the claim or "suit".

**(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit".

**(4)** Authorize us to obtain medical records or other pertinent information.

**Exhibit C**

**(5)** Submit to examination, at our expense, by physicians of our choice, as often as we reasonably require.

**c.** If there is "loss" to a covered "auto" or its equipment you must also do the following:

**(1)** Promptly notify the police if the covered "auto" or any of its equipment is stolen.

**(2)** Take all reasonable steps to protect the covered "auto" from further damage. Also keep a record of your expenses for consideration in the settlement of the claim.

**(3)** Permit us to inspect the covered "auto" and records proving the "loss" before its repair or disposition.

**(4)** Agree to examinations under oath at our request and give us a signed statement of your answers.

**3. Legal Action Against Us**

No one may bring a legal action against us under this Coverage Form until:

**a.** There has been full compliance with all the terms of this Coverage Form; and

**b.** Under Liability Coverage, we agree in writing that the "insured" has an obligation to pay or until the amount of that obligation has finally been determined by judgment after trial. No one has the right under this policy to bring us into an action to determine the "insured's" liability.

**4. Loss Payment – Physical Damage Coverages**

At our option we may:

**a.** Pay for, repair or replace damaged or stolen property;

**b.** Return the stolen property, at our expense. We will pay for any damage that results to the "auto" from the theft; or

**c.** Take all or any part of the damaged or stolen property at an agreed or appraised value.

If we pay for the "loss", our payment will include the applicable sales tax for the damaged or stolen property.

**5. Transfer Of Rights Of Recovery Against Others To Us**

If any person or organization to or for whom we make payment under this Coverage Form has rights to recover damages from another, those rights are transferred to us. That person or organization must do everything necessary to secure our rights and must do nothing after "accident" or "loss" to impair them.

**B. General Conditions**

**1. Bankruptcy**

Bankruptcy or insolvency of the "insured" or the "insured's" estate will not relieve us of any obligations under this Coverage Form.

**2. Concealment, Misrepresentation Or Fraud**

This Coverage Form is void in any case of fraud by you at any time as it relates to this Coverage Form. It is also void if you or any other "insured", at any time, intentionally conceal or misrepresent a material fact concerning:

**a.** This Coverage Form;

**b.** The covered "auto";

**c.** Your interest in the covered "auto"; or

**d.** A claim under this Coverage Form.

**3. Liberalization**

If we revise this Coverage Form to provide more coverage without additional premium charge, your policy will automatically provide the additional coverage as of the day the revision is effective in your state.

**4. No Benefit To Bailee – Physical Damage Coverages**

We will not recognize any assignment or grant any coverage for the benefit of any person or organization holding, storing or transporting property for a fee regardless of any other provision of this Coverage Form.

**5. Other Insurance**

**a.** For any covered "auto" you own, this Coverage Form provides primary insurance. For any covered "auto" you don't own, the insurance provided by this Coverage Form is excess over any other collectible insurance. However, while a covered "auto" which is a "trailer" is connected to another vehicle, the Liability Coverage this Coverage Form provides for the "trailer" is:

**(1)** Excess while it is connected to a motor vehicle you do not own.

**(2)** Primary while it is connected to a covered "auto" you own.

**b.** For Hired Auto Physical Damage Coverage, any covered "auto" you lease, hire, rent or borrow is deemed to be a covered "auto" you own. However, any "auto" that is leased, hired, rented or borrowed with a driver is not a covered "auto".

**c.** Regardless of the provisions of Paragraph **a.** above, this Coverage Form's Liability Coverage is primary for any liability assumed under an "insured contract".

© ISO Properties, Inc., 2000
□

**Exhibit C**

**d.** When this Coverage Form and any other Coverage Form or policy covers on the same basis, either excess or primary, we will pay only our share. Our share is the proportion that the Limit of Insurance of our Coverage Form bears to the total of the limits of all the Coverage Forms and policies covering on the same basis.

**6. Premium Audit**

**a.** The estimated premium for this Coverage Form is based on the exposures you told us you would have when this policy began. We will compute the final premium due when we determine your actual exposures. The estimated total premium will be credited against the final premium due and the first Named Insured will be billed for the balance, if any. The due date for the final premium or retrospective premium is the date shown as the due date on the bill. If the estimated total premium exceeds the final premium due, the first Named Insured will get a refund.

**b.** If this policy is issued for more than one year, the premium for this Coverage Form will be computed annually based on our rates or premiums in effect at the beginning of each year of the policy.

**7. Policy Period, Coverage Territory**

Under this Coverage Form, we cover "accidents" and "losses" occurring:

**a.** During the policy period shown in the Declarations; and

**b.** Within the coverage territory.

The coverage territory is:

**a.** The United States of America;

**b.** The territories and possessions of the United States of America;

**c.** Puerto Rico;

**d.** Canada; and

**e.** Anywhere in the world if:

**(1)** A covered "auto" of the private passenger type is leased, hired, rented or borrowed without a driver for a period of 30 days or less; and

**(2)** The "insured's" responsibility to pay damages is determined in a "suit" on the merits, in the United States of America, the territories and possessions of the United States of America, Puerto Rico, or Canada or in a settlement we agree to.

We also cover "loss" to, or "accidents" involving, a covered "auto" while being transported between any of these places.

**8. Two Or More Coverage Forms Or Policies Issued By Us**

If this Coverage Form and any other Coverage Form or policy issued to you by us or any company affiliated with us apply to the same "accident", the aggregate maximum Limit of Insurance under all the Coverage Forms or policies shall not exceed the highest applicable Limit of Insurance under any one Coverage Form or policy. This condition does not apply to any Coverage Form or policy issued by us or an affiliated company specifically to apply as excess insurance over this Coverage Form.

**SECTION V – DEFINITIONS**

**A.** "Accident" includes continuous or repeated exposure to the same conditions resulting in "bodily injury" or "property damage".

**B.** "Auto" means a land motor vehicle, "trailer" or semitrailer designed for travel on public roads but does not include "mobile equipment".

**C.** "Bodily injury" means bodily injury, sickness or disease sustained by a person including death resulting from any of these.

**D.** "Covered pollution cost or expense" means any cost or expense arising out of:

**1.** Any request, demand, order or statutory or regulatory requirement; or

**2.** Any claim or "suit" by or on behalf of a governmental authority demanding

that the "insured" or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants".

"Covered pollution cost or expense" does not include any cost or expense arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

**a.** That are, or that are contained in any property that is:

**(1)** Being transported or towed by, handled, or handled for movement into, onto or from the covered "auto";

**(2)** Otherwise in the course of transit by or on behalf of the "insured";

**(3)** Being stored, disposed of, treated or processed in or upon the covered "auto";

**Exhibit C**

**b.** Before the "pollutants" or any property in which the "pollutants" are contained are moved from the place where they are accepted by the "insured" for movement into or onto the covered "auto"; or

**c.** After the "pollutants" or any property in which the "pollutants" are contained are moved from the covered "auto" to the place where they are finally delivered, disposed of or abandoned by the "insured".

Paragraph **a.** above does not apply to fuels, lubricants, fluids, exhaust gases or other similar "pollutants" that are needed for or result from the normal electrical, hydraulic or mechanical functioning of the covered "auto" or its parts, if:

**(1)** The "pollutants" escape, seep, migrate, or are discharged, dispersed or released directly from an "auto" part designed by its manufacturer to hold, store, receive or dispose of such "pollutants"; and

**(2)** The "bodily injury", "property damage" or "covered pollution cost or expense" does not arise out of the operation of any equipment listed in Paragraphs **6.b.** and **6.c.** of the definition of "mobile equipment".

Paragraphs **b.** and **c.** above do not apply to "accidents" that occur away from premises owned by or rented to an "insured" with respect to "pollutants" not in or upon a covered "auto" if:

**(1)** The "pollutants" or any property in which the "pollutants" are contained are upset, overturned or damaged as a result of the maintenance or use of a covered "auto"; and

**(2)** The discharge, dispersal, seepage, migration, release or escape of the "pollutants" is caused directly by such upset, overturn or damage.

**E.** "Diminution in value" means the actual or perceived loss in market value or resale value which results from a direct and accidental "loss".

**F.** "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

**G.** "Insured" means any person or organization qualifying as an insured in the Who Is An Insured provision of the applicable coverage. Except with respect to the Limit of Insurance, the coverage afforded applies separately to each insured who is seeking coverage or against whom a claim or "suit" is brought.

**H.** "Insured contract" means:

**1.** A lease of premises;

**2.** A sidetrack agreement;

**3.** Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

**4.** An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

**5.** That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another to pay for "bodily injury" or "property damage" to a third party or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement;

**6.** That part of any contract or agreement entered into, as part of your business, pertaining to the rental or lease, by you or any of your "employees", of any "auto". However, such contract or agreement shall not be considered an "insured contract" to the extent that it obligates you or any of your "employees" to pay for "property damage" to any "auto" rented or leased by you or any of your "employees".

An "insured contract" does not include that part of any contract or agreement:

**a.** That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, roadbeds, tunnel, underpass or crossing; or

**b.** That pertains to the loan, lease or rental of an "auto" to you or any of your "employees", if the "auto" is loaned, leased or rented with a driver; or

**c.** That holds a person or organization engaged in the business of transporting property by "auto" for hire harmless for your use of a covered "auto" over a route or territory that person or organization is authorized to serve by public authority.

**I.** "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

**J.** "Loss" means direct and accidental loss or damage.

**Exhibit C**

**K.** "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

**1.** Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

**2.** Vehicles maintained for use solely on or next to premises you own or rent;

**3.** Vehicles that travel on crawler treads;

**4.** Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

**a.** Power cranes, shovels, loaders, diggers or drills; or

**b.** Road construction or resurfacing equipment such as graders, scrapers or rollers.

**5.** Vehicles not described in Paragraphs **1., 2., 3.,** or **4.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

**a.** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

**b.** Cherry pickers and similar devices used to raise or lower workers.

**6.** Vehicles not described in Paragraphs **1., 2., 3.** or **4.** above maintained primarily for purposes other than the transportation of persons or cargo. However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

**a.** Equipment designed primarily for:

**(1)** Snow removal;

**(2)** Road maintenance, but not construction or resurfacing; or

**(3)** Street cleaning;

**b.** Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

**c.** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting or well servicing equipment.

**L.** "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**M.** "Property damage" means damage to or loss of use of tangible property.

**N.** "Suit" means a civil proceeding in which:

**1.** Damages because of "bodily injury" or "property damage"; or

**2.** A "covered pollution cost or expense",

to which this insurance applies, are alleged.

"Suit" includes:

**a.** An arbitration proceeding in which such damages or "covered pollution costs or expenses" are claimed and to which the "insured" must submit or does submit with our consent; or

**b.** Any other alternative dispute resolution proceeding in which such damages or "covered pollution costs or expenses" are claimed and to which the insured submits with our consent.

**O.** "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

**P.** "Trailer" includes semitrailer.

© ISO Properties, Inc., 2000

Exhibit C

IL 00 17 11 98

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

## A. Cancellation

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

## B. Changes

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

## C. Examination Of Your Books And Records

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

## D. Inspections And Surveys

1. We have the right to:

   a. Make inspections and surveys at any time;

   b. Give you reports on the conditions we find; and

   c. Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

   a. Are safe or healthful; or

   b. Comply with laws, regulations, codes or standards.

3. Paragraphs 1. and 2. of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph 2. of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

## E. Premiums

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

## F. Transfer Of Your Rights And Duties Under This Policy

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

 Copyright, Insurance Services Office, Inc., 1998 Exhibit C

INTERLINE
IL 00 21 04 98

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
### (Broad Form)

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS POLICY
COMMERCIAL AUTO COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
PROFESSIONAL LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
SPECIAL PROTECTIVE AND HIGHWAY LIABILITY POLICY NEW YORK DEPARTMENT OF
TRANSPORTATION
UNDERGROUND STORAGE TANK POLICY

**1.** The insurance does not apply:

**A.** Under any Liability Coverage, to "bodily injury" or "property damage":

**(1)** With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

**(2)** Resulting from the "hazardous properties" of "nuclear material" and with respect to which **(a)** any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or **(b)** the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

**B.** Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

**C.** Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material", if:

**(1)** The "nuclear material" **(a)** is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or **(b)** has been discharged or dispersed therefrom;

**(2)** The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "insured"; or

**(3)** The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion **(3)** applies only to "property damage" to such "nuclear facility" and any property threat.

**2.** As used in this endorsement:

"Hazardous properties" includes radioactive, toxic or explosive properties.

"Nuclear material" means "source material", "Special nuclear material" or "by-product material".

Copyright, Insurance Services Office, Inc., 1997

Exhibit C

"Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor".

"Waste" means any waste material **(a)** containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and **(b)** resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

"Nuclear facility" means:

    **(a)** Any "nuclear reactor";

    **(b)** Any equipment or device designed or used for **(1)** separating the isotopes of uranium or plutonium, **(2)** processing or utilizing "spent fuel", or **(3)** handling, processing or packaging "waste";

    **(c)** Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

    **(d)** Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

"Property damage" includes all forms of radioactive contamination of property.

 Copyright, Insurance Services Office, Inc., 1997

**Exhibit C**

CA R029 06 06

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# MINIMUM EARNED PREMIUM ENDORSEMENT

Item **6. Premium Audit** condition of section **IV - Business Auto Conditions**, subsection **B. General Conditions** of the **Business Auto Coverage Form** is replaced in its entirety by:

**6.   Premium Audit**

a.   We will compute all premium for this Coverage Part in accordance with our rules and rates.

b.   In the event this policy is issued on an adjustable basis, the estimated total premium for this Coverage Form is based upon the exposures you told us you would have when this policy began.  We will compute the final premium due when we determine the actual exposures.  The estimated total premium will be credited against the final premium due and the first Named Insured will be billed for the difference, if any.  However, the final premium due will never be less than the estimated total premium.

It is further agreed that section **A. Cancellation**, paragraph **5.** of the **Common Policy Conditions** form is replaced in its entirety by:

5.   If the policy is cancelled, we will send the first Named Insured any refund due for unearned premium.  If we cancel, the unearned premium will be calculated on a pro rata basis.  If the first Named Insured cancels, the refund will be ninety percent (90%) of the pro rata unearned premium; provided, however, that if the first Named Insured cancels, the earned premium will never be less than twenty-five percent (25%) of the total estimated premium.  The cancellation will be effective even if we have not made or offered a refund.

Exhibit C

COMMERCIAL AUTO
CA R024 05 12

# SERVICE OF PROCESS

Pursuant to any statute of any state, territory or district of the United States which makes provision therefore, we hereby designate the Commissioner, Superintendent or Director of Insurance or other officer or entity specified for that purpose in the statute, and his successor or successors in office, as its true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted in any court of competent jurisdiction by or on behalf of the insured or any beneficiary hereunder arising out of this contract of insurance.

Company hereby authorizes said officer or entity to forward such process or true copy thereof to:

The Republic Group
Attn:  General Counsel
P.O. Box 809076
Dallas, Texas 75380-9076

.

**Exhibit C**

# **EXHIBIT D**

IN THE CIRCUIT COURT, FOURTH
JUDICIAL CIRCUIT, IN AND FOR
DUVAL COUNTY, FLORIDA

CASE NO.: 2019-CA-004734

JACOB ROE,

      Plaintiff,

v.

JESSICA WARD, and NPC
INTERNATIONAL, INC., a foreign
corporation,

      Defendants.

_____/

## NOTICE OF BANKRUPTCY AND IMPOSITION OF AUTOMATIC STAY PURSUANT TO § 362(a) OF THE BANKRUPTCY CODE

COMES NOW, Defendant, NPC INTERNATIONAL, INC., by and through undersigned counsel, hereby files this Notice of Bankruptcy and Imposition of Automatic Stay Pursuant to 362(a) of the Bankruptcy Code and in support thereof, states as follows:

To this Honorable Court, the parties herein and their attorneys of record:

**PLEASE TAKE NOTICE** that on July 1, 2020 ("Petition Date"), Defendant, NPC INTERNATIONAL, INC. ("NPC") filed a Voluntary Petition ("Petition) under Chapter 11 of Title 11, United States Code, 11 U.S.C. § 101, et. Seq. ("The Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of Texas in the matter captioned *NPC International, Inc., Case No. 20-33353* ("Bankruptcy Action"). A true and correct copy of the face page of the Petition is attached hereto as Exhibit A and incorporated by

**Exhibit D**

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 6th day of July 2020, a true and correct copy of

the foregoing was filed with the Clerk of Duval County by using the Florida Courts e-Filing

Portal, which will send an automatic e-mail message to the parties registered with the e-

Filing Portal system.

COLE, SCOTT & KISSANE, P.A.
*Counsel for Defendants, JESSICA WARD, and
NPC INTERNATIONAL, INC.,*
Cole, Scott & Kissane Building
4686 Sunbeam Road
Jacksonville, Florida 32257
Telephone (904) 672-4046
Facsimile (904) 672-4050
Primary e-mail: sami.achem@csklegal.com
Secondary e-mail: victoria.merritt@csklegal.com
Alternate e-mail:
jennifer.nicholson@csklegal.com


By:  s/ Sami R. Achem, Jr.
SAMI R. ACHEM
Florida Bar No.:  93892
VICTORIA M. MERRITT
Florida Bar No.: 1008201

**Exhibit D**

**Fill in this information to identify the case:**

United States Bankruptcy Court for the <u>Southern District of Texas</u>

Case number (*if known*): _____ Chapter <u>11</u>

☐   Check if this is an amended filing

## Official Form 201

# Voluntary Petition for Non-Individuals Filing for Bankruptcy

04/20

If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write the debtor's name and the case number (if known).  For more information, a separate document, *Instructions for Bankruptcy Forms for Non-Individuals*, is available.

| | | |
|---|---|---|
| **1.** | **Debtor's name** | NPC International, Inc. |

| | | |
|---|---|---|
| **2.** | **All other names debtor used in the last 8 years** | N/A |
| | Include any assumed names, trade names, and *doing business as* names | |

| | | |
|---|---|---|
| **3.** | **Debtor's federal Employer Identification Number (EIN)** | 48-0817298 |

**4.   Debtor's address**

| Principal place of business | | | Mailing address, if different from principal place of business | | |
|---|---|---|---|---|---|
| 4200 | W. 115th Street Suite 200 | | | | |
| Number | Street | | Number | Street | |
| | | | P.O. Box | | |
| Leawood | Kansas | 66211 | | | |
| City | State | ZIP Code | City | State | ZIP Code |
| | | | **Location of principal assets, if different from principal place of business** | | |
| Johnson | | | | | |
| County | | | Number | Street | |
| | | | City | State | ZIP Code |

| | | |
|---|---|---|
| **5.** | **Debtor's website (URL)** | https://www.npcinternational.com/ |

| | | |
|---|---|---|
| **6.** | **Type of debtor** | ☒ Corporation (including Limited Liability Company (LLC) and Limited Liability Partnership (LLP))<br>☐ Partnership (excluding LLP) |

Official Form 201          Voluntary Petition for Non-Individuals Filing for Bankruptcy          Page 1



**Exhibit D**