IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

ENTERED
10/30/2020

|  |  |  |
|---|---|---|
| In re | § | Chapter 11 |
|  | § |  |
| NPC INTERNATIONAL, INC., | § | Case No. 20–33353 (DRJ) |
| *et al.*, | § |  |
| Debtors.[1] | § | (Jointly Administered) |
|  | § | Re: Docket No. 629 |

ORDER (I) APPROVING PROPOSED DISCLOSURE STATEMENT;
(II) ESTABLISHING SOLICITATION AND VOTING PROCEDURES;
(III) SCHEDULING CONFIRMATION HEARING; (IV) ESTABLISHING NOTICE
AND OBJECTION PROCEDURES FOR CONFIRMATION OF THE PROPOSED
PLAN; AND (V) APPROVING NOTICE AND OBJECTION PROCEDURES FOR THE
ASSUMPTION OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

Upon the Motion, dated September 16, 2020 (the "**Motion**"),[2] of NPC

International, Inc. and its debtor affiliates, as debtors and debtors in possession (collectively, the

"**Debtors**"), for an order pursuant to sections 1125, 1126, 1128, 1145, and 105 of title 11 of the

United States Code (the "**Bankruptcy Code**"), Rules 2002, 3001, 3003, 3016, 3017, 3018, 3020,

and 9006 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), Rules 2002-

1 and 3016-1 of the Local Bankruptcy Rules of the United States Bankruptcy Court for the

Southern District of Texas (the "**Local Rules**") and the Procedures for Complex Chapter 11 Cases

in the Southern District of Texas (effective as of June 10, 2019, the "**Complex Chapter 11**

**Procedures**"), the Debtors request entry of an order:

    i.    approving the proposed *Disclosure Statement for the First Amended Joint
Chapter 11 Plan of NPC International, Inc. and Its Affiliated Debtors* (Docket

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are NPC International, Inc. (7298); NPC Restaurant Holdings I LLC (0595); NPC Restaurant Holdings II LLC (0595); NPC Holdings, Inc. (6451); NPC International Holdings, LLC; (8234); NPC Restaurant Holdings, LLC (9045); NPC Operating Company B, Inc. (6498); and NPC Quality Burgers, Inc. (6457).  The Debtors' corporate headquarters and service address is 4200 W. 115th Street, Suite 200, Leawood, KS 66211.

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion.

No. 922) (the "**Proposed Disclosure Statement**") as containing adequate information pursuant to section 1125 of the Bankruptcy Code;

ii.   scheduling a hearing (the "**Confirmation Hearing**") to consider confirmation of the proposed *First Amended Joint Chapter 11 Plan of NPC International, Inc. and Its Affiliated Debtors* (Docket No. 921) (the "**Plan**");

iii.   approving the solicitation procedures for the Plan;

iv.   approving the confirmation procedures for the Plan, all as more fully described in the Motion; and

v.   granting related relief;

all as more fully set forth in the motion; and this Court having jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. § 1334; and consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided to (i) the U.S. Trustee, (ii) Kelley Drye & Warren LLP, 101 Park Avenue, New York, New York 10178 (Attn:  Jason Adams, Esq. (jadams@kelleydrye.com), and Maeghan McLoughlin, Esq. (mmcloughlin@kelleydrye.com), counsel to the Official Committee of Unsecured Creditors, (iii) Gibson, Dunn & Crutcher LLP, 200 Park Avenue, New York, NY 10166 (Attn: Scott J. Greenberg and Michael J. Cohen) and Jackson Walker L.L.P., 1401 McKinney, Suite 1900, Houston, TX 77010 (Attn: Bruce J. Ruzinsky), counsel to the Ad Hoc Priority/1L Group, (iv) Milbank LLP, 55 Hudson Yards, New York, NY 10001 (Attn: Matthew Brod), counsel to the Second Lien Ad Hoc Group; (v) Paul, Weiss, Rifkind, Wharton & Garrison LLP, 1285 Avenue of the Americas, New York, NY 10019 (Attn: Austin Witt), counsel to the Prepetition Priority/1L Agents, (vi) Pryor Cashman LLP, 7 Times Square, New York, NY 10036 (Attn: Seth Lieberman), counsel to the Prepetition 2L Agent, (vii) McDermott Will & Emery LLP, 2501 North Harwood Street Suite 1900, Dallas, TX 75201-1664 (Attn: Charles R. Gibbs), counsel to the Pizza Hut Franchisor, (ix) Cleary Gottlieb Steen &

2

Hamilton LLP, One Liberty Plaza, New York, NY 10006 (<u>Attn</u>: Sean A. O'Neal), counsel to the Wendy's Franchisor, (x) the Office of the United States Attorney, 1000 Louisiana Street, Suite 2300, Houston, TX 77002, (xi) the Internal Revenue Service, (xii) the registered and beneficial holders of Interests (as defined in the Plan) in the Debtors, (xiii) any other known holders of Claims against the Debtors, and (xv) all parties that have requested notice in these chapter 11 cases pursuant to Bankruptcy Rule 2002 (collectively, the "**Notice Parties**"); and it appearing that no other or further notice need be provided; and a hearing having been held to consider the relief requested in the Motion (the "**Disclosure Statement Hearing**"); and the Court having found and determined that the relief sought in the Motion is in the best interests of the Debtors, their estates and creditors, and all parties in interest and that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor,

**IT IS FOUND AND DETERMINED THAT:**

**Notice of the Disclosure Statement Hearing and Disclosure Statement Objection Deadline**

A. The procedures described in the Motion pursuant to which the Debtors provided notice to parties of the time, date, and place of the Disclosure Statement Hearing and the Disclosure Statement Objection Deadline, including the form and content of the Disclosure Statement Notice, provided due, proper, and adequate notice, comport with due process, and comply with Bankruptcy Rules 2002 and 3017 and Local Rules 2002-1.  No further notice is required.

B. The following dates and deadlines are hereby established (subject to modifications as necessary) with respect to the Proposed Disclosure Statement, solicitation of the Plan, voting on the Plan, rights offering, and confirmation of the Plan:

3

| PROPOSED SOLICITATION AND CONFIRMATION TIMETABLE | |
|---|---|
| Disclosure Statement Objection Deadline | October 14, 2020 at 4:00 p.m. (Prevailing Central Time) |
| Disclosure Statement Hearing | October 30, 2020 at 3:00 p.m. (Prevailing Central Time) |
| Voting Record Date | October 27, 2020 |
| Mailing Deadline for Confirmation Hearing Notice and Solicitation Materials | Four (4) business days following entry of the Proposed Order |
| Plan Supplement Deadline | December 4, 2020 |
| Rule 3018(a) Motion Deadline | December 7, 2020 |
| Voting Deadline | December 17, 2020 at 11:59 p.m. (Prevailing Central Time) |
| Plan Objection Deadline | December 17, 2020 at 11:59 p.m. (Prevailing Central Time) |
| Ballot Certification Deadline | December 19, 2020 |
| Deadline to File Confirmation Brief and Reply to Plan Objection(s) | December 19, 2020 |
| Confirmation Hearing | December 21, 2020 at 2:00 p.m. (Prevailing Central Time) |

**The Disclosure Statement**

C.  The Proposed Disclosure Statement contains adequate information within the meaning of section 1125 of the Bankruptcy Code and complies with Bankruptcy Rule 3016(c).  No further information is necessary.

**Balloting and Voting Procedures**

D.  The procedures set forth in this Order for the solicitation and tabulation of votes to accept or reject the Plan provide for a fair and equitable voting process and are consistent with section 1126 of the Bankruptcy Code and Bankruptcy Rules 3017 and 3018.

**Ballots**

E.  The ballots substantially in the forms annexed hereto as **Exhibits 2-4** (collectively, the "**Ballots**"), including all voting instructions provided therein, are consistent with Official Bankruptcy Form No. B 314, address the particular needs of these chapter 11

4

cases, and provide adequate information and instructions for each party entitled to vote to accept or reject the Plan.  No further information or instructions are necessary.

**Parties Entitled to Vote**

F.  Pursuant to the Plan, holders of Claims in Class 4 (First Lien Secured Claims), Class 5 (Second Lien Secured Claims), and Class 6 (General Unsecured Claims) are impaired and are entitled to receive distributions under the Plan.  Accordingly, holders of Allowed Claims in such Classes are entitled to vote on account of such Claims (to the extent set forth herein).

**Parties Not Entitled to Vote**

G.  Pursuant to the Plan, holders of Claims or Interests in Class 1 (Other Secured Claims), Class 2 (Other Priority Claims), Class 3 (Priority Term Loan Secured Claims), Class 7 (Intercompany Claims), and Class 10 (Intercompany Interests) are Unimpaired and, accordingly, pursuant to section 1126(f) of the Bankruptcy Code, are conclusively presumed to accept the Plan and are not entitled to vote on account of such Claims and Interests.

H.  Pursuant to the Plan, holders of Claims or Interests in Class 8 (Subordinated Claims) and Class 9 (Existing Equity Interests) are Impaired and will receive no recovery and, accordingly, pursuant to section 1126(g) of the Bankruptcy Code, are conclusively deemed to reject the Plan and are not entitled to vote on account of such Claims and Interests.

**Notice of Non-Voting Status**

I.  The Notice of Non-Voting Status, substantially in the form attached hereto as **Exhibit 5**, complies with the Bankruptcy Code, applicable Bankruptcy Rules, and applicable Local Rules and Complex Chapter 11 Procedures and, together with the Confirmation Hearing

Notice, provides adequate notice to holders of Claims or Interests in Class 1 (Other Secured Claims), Class 2 (Other Priority Claims), Class 3 (Priority Term Loan Secured Claims), Class 7 (Intercompany Claims), Class 8 (Subordinated Claims), Class 9 (Existing Equity Interests), and Class 10 (Intercompany Interests) of their non-voting status.   No further notice is necessary.

**Solicitation**

J.   The proposed distribution and contents of the Solicitation Packages comply with Bankruptcy Rules 2002 and 3017 and constitute sufficient notice to all interested parties of the Record Date, Voting Deadline, Plan Objection Deadline, Confirmation Hearing, and other related matters.

K.   The period proposed by the Debtors in this Order during which the Debtors will solicit votes to accept the Plan is a reasonable and sufficient period of time for holders of Claims in the Voting Classes to make an informed decision regarding whether to accept or reject the Plan and timely return Ballots evidencing such decision.

L.   The procedures set forth in the Motion for tabulating Ballots are fair and appropriate.

**Notice of Confirmation Hearing and Plan Objection Deadline**

M. The procedures set forth in the Motion regarding notice to all parties of the Confirmation Hearing and the Plan Objection Deadline, including the form and content of the Confirmation Hearing Notice, provide due, proper, and adequate notice, comport with due process and comply with Bankruptcy Rules 2002, 3017 and 3020.   No further notice is required.

**Approval of Notices to Contract and Lease Counterparties**

N.  The procedures set forth in the Motion regarding notice to all parties of the assumption of the applicable Debtors' executory contracts and unexpired leases, including the form and content of the Confirmation Hearing Notice, provide due, proper, and adequate notice, comport with due process and comply with Bankruptcy Rules 2002, 3017 and 3020. No further notice is required.

O.  All other notices to be provided pursuant to the procedures set forth in the Motion are good and sufficient notice to all parties in interest of all matters pertinent hereto and of all matters pertinent to the Confirmation Hearing.  No further notice is required.

P.  The legal and factual bases set forth in the Motion establish just and sufficient cause to grant the relief requested therein.

**IT IS HEREBY ORDERED THAT:**

1. The Motion is granted as set forth herein.

2. The Disclosure Statement contains adequate information in accordance with section 1125 of the Bankruptcy Code and is APPROVED.

3. The Disclosure Statement (including all applicable exhibits thereto) provides sufficient notice of the proposed injunction, exculpation, and release provisions contained in Sections 10.5, 10.6, 10.7, 10.8, and 10.9 of the Plan, in accordance with Bankruptcy Rule 3016(c).

4. The form and manner of service of the Disclosure Statement Notice complies with all applicable Bankruptcy Rules and Local Rules and no further notice is necessary.

WEIL:\97662622\9\65961.0004

5.      All objections, if any, to the Disclosure Statement, the Motion, or any of the procedures or exhibits referenced therein that have not been withdrawn or resolved as provided for in the record of the Disclosure Statement Hearing are overruled.

**Solicitation Procedures**

***Parties Entitled to Vote***

6.      Pursuant to the Plan, the following classes are Impaired but entitled to receive distributions under the Plan and, thus, may vote to accept or reject the Plan, subject to certain exceptions discussed below (collectively, the "**Voting Classes**"):

| Class | Description |
|-------|-------------|
| Class 4 | First Lien Secured Claims |
| Class 5 | Second Lien Secured Claims |
| Class 6 | General Unsecured Claims |

7.      A creditor that holds a Claim in a Voting Class is nonetheless not entitled to vote to the extent that:

(a)      as of the Voting Record Date (as defined below), the outstanding amount of such creditor's Claim is zero ($0.00);

(a)      as of the Voting Record Date, such creditor's Claim has been disallowed, expunged, disqualified or suspended;

(b)      such creditor has not timely filed a proof of claim in accordance with the Bar Date Order as of the Voting Record Date and the Debtors have not scheduled such creditor's Claim or scheduled such creditor's claim in an undetermined amount or as contingent, unliquidated, or disputed; or

(c)      such creditor's Claim is subject to an objection or request for estimation filed on or before November 19, 2020 subject to the procedures set forth below.

8.      Pursuant to the Plan, the Unimpaired Classes are conclusively presumed to accept the Plan and, accordingly, are not entitled to vote on the Plan.

8

9.      Holders of Subordinated Claims and Existing Equity Interests are expected to receive no recovery under the Plan.  Such holders are deemed to reject the Plan and are not entitled to vote on the plan.

10.      Holders of Claims or Interests in the following classes constitute the Non-Voting Classes:

| Class | Description | Impairment | Acceptance / Rejection |
|---|---|---|---|
| Class 1 | Other Secured Claims | Unimpaired | Presumed to Accept |
| Class 2 | Other Priority Claims | Unimpaired | Presumed to Accept |
| Class 3 | Priority Term Loan Secured Claims | Unimpaired | Presumed to Accept |
| Class 7 | Intercompany Claims | Unimpaired | Presumed to Accept |
| Class 8 | Subordinated Claims | Impaired | Deemed to Reject |
| Class 9 | Existing Equity Interests | Impaired | Deemed to Reject |
| Class 10 | Intercompany Interests | Unimpaired | Presumed to Accept |

**The Voting Record Date**

11.      The Voting Record Date shall be set as October 27, 2020.  Only holders of Claims in Class 4 (First Lien Secured Claims), Class 5 (Second Lien Secured Claims), and Class 6 (General Unsecured Claims), as of the Voting Record Date, who are otherwise eligible to vote shall be entitled to vote to accept or reject the Plan.

12.      The record holders of Claims shall be determined, as of the Voting Record Date, based upon the records of the Debtors and the Voting Agent.  Accordingly, any notice of claim transfer received by the record holder of the Debtors' debt securities, the Debtors, the Voting Agent, or other similarly situated registrar after the Voting Record Date shall not be recognized for purposes of voting or receipt of the Plan confirmation materials.

13.     With respect to transfers of Claims filed pursuant to Bankruptcy Rule 3001(e), the transferee shall be entitled to receive a Solicitation Package and, if the holder of such Claim is otherwise entitled to vote with respect to the Plan, cast a Ballot on account of such Claim only if:  (i) all actions necessary to transfer such Claim are completed by the Voting Record Date or (ii) the transferee files by the Voting Record Date (a) all documentation required by Bankruptcy Rule 3001(e) to evidence the transfer and (b) a sworn statement of the transferor supporting the validity of the transfer.  In the event a Claim is transferred after the Voting Record Date, the transferee of such Claim shall be bound by any vote or election on the Plan made by the holder of such Claim as of the Voting Record Date.

### Temporary Allowance / Disallowance of Claims

14.     **First Lien Secured Claims and First Lien Deficiency Claims**.  The amount of each First Lien Secured Claim in Class 4 (First Lien Secured Claims) and First Lien Deficiency Claim in Class 6 (General Unsecured Claims), respectively, for voting purposes only will be established by reference to the list of participant lenders to the First Lien Credit Agreement and those participant lenders' corresponding amounts as of the Voting Record Date as reflected on the loan register maintained by the Prepetition 1L Agent, which shall be provided by the Prepetition 1L Agent to the Voting Agent no later than one (1) Business Day following the Voting Record Date.

15.     **Second Lien Claims**.  The amount of each Second Lien Secured Claim in Class 5 (Second Lien Secured Claims) and Second Lien Deficiency Claim in Class 6 (General Unsecured Claims), respectively, for voting purposes only will be established by reference to the list of participant lenders to the Second Lien Credit Agreement and those participant lenders' corresponding amounts as of the Voting Record Date as reflected on the loan register maintained

10

by the Prepetition 2L Agent, which shall be provided by the Prepetition 2L Agent to the Voting Agent no later than one (1) Business Day following the Voting Record Date.

16. **General Unsecured Claims**. The amount of each General Unsecured Claim, for voting purposes, only (with the exception of the First Lien Deficiency Claims and Second Lien Claims) shall be established pursuant to the following hierarchy:

(a)     If a Claim has been estimated or otherwise Allowed for voting purposes by order of this Court, such Claim is temporarily Allowed in the amount so estimated or Allowed by this Court;

(b)     If (a) does not apply, but the Claim has been estimated or otherwise Allowed for voting purposes pursuant to a stipulation, settlement, or other agreement reached between the Debtors and the holder of the Claim (whether such stipulation, settlement, or agreement is filed or not), such Claim is temporarily Allowed in the amount set forth in the stipulation, settlement, or other agreement;

(c)     If neither (a) nor (b) applies, unless otherwise disputed in accordance with paragraph 17, then in the liquidated, non-contingent, and undisputed amount set forth on a proof of claim timely filed in accordance with the Bar Date Order as of the Voting Record Date, provided that if the amount set forth on a timely-submitted proof of claim is wholly unliquidated, contingent, and/or disputed, then the Claim shall be temporarily allowed for voting purposes in the amount of $1.00;

(d)     If neither (a), (b), nor (c) apply, then in the liquidated, non-contingent, and undisputed amount set forth on the Debtors' Schedules, provided that if the Claim appearing on the Debtors' Schedules is unliquidated, contingent, disputed, or in a $0.00 amount, and the Claims Bar Date has not expired, then the Claim shall be temporarily allowed for voting purposes in the amount of $1.00, and if the Claims Bar Date has expired, then the Claim shall be disallowed for voting purposes.

(e)     For purposes of the numerosity requirement of section 1126(c) of the Bankruptcy Code separate Claims held by a single creditor in a particular Class shall be aggregated as if such creditor held one Claim against the Debtor in such Class, and the votes related to such Claims shall be treated as a single vote to accept or reject the Plan; and

(f)     Creditors who have filed or purchased duplicate Claims within the same Voting Class shall be provided with only one Solicitation Package and one

ballot for voting a single Claim in such Class, regardless of whether the Debtors have objected to such duplicate Claims.

(g)     If a proof of claim has been amended by a later proof of claim that is filed on or prior to the Voting Record Date, the later filed amending claim shall be entitled to vote in a manner consistent with these tabulation rules, and the earlier filed claim shall be disallowed for voting purposes, regardless of whether the Debtors have objected to such amended claim.  Except as otherwise ordered by the Court, any amendments to proofs of claim after the Voting Record Date shall not be considered for purposes of these tabulation rules.

17.     If the Debtors have filed an objection to, or a request for estimation of a Claim on or before **November 19, 2020**, such Claim shall be temporarily disallowed for voting purposes, except as ordered by this Court before the Voting Deadline; provided, however, that, if the Debtors' objection seeks only to reclassify or reduce the Allowed amount of such Claim, then such Claim is temporarily Allowed for voting purposes in the reduced amount and/or as reclassified (as applicable), except as may be ordered by this Court prior to or concurrent with entry of an order confirming the Plan.

18.     If any creditor seeks to challenge the allowance of its Claim for voting purposes, such creditor shall file with this Court a motion for an order pursuant to Bankruptcy Rule 3018(a) temporarily allowing such Claim for voting purposes in a different amount (a "**Rule 3018(a) Motion**").  Any Rule 3018(a) Motion must be filed with the Court and served on the Notice Parties so as to be actually received not later than **4:00 p.m. (Prevailing Central Time) on December 7, 2020**. Any Rule 3018 Motion, if necessary, will be heard at the Confirmation Hearing.

19.     Upon the filing of any such motion, such creditor's Ballot shall be counted in accordance with the below-designated guidelines, unless temporarily Allowed in a different amount by an order of this Court entered prior to or concurrent with entry of an order confirming the Plan.

**Solicitation Packages**

20.     The Solicitation Packages are APPROVED.

21.     The Debtors shall mail the Solicitation Packages no later than four (4) business days following the date of entry of the this Order (the "**Solicitation Date**") to the U.S. Trustee, and holders of Claims in Voting Classes entitled to vote on the Plan as of the Voting Record Date, as required by Bankruptcy Rule 3017(d).

22.     Solicitation Packages shall contain copies of:

(a)     this Order (without attachments);

(b)     a USB flash drive containing the Disclosure Statement, which shall include the Plan as an attachment (except as provided below);

(c)     if the recipient is entitled to vote on the Plan, a Ballot, customized for such holder in the form described below, and a postage-prepaid return envelope;

(d)     for Class 5 (Second Lien Secured Claims) and Class 6 (General Unsecured Claims) Ballots, an Accredited Investor Questionnaire (as defined below);

(e)     the letter from the Creditors' Committee regarding the Plan; and

(f)     the Confirmation Hearing Notice.

23.     The questionnaire for holders of General Unsecured Claims to declare whether or not they are accredited investors (as defined in Rule 50(a) of Regulation D under the Securities Act) (the "**Accredited Investor Questionnaire**") shall be finalized prior to the Solicitation Date.

24.     If the recipient is a holder of a Claim or Interest in a Non-Voting Class and, therefore, not entitled to vote on the Plan (as set forth herein), then they will be served the Confirmation Hearing Notice and the applicable Notice of Non-Voting Status as defined and described more fully in the Motion only.

25.     Any creditor for which service by USB poses a hardship may request an additional copy of the Disclosure Statement (and attachments) in paper format by contacting Epiq by email at NPCvote@epiqglobal.com, or by telephone at (855) 917-3563 (Toll-Free) or (503) 520-4403 (if calling from outside the U.S. or Canada).  Upon receipt of a telephonic or written request, the Debtors will provide such creditor with a paper copy of the Plan and the Disclosure Statement at no cost to the creditor within five (5) days thereafter.  Alternatively, holders in Class 4, 5, and 6 may submit their Ballots via Epiq's online E-Balloting Portal by visiting https://dm.epiq11.com/npc, clicking on the "Submit E-Ballot" section of the website, and following the instructions set forth on the E-Ballot.

26.     With respect to addresses from which Solicitation Packages are returned as undeliverable by the United States Postal Service, the Debtors are excused from mailing Solicitation Packages or any other materials related to voting or confirmation of the Plan to those entities listed at such addresses unless the Debtors are provided with accurate addresses for such entities before the Voting Deadline, and failure to mail Solicitation Packages or any other materials related to voting or confirmation of the Plan to such entities will not constitute inadequate notice of the Confirmation Hearing or the Voting Deadline and shall not constitute a violation of Bankruptcy Rule 3017.

### Notice of Non-Voting Status

27.     The Notice of Non-Voting Status is APPROVED.

28.     To the holders of Claims in Class 1 (Other Secured Claims), Class 2 (Other Priority Claims), Class 3 (Priority Term Loan Secured Claims), Class 7 (Intercompany Claims), and Class 10 (Intercompany Interests), the Debtors shall mail a Confirmation Hearing Notice and

a Notice of Non-Voting Status, substantially in the form attached hereto as **Exhibit 4**, in lieu of a Solicitation Package.

29.     The Debtors shall also mail the Confirmation Hearing Notice and Notice of Non-Voting Status to the holders of Claims or Interests in Class 8 (Subordinated Claims) and Class 9 (Existing Equity Interests), in lieu of the Solicitation Package.

**Ballots**

30.     The Ballots are APPROVED.

31.     The Voting Deadline shall be **December 17, 2020 at 11:59 p.m. (CT).**

32.     All Ballots must be properly executed, completed, and delivered to the Voting Agent (i) by first-class mail in the return envelope provided with each Ballot; (ii) by overnight courier; (iii) by hand delivery, or (iv) via Epiq's online balloting portal, so that they are actually received by the Voting Agent no later than the Voting Deadline.

33.     The Debtors will distribute Ballots to each of the (i) holders of First Lien Secured Claims in Class 4, (ii) holders of Second Lien Secured Claims in Class 5, and (iii) General Unsecured Claims in Class 6.

**Tabulation Procedures**

34.     The following tabulation procedures are approved.

(a)     Whenever a holder of a Claim casts more than one Ballot voting the same Claim before the Voting Deadline, the last valid Ballot received on or before the Voting Deadline shall be deemed to reflect such creditor's intent, and thus, to supersede any prior Ballot. Following the Voting Deadline, no Ballot may be changed or revoked.

(b)     Whenever a holder of a Claim casts a Ballot that is properly completed, executed and timely returned to the Voting Agent, but does not indicate either an acceptance or rejection of the Plan, the Ballot will not be counted.

(c)     Whenever a holder of a Claim casts a Ballot that is properly completed, executed, and timely returned to the Voting Agent, but indicates both an acceptance and a rejection of the Plan, the Ballot will not be counted.

15

(d)     A holder of a Claim shall be deemed to have voted the full amount of its Claim in each Class and shall not be entitled to split its vote within a particular Class or between more than one Debtor.  Any creditor's Ballot that partially accepts and partially rejects the Plan, will not be counted.

(e)     Whenever a holder of a Claim casts multiple Ballots received by the Voting Agent on the same day, but which are voted inconsistently, such Ballots will not be counted.

(f)     A holder of claims in more than one Class must use separate Ballots for each class of claims, except that Debtors will provide one Ballot to (i) a Holder of a First Lien Secured Claim and First Lien Deficiency Claim for the purpose of voting the Holder's Claim in both Class 4 and Class 6; and (ii) a Holder of a Second Lien Secured Claim and Second Lien Deficiency Claim for the purpose of voting the Holder's Claim in both Class 5 and 6.

(g)     The following Ballots shall not be counted:

   i.      Any Ballot received after the Voting Deadline, unless the Debtors shall have granted an extension of the Voting Deadline in writing with respect to such Ballot;

   ii.     Any Ballot that is illegible or contains insufficient information to permit the identification of the voting party;

   iii.    Any Ballot cast by a person or entity that does not hold a Claim in a Class that is entitled to vote to accept or reject the Plan;

   iv.     Any Ballot cast by a person or entity that is not entitled to vote, even if such individual or entity holds a Claim in a Voting Class;

   v.      Any unsigned Ballot, provided that Ballots submitted by E-Ballot will be deemed to contain a legal, valid signature;

   vi.     Any Ballot which the Court determines, after notice and a hearing, that such vote was not solicited or procured in good faith or in accordance with the provisions of the Bankruptcy Code; or

   vii.    Any Ballot transmitted to the Voting Agent by e-mail or facsimile or other means not specifically approved herein.

35.     Each holder of Claims that votes to accept or reject the Plan is deemed to have voted the full amount of its Claim therefor.

36.     To assist in the solicitation process, the Voting Agent may, but is not obligated to, contact parties that submit incomplete or otherwise deficient ballots to make a

reasonable effort to cure such deficiencies. Unless waived, any defects or irregularities in connection with deliveries of Ballots must be cured within such time as the Debtors (or the Court) determines. Neither the Debtors nor any other person will be under any duty to provide notification of defects or irregularities with respect to deliveries of Ballots nor will any of them incur any liabilities for failure to provide such notification. Delivery of such Ballots will not be deemed to have been made until such irregularities have been cured or waived. Ballots previously furnished (and as to which any irregularities have not theretofore been cured or waived) will be invalidated.

37.    The Debtors and/or their Voting Agent, as applicable, are authorized to determine all questions as to the validity, form, eligibility (including time of receipt), acceptance, and revocation or withdrawals of Ballots, which determination will be final and binding.

38.    The Debtors are authorized to reject any and all Ballots submitted by any of their respective creditors not in proper form, the acceptance of which would, in the opinion of the Debtors or their counsel, as applicable, be unlawful.

39.    If no votes to accept or reject the Plan are received with respect to a Class whose votes have been solicited under the Plan (other than a Class that is deemed eliminated under the Plan), such Class shall be deemed to have voted to accept the Plan.

40.    The Debtors are further authorized to reserve their respective rights to waive any defects or irregularities or conditions of delivery as to any particular Ballot by any of their Claim holders. The interpretation (including the Ballot and the respective instructions thereto) by the applicable Debtor in accordance with the foregoing sentence will be final and binding on all parties.

41.    The Debtors or their Voting Agent shall file the Ballot Certification on or before **December 19, 2020**.

**The Confirmation Hearing**

42.     The Confirmation Hearing shall be held on **December 21, 2020 at 2:00 p.m. (Prevailing Central Time)**; *provided*, *however*, that the Confirmation Hearing may be adjourned or continued from time to time by the Court or the Debtors, subject to the applicable terms of the Restructuring Support Agreement, without further notice other than adjournments announced in open Court or as indicated in any notice of agenda of matters scheduled for hearing filed by the Debtors with the Court.

**Objection Procedures**

43.     The deadline to object or respond to confirmation of the Plan shall be **December 17, 2020 at 11:59 p.m. (Prevailing Central Time)** (the "**Plan Objection Deadline**").

44.     Objections and responses, if any, to confirmation of the Plan, must:  (i) be in writing; (ii) conform to the Bankruptcy Rules and the Local Rules; (iii) set forth the name of the objecting party, the nature and amount of Claims or Interests held or asserted by the objecting party against the Debtors' estates or property; the basis for the objection, and the specific grounds therefor; and (iv) be filed with the Court, together with proof of service.

45.     Registered users of this Court's case filing system must electronically file their objections and responses on or before the Plan Objection Deadline.  All other parties in interest must file their objections and responses in writing with the United States Bankruptcy Court Clerk's Office, 515 Rusk Avenue, Courtroom 404, 4th Floor, Houston, Texas 77002, on or before the Plan Objection Deadline.

46.     Pursuant to Bankruptcy Rule 3020(b), if no objection is timely filed, this Court may determine that the Plan has been proposed in good faith and not by any means forbidden by law without receiving evidence on such issues.

18

47.     Objections to confirmation of the Plan that are not timely filed, served, and actually received in the manner set forth above shall not be considered and shall be deemed overruled.

48.     Notwithstanding anything herein to the contrary, the entry of this Order and the relief granted hereby is without prejudice to the rights of any of the Debtors' sureties, including, Arch Insurance Company (each a "**Surety**" and, collectively, "**Sureties**") to object to the Plan, including, without limitation, all objections to any of the exculpation, release, injunction, exclusion, and discharge provisions contained in Article X of the Plan, and the right to object to an involuntary substitution of principal under any surety bond, which are reserved and preserved in all respects.

49.     Nothing in the Disclosure Statement, the Plan, this Order, or any other document, agreement or instrument contemplated by any of the foregoing, shall be deemed to alter, limit, or modify the terms and provisions of, or rights of any of the Sureties under, any indemnity agreements, surety bonds or related agreements, or any letters of credit relating thereto.

50.     The Debtors and any parties in interest are authorized to file and serve replies or an omnibus reply to any such objections along with a brief in support of confirmation of the Plan (the "**Confirmation Brief**") either separately or in a single, consolidated document on or before **December 19, 2020**.

**Plan Supplement**

51.     The Debtors are authorized to file the Plan Supplement with the Bankruptcy Court no later than seven (7) calendar days before the Voting Deadline (the "**Plan Supplement Filing Deadline**").

WEIL:\97662622\9\65961.0004

**Confirmation Hearing Notice**

52.     The Confirmation Hearing Notice substantially in the form attached hereto as **Exhibit 1** is APPROVED.

53.     The form and proposed manner of service of the Confirmation Hearing Notice comply with all applicable Bankruptcy Rules and Local Rules, and no further notice is necessary.

54.     The Debtors are authorized, in their discretion, to give supplemental publication notice of the Confirmation Hearing, no later than twenty-eight (28) days prior to the Confirmation Hearing, in the national edition of the *New York Times*.

**General**

55.     The Debtors are authorized to make non-substantive changes to the Disclosure Statement, the Plan, the Ballots, and related documents without further order of the Court including, without limitation, changes to correct typographical and grammatical errors and to make conforming changes among the Disclosure Statement, the Plan, and any other materials in the Solicitation Packages prior to mailing.

56.     The Debtors have provided adequate notice of the deadline to file complaints pursuant to Bankruptcy Rule 4007(c), and any such complaints must be filed within thirty (30) days of the date on which this Order is entered.

57.     The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Motion.

58.     This Court shall retain exclusive jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, and/or enforcement of this Order.

WEIL:\97662622\9\65961.0004

**Signed:  October 30, 2020.**

_____
**DAVID R. JONES**
**UNITED STATES BANKRUPTCY JUDGE**

21

## EXHIBIT 1

**Confirmation Hearing Notice**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

|  |  |  |
|---|---|---|
| In re | § | Chapter 11 |
|  | § |  |
| NPC INTERNATIONAL, INC., | § | Case No. 20–33353 (DRJ) |
| *et al.*, | § |  |
| Debtors.[1] | § | (Jointly Administered) |
|  | § |  |

NOTICE OF ORDER (I) APPROVING
PROPOSED DISCLOSURE STATEMENT; (II) ESTABLISHING
SOLICITATION AND VOTING PROCEDURES; (III) SCHEDULING
CONFIRMATION HEARING; (IV) ESTABLISHING NOTICE AND
OBJECTION PROCEDURES FOR CONFIRMATION OF THE PROPOSED
PLAN; AND (V) APPROVING NOTICE AND OBJECTION PROCEDURES
FOR THE ASSUMPTION OF EXECUTORY CONTRACTS AND UNEXPIRED
LEASES TO ALL PARTIES IN INTEREST IN THE CHAPTER 11 CASES OF:

| NPC International, Inc. | Case No. 20-33353 |
|---|---|
| NPC Restaurant Holdings I LLC | Case No. 20-33354 |
| NPC Restaurant Holdings II LLC | Case No. 20-33355 |
| NPC Holdings, Inc. | Case No. 20-33356 |
| NPC International Holdings, LLC | Case No. 20-33357 |
| NPC Restaurant Holdings, LLC | Case No. 20-33358 |
| NPC Operating Company B, Inc. | Case No. 20-33359 |
| NPC Quality Burgers, Inc. | Case No. 20-33360 |

**PLEASE TAKE NOTICE THAT**:

       1.     *Approval of Disclosure Statement.*  On October 30, 2020 the United States Bankruptcy Court for the Southern District of Texas (the "**Bankruptcy Court**") held a hearing (the "**Disclosure Statement Hearing**") at which it approved the *Disclosure Statement for the First Amended Joint Chapter 11 Plan of NPC International, Inc. and Its Affiliated Debtors*, filed on October 29, 2020 (Docket No. 922) (as may be further amended, the "**Disclosure Statement**")[2] of

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are NPC International, Inc. (7298); NPC Restaurant Holdings I LLC (0595); NPC Restaurant Holdings II LLC (0595); NPC Holdings, Inc. (6451); NPC International Holdings, LLC (8234); NPC Restaurant Holdings, LLC (9045); NPC Operating Company B, Inc. (6498); and NPC Quality Burgers, Inc. (6457). The Debtors' corporate headquarters and service address is 4200 W. 115th Street, Suite 200, Leawood, KS 66211.

[2]  Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Disclosure Statement or the Plan, as applicable.

NPC International, Inc. and its affiliated debtors in the above-captioned chapter 11 cases (collectively, the "**Debtors**"), and thereafter entered an order (the "**Disclosure Statement Order**") with respect thereto. The Disclosure Statement Order, among other things, authorizes the Debtors to solicit votes to accept the *First Amended Joint Chapter 11 Plan of NPC International, Inc. and Its Affiliated Debtors*, filed on October 29, 2020 (Docket No. 921) (as may be further amended, the "**Plan**").

2.      *Confirmation Hearing.*   A hearing to consider confirmation of the Plan (the "**Confirmation Hearing**") has been scheduled for **December 21, 2020 at 2:00 p.m. (Prevailing Central Time)**, before the Honorable David R. Jones, United States Bankruptcy Judge, in the Bankruptcy Court. The Confirmation Hearing may be adjourned or continued from time to time by the Bankruptcy Court without further notice other than by a Court announcement providing for such adjournment or continuation on its agenda. The Plan may be modified, if necessary, prior to, during, or as a result of the Confirmation Hearing.

3.      *Voting Record Date.*   Holders of Claims in Class 4 (First Lien Secured Claims), Class 5 (Second Lien Secured Claims), and Class 6 (General Unsecured Claims), as of the Voting Record Date, who are otherwise eligible to vote as of October 27, 2020 (the "**Voting Record Date**") shall be entitled to vote to accept or reject the Plan.

4.      *Voting Deadline.*   All votes to accept or reject the Plan must be **actually received** by the Debtors' voting and tabulation agent, Epiq Corporate Restructuring, LLC, at: (1) if by first class mail, NPC International – Ballot Processing, c/o Epiq Corporate Restructuring, LLC, P.O. Box 4422, Beaverton, OR 97076-4422, (2) if by overnight courier or overnight mail, NPC International – Ballot Processing c/o Epiq Corporate Restructuring, LLC, 10300 SW Allen Boulevard, Beaverton, OR 97005, or (3) if electronically, through Epiq's E-Balloting Portal by no later than **December 17, 2020 at 11:59 p.m. (Prevailing Central Time)** (the "**Voting Deadline**"). Any failure to follow the voting instructions included with your Ballot may disqualify your Ballot and your vote.

5.      *Parties in Interest Not Entitled to Vote.*   Holders of Other Secured Claims, Other Priority Claims, Priority Term Loan Secured Claims, Intercompany Claims, and Intercompany Interests, and holders of Subordinated Claims and Existing Equity Interests are not entitled to vote on the Plan and will not receive a Ballot. If you disagree with the amount set forth by the Debtors for your Claim in the Schedules or if you have filed a proof of claim and disagree with either (a) the Debtors' objection to your Claim and believe that you should be entitled to vote on the Plan or (b) the Debtors' classification or request for estimation of your Claim and believe that you should be entitled to vote on the Plan in a different amount or class, then you must serve on the parties identified in paragraph 8 below and file with the Bankruptcy Court a motion (a "**Rule 3018(a) Motion**") for an order pursuant to Rule 3018(a) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") temporarily allowing your Claim in a different amount or in a different class for purposes of voting to accept or reject the Plan. All Rule 3018(a) Motions must be filed on or before **December 7, 2020 at 4:00 p.m. (Prevailing Center Time)**. Rule 3018(a) Motions that are not timely filed and served in the manner set forth above shall not be considered. As to any creditor filing a Rule 3018(a) Motion, such creditor's Ballot will be counted as provided in the Order except as may be otherwise ordered by the Bankruptcy Court. Creditors may contact Epiq in writing at (1) if by first class mail, NPC International – Ballot Processing, c/o Epiq Corporate Restructuring, LLC, P.O. Box 4422, Beaverton, OR 97076-4422, or (2) if by overnight

courier or overnight mail, NPC International – Ballot Processing c/o Epiq Corporate Restructuring, LLC, 10300 SW Allen Boulevard, Beaverton, OR 97005, or by telephone at (855) 917-3563 (Toll-Free) or (503) 520-4403 (if calling from outside the U.S. or Canada) to receive an appropriate Ballot for any Claim for which a Proof of Claim has been timely filed and a Rule 3018(a) Motion has been granted.

6.      ***Objections to Confirmation.***   The deadline to object or respond to confirmation of the Plan is **December 17, 2020 at 11:59 p.m. (Prevailing Central Time)** (the **"Plan Objection Deadline"**).

7.      ***Form and Manner of Objections to Confirmation.***   Objections and responses, if any, to confirmation of the Plan must:  (i) be in writing; (ii) conform to the Bankruptcy Rules and the Local Rules; (iii) set forth the name of the objecting party and the nature and amount of Claims or Interests held or asserted by the objecting party against the Debtors' estates or property; (iv) provide the basis for the objection and the specific grounds therefor; and (v) be filed with the Bankruptcy Court (with proof of service) via ECF or by mailing to the Bankruptcy Court at United States Bankruptcy Court Clerk's Office, 515 Rusk Avenue, Courtroom 404, 4th Floor, Houston, Texas 77002, no later than the Plan Objection Deadline.

8.      **IF AN OBJECTION TO THE PLAN IS NOT FILED AND SERVED STRICTLY AS PRESCRIBED HEREIN, THE OBJECTING PARTY MAY BE BARRED FROM OBJECTING TO THE PLAN OR THE ADEQUACY THEREOF AND MAY NOT BE HEARD AT THE CONFIRMATION HEARING.**

***Additional Information.***   Any party in interest wishing to obtain information about the solicitation procedures or copies of the Disclosure Statement, the Plan, or other Solicitation Materials should contact the Debtors' voting and tabulation agent, Epiq Corporate Resturcturing, LLC by email at NPCvote@epiqglobal.com, or by telephone at (855) 917-3563 (Toll-Free) or (503) 520-4403 (if calling from outside the U.S. or Canada).  Interested parties may also review the Disclosure Statement and the Plan free of charge at https://dm.epiq11.com/npc.  In addition, the Disclosure Statement and Plan are on file with the Bankruptcy Court and may be reviewed for a fee by accessing the Bankruptcy Court's website: www.deb.uscourts.gov. Note that a PACER password and login are needed to access documents on the Bankruptcy Court's website. A PACER password can be obtained at: www.pacer.psc.uscourts.gov.

**NOTICE REGARDING CERTAIN RELEASE,**
**EXCULPATION, AND INJUNCTION PROVISIONS IN PLAN**

**If you (i) vote to accept the Plan, (ii) do not vote either to accept or to reject the Plan and do not opt out of granting the releases set forth in the Plan, (iii) vote to reject the Plan but do not opt out of granting the releases set forth in the Plan, or (iv) were given notice of the opportunity to opt out of granting the releases set forth in the Plan but did not opt out, you shall be deemed to have consented to the releases contained in Section 10 of the Plan.**

10.5    *Injunction Against Interference With Plan.*

Except as otherwise provided in this Plan or in the Confirmation Order, upon the entry of the Confirmation Order, all holders of Claims and Interests and all other parties in interest, along with their

3

respective present and former affiliates, employees, agents, officers, directors, and principals, shall be enjoined from taking any action to interfere with the implementation or the occurrence of the Effective Date.

### 10.6    *Plan Injunction.*

(a)    Except as otherwise provided in this Plan or in the Confirmation Order, from and after the Effective Date, all Persons who have held, hold, or may hold Claims or Interests, and other parties in interest, along with their respective present or former employees, agents, officers, directors, principals, and affiliates, are, with respect to any such Claim or Interest, permanently enjoined after the entry of the Confirmation Order from:  (i) commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding of any kind (including any proceeding in a judicial, arbitral, administrative, or other forum) against or affecting, directly or indirectly, a Debtor, a Reorganized Debtor, or the Wind Down Co, or the property of any of the foregoing, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to, any of the foregoing Persons mentioned in this subsection (i) or any property of any such transferee or successor; (ii) enforcing, levying, attaching (including any prejudgment attachment), collecting, or otherwise recovering in any manner or by any means, whether directly or indirectly, any judgment, award, decree, or order against a Debtor, a Reorganized Debtor, or the Wind Down Co or its property, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to, any of the foregoing Persons mentioned in this subsection (ii) or any property of any such transferee or successor; (iii) creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against a Debtor, a Reorganized Debtor, or the Wind Down Co or any of its property, or any direct or indirect transferee of any property of, or successor in interest to, any of the foregoing Persons mentioned in this subsection (iii) or any property of any such transferee or successor; (iv) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of this Plan to the full extent permitted by applicable law; and (v) commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of this Plan; *provided*, that nothing contained in this Plan shall preclude such Persons who have held, hold, or may hold Claims against, or Interests in, a Debtor, a Reorganized Debtor, or the Wind Down Co from exercising their respective rights and remedies, or obtaining benefits, pursuant to and consistent with the terms of this Plan.

(b)    By accepting distributions pursuant to this Plan, each holder of an Allowed Claim or Interest shall be deemed to have affirmatively and specifically consented to be bound by this Plan, including the injunctions set forth in Section 10.6 of this Plan and all transactions, documents, and agreements contemplated hereunder that govern the property that is the subject of such distributions.

### 10.7    *Releases.*

(a)    **Release by Debtors.  As of the Effective Date, except for the rights and remedies that remain in effect from and after the Effective Date to enforce this Plan and the obligations contemplated by the Definitive Documents and the documents in the Plan Supplement or as otherwise provided in any order of the Bankruptcy Court, on and after the Effective Date, the Released Parties will be deemed conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged, by and on behalf of the Debtors, the Wind Down Co, the Reorganized Debtors, and the Estates, in each case on behalf of themselves and their respective successors, assigns, and representatives and any and all other Persons that may purport to assert any Cause of Action derivatively, by or through the foregoing Persons, from any and all Claims and Causes of Action (including any derivative claims, asserted or assertable on behalf of the Debtors, the Wind Down Co, the Reorganized Debtors, or their Estates), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, contract, tort, or otherwise, by statute, violations of federal or state securities laws or**

otherwise that the Debtors, the Wind Down Co, the Reorganized Debtors, the Estates, or any of their respective affiliates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other Person, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Chapter 11 Cases, the Restructuring, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in this Plan, the business or contractual arrangements between any Debtor and any Released Party, the restructuring of Claims and Interests before or during the Chapter 11 Cases, the negotiation, formulation, preparation, execution, filing, and/or consummation of this Plan, the Restructuring Support Agreement, the Disclosure Statement, New QB First Lien Term Loan (if applicable), New QB First Lien Term Loan Credit Documents (if applicable), the New Shareholders Agreement, the New Warrant Agreement, the PH Sale Process, the Wendy's Sale Process, the WholeCo Sale Process, the Sale Transaction (if applicable), the Sale Documents (if applicable), the Rights Offering, the Definitive Documents and the documents in the Plan Supplement or related agreements, instruments, or other documents relating thereto, or the solicitation of votes with respect to the Plan, in all cases, based upon any act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date (such Claims and Causes of Action, the "*Debtor Claims*"). Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (i) any post-Effective Date obligations of any party or entity under this Plan, any transaction thereunder, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement this Plan or (ii) any individual from any claim related to an act or omission that is determined by a court of competent jurisdiction to have constituted a criminal act, intentional fraud, gross negligence or willful misconduct. Notwithstanding anything else herein, the holders of First Lien Secured Claims shall not pursue, prosecute or assert any of the Debtor Claims, but shall not waive any entitlement, on account of any First Lien Deficiency Claims, to any recovery resulting from of any party's pursuit, prosecution, resolution, settlement or adjudication of any Debtor Claims retained by any entity under or pursuant to the Plan (including any Retained Causes of Action), if any.

(b)     **Releases by Holders of Claims or Interests**.  As of the Effective Date, except as set forth in this Plan and except for the rights that remain in effect from and after the Effective Date to enforce this Plan, the Definitive Documents, and the documents in the Plan Supplement and the obligations contemplated by the Restructuring, on and after the Plan Effective Date, the Released Parties will be deemed conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged, to the maximum extent permitted by law, by the Releasing Parties, in each case from any and all Claims and Causes of Action whatsoever (including any derivative claims, asserted or assertable on behalf of the Debtors, the Wind Down Co, the Reorganized Debtors, or their Estates; such Claims or Causes of Action, the "*Additional Debtor Claims*"), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, existing or hereinafter arising, whether in law or equity, whether sounding in tort or contract, whether arising under federal or state statutory or common law, or any other applicable international, foreign, or domestic law, rule, statute, regulation, treaty, right, duty, requirement or otherwise, that such holders or their estates, affiliates, heirs, executors, administrators, successors, assigns, managers, accountants, attorneys, representatives, consultants, agents, and any other Persons claiming under or through them would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other Person, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Wind Down Co, the Reorganized Debtors, or their Estates, the Chapter 11 Cases, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in this Plan, the business or contractual arrangements or interactions between any Debtor and any Released Party, the Restructuring, the

WEIL:\97662622\9\65961.0004

restructuring of any Claim or Interest before or during the Chapter 11 Cases, the negotiation, formulation, preparation, execution, filing, and/or consummation of this Plan, the Restructuring Support Agreement, the Disclosure Statement, New QB First Lien Term Loan (if applicable), New QB First Lien Term Loan Credit Documents (if applicable), the New Shareholders Agreement, the New Warrant Agreement, the PH Sale Process, the Wendy's Sale Process, the WholeCo Sale Process, the Sale Transaction (if applicable), the Sale Documents (if applicable), the Rights Offering, the Definitive Documents and the documents in the Plan Supplement, and related agreements, instruments, and other documents, and the negotiation, formulation, preparation, or implementation thereof, the solicitation of votes with respect to this Plan, or any other act or omission related to any of the foregoing.  Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (i) any post-Effective Date obligations of any party or entity under the Plan, any transaction thereunder, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement this Plan or (ii) any individual from any claim related to an act or omission that is determined by a court of competent jurisdiction to have constituted a criminal act, intentional fraud, gross negligence or willful misconduct.  Notwithstanding anything else herein, the holders of First Lien Secured Claims shall not pursue, prosecute or assert any of the Additional Debtor Claims, but shall not waive any entitlement, on account of any First Lien Deficiency Claims, to any recovery resulting from of any party's pursuit, prosecution, resolution, settlement or adjudication of any Additional Debtor Claims retained by any entity under or pursuant to the Plan (including any Retained Causes of Action), if any.

### 10.8    *Exculpation.*

To the fullest extent permitted by applicable law, no Exculpated Party will have or incur, and each Exculpated Party will be released and exculpated from, any Claim or Cause of Action in connection with or arising out of the administration of the Chapter 11 Cases; the negotiation, formulation, preparation, execution, filing, and/or consummation of the New QB First Lien Term Loan (if applicable), the New QB First Lien Term Loan Credit Documents (if applicable), the PH Sale Process, the Wendy's Sale Process, the WholeCo Sale Process, the Sale Documents (if applicable), the Management Incentive Plan, the Disclosure Statement, the Restructuring Support Agreement, the Restructuring, the Sale Transaction (if applicable), the Rights Offering, the New Shareholders Agreement, the New Warrant Agreement, and this Plan (including the Definitive Documents and the documents in the Plan Supplement), or the solicitation of votes for, or confirmation of, this Plan; the funding of this Plan and the transactions contemplated thereby; the Confirmation Order; the occurrence of the Effective Date; the administration of this Plan or the property to be distributed under this Plan; the issuance of Securities under or in connection with this Plan; the purchase, sale, or rescission of the purchase or sale of any Security of the Debtors or the Reorganized Debtors; or the transactions in furtherance of any of the foregoing; other than Claims or Causes of Action arising out of or related to any act or omission of an Exculpated Party that is a criminal act or constitutes intentional fraud, gross negligence, or willful misconduct as determined by a Final Order, but in all respects such Persons will be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to this Plan.  The Exculpated Parties have acted in compliance with the applicable provisions of the Bankruptcy Code with regard to the solicitation and distribution of securities pursuant to the Plan and, therefore, are not, and on account of such distributions will not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of this Plan or such distributions made pursuant to this Plan, including the issuance of Securities thereunder.  The exculpation will be in addition to, and not in limitation of, all other releases, indemnities, exculpations, and any other applicable law or rules protecting such Exculpated Parties from liability.

**10.9** *Injunction Related to Releases and Exculpation.*

The Confirmation Order shall permanently enjoin the commencement or prosecution by any Person or entity, whether directly, derivatively, or otherwise, of any Claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, losses, or liabilities released pursuant to this Plan, including the claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, and liabilities released or exculpated in this Plan or the Confirmation Order.

**Relevant Definitions Related to Release and Exculpation Provisions:**

*"Exculpated Parties"* means, collectively, the Exculpated Fiduciaries and the Section 1125(e) Parties.

*"Exculpated Fiduciaries"* means, collectively, and in each case in their capacities as such during the Chapter 11 Cases (i) the Debtors, (ii) the Reorganized Debtors, (iii) the Creditors' Committee and each of its members in their capacity as such, and (iv) with respect to each of the foregoing Persons in clauses (i) through (iii), such Persons' Related Persons and their respective heirs, executors, estates, and nominees, in each case in their capacity as such.

*"Section 1125(e) Parties"* means, collectively, (i) the Consenting Creditors, (ii) each of the Prepetition Priority/1L Agents (solely in their capacity as such), and (iii) with respect to each of the foregoing Persons in clauses (i) and (ii), such Persons' Related Persons, and their respective heirs, executors, estates, and nominees, each in their capacity as such.

*"Related Parties"* means with respect to a Person, that Person's current and former Affiliates, and such Persons' and their current and former Affiliates' predecessors, successors, assigns, and current and former subsidiaries, officers, directors, principals, equity holders (regardless of whether such interests are held directly or indirectly), members, partners (including both general and limited partners), managers, employees, agents, advisory board members, management companies, managed accounts or funds, affiliated investment funds or investment vehicles, and Representatives.

*"Released Parties"* means, collectively, each in their respective capacities as such, (i) the Debtors, (ii) the Reorganized Debtors, (iii) the Consenting Creditors, (iv) the Sponsors, (v) Prepetition Priority/1L Agents, and (vi) with respect to each of the foregoing Persons, in clauses (i) through (v), all Related Parties. Notwithstanding the foregoing, any Person that opts out of the releases set forth in Section 10.7(b) of this Plan shall not be deemed a Released Party thereunder.

*"Releasing Parties"* means, collectively, each in their respective capacities as such, (i) the holders of all Claims or Interests that vote to accept this Plan, (ii) the holders of all Claims or Interests whose vote to accept or reject this Plan is solicited but that do not vote either to accept or to reject this Plan, (iii) the holders of all Claims or Interests that vote, or are deemed, to reject this Plan but do not opt out of granting the releases set forth herein, (iv) the holders of all Claims and Interests that were given notice of the opportunity to opt out of granting the releases set forth herein but did not opt out, and (v) the Released Parties.

WEIL:\97662622\9\65961.0004

**YOU ARE ADVISED AND ENCOURAGED TO CAREFULLY REVIEW AND CONSIDER THE PLAN, INCLUDING THE RELEASE, EXCULPATION AND INJUNCTION PROVISIONS, AS YOUR RIGHTS MIGHT BE AFFECTED.**

### Notice of Assumption of Executory Contracts and Unexpired Leases of Debtors and Related Procedures

9.     Please take notice that, in accordance with Section 8.1 and 8.2 of the Plan and sections 365 and 1123 of the Bankruptcy Code, all executory contracts and unexpired leases to which any of the Debtors are parties shall be deemed rejected, unless such contract or lease: (i) was previously assumed, assumed and assigned, or rejected by the Debtors, pursuant to a Final Order of the Bankruptcy Court, (ii) previously expired or terminated pursuant to its own terms or by agreement of the parties thereto, (iii) is the subject of a motion to assume filed by the Debtors on or before the Confirmation Date, (iv) is identified in Section 5.6(a) of the Plan; (v) is identified in Section 8.6 of the Plan; (vi) is reinstated in Section 4.1 of the Plan; or (vii) is identified for assumption on the Schedule of Assumed Contracts included in the Plan Supplement.

10.     Please take further notice that, in accordance with Section 8.1 of the Plan, the Debtors reserve the right to amend the Schedule of Assumed Contracts and/or the Cure Notice, subject to the reasonable consent of the Requisite Creditors, to add or remove any executory contract or unexpired lease; *provided* any affected counterparty whose executory contract or unexpired lease is newly added to the Schedule of Assumed Contracts will have until the earlier of (i) seven (7) days from filing and service of the amended Schedule of Assumed Contracts and/or Cure Notice and (ii) the Confirmation Hearing to object to assumption and/or proposed Cure Amount; *provided*, *further* that the Debtors may amend the Schedule of Assumed Contracts to add or delete any executory contracts or unexpired leases at any time prior to the entry of the Confirmation Order to the extent agreed with the relevant counterparties, subject to the reasonable consent of the Requisite Creditors, and entry of an order of the Bankruptcy Court.

11.     Pursuant to Section 8.2 of the Plan, the Debtors shall serve a notice of intent to assume or assume and assign the contract or lease and, where applicable, settle Cure Amounts (if any), which shall be subject to the consent of the Requisite Creditors on parties to executory contracts and unexpired leases no later than ten (10) days before the deadline to object to confirmation of the Plan.  Any objection by a counterparty to an executory contract or unexpired lease to the proposed assumption, assumption and assignment, or related Cure Amount must be filed, served, and actually received by the Debtors within ten (10) days of the service of the assumption notice, or such shorter period as agreed to by the parties or authorized by the Bankruptcy Court.

12.     Please take notice that, pursuant to Section 8.2 of the Plan, the Bankruptcy Court will determine any Assumption Dispute (as defined in the Plan) by entry of an order; *provided*, that the Debtors, the Reorganized Debtors, or Plan Administrator, as applicable, may settle any dispute regarding the Cure Amount or the nature thereof without any further notice to any party or any action, order, or approval of the Bankruptcy Court; *provided, further*, that where an Assumption Dispute relates solely to the applicable Cure Amount, the Debtors may assume and/or assume and assign the applicable executory contract or unexpired lease prior to the resolution of such Assumption Dispute, provided that the Debtors, the Reorganized Debtors, or Wind Down Co, as applicable, reserve Cash in an amount sufficient to pay the full amount of the

WEIL:\97662622\9\65961.0004

required cure payment as reasonably asserted by the non-Debtor party to such executory contract or unexpired lease (or such smaller amount as may be fixed or estimated by the Bankruptcy Court or otherwise agreed to by such non-Debtor party and the applicable Reorganized Debtor or Wind Down Co, as applicable).

13.     Notwithstanding anything to the contrary herein or in the Plan, in the event of a Sale Transaction, the terms of the Bidding Procedures, Sale Documents, and any other related orders of the Bankruptcy Court, to the extent inconsistent with the terms of this notice or the Plan, shall govern the assumption of executory contracts and unexpired leases with respect to the Sale Transaction; *provided* that if the Bidding Procedures, Sale Documents, and any other related order of the Bankruptcy Court do not provide for the assumption of an executory contract or unexpired lease, the terms of the Plan will govern the assumption or rejection of such executory contract on unexpired lease.

**UNLESS AN OBJECTION IS TIMELY SERVED AND FILED IN ACCORDANCE WITH THIS CONFIRMATION HEARING NOTICE, IT MAY NOT BE CONSIDERED BY THE BANKRUPTCY COURT.**

14.     ***Deadline to File Complaints to Determine the Dischargeability of a Debt.*** Please take notice that the deadline to file complaints pursuant to Bankruptcy Rule 4007(c) is [November 30], 2020, a date that is thirty (30) days after the date on which the Disclosure Statement Order was entered.

*[Remainder of Page Left Intentionally Blank]*

WEIL:\97662622\9\65961.0004

15.    ***Plan Supplement.***  The Debtors will file and serve any supplement to the Plan on or before **December 4, 2020**.

Dated: [●], 2020

*/s/  [DRAFT]*

WEIL, GOTSHAL & MANGES LLP
Alfredo R. Pérez (15776275)
700 Louisiana Street, Suite 1700
Houston, Texas  77002
Telephone:   (713) 546-5000
Facsimile:    (713) 224-9511
Email:      Alfredo.Perez@weil.com

-and-

WEIL, GOTSHAL & MANGES LLP
Ray C. Schrock, P.C. (admitted *pro hac vice*)
Kevin Bostel (admitted *pro hac vice*)
Natasha Hwangpo (admitted *pro hac vice*)
767 Fifth Avenue
New York, New York 10153
Telephone:    (212) 310-8000
Facsimile:    (212) 310-8007
Email:      Ray.Schrock@weil.com
                 Kevin.Bostel@weil.com
                 Natasha.Hwangpo@weil.com

*Attorneys for Debtors and Debtors-In-Possession*

---

If you have questions about this Confirmation Hearing Notice, please contact Epiq Corporate Restructuring, LLC

**Telephone**: (855) 917-3563 (Toll-Free) or (503) 520-4403 (International)

**Email**: NPCvote@epiqglobal.com

**Website**: https://dm.epiq11.com/npc

---

WEIL:\97662622\9\65961.0004

## Exhibit 2

**Form of First Lien Secured Claims (Class 4) and
First Lien Deficiency Claims (Class 6) Ballot**

**No person has been authorized to give any information or advice, or to make any representation, other than what is included in the Disclosure Statement and other materials accompanying this Ballot.[1]**

**PLEASE NOTE THAT, EVEN IF YOU INTEND TO VOTE TO REJECT THE PLAN, YOU MUST STILL READ, COMPLETE, AND EXECUTE THIS ENTIRE BALLOT.**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

|  | § |  |
|---|---|---|
| In re | § | Chapter 11 |
|  | § |  |
| NPC INTERNATIONAL, INC., | § | Case No. 20–33353 (DRJ) |
| *et al.*, | § |  |
| Debtors.[2] | § | (Jointly Administered) |
|  | § |  |

## BALLOT FOR VOTING TO ACCEPT OR
## REJECT THE JOINT CHAPTER 11 PLAN OF
## <u>NPC INTERNATIONAL, INC AND ITS AFFILIATED DEBTORS</u>

### CLASS 4:  FIRST LIEN SECURED CLAIMS

### CLASS 6: GENERAL UNSECURED CLAIMS (FIRST LIEN DEFICIENCY CLAIM)

---

**<u>VOTING DEADLINE</u>: DECEMBER 17, 2020 AT 11:59 P.M.
(PREVAILING CENTRAL TIME) (THE "<u>VOTING DEADLINE</u>")**

**For your vote to be counted, this Ballot must be properly completed, signed, and returned so that it is <u>actually received</u> by the Voting Agent, Epiq Corporate Restructuring, LLC, by no later than December 17, 2020 at 11:59 p.m. (Prevailing Central Time), unless such time is extended in writing by the Debtors.  Please submit a Ballot with your vote in the envelope provided or by *<u>one</u>* of the following methods:**

---

[1]  All capitalized terms used but not defined herein or in the enclosed voting instructions have the meanings ascribed to them in the Plan, attached as **<u>Exhibit A</u>** to the Disclosure Statement.

[2]  The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are NPC International, Inc. (7298); NPC Restaurant Holdings I LLC (0595); NPC Restaurant Holdings II LLC (0595); NPC Holdings, Inc. (6451); NPC International Holdings, LLC (8234); NPC Restaurant Holdings, LLC (9045); NPC Operating Company B, Inc. (6498); and NPC Quality Burgers, Inc. (6457).  The Debtors' corporate headquarters and service address is 4200 W. 115th Street, Suite 200, Leawood, KS 66211.

WEIL:\97662622\9\65961.0004

**If Submitting Your Vote through the E-Balloting Portal**

**Epiq will accept Ballots if properly completed through the E-Balloting Portal. To submit your Ballot via the E-Balloting Portal, visit https://dm.epiq11.com/NPC, click on the "E-Ballot" section of Epiq's website for the Debtors and follow the instructions to submit your Ballot.**

**IMPORTANT NOTE: You will need the following information to retrieve and submit your customized electronic Ballot:**

**Unique E-Ballot ID#:_____**

**Epiq's E-Balloting Portal is the sole manner in which Ballots will be accepted via electronic or online transmission. Ballots submitted by facsimile, email or other means of electronic transmission will not be counted.**

**Each E-Ballot ID# is to be used solely for voting only those Claims described in your electronic Ballot. Please complete and submit an electronic Ballot for each E-Ballot ID# you receive, as applicable.**

**If your Ballot is not received by Epiq on or before the Voting Deadline, and such Voting Deadline is not extended by the Debtors as noted above, your vote will not be counted.**

**If by First Class Mail:**

**NPC International  - Ballot Processing**
**c/o Epiq Corporate Restructuring, LLC**
**P.O. Box 4422**
**Beaverton, OR 97076-4422**

**If by First Class Mail, Overnight Courier or Overnight Mail:**

**NPC International  - Ballot Processing**
**c/o Epiq Corporate Restructuring LLC**
**10300 SW Allen Boulevard**
**Beaverton, OR 97005**

**BALLOTS WILL <u>NOT</u> BE ACCEPTED BY TELECOPY, FACSIMILE, EMAIL, OR OTHER ELECTRONIC MEANS OF TRANSMISSION.**

NPC International, Inc. and its affiliated debtors in the above-captioned chapter 11 cases (collectively, the "**Debtors**") are soliciting votes with respect to the *First Amended Joint Chapter 11 Plan of NPC International, Inc. and Its Affiliated Debtors* (as may be amended,

WEIL:\97662622\9\65961.0004

modified or supplemented from time to time, the "**Plan**") (Docket No. 921).  The Plan is attached as **Exhibit A** to the *Disclosure Statement for the First Amended Joint Chapter 11 Plan of NPC International, Inc. and Its Affiliated Debtors*, filed on October 29, 2020 (Docket No. 922) (as may be further amended, the **"Disclosure Statement"**).

Please use this Ballot to cast your vote to accept or reject the Plan if you are, as of October 27, 2020 (the "**Voting Record Date**"), a holder of a claim against the Debtors arising under that certain First Lien Credit Agreement, dated as of April 20, 2017 (as amended, restated, amended and restated, modified or otherwise supplemented from time to time), by and among NPCI, as Parent Borrower, NPC QB and NPC Operating Company B, Inc., as Subsidiary Borrowers, NPC RH, as guarantor, the Prepetition 1L Agent, the Prepetition 1L Collateral Agent, and the First Lien Lenders, as in effect immediately prior to the Effective Date (the "**First Lien Credit Agreement**"), and a holder of First Lien Deficiency Claims (a "**Holder**").

The Disclosure Statement provides information to assist you in deciding whether to accept or reject the Plan.  If you do not have a Disclosure Statement, you may obtain a copy from Epiq Corporate Restructuring, LLC (the "**Voting Agent**") at no charge by accessing the Debtors' restructuring website at https://dm.epiq11.com/npc, by email at NPCvote@epiqglobal.com, or by telephone at 1-866-897-6433 (domestic toll-free) or 1-646-282-2500 (international).

If you have any questions on how to properly complete this Ballot, please contact the Voting Agent at 1-866-897-6433 (domestic toll-free) or 1-646-282-2500 (international).  Please be advised that the Voting Agent cannot provide legal advice.  You may wish to seek legal advice concerning the Plan and the classification and treatment of your Class 4 First Lien Secured Claim and Class 6 General Unsecured Claims under the Plan.

---

### IMPORTANT NOTICE REGARDING TREATMENT FOR CLASS 4

As described in more detail in the Disclosure Statement, except to the extent a holder of an Allowed First Lien Secured Claim agrees to less favorable treatment, each holder of an Allowed First Lien Secured Claim shall receive, on the Effective Date, on account of such Allowed First Lien Secured Claim, in full and final satisfaction of such Allowed Claim, its Pro Rata share of: (1) in the event of a Sale Transaction, the remaining Sale Proceeds after the Allowed Priority Term Loan Secured Claims are satisfied in full and the Wind Down Budget has been fully funded, or (2) in the event of a Reorganization Transaction, (a) PH Sale Proceeds and/or Wendy's Sale Proceeds, as applicable, not previously distributed pursuant to one or more orders of the Bankruptcy Court, (b) to the extent a Wendy's Standalone Event occurs, New QB First Lien Term Loans, (c) 100% of Reorganized Equity Interests, subject to dilution by the Rights Offering Shares, the Backstop Put Premium, and the MIP Equity, and certain New Warrants, and (d) Subscription Rights.

### IMPORTANT NOTICE REGARDING TREATMENT FOR CLASS 6

As described in more detail in the Disclosure Statement, if the Plan is confirmed and the Effective Date occurs, except to the extent that a holder of a General Unsecured Claim (*i.e.* for

---

3

purposes of this ballot, a First Lien Deficiency Claim) agrees to a less favorable treatment, on or as soon as reasonably practicable after the later of the Effective Date and the date on which such General Unsecured Claim becomes an Allowed Claim, each holder of an Allowed General Unsecured Claim shall receive, in full and final satisfaction of such Allowed Claim, such holder's Pro Rata share of:  (1) in the event of a Sale Transaction, the remaining Sale Proceeds after the Allowed Priority Term Loan Secured Claims, the Allowed First Lien Secured Claims, and the Allowed Second Lien Secured Claims are satisfied in full and the Wind Down Budget has been fully funded, or (2) in the event of a Reorganization Transaction, (a) in the event neither the PH Sale Transaction nor the Wendy's Sale Transaction is consummated, New Warrants to purchase Reorganized Equity Interests representing in the aggregate 12.5% of the total outstanding Reorganized Equity Interests issued pursuant to this Plan as of the Effective Date, or (b) in the event either the PH Sale Transaction or the Wendy's Sale Transaction is consummated, New Warrants to purchase Reorganized Equity Interests representing in the aggregate 18.0% of the total outstanding Reorganized Equity Interests issued pursuant to this Plan as of the Effective Date; *provided* that, to the extent considered necessary or advisable for the Reorganized Debtors to remain a private company, without being required to register under Section 12(g) of the Exchange Act as a result of the number of record holders of its outstanding securities, the Debtors may distribute to holders of Allowed General Unsecured Claims that declare under penalty of perjury that they are not accredited investors (as defined in Rule 501(a) of Regulation D under the Securities Act) Cash or other property in a reasonably equivalent amount to the discounted net present value of the New Warrants in accordance with the underlying enterprise valuation of the Reorganized Debtors (which aggregate Cash amount shall be subject to the consent of the Requisite Creditors); *provided*, *further*, that holders of Allowed First Lien Deficiency Claims (if any) shall be entitled to vote but, except as otherwise provided in this Plan, deemed to have waived the entitlement to receive the New Warrants.

**PLEASE READ THE DISCLOSURE STATEMENT AND PLAN FOR MORE DETAILS.**

The Plan can be confirmed by the United States Bankruptcy Court for the Southern District of Texas (the "**Bankruptcy Court**") and thereby made binding on you if it is accepted by the holders of (i) at least two-thirds in amount of the allowed Claims or Interests voted in each Impaired Class, and (ii) if the Impaired Class is a class of Claims, more than one-half in number of the allowed Claims voted in each Impaired Class, and if the Plan otherwise satisfies the applicable requirements of section 1129(a) under the Bankruptcy Code.

If the requisite acceptances are not obtained, the Bankruptcy Court may nonetheless confirm the Plan if it finds that the Plan (y) provides fair and equitable treatment to, and does not unfairly discriminate against, the Class or Classes rejecting the Plan and (z) otherwise satisfies the requirements of section 1129(b) of the Bankruptcy Code.  If the Plan is confirmed by the Bankruptcy Court, it will be binding on you whether or not you vote or if you vote to reject the Plan.  To have your vote counted, you must complete, sign, and return this Ballot to the Voting Agent by the Voting Deadline.

Your receipt of this Ballot does not indicate that your Claim(s) has been or will be Allowed.  This Ballot is solely for purposes of voting to accept or reject the Plan and not for the purpose of allowance or disallowance of, or distribution on account of, Class 4 First Lien Secured

Claims or Class 6 General Unsecured Claims.  You must provide all of the information requested by this Ballot.  Failure to do so may result in the disqualification of your vote.

## NOTICE REGARDING CERTAIN RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS IN PLAN

**If you (i) vote to accept the Plan, (ii) do not vote either to accept or to reject the Plan and do not opt out of granting the releases set forth in the Plan, (iii) vote to reject the Plan but do not opt out of granting the releases set forth in the Plan, or (iv) were given notice of the opportunity to opt out of granting the releases set forth in the Plan but did not opt out, you shall be deemed to have consented to the releases contained in Section 10 of the Plan.**

**10.5**    **_Injunction Against Interference With Plan._**

Except as otherwise provided in this Plan or in the Confirmation Order, upon the entry of the Confirmation Order, all holders of Claims and Interests and all other parties in interest, along with their respective present and former affiliates, employees, agents, officers, directors, and principals, shall be enjoined from taking any action to interfere with the implementation or the occurrence of the Effective Date.

**10.6**    **_Plan Injunction._**

(a)    Except as otherwise provided in this Plan or in the Confirmation Order, from and after the Effective Date, all Persons who have held, hold, or may hold Claims or Interests, and other parties in interest, along with their respective present or former employees, agents, officers, directors, principals, and affiliates, are, with respect to any such Claim or Interest, permanently enjoined after the entry of the Confirmation Order from:  (i) commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding of any kind (including any proceeding in a judicial, arbitral, administrative, or other forum) against or affecting, directly or indirectly, a Debtor, a Reorganized Debtor, or the Wind Down Co, or the property of any of the foregoing, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to, any of the foregoing Persons mentioned in this subsection (i) or any property of any such transferee or successor; (ii) enforcing, levying, attaching (including any prejudgment attachment), collecting, or otherwise recovering in any manner or by any means, whether directly or indirectly, any judgment, award, decree, or order against a Debtor, a Reorganized Debtor, or the Wind Down Co or its property, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to, any of the foregoing Persons mentioned in this subsection (ii) or any property of any such transferee or successor; (iii) creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against a Debtor, a Reorganized Debtor, or the Wind Down Co or any of its property, or any direct or indirect transferee of any property of, or successor in interest to, any of the foregoing Persons mentioned in this subsection (iii) or any property of any such transferee or successor; (iv) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of this Plan to the full extent permitted by applicable law; and (v) commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of this Plan; _provided_, that nothing contained in this Plan shall preclude such Persons who have held, hold, or may hold Claims against, or Interests in, a Debtor, a Reorganized Debtor, or the Wind Down Co from exercising their respective rights and remedies, or obtaining benefits, pursuant to and consistent with the terms of this Plan.

5

(b)     By accepting distributions pursuant to this Plan, each holder of an Allowed Claim or Interest shall be deemed to have affirmatively and specifically consented to be bound by this Plan, including the injunctions set forth in Section 10.6 of this Plan and all transactions, documents, and agreements contemplated hereunder that govern the property that is the subject of such distributions.

     *10.7*    *Releases.*

**(a)     Release by Debtors.  As of the Effective Date, except for the rights and remedies that remain in effect from and after the Effective Date to enforce this Plan and the obligations contemplated by the Definitive Documents and the documents in the Plan Supplement or as otherwise provided in any order of the Bankruptcy Court, on and after the Effective Date, the Released Parties will be deemed conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged, by and on behalf of the Debtors, the Wind Down Co, the Reorganized Debtors, and the Estates, in each case on behalf of themselves and their respective successors, assigns, and representatives and any and all other Persons that may purport to assert any Cause of Action derivatively, by or through the foregoing Persons, from any and all Claims and Causes of Action (including any derivative claims, asserted or assertable on behalf of the Debtors, the Wind Down Co, the Reorganized Debtors, or their Estates), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, contract, tort, or otherwise, by statute, violations of federal or state securities laws or otherwise that the Debtors, the Wind Down Co, the Reorganized Debtors, the Estates, or any of their respective affiliates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other Person, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Chapter 11 Cases, the Restructuring, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in this Plan, the business or contractual arrangements between any Debtor and any Released Party, the restructuring of Claims and Interests before or during the Chapter 11 Cases, the negotiation, formulation, preparation, execution, filing, and/or consummation of this Plan, the Restructuring Support Agreement, the Disclosure Statement, New QB First Lien Term Loan (if applicable), New QB First Lien Term Loan Credit Documents (if applicable), the New Shareholders Agreement, the New Warrant Agreement, the PH Sale Process, the Wendy's Sale Process, the WholeCo Sale Process, the Sale Transaction (if applicable), the Sale Documents (if applicable), the Rights Offering, the Definitive Documents and the documents in the Plan Supplement or related agreements, instruments, or other documents relating thereto, or the solicitation of votes with respect to the Plan, in all cases, based upon any act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date (such Claims and Causes of Action, the "*Debtor Claims*").  Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (i) any post-Effective Date obligations of any party or entity under this Plan, any transaction thereunder, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement this Plan or (ii) any individual from any claim related to an act or omission that is determined by a court of competent jurisdiction to have constituted a criminal act, intentional fraud, gross negligence or willful misconduct. Notwithstanding anything else herein, the holders of First Lien Secured Claims shall not pursue, prosecute or assert any of the Debtor Claims, but shall not waive any entitlement, on account of any First Lien Deficiency Claims, to any recovery resulting from of any party's pursuit, prosecution, resolution, settlement or adjudication of any Debtor Claims retained by any entity under or pursuant to the Plan (including any Retained Causes of Action), if any.**

**(b)     Releases by Holders of Claims or Interests.  As of the Effective Date, except as set forth in this Plan and except for the rights that remain in effect from and after the Effective Date to**

WEIL:\97662622\9\65961.0004

enforce this Plan, the Definitive Documents, and the documents in the Plan Supplement and the obligations contemplated by the Restructuring, on and after the Plan Effective Date, the Released Parties will be deemed conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged, to the maximum extent permitted by law, by the Releasing Parties, in each case from any and all Claims and Causes of Action whatsoever (including any derivative claims, asserted or assertable on behalf of the Debtors, the Wind Down Co, the Reorganized Debtors, or their Estates; such Claims or Causes of Action, the "*Additional Debtor Claims*"), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, existing or hereinafter arising, whether in law or equity, whether sounding in tort or contract, whether arising under federal or state statutory or common law, or any other applicable international, foreign, or domestic law, rule, statute, regulation, treaty, right, duty, requirement or otherwise, that such holders or their estates, affiliates, heirs, executors, administrators, successors, assigns, managers, accountants, attorneys, representatives, consultants, agents, and any other Persons claiming under or through them would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other Person, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Wind Down Co, the Reorganized Debtors, or their Estates, the Chapter 11 Cases, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in this Plan, the business or contractual arrangements or interactions between any Debtor and any Released Party, the Restructuring, the restructuring of any Claim or Interest before or during the Chapter 11 Cases, the negotiation, formulation, preparation, execution, filing, and/or consummation of this Plan, the Restructuring Support Agreement, the Disclosure Statement, New QB First Lien Term Loan (if applicable), New QB First Lien Term Loan Credit Documents (if applicable), the New Shareholders Agreement, the New Warrant Agreement, the PH Sale Process, the Wendy's Sale Process, the WholeCo Sale Process, the Sale Transaction (if applicable), the Sale Documents (if applicable), the Rights Offering, the Definitive Documents and the documents in the Plan Supplement, and related agreements, instruments, and other documents, and the negotiation, formulation, preparation, or implementation thereof, the solicitation of votes with respect to this Plan, or any other act or omission related to any of the foregoing.  Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (i) any post-Effective Date obligations of any party or entity under the Plan, any transaction thereunder, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement this Plan or (ii) any individual from any claim related to an act or omission that is determined by a court of competent jurisdiction to have constituted a criminal act, intentional fraud, gross negligence or willful misconduct.  Notwithstanding anything else herein, the holders of First Lien Secured Claims shall not pursue, prosecute or assert any of the Additional Debtor Claims, but shall not waive any entitlement, on account of any First Lien Deficiency Claims, to any recovery resulting from of any party's pursuit, prosecution, resolution, settlement or adjudication of any Additional Debtor Claims retained by any entity under or pursuant to the Plan (including any Retained Causes of Action), if any.

   10.8   *Exculpation.*

   To the fullest extent permitted by applicable law, no Exculpated Party will have or incur, and each Exculpated Party will be released and exculpated from, any Claim or Cause of Action in connection with or arising out of the administration of the Chapter 11 Cases; the negotiation, formulation, preparation, execution, filing, and/or consummation of the New QB First Lien Term Loan (if applicable), the New QB First Lien Term Loan Credit Documents (if applicable), the PH Sale Process, the Wendy's Sale Process, the WholeCo Sale Process, the Sale Documents (if applicable), the Management Incentive Plan, the Disclosure Statement, the Restructuring Support

**Agreement, the Restructuring, the Sale Transaction (if applicable), the Rights Offering, the New Shareholders Agreement, the New Warrant Agreement, and this Plan (including the Definitive Documents and the documents in the Plan Supplement), or the solicitation of votes for, or confirmation of, this Plan; the funding of this Plan and the transactions contemplated thereby; the Confirmation Order; the occurrence of the Effective Date; the administration of this Plan or the property to be distributed under this Plan; issuance of Securities under or in connection with this Plan; the purchase, sale, or rescission of the purchase or sale of any Security of the Debtors or the Reorganized Debtors; or the transactions in furtherance of any of the foregoing; other than Claims or Causes of Action arising out of or related to any act or omission of an Exculpated Party that is a criminal act or constitutes intentional fraud, gross negligence, or willful misconduct as determined by a Final Order, but in all respects such Persons will be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to this Plan.  The Exculpated Parties have acted in compliance with the applicable provisions of the Bankruptcy Code with regard to the solicitation and distribution of securities pursuant to the Plan and, therefore, are not, and on account of such distributions will not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of this Plan or such distributions made pursuant to this Plan, including the issuance of Securities thereunder.  The exculpation will be in addition to, and not in limitation of, all other releases, indemnities, exculpations, and any other applicable law or rules protecting such Exculpated Parties from liability.**

> 10.9    *Injunction Related to Releases and Exculpation.*

The Confirmation Order shall permanently enjoin the commencement or prosecution by any Person or entity, whether directly, derivatively, or otherwise, of any Claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, losses, or liabilities released pursuant to this Plan, including the claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, and liabilities released or exculpated in this Plan or the Confirmation Order.

**Relevant Definitions Related to Release and Exculpation Provisions:**

*"Exculpated Parties"* means, collectively, the Exculpated Fiduciaries and the Section 1125(e) Parties.

*"Exculpated Fiduciaries"* means, collectively, and in each case in their capacities as such during the Chapter 11 Cases (i) the Debtors, (ii) the Reorganized Debtors, (iii) the Creditors' Committee and each of its members in their capacity as such, and (iv) with respect to each of the foregoing Persons in clauses (i) through (iii), such Persons' Related Persons and their respective heirs, executors, estates, and nominees, in each case in their capacity as such. *"Section 1125(e) Parties"* means, collectively, (i) the Consenting Creditors, (ii) each of the Prepetition Priority/1L Agents (solely in their capacity as such), and (iii) with respect to each of the foregoing Persons in clauses (i) and (ii), such Persons' Related Persons, and their respective heirs, executors, estates, and nominees, each in their capacity as such.

*"Related Parties"* means with respect to a Person, that Person's current and former Affiliates, and such Persons' and their current and former Affiliates' predecessors, successors, assigns, and current and former subsidiaries, officers, directors, principals, equity holders (regardless of whether such interests are held directly or indirectly), members, partners (including both general and limited partners), managers, employees, agents, advisory board members,

8

management companies, managed accounts or funds, affiliated investment funds or investment vehicles, and Representatives.

*"Released Parties"* means, collectively, each in their respective capacities as such, (i) the Debtors, (ii) the Reorganized Debtors, (iii) the Consenting Creditors, (iv) the Sponsors, (v) Prepetition Priority/1L Agents, and (vi) with respect to each of the foregoing Persons, in clauses (i) through (v), all Related Parties.  Notwithstanding the foregoing, any Person that opts out of the releases set forth in Section 10.7(b) of this Plan shall not be deemed a Released Party thereunder.

*"Releasing Parties"* means, collectively, each in their respective capacities as such, (i) the holders of all Claims or Interests that vote to accept this Plan, (ii) the holders of all Claims or Interests whose vote to accept or reject this Plan is solicited but that do not vote either to accept or to reject this Plan, (iii) the holders of all Claims or Interests that vote, or are deemed, to reject this Plan but do not opt out of granting the releases set forth herein, (iv) the holders of all Claims and Interests that were given notice of the opportunity to opt out of granting the releases set forth herein but did not opt out, and (v) the Released Parties.

**YOU ARE ADVISED AND ENCOURAGED TO CAREFULLY REVIEW AND CONSIDER THE PLAN, INCLUDING THE RELEASE, EXCULPATION AND INJUNCTION PROVISIONS, AS YOUR RIGHTS MIGHT BE AFFECTED.**

WEIL:\97662622\9\65961.0004

**PLEASE READ THE ATTACHED VOTING INFORMATION
AND INSTRUCTIONS HERETO BEFORE COMPLETING THIS BALLOT**

---

PLEASE COMPLETE ITEMS 1, 2, 3, AND 4.  IF THIS BALLOT HAS NOT BEEN PROPERLY
SIGNED IN THE SPACE PROVIDED, YOUR VOTE MAY NOT BE VALID OR COUNTED
AS HAVING BEEN CAST.

---

**Item 1.  Principal Amount of Claims**.  The undersigned hereby certifies that, as of the Voting
Record Date, the undersigned was the holder (or authorized signatory of such a holder) of Claims
in Class 4 (First Lien Secured Claims) and Class 6 (General Unsecured Claims (First Lien
Deficiency Claims)) in the amount set forth below.

> $

**Item 2.  Votes on the Plan**.  Please vote either to accept or to reject the Plan with respect to your
Claims below.  Any Ballot not marked either to accept or reject the Plan, or marked both to accept
and reject the Plan, shall not be counted in determining acceptance or rejection of the Plan.

---

**Prior to voting on the Plan, please note the following:**

**If you vote to accept the Plan you shall be deemed to have consented to the release,
injunction, and exculpation provisions set forth in Sections 10.5, 10.6, 10.7, 10.8, and
10.9 of the Plan.**

**If you (i) do not vote either to accept or reject the Plan, or (ii) vote to reject the Plan
and, in each case, do not check the box in Item 3 below, you shall be deemed to have
consented to the release provisions set forth in Section 10.7(b) of the Plan.**

**The Disclosure Statement and the Plan must be referenced for a complete description
of the release, injunction, and exculpation.**

---

The undersigned holder of a Class 4 First Lien Secured Claim and Class 6 General Unsecured
Claim (First Lien Deficiency Claim) votes to (check <u>one</u> box):

☐  **Accept** the Plan          ☐ **Reject** the Plan

<u>**The Plan consists of separate chapter 11 plans for each of the Debtors.  Your vote on the Plan
will be applied to each applicable Debtor in the same manner and in the same amount as
indicated in Item 1 and Item 2 above.**</u>

**Item 3.  Optional Opt Out Release Election**.  Check the box below if you elect not to grant the
releases contained in Section 10.7(b) of the Plan.  If you voted to reject the Plan in Item 2 above,
or if you are abstaining from voting to accept or reject the Plan, check this box if you elect not to
grant the releases contained in Section 10.7(b) of the Plan.  Election to withhold consent is at your
option.  If you voted to accept the Plan in Item 2 above, you <u>may not</u> complete this Item 3, and if
you complete this Item 3, your "opt out" election will be ineffective.  If you submit a rejecting
Ballot, or if you abstain from submitting a Ballot, and in each case, you do not check the box

10

below, you will be deemed to consent to the releases contained in Section 10.7(b) of the Plan to the fullest extent permitted by applicable law.  The Holder of the Class 4 First Lien Secured Claim and Class 6 First Lien Deficiency Claim set forth in Item 1 elects to:

☐      **OPT OUT** of the releases contained in Section 10.7(b) of the Plan.

**Item 4.  Acknowledgments**. By signing this Ballot, the Holder (or authorized signatory of such Holder) acknowledges receipt of the Plan, the Disclosure Statement, and the other applicable solicitation materials, and certifies that (i) it has the power and authority to vote to accept or reject the Plan, (ii) it was the Holder (or is entitled to vote on behalf of such Holder) of Claims in Class 4 (First Lien Secured Claims) and Class 6 (General Unsecured Claims (First Lien Deficiency Claims)) described in item 1 as of the Voting Record Date, and (iii) all authority conferred or agreed to be conferred pursuant to this Ballot, and every obligation of the undersigned hereunder, shall be binding on the transferees, successors, assigns, heirs, executors, administrators, trustees in bankruptcy, and legal representatives of the undersigned, and shall not be affected by, and shall survive, the death or incapacity of the undersigned.

_____

Name of Holder

_____

Signature

_____

Name of Signatory

_____

If by Authorized Agent, Name and Title

_____

Street Address

_____

City, State, Zip Code

_____

Telephone Number

_____

Date Completed

_____

E-Mail Address

11

**VOTING INFORMATION AND INSTRUCTIONS FOR COMPLETING THE BALLOT**

1.      Ballots received after the Voting Deadline (if the Voting Deadline has not been extended) may not, at the Debtors' discretion, be counted.  **The Voting Agent will tabulate all properly completed Ballots received on or before the Voting Deadline.**

2.      Complete the Ballot by providing all the information requested, signing, dating, and returning the Ballot to the Voting Agent.  Any Ballot that is illegible, contains insufficient information to identify the Holder, or is unsigned will not be counted.  Ballots may not be submitted to the Voting Agent by facsimile.  If neither the "accept" nor "reject" box is checked in Item 2, both boxes are checked in Item 2, or the Ballot is otherwise not properly completed, executed, or timely returned, then the Ballot shall not be counted in determining acceptance or rejection of the Plan.

3.      You must vote all your Claims within a single Class under the Plan either to accept or reject the Plan.  Accordingly, if you return more than one Ballot voting different or inconsistent Claims within a single Class under the Plan, the Ballots are not voted in the same manner, and you do not correct this before the Voting Deadline, those Ballots will not be counted.  An otherwise properly executed Ballot that attempts to partially accept and partially reject the Plan likewise will not be counted.

4.      The Ballot does not constitute, and shall not be deemed to be, a proof of Claim or an assertion or admission of Claims.

5.      The Ballot is not a letter of transmittal and may not be used for any purpose other than to vote to accept or reject the Plan.

6.      If you cast more than one Ballot voting the same Claims prior to the Voting Deadline, the latest received, properly executed Ballot submitted to the Voting Agent will supersede any prior Ballot.

7.      If (i) the Debtors revoke or withdraw the Plan, or (ii) the Confirmation Order is not entered or consummation of the Plan does not occur, this Ballot shall automatically be null and void and deemed withdrawn without any requirement of affirmative action by or notice to you.

8.      There may be changes made to the Plan that do not cause material adverse effects on an accepting Class.  If such non-material changes are made to the Plan, the Debtors will not resolicit votes for acceptance or rejection of the Plan.

9.      NO PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR ADVICE, OR TO MAKE ANY REPRESENTATION, OTHER THAN WHAT IS CONTAINED IN THE MATERIALS MAILED WITH THIS BALLOT, ANY SUPPLEMENTAL INFORMATION PROVIDED BY THE DEBTORS, OR OTHER MATERIALS AUTHORIZED BY THE BANKRUPTCY COURT.

10.     PLEASE RETURN YOUR BALLOT PROMPTLY.

11.   IF YOU HAVE RECEIVED A DAMAGED BALLOT OR HAVE LOST YOUR BALLOT, OR IF YOU HAVE ANY QUESTIONS CONCERNING THIS BALLOT OR THE VOTING PROCEDURES, PLEASE CONTACT THE VOTING AGENT BY CALLING 1-866-897-6433 (DOMESTIC TOLL-FREE) OR 1-646-282-2500 (INTERNATIONAL) OR BY SENDING AN ELECTRONIC MAIL MESSAGE TO NPCVOTE@EPIQGLOBAL.COM WITH "NPC INTERNATIONAL, INC." IN THE SUBJECT LINE.   PLEASE DO NOT DIRECT ANY INQUIRIES TO THE BANKRUPTCY COURT.

12.   THE VOTING AGENT IS NOT AUTHORIZED TO AND WILL NOT PROVIDE LEGAL ADVICE.

### E-Ballot Voting Instructions

1.   Epiq's "E-Ballot" platform is the sole manner in which Ballots will be accepted via electronic or online transmission.  Ballots submitted by facsimile, email or other means of electronic transmission will not be counted.  If voting online, to have your vote counted, you must electronically complete, sign, and submit the electronic Ballot by utilizing the E-Ballot platform on Epiq's website at https://dm.epiq11.com/npc.  Your Ballot must be received by Epiq no later than the Voting Deadline, unless such time is extended by the Debtors.
**HOLDERS ARE STRONGLY ENCOURAGED TO SUBMIT THEIR BALLOTS VIA THE E-BALLOT PLATFORM.**

2.   If you prefer to return a hard copy of your Ballot, you may return it in the enclosed preaddressed, postage prepaid envelope or:

| By first class mail to: | Via overnight courier or hand delivery to: |
|---|---|
| **NPC International  – Ballot Processing**<br>c/o Epiq Corporate Restructuring, LLC<br>P.O. Box 4422<br>Beaverton, OR 97076-4422 | **NPC International  -Ballot Processing**<br>c/o Epiq Corporate Restructuring, LLC<br>10300 SW Allen Boulevard<br>Beaverton, OR 97005 |

3.   To ensure that your vote is counted, you must: (a) complete the Ballot; (b) indicate your decision either to accept or reject the Plan in the boxes provided in Item 2 of the Ballot; and (c) sign and return the Ballot to the address set forth on the enclosed pre-addressed envelope or in a method provided herein.  The Voting Deadline for the receipt of Ballots by Epiq is **December 17, 2020 at 11:59 p.m.** (Prevailing Central Time). Your completed Ballot must be received by Epiq on or before the Voting Deadline.

WEIL:\97662622\9\65961.0004

## Exhibit 3

**Form of Second Lien Secured Claims (Class 5) and
Second Lien Deficiency Claims (Class 6) Ballot**

No person has been authorized to give any information or advice, or to make any representation, other than what is included in the Disclosure Statement and other materials accompanying this Ballot.[1]

PLEASE NOTE THAT, EVEN IF YOU INTEND TO VOTE TO REJECT THE PLAN, YOU MUST STILL READ, COMPLETE, AND EXECUTE THIS ENTIRE BALLOT.

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| In re | § | Chapter 11 |
| | § | |
| NPC INTERNATIONAL, INC., | § | Case No. 20–33353 (DRJ) |
| *et al.*, | § | |
| Debtors.[2] | § | (Jointly Administered) |
| | § | |

## BALLOT FOR VOTING TO ACCEPT OR
## REJECT THE JOINT CHAPTER 11 PLAN OF
## NPC INTERNATIONAL, INC AND ITS AFFILIATED DEBTORS

## CLASS 5:  SECOND LIEN SECURED CLAIMS

## CLASS 6: GENERAL UNSECURED CLAIMS (SECOND LIEN DEFICIENCY CLAIM)

---

**VOTING DEADLINE: DECEMBER 17, 2020 AT 11:59 P.M.
(PREVAILING CENTRAL TIME) (THE "VOTING DEADLINE")**

**For your vote to be counted, this Ballot must be properly completed, signed, and returned so that it is _actually received_ by the Voting Agent, Epiq Corporate Restructuring, LLC, by no later than December 17, 2020 at 11:59 p.m. (Prevailing Central Time), unless such time is extended in writing by the Debtors.  Please submit a Ballot with your vote in the envelope provided or by _one_ of the following methods:**

---

[1]  All capitalized terms used but not defined herein or in the enclosed voting instructions have the meanings ascribed to them in the Plan, attached as **Exhibit A** to the Disclosure Statement.

[2]  The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are NPC International, Inc. (7298); NPC Restaurant Holdings I LLC (0595); NPC Restaurant Holdings II LLC (0595); NPC Holdings, Inc. (6451); NPC International Holdings, LLC (8234); NPC Restaurant Holdings, LLC (9045); NPC Operating Company B, Inc. (6498); and NPC Quality Burgers, Inc. (6457).  The Debtors' corporate headquarters and service address is 4200 W. 115th Street, Suite 200, Leawood, KS 66211.

WEIL:\97662622\9\65961.0004

**If Submitting Your Vote through the E-Balloting Portal**

**Epiq will accept Ballots if properly completed through the E-Balloting Portal. To submit your Ballot via the E-Balloting Portal, visit https://dm.epiq11.com/NPC, click on the "E-Ballot" section of Epiq's website for the Debtors and follow the instructions to submit your Ballot.**

**IMPORTANT NOTE: You will need the following information to retrieve and submit your customized electronic Ballot:**

**Unique E-Ballot ID#:_____**

**Epiq's E-Balloting Portal is the sole manner in which Ballots will be accepted via electronic or online transmission.  Ballots submitted by facsimile, email or other means of electronic transmission will not be counted.**

**Each E-Ballot ID# is to be used solely for voting only those Claims described in your electronic Ballot.  Please complete and submit an electronic Ballot for each E-Ballot ID# you receive, as applicable.**

**If your Ballot is not received by Epiq on or before the Voting Deadline, and such Voting Deadline is not extended by the Debtors as noted above, your vote will not be counted.**

**If by First Class Mail:**

**NPC International  - Ballot Processing**
**c/o Epiq Corporate Restructuring, LLC**
**P.O. Box 4422**
**Beaverton, OR 97076-4422**

**If by First Class Mail, Overnight Courier or Overnight Mail:**

**NPC International  - Ballot Processing**
**c/o Epiq Corporate Restructuring LLC**
**10300 SW Allen Boulevard**
**Beaverton, OR 97005**

**BALLOTS WILL <u>NOT</u> BE ACCEPTED BY TELECOPY, FACSIMILE, EMAIL, OR OTHER ELECTRONIC MEANS OF TRANSMISSION.**

NPC International, Inc. and its affiliated debtors in the above-captioned chapter 11 cases (collectively, the "**Debtors**") are soliciting votes with respect to the *First Amended Joint Chapter 11 Plan of NPC International, Inc. and Its Affiliated Debtors* (as may be amended,

WEIL:\97662622\9\65961.0004

modified or supplemented from time to time, the "**Plan**") (Docket No. 921).  The Plan is attached as **Exhibit A** to the *Disclosure Statement for the First Amended Joint Chapter 11 Plan of NPC International, Inc. and Its Affiliated Debtors*, filed on October 29, 2020 (Docket No. 922) (as may be further amended, the **"Disclosure Statement"**).

Please use this Ballot to cast your vote to accept or reject the Plan if you are, as of October 27, 2020 (the "**Voting Record Date**"), a holder of a claim against the Debtors arising under that certain Second Lien Term Loan Credit Agreement, dated as of April 20, 2017 (as amended, restated, amended and restated, supplemented, or otherwise modified from time to time), by and among the Debtor Borrowers, NPC RH, as guarantor, the Prepetition 2L Agent, the Prepetition 2L Collateral Agent, and the Second Lien Lenders, as in effect immediately prior to the Effective Date (the "**Second Lien Credit Agreement**"), and a holder of Second Lien Deficiency Claims (a "**Holder**").

The Disclosure Statement provides information to assist you in deciding whether to accept or reject the Plan.  If you do not have a Disclosure Statement, you may obtain a copy from Epiq Corporate Restructuring, LLC (the "**Voting Agent**") at no charge by accessing the Debtors'  restructuring  website  at  https://dm.epiq11.com/npc,  by  email  at NPCvote@epiqglobal.com, or by telephone at 1-866-897-6433 (domestic toll-free) or 1-646-282-2500 (international).

If you have any questions on how to properly complete this Ballot, please contact the Voting Agent at 1-866-897-6433 (domestic toll-free) or 1-646-282-2500 (international).  Please be advised that the Voting Agent cannot provide legal advice.  You may wish to seek legal advice concerning the Plan and the classification and treatment of your Class 5 Second Lien Secured Claim and Class 6 General Unsecured Claims under the Plan.

---

**IMPORTANT NOTICE REGARDING TREATMENT FOR CLASS 5**

As described in more detail in the Disclosure Statement, except to the extent a holder of an Allowed Second Lien Secured Claim agrees to less favorable treatment, each holder of an Allowed Second Lien Secured Claim shall receive, on the Effective Date, on account of such Allowed Second Lien Secured Claim, in full and final satisfaction of such Allowed Claim, its Pro Rata share of:  (1) in the event of a Sale Transaction, the remaining Sale Proceeds after the Allowed Priority Term Loan Secured Claims and the Allowed First Lien Secured Claims are satisfied in full and the Wind Down Budget has been fully funded, or (2) in the event of a Reorganization Transaction, all Second Lien Secured Claims shall be treated as Second Lien Deficiency Claims and shall receive treatment as General Unsecured Claims under Class 6.

**IMPORTANT NOTICE REGARDING TREATMENT FOR CLASS 6**

As described in more detail in the Disclosure Statement, if the Plan is confirmed and the Effective Date occurs, except to the extent that a holder of a General Unsecured Claim (*i.e.* for purposes of this ballot, a Second Lien Deficiency Claim) agrees to a less favorable treatment, on or as soon as reasonably practicable after the later of the Effective Date and the date on which such General Unsecured Claim becomes an Allowed Claim, each holder of an Allowed General

---

WEIL:\97662622\9\65961.0004

Unsecured Claim shall receive, in full and final satisfaction of such Allowed Claim, such holder's Pro Rata share of: (1) in the event of the Sale Transaction, the remaining Sale Proceeds after the Allowed Priority Term Loan Secured Claims, the Allowed First Lien Secured Claims, and the Allowed Second Lien Secured Claims are satisfied in full and the Wind Down Budget has been fully funded, or (2) in the event of a Reorganization Transaction, (a) in the event neither a PH Sale Transaction nor the Wendy's Sale Transaction is consummated, New Warrants to purchase Reorganized Equity Interests representing in the aggregate 12.5% of the total outstanding Reorganized Equity Interests issued pursuant to this Plan as of the Effective Date, or (b) in the event either the PH Sale Transaction or the Wendy's Sale Transaction is consummated, New Warrants to purchase Reorganized Equity Interests representing in the aggregate 18.0% of the total outstanding Reorganized Equity Interests issued pursuant to this Plan as of the Effective Date; *provided* that, to the extent considered necessary or advisable for the Reorganized Debtors to remain a private company, without being required to register under Section 12(g) of the Exchange Act as a result of the number of record holders of its outstanding securities, the Debtors may distribute to holders of Allowed General Unsecured Claims that declare under penalty of perjury that they are not accredited investors (as defined in Rule 501(a) of Regulation D under the Securities Act) Cash or other property in a reasonably equivalent amount to the discounted net present value of the New Warrants in accordance with the underlying enterprise valuation of the Reorganized Debtors (which aggregate Cash amount shall be subject to the consent of the Requisite Creditors); *provided*, *further*, that holders of Allowed First Lien Deficiency Claims (if any) shall be entitled to vote but, except as otherwise provided in this Plan, deemed to have waived the entitlement to receive the New Warrants.

**PLEASE READ THE DISCLOSURE STATEMENT AND PLAN FOR MORE DETAILS.**

The Plan can be confirmed by the United States Bankruptcy Court for the Southern District of Texas (the "**Bankruptcy Court**") and thereby made binding on you if it is accepted by the holders of (i) at least two-thirds in amount of the allowed Claims or Interests voted in each Impaired Class, and (ii) if the Impaired Class is a class of Claims, more than one-half in number of the allowed Claims voted in each Impaired Class, and if the Plan otherwise satisfies the applicable requirements of section 1129(a) under the Bankruptcy Code.

If the requisite acceptances are not obtained, the Bankruptcy Court may nonetheless confirm the Plan if it finds that the Plan (y) provides fair and equitable treatment to, and does not unfairly discriminate against, the Class or Classes rejecting the Plan and (z) otherwise satisfies the requirements of section 1129(b) of the Bankruptcy Code. If the Plan is confirmed by the Bankruptcy Court, it will be binding on you whether or not you vote or if you vote to reject the Plan. To have your vote counted, you must complete, sign, and return this Ballot to the Voting Agent by the Voting Deadline.

Your receipt of this Ballot does not indicate that your Claim(s) has been or will be Allowed. This Ballot is solely for purposes of voting to accept or reject the Plan and not for the purpose of allowance or disallowance of, or distribution on account of, Class 5 Second Lien Secured Claims or Class 6 General Unsecured Claims. You must provide all of the information requested by this Ballot. Failure to do so may result in the disqualification of your vote.

4

## NOTICE REGARDING CERTAIN RELEASE,
## EXCULPATION, AND INJUNCTION PROVISIONS IN PLAN

**If you (i) vote to accept the Plan, (ii) do not vote either to accept or to reject the Plan and do not opt out of granting the releases set forth in the Plan, (iii) vote to reject the Plan but do not opt out of granting the releases set forth in the Plan, or (iv) were given notice of the opportunity to opt out of granting the releases set forth in the Plan but did not opt out, you shall be deemed to have consented to the releases contained in Section 10 of the Plan.**

10.5    *Injunction Against Interference With Plan.*

Except as otherwise provided in this Plan or in the Confirmation Order, upon the entry of the Confirmation Order, all holders of Claims and Interests and all other parties in interest, along with their respective present and former affiliates, employees, agents, officers, directors, and principals, shall be enjoined from taking any action to interfere with the implementation or the occurrence of the Effective Date.

10.6    *Plan Injunction.*

(a)    Except as otherwise provided in this Plan or in the Confirmation Order, from and after the Effective Date, all Persons who have held, hold, or may hold Claims or Interests, and other parties in interest, along with their respective present or former employees, agents, officers, directors, principals, and affiliates, are, with respect to any such Claim or Interest, permanently enjoined after the entry of the Confirmation Order from:  (i) commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding of any kind (including any proceeding in a judicial, arbitral, administrative, or other forum) against or affecting, directly or indirectly, a Debtor, a Reorganized Debtor, or the Wind Down Co, or the property of any of the foregoing, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to, any of the foregoing Persons mentioned in this subsection (i) or any property of any such transferee or successor; (ii) enforcing, levying, attaching (including any prejudgment attachment), collecting, or otherwise recovering in any manner or by any means, whether directly or indirectly, any judgment, award, decree, or order against a Debtor, a Reorganized Debtor, or the Wind Down Co or its property, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to, any of the foregoing Persons mentioned in this subsection (ii) or any property of any such transferee or successor; (iii) creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against a Debtor, a Reorganized Debtor, or the Wind Down Co or any of its property, or any direct or indirect transferee of any property of, or successor in interest to, any of the foregoing Persons mentioned in this subsection (iii) or any property of any such transferee or successor; (iv) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of this Plan to the full extent permitted by applicable law; and (v) commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of this Plan; *provided*, that nothing contained in this Plan shall preclude such Persons who have held, hold, or may hold Claims against, or Interests in, a Debtor, a Reorganized Debtor, or the Wind Down Co from exercising their respective rights and remedies, or obtaining benefits, pursuant to and consistent with the terms of this Plan.

(b)    By accepting distributions pursuant to this Plan, each holder of an Allowed Claim or Interest shall be deemed to have affirmatively and specifically consented to be bound by this Plan, including the injunctions set forth in Section 10.6 of this Plan and all transactions, documents, and agreements contemplated hereunder that govern the property that is the subject of such distributions.

5

10.7    *Releases.*

(a)    **Release by Debtors.  As of the Effective Date, except for the rights and remedies that remain in effect from and after the Effective Date to enforce this Plan and the obligations contemplated by the Definitive Documents and the documents in the Plan Supplement or as otherwise provided in any order of the Bankruptcy Court, on and after the Effective Date, the Released Parties will be deemed conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged, by and on behalf of the Debtors, the Wind Down Co, the Reorganized Debtors, and the Estates, in each case on behalf of themselves and their respective successors, assigns, and representatives and any and all other Persons that may purport to assert any Cause of Action derivatively, by or through the foregoing Persons, from any and all Claims and Causes of Action (including any derivative claims, asserted or assertable on behalf of the Debtors, the Wind Down Co, the Reorganized Debtors, or their Estates), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, contract, tort, or otherwise, by statute, violations of federal or state securities laws or otherwise that the Debtors, the Wind Down Co, the Reorganized Debtors, the Estates, or any of their respective affiliates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other Person, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Chapter 11 Cases, the Restructuring, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in this Plan, the business or contractual arrangements between any Debtor and any Released Party, the restructuring of Claims and Interests before or during the Chapter 11 Cases, the negotiation, formulation, preparation, execution, filing, and/or consummation of this Plan, the Restructuring Support Agreement, the Disclosure Statement, New QB First Lien Term Loan (if applicable), New QB First Lien Term Loan Credit Documents (if applicable), the New Shareholders Agreement, the New Warrant Agreement, the PH Sale Process, the Wendy's Sale Process, the WholeCo Sale Process, the Sale Transaction (if applicable), the Sale Documents (if applicable), the Rights Offering, the Definitive Documents and the documents in the Plan Supplement or related agreements, instruments, or other documents relating thereto, or the solicitation of votes with respect to the Plan, in all cases, based upon any act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date (such Claims and Causes of Action, the "*Debtor Claims*").  Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (i) any post-Effective Date obligations of any party or entity under this Plan, any transaction thereunder, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement this Plan or (ii) any individual from any claim related to an act or omission that is determined by a court of competent jurisdiction to have constituted a criminal act, intentional fraud, gross negligence or willful misconduct. Notwithstanding anything else herein, the holders of First Lien Secured Claims shall not pursue, prosecute or assert any of the Debtor Claims, but shall not waive any entitlement, on account of any First Lien Deficiency Claims, to any recovery resulting from of any party's pursuit, prosecution, resolution, settlement or adjudication of any Debtor Claims retained by any entity under or pursuant to the Plan (including any Retained Causes of Action), if any.**

(b)    **Releases by Holders of Claims or Interests.  As of the Effective Date, except as set forth in this Plan and except for the rights that remain in effect from and after the Effective Date to enforce this Plan, the Definitive Documents, and the documents in the Plan Supplement and the obligations contemplated by the Restructuring, on and after the Plan Effective Date, the Released Parties will be deemed conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged, to the maximum extent permitted by law, by the Releasing Parties, in each case from any and all Claims and Causes of Action whatsoever (including any derivative claims, asserted or**

WEIL:\97662622\9\65961.0004

assertable on behalf of the Debtors, the Wind Down Co, the Reorganized Debtors, or their Estates; such Claims or Causes of Action, the "*Additional Debtor Claims*"), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, existing or hereinafter arising, whether in law or equity, whether sounding in tort or contract, whether arising under federal or state statutory or common law, or any other applicable international, foreign, or domestic law, rule, statute, regulation, treaty, right, duty, requirement or otherwise, that such holders or their estates, affiliates, heirs, executors, administrators, successors, assigns, managers, accountants, attorneys, representatives, consultants, agents, and any other Persons claiming under or through them would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other Person, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Wind Down Co, the Reorganized Debtors, or their Estates, the Chapter 11 Cases, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in this Plan, the business or contractual arrangements or interactions between any Debtor and any Released Party, the Restructuring, the restructuring of any Claim or Interest before or during the Chapter 11 Cases, the negotiation, formulation, preparation, execution, filing, and/or consummation of this Plan, the Restructuring Support Agreement, the Disclosure Statement, New QB First Lien Term Loan (if applicable), New QB First Lien Term Loan Credit Documents (if applicable), the New Shareholders Agreement, the New Warrant Agreement, the PH Sale Process, the Wendy's Sale Process, the WholeCo Sale Process, the Sale Transaction (if applicable), the Sale Documents (if applicable), the Rights Offering, the Definitive Documents and the documents in the Plan Supplement, and related agreements, instruments, and other documents, and the negotiation, formulation, preparation, or implementation thereof, the solicitation of votes with respect to this Plan, or any other act or omission related to any of the foregoing.  Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (i) any post-Effective Date obligations of any party or entity under the Plan, any transaction thereunder, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement this Plan or (ii) any individual from any claim related to an act or omission that is determined by a court of competent jurisdiction to have constituted a criminal act, intentional fraud, gross negligence or willful misconduct.  Notwithstanding anything else herein, the holders of First Lien Secured Claims shall not pursue, prosecute or assert any of the Additional Debtor Claims, but shall not waive any entitlement, on account of any First Lien Deficiency Claims, to any recovery resulting from of any party's pursuit, prosecution, resolution, settlement or adjudication of any Additional Debtor Claims retained by any entity under or pursuant to the Plan (including any Retained Causes of Action), if any.

### 10.8   *Exculpation.*

To the fullest extent permitted by applicable law, no Exculpated Party will have or incur, and each Exculpated Party will be released and exculpated from, any Claim or Cause of Action in connection with or arising out of the administration of the Chapter 11 Cases; the negotiation, formulation, preparation, execution, filing, and/or consummation of the New QB First Lien Term Loan (if applicable), the New QB First Lien Term Loan Credit Documents (if applicable), the PH Sale Process, the Wendy's Sale Process, the WholeCo Sale Process, the Sale Documents (if applicable), the Management Incentive Plan, the Disclosure Statement, the Restructuring Support Agreement, the Restructuring, the Sale Transaction (if applicable), the Rights Offering, the New Shareholders Agreement, the New Warrant Agreement, and this Plan (including the Definitive Documents and the documents in the Plan Supplement), or the solicitation of votes for, or confirmation of, this Plan; the funding of this Plan and the transactions contemplated thereby; the Confirmation Order; the occurrence of the Effective Date; the administration of this Plan or the

7

property to be distributed under this Plan; the issuance of Securities under or in connection with this Plan; the purchase, sale, or rescission of the purchase or sale of any Security of the Debtors or the Reorganized Debtors; or the transactions in furtherance of any of the foregoing; other than Claims or Causes of Action arising out of or related to any act or omission of an Exculpated Party that is a criminal act or constitutes intentional fraud, gross negligence, or willful misconduct as determined by a Final Order, but in all respects such Persons will be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to this Plan.  The Exculpated Parties have acted in compliance with the applicable provisions of the Bankruptcy Code with regard to the solicitation and distribution of securities pursuant to the Plan and, therefore, are not, and on account of such distributions will not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of this Plan or such distributions made pursuant to this Plan, including the issuance of Securities thereunder.  The exculpation will be in addition to, and not in limitation of, all other releases, indemnities, exculpations, and any other applicable law or rules protecting such Exculpated Parties from liability.

> **10.9**  *Injunction Related to Releases and Exculpation.*

The Confirmation Order shall permanently enjoin the commencement or prosecution by any Person or entity, whether directly, derivatively, or otherwise, of any Claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, losses, or liabilities released pursuant to this Plan, including the claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, and liabilities released or exculpated in this Plan or the Confirmation Order.

## Relevant Definitions Related to Release and Exculpation Provisions:

*"Exculpated Parties"* means, collectively, the Exculpated Fiduciaries and the Section 1125(e) Parties.

*"Exculpated Fiduciaries"* means, collectively, and in each case in their capacities as such during the Chapter 11 Cases (i) the Debtors, (ii) the Reorganized Debtors, (iii) the Creditors' Committee and each of its members in their capacity as such, and (iv) with respect to each of the foregoing Persons in clauses (i) through (iii), such Persons' Related Persons and their respective heirs, executors, estates, and nominees, in each case in their capacity as such.

*"Section 1125(e) Parties"* means, collectively, (i) the Consenting Creditors, (ii) each of the Prepetition Priority/1L Agents (solely in their capacity as such), and (iii) with respect to each of the foregoing Persons in clauses (i) and (ii), such Persons' Related Persons, and their respective heirs, executors, estates, and nominees, each in their capacity as such.

*"Related Parties"* means with respect to a Person, that Person's current and former Affiliates, and such Persons' and their current and former Affiliates' predecessors, successors, assigns, and current and former subsidiaries, officers, directors, principals, equity holders (regardless of whether such interests are held directly or indirectly), members, partners (including both general and limited partners), managers, employees, agents, advisory board members, management companies, managed accounts or funds, affiliated investment funds or investment vehicles, and Representatives.

*"Released Parties"* means, collectively, each in their respective capacities as such, (i) the Debtors, (ii) the Reorganized Debtors, (iii) the Consenting Creditors, (iv) the Sponsors, (v)

Prepetition Priority/1L Agents, and (vi) with respect to each of the foregoing Persons, in clauses (i) through (v), all Related Parties. Notwithstanding the foregoing, any Person that opts out of the releases set forth in <u>Section 10.7(b)</u> of this Plan shall not be deemed a Released Party thereunder.

*"**Releasing Parties**"* means, collectively, each in their respective capacities as such, (i) the holders of all Claims or Interests that vote to accept this Plan, (ii) the holders of all Claims or Interests whose vote to accept or reject this Plan is solicited but that do not vote either to accept or to reject this Plan, (iii) the holders of all Claims or Interests that vote, or are deemed, to reject this Plan but do not opt out of granting the releases set forth herein, (iv) the holders of all Claims and Interests that were given notice of the opportunity to opt out of granting the releases set forth herein but did not opt out, and (v) the Released Parties.

**YOU ARE ADVISED AND ENCOURAGED TO CAREFULLY REVIEW AND CONSIDER THE PLAN, INCLUDING THE RELEASE, EXCULPATION AND INJUNCTION PROVISIONS, AS YOUR RIGHTS MIGHT BE AFFECTED.**

9

**PLEASE READ THE ATTACHED VOTING INFORMATION**
**AND INSTRUCTIONS HERETO BEFORE COMPLETING THIS BALLOT**

PLEASE COMPLETE ITEMS 1, 2, 3, AND 4. IF THIS BALLOT HAS NOT BEEN PROPERLY
SIGNED IN THE SPACE PROVIDED, YOUR VOTE MAY NOT BE VALID OR COUNTED
AS HAVING BEEN CAST.

**Item 1.  Principal Amount of Claims**.  The undersigned hereby certifies that, as of the Voting
Record Date, the undersigned was the holder (or authorized signatory of such a holder) of Claims
in Class 5 (Second Lien Secured Claims) and Class 6 (General Unsecured Claims (Second Lien
Deficiency Claims)) in the amount set forth below.

> $

**Item 2.  Votes on the Plan**.  Please vote either to accept or to reject the Plan with respect to your
Claims below.  Any Ballot not marked either to accept or reject the Plan, or marked both to accept
and reject the Plan, shall not be counted in determining acceptance or rejection of the Plan.

**Prior to voting on the Plan, please note the following:**

**If you vote to accept the Plan you shall be deemed to have consented to the release,
injunction, and exculpation provisions set forth in Sections 10.5, 10.6, 10.7, 10.8, and
10.9 of the Plan.**

**If you (i) do not vote either to accept or reject the Plan, or (ii) vote to reject the Plan
and, in each case, do not check the box in Item 3 below, you shall be deemed to have
consented to the release provisions set forth in Section 10.7(b) of the Plan.**

**The Disclosure Statement and the Plan must be referenced for a complete description
of the release, injunction, and exculpation.**

The undersigned holder of a Class 5 Second Lien Secured Claim and Class 6 General Unsecured
Claim (Second Lien Deficiency Claim) votes to (check <u>one</u> box):

☐  **Accept** the Plan          ☐ **Reject** the Plan

<u>**The Plan consists of separate chapter 11 plans for each of the Debtors.  Your vote on the Plan
will be applied to each applicable Debtor in the same manner and in the same amount as
indicated in Item 1 and Item 2 above.**</u>

**Item 3.  Optional Opt Out Release Election**.  Check the box below if you elect not to grant the
releases contained in Section 10.7(b) of the Plan.  If you voted to reject the Plan in Item 2 above,
or if you are abstaining from voting to accept or reject the Plan, check this box if you elect not to
grant the releases contained in Section 10.7(b) of the Plan.  Election to withhold consent is at your
option.  If you voted to accept the Plan in Item 2 above, you <u>may not</u> complete this Item 3, and if
you complete this Item 3, your "opt out" election will be ineffective.  If you submit a rejecting
Ballot, or if you abstain from submitting a Ballot, and in each case, you do not check the box

10

below, you will be deemed to consent to the releases contained in Section 10.7(b) of the Plan to the fullest extent permitted by applicable law.  The Holder of the Class 5 Second Lien Secured Claim set forth in Item 1 elects to:

☐   **OPT OUT** of the releases contained in Section 10.7(b) of the Plan.

**Item 4.  Acknowledgments**. By signing this Ballot, the Holder (or authorized signatory of such Holder) acknowledges receipt of the Plan, the Disclosure Statement, and the other applicable solicitation materials, and certifies that (i) it has the power and authority to vote to accept or reject the Plan, (ii) it was the Holder (or is entitled to vote on behalf of such Holder) of Claims in Class 5 (Second Lien Secured Claims) and Class 6 (General Unsecured Claims (Second Lien Deficiency Claims)) described in item 1 as of the Voting Record Date, and (iii) all authority conferred or agreed to be conferred pursuant to this Ballot, and every obligation of the undersigned hereunder, shall be binding on the transferees, successors, assigns, heirs, executors, administrators, trustees in bankruptcy, and legal representatives of the undersigned, and shall not be affected by, and shall survive, the death or incapacity of the undersigned.

_____
Name of Holder

_____
Signature

_____
Name of Signatory

_____
If by Authorized Agent, Name and Title

_____
Street Address

_____
City, State, Zip Code

_____
Telephone Number

_____
Date Completed

_____
E-Mail Address

WEIL:\97662622\9\65961.0004

**VOTING INFORMATION AND INSTRUCTIONS FOR COMPLETING THE BALLOT**

1.  Ballots received after the Voting Deadline (if the Voting Deadline has not been extended) may not, at the Debtors' discretion, be counted. **The Voting Agent will tabulate all properly completed Ballots received on or before the Voting Deadline.**

2.  Complete the Ballot by providing all the information requested, signing, dating, and returning the Ballot to the Voting Agent. Any Ballot that is illegible, contains insufficient information to identify the Holder, or is unsigned will not be counted. Ballots may not be submitted to the Voting Agent by facsimile. If neither the "accept" nor "reject" box is checked in Item 2, both boxes are checked in Item 2, or the Ballot is otherwise not properly completed, executed, or timely returned, then the Ballot shall not be counted in determining acceptance or rejection of the Plan.

3.  You must vote all your Claims within a single Class under the Plan either to accept or reject the Plan. Accordingly, if you return more than one Ballot voting different or inconsistent Claims within a single Class under the Plan, the Ballots are not voted in the same manner, and you do not correct this before the Voting Deadline, those Ballots will not be counted. An otherwise properly executed Ballot that attempts to partially accept and partially reject the Plan likewise will not be counted.

4.  The Ballot does not constitute, and shall not be deemed to be, a proof of Claim or an assertion or admission of Claims.

5.  The Ballot is not a letter of transmittal and may not be used for any purpose other than to vote to accept or reject the Plan.

6.  If you cast more than one Ballot voting the same Claims prior to the Voting Deadline, the latest received, properly executed Ballot submitted to the Voting Agent will supersede any prior Ballot.

7.  If (i) the Debtors revoke or withdraw the Plan, or (ii) the Confirmation Order is not entered or consummation of the Plan does not occur, this Ballot shall automatically be null and void and deemed withdrawn without any requirement of affirmative action by or notice to you.

8.  There may be changes made to the Plan that do not cause material adverse effects on an accepting Class. If such non-material changes are made to the Plan, the Debtors will not resolicit votes for acceptance or rejection of the Plan.

9.  NO PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR ADVICE, OR TO MAKE ANY REPRESENTATION, OTHER THAN WHAT IS CONTAINED IN THE MATERIALS MAILED WITH THIS BALLOT, ANY SUPPLEMENTAL INFORMATION PROVIDED BY THE DEBTORS, OR OTHER MATERIALS AUTHORIZED BY THE BANKRUPTCY COURT.

10. PLEASE RETURN YOUR BALLOT PROMPTLY.

WEIL:\97662622\9\65961.0004

11.    IF YOU HAVE RECEIVED A DAMAGED BALLOT OR HAVE LOST YOUR BALLOT, OR IF YOU HAVE ANY QUESTIONS CONCERNING THIS BALLOT OR THE VOTING PROCEDURES, PLEASE CONTACT THE VOTING AGENT BY CALLING 1-866-897-6433 (DOMESTIC TOLL-FREE) OR 1-646-282-2500 (INTERNATIONAL) OR BY SENDING AN ELECTRONIC MAIL MESSAGE TO NPCVOTE@EPIQGLOBAL.COM WITH "NPC INTERNATIONAL, INC." IN THE SUBJECT LINE.   PLEASE DO NOT DIRECT ANY INQUIRIES TO THE BANKRUPTCY COURT.

12.    THE VOTING AGENT IS NOT AUTHORIZED TO AND WILL NOT PROVIDE LEGAL ADVICE.

<u>**E-Ballot Voting Instructions**</u>

1.    Epiq's "E-Ballot" platform is the sole manner in which Ballots will be accepted via electronic or online transmission.  Ballots submitted by facsimile, email or other means of electronic transmission will not be counted.  If voting online, to have your vote counted, you must electronically complete, sign, and submit the electronic Ballot by utilizing the E-Ballot platform on Epiq's website at https://dm.epiq11.com/npc.  Your Ballot must be received by Epiq no later than the Voting Deadline, unless such time is extended by the Debtors.
**HOLDERS ARE STRONGLY ENCOURAGED TO SUBMIT THEIR BALLOTS VIA THE E-BALLOT PLATFORM.**

2.    If you prefer to return a hard copy of your Ballot, you may return it in the enclosed preaddressed, postage prepaid envelope or:

| By first class mail to: | Via overnight courier or hand delivery to: |
|:---:|:---:|
| **NPC International  – Ballot Processing**<br>c/o Epiq Corporate Restructuring, LLC<br>P.O. Box 4422<br>Beaverton, OR 97076-4422 | **NPC International  -Ballot Processing**<br>c/o Epiq Corporate Restructuring, LLC<br>10300 SW Allen Boulevard<br>Beaverton, OR 97005 |

3.    To ensure that your vote is counted, you must: (a) complete the Ballot; (b) indicate your decision either to accept or reject the Plan in the boxes provided in Item 2 of the Ballot; and (c) sign and return the Ballot to the address set forth on the enclosed pre-addressed envelope or in a method provided herein.  The Voting Deadline for the receipt of Ballots by Epiq is **<u>December 17, 2020 at 11:59 p.m.</u>** (Prevailing Central Time). Your completed Ballot must be received by Epiq on or before the Voting Deadline.

**Exhibit 4**

**Form of General Unsecured Claims (Class 6) Ballot**

No person has been authorized to give any information or advice, or to make any representation, other than what is included in the Disclosure Statement and other materials accompanying this Ballot.[1]

PLEASE NOTE THAT, EVEN IF YOU INTEND TO VOTE TO REJECT THE PLAN, YOU MUST STILL READ, COMPLETE, AND EXECUTE THIS ENTIRE BALLOT.

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| In re | § | Chapter 11 |
| | § | |
| NPC INTERNATIONAL, INC., | § | Case No. 20–33353 (DRJ) |
| *et al.*, | § | |
| Debtors.[2] | § | (Jointly Administered) |
| | § | |

## BALLOT FOR VOTING TO
## ACCEPT OR REJECT THE JOINT CHAPTER 11 PLAN
## OF NPC INTERNATIONAL, INC. AND ITS AFFILIATED DEBTORS

### CLASS 6: GENERAL UNSECURED CLAIMS

---

**VOTING DEADLINE: DECEMBER 17, 2020 AT 11:59 P.M.
(PREVAILING CENTRAL TIME) (THE "VOTING DEADLINE")**

**For your vote to be counted, this Ballot must be properly completed, signed, and returned so that it is actually received by the Voting Agent, Epiq Corporate Restructuring, LLC, by no later than December 17, 2020 at 11:59 p.m. (Prevailing Central Time), unless such time is extended in writing by the Debtors. Please submit a Ballot with your vote in the envelope provided or by one of the following methods:**

---

[1] All capitalized terms used but not defined herein or in the enclosed voting instructions have the meanings ascribed to them in the Plan, attached as **Exhibit A** to the Disclosure Statement.

[2] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are NPC International, Inc. (7298); NPC Restaurant Holdings I LLC (0595); NPC Restaurant Holdings II LLC (0595); NPC Holdings, Inc. (6451); NPC International Holdings, LLC (8234); NPC Restaurant Holdings, LLC (9045); NPC Operating Company B, Inc. (6498); and NPC Quality Burgers, Inc. (6457). The Debtors' corporate headquarters and service address is 4200 W. 115th Street, Suite 200, Leawood, KS 66211.

WEIL:\97662622\9\65961.0004

**If Submitting Your Vote through the E-Balloting Portal**

**Epiq will accept Ballots if properly completed through the E-Balloting Portal. To submit your Ballot via the E-Balloting Portal, visit https://dm.epiq11.com/NPC, click on the "E-Ballot" section of Epiq's website for the Debtors and follow the instructions to submit your Ballot.**

**IMPORTANT NOTE: You will need the following information to retrieve and submit your customized electronic Ballot:**

**Unique E-Ballot ID#:**_____

**Epiq's E-Balloting Portal is the sole manner in which Ballots will be accepted via electronic or online transmission.  Ballots submitted by facsimile, email or other means of electronic transmission will not be counted.**

**Each E-Ballot ID# is to be used solely for voting only those Claims described in your electronic Ballot.  Please complete and submit an electronic Ballot for each E-Ballot ID# you receive, as applicable.**

**If your Ballot is not received by Epiq on or before the Voting Deadline, and such Voting Deadline is not extended by the Debtors as noted above, your vote will not be counted.**

**If by First Class Mail:**

**NPC International  - Ballot Processing**
**c/o Epiq Corporate Restructuring, LLC**
**P.O. Box 4422**
**Beaverton, OR 97076-4422**

**If by First Class Mail, Overnight Courier or Overnight Mail:**

**NPC International  - Ballot Processing**
**c/o Epiq Corporate Restructuring LLC**
**10300 SW Allen Boulevard**
**Beaverton, OR 97005**

**BALLOTS WILL <u>NOT</u> BE ACCEPTED BY TELECOPY, FACSIMILE, EMAIL, OR OTHER ELECTRONIC MEANS OF TRANSMISSION.**

NPC International, Inc. and its affiliated debtors in the above-captioned chapter 11 cases (collectively, the "**Debtors**") are soliciting votes with respect to the *First Amended Joint Chapter 11 Plan of NPC International, Inc. and Its Affiliated Debtors* (as may be amended,

2

modified or supplemented from time to time, the "**Plan**") (Docket No. 921). The Plan is attached as **Exhibit A** to the *Disclosure Statement for the First Amended Joint Chapter 11 Plan of NPC International, Inc. and Its Affiliated Debtors*, filed on October 29, 2020 (Docket No. 922) (as may be further amended, the **"Disclosure Statement"**).

Please use this Ballot to cast your vote to accept or reject the Plan if you are, as of October 27, 2020 (the "**Voting Record Date**"), a holder of any general unsecured Claim (a "**Holder**"), against the Debtors that is not (i) an Administrative Expense Claim, (ii) a Priority Tax Claim, (iv) a Fee Claim, (v) a Priority Term Loan Secured Claim, (vi) an Other Secured Claim, (vii) a First Lien Claim, (viii) an Intercompany Claim, (x) a Subordinated Claim, (x) a First Lien Deficiency Claims, (xi) a Second Lien Deficiency Claim, or (xii) a Claim that is secured or entitled to priority under the Bankruptcy Code (a "**General Unsecured Claim**").

The Disclosure Statement provides information to assist you in deciding whether to accept or reject the Plan. If you do not have a Disclosure Statement, you may obtain a copy from Epiq Corporate Restructuring, LLC (the "**Voting Agent**") at no charge by accessing the Debtors' restructuring website at https://dm.epiq11.com/npc, by email at NPCvote@epiqglobal.com, or by telephone at 1-866-897-6433 (domestic toll-free) or 1-646-282-2500 (international).

If you have any questions on how to properly complete this Ballot, please contact the Voting Agent at 1-866-897-6433 (domestic toll-free) or 1-646-282-2500 (international). Please be advised that the Voting Agent cannot provide legal advice. You may wish to seek legal advice concerning the Plan and the classification and treatment of your Class 6 General Unsecured Claim under the Plan.

---

**IMPORTANT NOTICE REGARDING TREATMENT FOR CLASS 6**

As described in more detail in the Disclosure Statement, if the Plan is confirmed and the Effective Date occurs, except to the extent that a holder of a General Unsecured Claim agrees to a less favorable treatment, on or as soon as reasonably practicable after the later of the Effective Date and the date on which such General Unsecured Claim becomes an Allowed Claim, each holder of an Allowed General Unsecured Claim shall receive, in full and final satisfaction of such Allowed Claim, such holder's Pro Rata share of: (1) in the event of a Sale Transaction, the remaining Sale Proceeds after the Allowed Priority Term Loan Secured Claims, the Allowed First Lien Secured Claims, and the Allowed Second Lien Secured Claims are satisfied in full and the Wind Down Budget has been fully funded, or (2) in the event of a Reorganization Transaction, (a) in the event neither the PH Sale Transaction nor the Wendy's Sale Transaction is consummated, New Warrants to purchase Reorganized Equity Interests representing in the aggregate 12.5% of the total outstanding Reorganized Equity Interests issued pursuant to this Plan as of the Effective Date, or (b) in the event either the PH Sale Transaction or the Wendy's Sale Transaction is consummated, New Warrants to purchase Reorganized Equity Interests representing in the aggregate 18.0% of the total outstanding Reorganized Equity Interests issued pursuant to this Plan as of the Effective Date; *provided* that, to the extent considered necessary or advisable for the Reorganized Debtors to remain a private company, without being required to register under Section 12(g) of the Exchange Act as a result of the

---

WEIL:\97662622\9\65961.0004

number of record holders of its outstanding securities, the Debtors may distribute to holders of Allowed General Unsecured Claims that declare under penalty of perjury that they are not accredited investors (as defined in Rule 501(a) of Regulation D under the Securities Act) Cash or other property in a reasonably equivalent amount to the discounted net present value of the New Warrants in accordance with the underlying enterprise valuation of the Reorganized Debtors (which aggregate Cash amount shall be subject to the consent of the Requisite Creditors); *provided*, *further*, that holders of Allowed First Lien Deficiency Claims (if any) shall be entitled to vote but, except as otherwise provided in this Plan, deemed to have waived the entitlement to receive the New Warrants.

**PLEASE READ THE DISCLOSURE STATEMENT AND PLAN FOR MORE DETAILS.**

The Plan can be confirmed by the United States Bankruptcy Court for the Southern District of Texas (the "**Bankruptcy Court**") and thereby made binding on you if it is accepted by the holders of (i) at least two-thirds in amount of the allowed Claims or Interests voted in each Impaired Class, and (ii) if the Impaired Class is a class of Claims, more than one-half in number of the allowed Claims voted in each Impaired Class, and if the Plan otherwise satisfies the applicable requirements of section 1129(a) under the Bankruptcy Code.

If the requisite acceptances are not obtained, the Bankruptcy Court may nonetheless confirm the Plan if it finds that the Plan (y) provides fair and equitable treatment to, and does not unfairly discriminate against, the Class or Classes rejecting the Plan and (z) otherwise satisfies the requirements of section 1129(b) of the Bankruptcy Code. If the Plan is confirmed by the Bankruptcy Court, it will be binding on you whether or not you vote or if you vote to reject the Plan. To have your vote counted, you must complete, sign, and return this Ballot to the Voting Agent by the Voting Deadline.

Your receipt of this Ballot does not indicate that your Claim(s) has been or will be Allowed. This Ballot is solely for purposes of voting to accept or reject the Plan and not for the purpose of allowance or disallowance of, or distribution on account of, Class 6 General Unsecured Claims. You must provide all of the information requested by this Ballot. Failure to do so may result in the disqualification of your vote.

**NOTICE REGARDING CERTAIN RELEASE,**
**EXCULPATION, AND INJUNCTION PROVISIONS IN PLAN**

**If you (i) vote to accept the Plan, (ii) do not vote either to accept or to reject the Plan and do not opt out of granting the releases set forth in the Plan, (iii) vote to reject the Plan but do not opt out of granting the releases set forth in the Plan, or (iv) were given notice of the opportunity to opt out of granting the releases set forth in the Plan but did not opt out, you shall be deemed to have consented to the releases contained in Section 10 of the Plan.**

10.5    *Injunction Against Interference With Plan.*

Except as otherwise provided in this Plan or in the Confirmation Order, upon the entry of the Confirmation Order, all holders of Claims and Interests and all other parties in interest, along with their

4

respective present and former affiliates, employees, agents, officers, directors, and principals, shall be enjoined from taking any action to interfere with the implementation or the occurrence of the Effective Date.

### 10.6   *Plan Injunction.*

(a)      Except as otherwise provided in this Plan or in the Confirmation Order, from and after the Effective Date, all Persons who have held, hold, or may hold Claims or Interests, and other parties in interest, along with their respective present or former employees, agents, officers, directors, principals, and affiliates, are, with respect to any such Claim or Interest, permanently enjoined after the entry of the Confirmation Order from:  (i) commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding of any kind (including any proceeding in a judicial, arbitral, administrative, or other forum) against or affecting, directly or indirectly, a Debtor, a Reorganized Debtor, or the Wind Down Co, or the property of any of the foregoing, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to, any of the foregoing Persons mentioned in this subsection (i) or any property of any such transferee or successor; (ii) enforcing, levying, attaching (including any prejudgment attachment), collecting, or otherwise recovering in any manner or by any means, whether directly or indirectly, any judgment, award, decree, or order against a Debtor, a Reorganized Debtor, or the Wind Down Co or its property, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to, any of the foregoing Persons mentioned in this subsection (ii) or any property of any such transferee or successor; (iii) creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against a Debtor, a Reorganized Debtor, or the Wind Down Co or any of its property, or any direct or indirect transferee of any property of, or successor in interest to, any of the foregoing Persons mentioned in this subsection (iii) or any property of any such transferee or successor; (iv) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of this Plan to the full extent permitted by applicable law; and (v) commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of this Plan; *provided*, that nothing contained in this Plan shall preclude such Persons who have held, hold, or may hold Claims against, or Interests in, a Debtor, a Reorganized Debtor, or the Wind Down Co from exercising their respective rights and remedies, or obtaining benefits, pursuant to and consistent with the terms of this Plan.

(b)      By accepting distributions pursuant to this Plan, each holder of an Allowed Claim or Interest shall be deemed to have affirmatively and specifically consented to be bound by this Plan, including the injunctions set forth in Section 10.6 of this Plan and all transactions, documents, and agreements contemplated hereunder that govern the property that is the subject of such distributions.

### 10.7   *Releases.*

(a)      **Release by Debtors.  As of the Effective Date, except for the rights and remedies that remain in effect from and after the Effective Date to enforce this Plan and the obligations contemplated by the Definitive Documents and the documents in the Plan Supplement or as otherwise provided in any order of the Bankruptcy Court, on and after the Effective Date, the Released Parties will be deemed conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged, by and on behalf of the Debtors, the Wind Down Co, the Reorganized Debtors, and the Estates, in each case on behalf of themselves and their respective successors, assigns, and representatives and any and all other Persons that may purport to assert any Cause of Action derivatively, by or through the foregoing Persons, from any and all Claims and Causes of Action (including any derivative claims, asserted or assertable on behalf of the Debtors, the Wind Down Co, the Reorganized Debtors, or their Estates), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, existing or hereinafter arising,**

5

in law, equity, contract, tort, or otherwise, by statute, violations of federal or state securities laws or otherwise that the Debtors, the Wind Down Co, the Reorganized Debtors, the Estates, or any of their respective affiliates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other Person, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Chapter 11 Cases, the Restructuring, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in this Plan, the business or contractual arrangements between any Debtor and any Released Party, the restructuring of Claims and Interests before or during the Chapter 11 Cases, the negotiation, formulation, preparation, execution, filing, and/or consummation of this Plan, the Restructuring Support Agreement, the Disclosure Statement, New QB First Lien Term Loan (if applicable), New QB First Lien Term Loan Credit Documents (if applicable), the New Shareholders Agreement, the New Warrant Agreement, the PH Sale Process, the Wendy's Sale Process, the WholeCo Sale Process, the Sale Transaction (if applicable), the Sale Documents (if applicable), the Rights Offering, the Definitive Documents and the documents in the Plan Supplement or related agreements, instruments, or other documents relating thereto, or the solicitation of votes with respect to the Plan, in all cases, based upon any act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date (such Claims and Causes of Action, the "*Debtor Claims*").  Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (i) any post-Effective Date obligations of any party or entity under this Plan, any transaction thereunder, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement this Plan or (ii) any individual from any claim related to an act or omission that is determined by a court of competent jurisdiction to have constituted a criminal act, intentional fraud, gross negligence or willful misconduct. Notwithstanding anything else herein, the holders of First Lien Secured Claims shall not pursue, prosecute or assert any of the Debtor Claims, but shall not waive any entitlement, on account of any First Lien Deficiency Claims, to any recovery resulting from of any party's pursuit, prosecution, resolution, settlement or adjudication of any Debtor Claims retained by any entity under or pursuant to the Plan (including any Retained Causes of Action), if any.

(b)　　**Releases by Holders of Claims or Interests.**  As of the Effective Date, except as set forth in this Plan and except for the rights that remain in effect from and after the Effective Date to enforce this Plan, the Definitive Documents, and the documents in the Plan Supplement and the obligations contemplated by the Restructuring, on and after the Plan Effective Date, the Released Parties will be deemed conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged, to the maximum extent permitted by law, by the Releasing Parties, in each case from any and all Claims and Causes of Action whatsoever (including any derivative claims, asserted or assertable on behalf of the Debtors, the Wind Down Co, the Reorganized Debtors, or their Estates; such Claims or Causes of Action, the "*Additional Debtor Claims*"), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, existing or hereinafter arising, whether in law or equity, whether sounding in tort or contract, whether arising under federal or state statutory or common law, or any other applicable international, foreign, or domestic law, rule, statute, regulation, treaty, right, duty, requirement or otherwise, that such holders or their estates, affiliates, heirs, executors, administrators, successors, assigns, managers, accountants, attorneys, representatives, consultants, agents, and any other Persons claiming under or through them would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other Person, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Wind Down Co, the Reorganized Debtors, or their Estates, the Chapter 11 Cases, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or

6

events giving rise to, any Claim or Interest that is treated in this Plan, the business or contractual arrangements or interactions between any Debtor and any Released Party, the Restructuring, the restructuring of any Claim or Interest before or during the Chapter 11 Cases, the negotiation, formulation, preparation, execution, filing, and/or consummation of this Plan, the Restructuring Support Agreement, the Disclosure Statement, New QB First Lien Term Loan (if applicable), New QB First Lien Term Loan Credit Documents (if applicable), the New Shareholders Agreement, the New Warrant Agreement, the PH Sale Process, the Wendy's Sale Process, the WholeCo Sale Process, the Sale Transaction (if applicable), the Sale Documents (if applicable), the Rights Offering, the Definitive Documents and the documents in the Plan Supplement, and related agreements, instruments, and other documents, and the negotiation, formulation, preparation, or implementation thereof, the solicitation of votes with respect to this Plan, or any other act or omission related to any of the foregoing.  Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (i) any post-Effective Date obligations of any party or entity under the Plan, any transaction thereunder, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement this Plan or (ii) any individual from any claim related to an act or omission that is determined by a court of competent jurisdiction to have constituted a criminal act, intentional fraud, gross negligence or willful misconduct.  Notwithstanding anything else herein, the holders of First Lien Secured Claims shall not pursue, prosecute or assert any of the Additional Debtor Claims, but shall not waive any entitlement, on account of any First Lien Deficiency Claims, to any recovery resulting from of any party's pursuit, prosecution, resolution, settlement or adjudication of any Additional Debtor Claims retained by any entity under or pursuant to the Plan (including any Retained Causes of Action), if any.

### 10.8   *Exculpation.*

To the fullest extent permitted by applicable law, no Exculpated Party will have or incur, and each Exculpated Party will be released and exculpated from, any Claim or Cause of Action in connection with or arising out of the administration of the Chapter 11 Cases; the negotiation, formulation, preparation, execution, filing, and/or consummation of the New QB First Lien Term Loan (if applicable), the New QB First Lien Term Loan Credit Documents (if applicable), the PH Sale Process, the Wendy's Sale Process, the WholeCo Sale Process, the Sale Documents (if applicable), the Management Incentive Plan, the Disclosure Statement, the Restructuring Support Agreement, the Restructuring, the Sale Transaction (if applicable), the Rights Offering, the New Shareholders Agreement, the New Warrant Agreement, and this Plan (including the Definitive Documents and the documents in the Plan Supplement), or the solicitation of votes for, or confirmation of, this Plan; the funding of this Plan and the transactions contemplated thereby; the Confirmation Order; the occurrence of the Effective Date; the administration of this Plan or the property to be distributed under this Plan; the issuance of Securities under or in connection with this Plan; the purchase, sale, or rescission of the purchase or sale of any Security of the Debtors or the Reorganized Debtors; or the transactions in furtherance of any of the foregoing; other than Claims or Causes of Action arising out of or related to any act or omission of an Exculpated Party that is a criminal act or constitutes intentional fraud, gross negligence, or willful misconduct as determined by a Final Order, but in all respects such Persons will be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to this Plan.  The Exculpated Parties have acted in compliance with the applicable provisions of the Bankruptcy Code with regard to the solicitation and distribution of securities pursuant to the Plan and, therefore, are not, and on account of such distributions will not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of this Plan or such distributions made pursuant to this Plan, including the issuance of Securities thereunder.  The exculpation will be in addition to, and not in limitation of, all other releases, indemnities, exculpations, and any other applicable law or rules protecting such Exculpated Parties from liability.

### 10.9 *Injunction Related to Releases and Exculpation.*

The Confirmation Order shall permanently enjoin the commencement or prosecution by any Person or entity, whether directly, derivatively, or otherwise, of any Claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, losses, or liabilities released pursuant to this Plan, including the claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, and liabilities released or exculpated in this Plan or the Confirmation Order.

**Relevant Definitions Related to Release and Exculpation Provisions**:

*"Exculpated Parties"* means, collectively, the Exculpated Fiduciaries and the Section 1125(e) Parties.

*"Exculpated Fiduciaries"* means, collectively, and in each case in their capacities as such during the Chapter 11 Cases (i) the Debtors, (ii) the Reorganized Debtors, (iii) the Creditors' Committee and each of its members in their capacity as such, and (iv) with respect to each of the foregoing Persons in clauses (i) through (iii), such Persons' Related Persons and their respective heirs, executors, estates, and nominees, in each case in their capacity as such.

*"Section 1125(e) Parties"* means, collectively, (i) the Consenting Creditors, (ii) each of the Prepetition Priority/1L Agents (solely in their capacity as such), and (iii) with respect to each of the foregoing Persons in clauses (i) and (ii), such Persons' Related Persons, and their respective heirs, executors, estates, and nominees, each in their capacity as such.

*"Related Parties"* means with respect to a Person, that Person's current and former Affiliates, and such Persons' and their current and former Affiliates' predecessors, successors, assigns, and current and former subsidiaries, officers, directors, principals, equity holders (regardless of whether such interests are held directly or indirectly), members, partners (including both general and limited partners), managers, employees, agents, advisory board members, management companies, managed accounts or funds, affiliated investment funds or investment vehicles, and Representatives.

*"Released Parties"* means, collectively, each in their respective capacities as such, (i) the Debtors, (ii) the Reorganized Debtors, (iii) the Consenting Creditors, (iv) the Sponsors, (v) Prepetition Priority/1L Agents, and (vi) with respect to each of the foregoing Persons, in clauses (i) through (v), all Related Parties. Notwithstanding the foregoing, any Person that opts out of the releases set forth in <u>Section 10.7(b)</u> of this Plan shall not be deemed a Released Party thereunder.

*"Releasing Parties"* means, collectively, each in their respective capacities as such, (i) the holders of all Claims or Interests that vote to accept this Plan, (ii) the holders of all Claims or Interests whose vote to accept or reject this Plan is solicited but that do not vote either to accept or to reject this Plan, (iii) the holders of all Claims or Interests that vote, or are deemed, to reject this Plan but do not opt out of granting the releases set forth herein, (iv) the holders of all Claims and Interests that were given notice of the opportunity to opt out of granting the releases set forth herein but did not opt out, and (v) the Released Parties.

**YOU ARE ADVISED AND ENCOURAGED TO CAREFULLY REVIEW AND CONSIDER THE PLAN, INCLUDING THE RELEASE, EXCULPATION AND INJUNCTION PROVISIONS, AS YOUR RIGHTS MIGHT BE AFFECTED.**

**PLEASE READ THE ATTACHED VOTING INFORMATION
AND INSTRUCTIONS HERETO BEFORE COMPLETING THIS BALLOT**

PLEASE COMPLETE ITEMS 1, 2, 3, AND 4.  IF THIS BALLOT HAS NOT BEEN PROPERLY SIGNED IN THE SPACE PROVIDED, YOUR VOTE MAY NOT BE VALID OR COUNTED AS HAVING BEEN CAST.

**Item 1.  Amount of Claims**.  The undersigned hereby certifies that, as of the Voting Record Date, the undersigned was the Holder (or authorized signatory of such a Holder) of Claims in Class 6 (General Unsecured Claims) in the amount set forth below.[3]

$\$$_____

Debtor: _____

**Item 2.  Votes on the Plan**.  Please vote either to accept or to reject the Plan with respect to your Claims below.  Any Ballot not marked either to accept or reject the Plan, or marked both to accept and reject the Plan, shall not be counted in determining acceptance or rejection of the Plan.

**Prior to voting on the Plan, please note the following:**

**If you vote to accept the Plan you shall be deemed to have consented to the release, injunction, and exculpation provisions set forth in Sections 10.5, 10.6, 10.7, 10.8, and 10.9 of the Plan.**

**If you (i) do not vote either to accept or reject the Plan, or (ii) vote to reject the Plan and, in each case, do not check the box in Item 3 below, you shall be deemed to have consented to the release provisions set forth in Section 10.7(b) of the Plan.**

**The Disclosure Statement and the Plan must be referenced for a complete description of the release, injunction, and exculpation.**

The undersigned Holder of a Class 6 General Unsecured Claim votes to (check <u>one</u> box):

☐  **Accept** the Plan          ☐ **Reject** the Plan

**Item 3.  Optional Opt Out Release Election**.  Check the box below if you elect not to grant the releases contained in Section 10.7(b) of the Plan.  If you voted to reject the Plan in Item 2 above, or if you are abstaining from voting to accept or reject the Plan, check this box if you elect not to grant the releases contained in Section 10.7(b) of the Plan.  Election to withhold consent is at your option.  If you voted to accept the Plan in Item 2 above, you <u>may not</u> complete this Item 3, and if you complete this Item 3, your "opt out" election will be ineffective.  If you submit a rejecting

---

[3]  For voting purposes only, subject to tabulation rules.

Ballot, or if you abstain from submitting a Ballot, and in each case, you do not check the box below, you will be deemed to consent to the releases contained in Section 10.7(b) of the Plan to the fullest extent permitted by applicable law.  The Holder of the Class 6 General Unsecured Claim set forth in Item 1 elects to:

☐　　**OPT OUT** of the releases contained in Section 10.7(b) of the Plan.

**Item 4.  Acknowledgments**. By signing this Ballot, the Holder (or authorized signatory of such Holder) acknowledges receipt of the Plan, the Disclosure Statement, and the other applicable solicitation materials, and certifies that (i) it has the power and authority to vote to accept or reject the Plan, (ii) it was the Holder (or is entitled to vote on behalf of such Holder) of the Claims in Class 6 (General Unsecured Claims) described in item 1 as of the Voting Record Date, and (iii) all authority conferred or agreed to be conferred pursuant to this Ballot, and every obligation of the undersigned hereunder, shall be binding on the transferees, successors, assigns, heirs, executors, administrators, trustees in bankruptcy, and legal representatives of the undersigned, and shall not be affected by, and shall survive, the death or incapacity of the undersigned.

_____
Name of Holder

_____
Signature

_____
Name of Signatory

_____
If by Authorized Agent, Name and Title

_____
Street Address

_____
City, State, Zip Code

_____
Telephone Number

_____
Date Completed

_____
E-Mail Address

11

**VOTING INFORMATION AND INSTRUCTIONS FOR COMPLETING THE BALLOT**

1.     Ballots received after the Voting Deadline (if the Voting Deadline has not been extended) may not, at the Debtors' discretion, be counted.  **The Voting Agent will tabulate all properly completed Ballots received on or before the Voting Deadline.**

2.     Complete the Ballot by providing all the information requested, signing, dating, and returning the Ballot to the Voting Agent.  Any Ballot that is illegible, contains insufficient information to identify the Holder, or is unsigned will not be counted.  Ballots may not be submitted to the Voting Agent by facsimile.  If neither the "accept" nor "reject" box is checked in Item 2, both boxes are checked in Item 2, or the Ballot is otherwise not properly completed, executed, or timely returned, then the Ballot shall not be counted in determining acceptance or rejection of the Plan.

3.     You must vote all your Claims within a single Class under the Plan either to accept or reject the Plan.  Accordingly, if you return more than one Ballot voting different or inconsistent Claims within a single Class under the Plan, the Ballots are not voted in the same manner, and you do not correct this before the Voting Deadline, those Ballots will not be counted.  An otherwise properly executed Ballot that attempts to partially accept and partially reject the Plan likewise will not be counted.

4.     The Ballot does not constitute, and shall not be deemed to be, a proof of Claim or an assertion or admission of Claims.

5.     The Ballot is not a letter of transmittal and may not be used for any purpose other than to vote to accept or reject the Plan.

6.     If you cast more than one Ballot voting the same Claims prior to the Voting Deadline, the latest received, properly executed Ballot submitted to the Voting Agent will supersede any prior Ballot.

7.     If (i) the Debtors revoke or withdraw the Plan, or (ii) the Confirmation Order is not entered or consummation of the Plan does not occur, this Ballot shall automatically be null and void and deemed withdrawn without any requirement of affirmative action by or notice to you.

8.     There may be changes made to the Plan that do not cause material adverse effects on an accepting Class.  If such non-material changes are made to the Plan, the Debtors will not resolicit votes for acceptance or rejection of the Plan.

9.     NO PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR ADVICE, OR TO MAKE ANY REPRESENTATION, OTHER THAN WHAT IS CONTAINED IN THE MATERIALS MAILED WITH THIS BALLOT, ANY SUPPLEMENTAL INFORMATION PROVIDED BY THE DEBTORS, OR OTHER MATERIALS AUTHORIZED BY THE BANKRUPTCY COURT.

10.    PLEASE RETURN YOUR BALLOT PROMPTLY.

11.   IF YOU HAVE RECEIVED A DAMAGED BALLOT OR HAVE LOST YOUR BALLOT, OR IF YOU HAVE ANY QUESTIONS CONCERNING THIS BALLOT OR THE VOTING PROCEDURES, PLEASE CONTACT THE VOTING AGENT BY CALLING 1-866-897-6433 (DOMESTIC TOLL-FREE) OR 1-646-282-2500 (INTERNATIONAL) OR BY SENDING AN ELECTRONIC MAIL MESSAGE TO NPCVOTE@EPIQGLOBAL.COM WITH "NPC INTERNATIONAL, INC." IN THE SUBJECT LINE.   PLEASE DO NOT DIRECT ANY INQUIRIES TO THE BANKRUPTCY COURT.

12.   THE VOTING AGENT IS NOT AUTHORIZED TO AND WILL NOT PROVIDE LEGAL ADVICE.

### E-Ballot Voting Instructions

1.   Epiq's "E-Ballot" platform is the sole manner in which Ballots will be accepted via electronic or online transmission.  Ballots submitted by facsimile, email or other means of electronic transmission will not be counted.  If voting online, to have your vote counted, you must electronically complete, sign, and submit the electronic Ballot by utilizing the E-Ballot platform on Epiq's website at https://dm.epiq11.com/npc.  Your Ballot must be received by Epiq no later than the Voting Deadline, unless such time is extended by the Debtors.

     **HOLDERS ARE STRONGLY ENCOURAGED TO SUBMIT THEIR BALLOTS VIA THE E-BALLOT PLATFORM.**

2.   If you prefer to return a hard copy of your Ballot, you may return it in the enclosed preaddressed, postage prepaid envelope or:

| By first class mail to: | Via overnight courier or hand delivery to: |
|---|---|
| **NPC International  – Ballot Processing**<br>c/o Epiq Corporate Restructuring, LLC<br>P.O. Box 4422<br>Beaverton, OR 97076-4422 | **NPC International  -Ballot Processing**<br>c/o Epiq Corporate Restructuring, LLC<br>10300 SW Allen Boulevard<br>Beaverton, OR 97005 |

3.   To ensure that your vote is counted, you must: (a) complete the Ballot; (b) indicate your decision either to accept or reject the Plan in the boxes provided in Item 2 of the Ballot; and (c) sign and return the Ballot to the address set forth on the enclosed pre-addressed envelope or in a method provided herein.  The Voting Deadline for the receipt of Ballots by Epiq is **December 17, 2020 at 11:59 p.m.** (Prevailing Central Time). Your completed Ballot must be received by Epiq on or before the Voting Deadline.

WEIL:\97662622\9\65961.0004

# **EXHIBIT 5**

**Notice of Non-Voting Status**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| | § | |
| In re | § | **Chapter 11** |
| | § | |
| **NPC INTERNATIONAL, INC.,** | § | **Case No. 20–33353 (DRJ)** |
| *et al.*, | § | |
| Debtors.[1] | § | **(Jointly Administered)** |
| | § | |

**NOTICE OF NON-VOTING STATUS**

   On July 1, 2020 (the "**Petition Date**"), NPC International, Inc. and its affiliated debtors in the above-captioned chapter 11 cases, (collectively, the "**Debtors**"), each commenced a case under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the Southern District of Texas (the "**Bankruptcy Court**").

   On October 30, 2020, the Bankruptcy Court held a hearing (the "**Disclosure Statement Hearing**") at which it approved the *Disclosure Statement for the First Amended Joint Chapter 11 Plan of NPC International, Inc. and Its Affiliated Debtors*, filed on October 29, 2020 (Docket No. 922) (as may be amended, the "**Disclosure Statement**")[2] of NPC International, Inc. and its affiliated debtors in the above-captioned chapter 11 cases, and thereafter entered an order (the "**Order**") with respect thereto.  The Order, among other things, authorizes the Debtors to solicit votes to accept the *First Amended Joint Chapter 11 Plan of NPC International, Inc. and Its Affiliated Debtors*, filed on October 29, 2020 (Docket No. 921) (as may be amended, the "**Plan**"). If you have any questions about the status of your Interest or if you wish to obtain paper copies of the Plan and Disclosure Statement, you may contact the Debtors' Voting Agent, Epiq Corporate Restructuring, LLC, by email at  NPCvote@epiqglobal.com or by telephone at (855) 917-3563 (Toll-Free) or (503) 520-4403 (if calling from outside the U.S. or Canada).  Copies of the Plan and Disclosure Statement can also be accessed online at https://dm.epiq11.com/npc.  Please be advised that Epiq Corporate Restructuring, LLC cannot provide legal advice.

   **You are receiving this notice (this "Notice of Non-Voting Status") because, according to the Debtors' books and records, you are a holder of a Claim or Interest in:**

   (i)   **Class 1 (Other Secured Claims), Class 2 (Other Priority Claims), Class 3 (Priority Term Loan Secured Claims), Class 7 (Intercompany**

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are NPC International, Inc. (7298); NPC Restaurant Holdings I LLC (0595); NPC Restaurant Holdings II LLC (0595); NPC Holdings, Inc. (6451); NPC International Holdings, LLC (8234); NPC Restaurant Holdings, LLC (9045); NPC Operating Company B, Inc. (6498); and NPC Quality Burgers, Inc. (6457).  The Debtors' corporate headquarters and service address is 4200 W. 115th Street, Suite 200, Leawood, KS 66211.

[2]  Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Disclosure Statement or the Plan, as applicable.

**Claims), and Class 10 (Intercompany Interests) under the Plan, which provides that your Claim(s) against the Debtors is unimpaired and, therefore, pursuant to section 1126(f) of the Bankruptcy Code, you are presumed to have accepted the Plan and not entitled to vote on the Plan; and/or**

(ii)     **Class 8 (Subordinated Claims) and/or Class 9 (Existing Equity Interests) under the Plan, which provides that your Interest in the Debtors is not entitled to a recovery and, therefore, pursuant to section 1126(g) of the Bankruptcy Code, you are deemed to have rejected the Plan and not entitled to vote on the Plan.**

The deadline for filing objections to confirmation of the Plan is **December 17, 2020, at 11:59 p.m. (Prevailing Central Time)** (the "**Objection Deadline**").  Any objections to the Plan must be:  (i) in writing; (ii) filed with the Clerk of the Bankruptcy Court together with proof of service thereof; (iii) set forth the name of the objecting party, and the nature and amount of any claim or interest asserted by the objecting party against the estate or property of the Debtors, and state the legal and factual basis for such objection; and (iv) conform to the applicable Bankruptcy Rules and the Local Rules.

---

If you have questions about this Notice of Non-Voting Status, please contact Epiq Corporate Restructuring, LLC
**Telephone**: (855) 917-3563 (Toll-Free) or (503) 520-4403 (International)
**Email**: NPCvote@epiqglobal.com
**Website**: https://dm.epiq11.com/npc

---

## NOTICE REGARDING CERTAIN RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS IN PLAN

**If you (i) vote to accept the Plan, (ii) do not vote either to accept or to reject the Plan and do not opt out of granting the releases set forth in the Plan, (iii) vote to reject the Plan but do not opt out of granting the releases set forth in the Plan, or (iv) were given notice of the opportunity to opt out of granting the releases set forth in the Plan but did not opt out, you shall be deemed to have consented to the releases contained in Section 10 of the Plan.**

10.5     _Injunction Against Interference With Plan._

Except as otherwise provided in this Plan or in the Confirmation Order, upon the entry of the Confirmation Order, all holders of Claims and Interests and all other parties in interest, along with their respective present and former affiliates, employees, agents, officers, directors, and principals, shall be enjoined from taking any action to interfere with the implementation or the occurrence of the Effective Date.

WEIL:\97662622\9\65961.0004

10.6     _Plan Injunction._

(a)     Except as otherwise provided in this Plan or in the Confirmation Order, from and after the Effective Date, all Persons who have held, hold, or may hold Claims or Interests, and other parties in interest, along with their respective present or former employees, agents, officers, directors, principals, and affiliates, are, with respect to any such Claim or Interest, permanently enjoined after the entry of the Confirmation Order from:  (i) commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding of any kind (including any proceeding in a judicial, arbitral, administrative, or other forum) against or affecting, directly or indirectly, a Debtor, a Reorganized Debtor, or the Wind Down Co, or the property of any of the foregoing, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to, any of the foregoing Persons mentioned in this subsection (i) or any property of any such transferee or successor; (ii) enforcing, levying, attaching (including any prejudgment attachment), collecting, or otherwise recovering in any manner or by any means, whether directly or indirectly, any judgment, award, decree, or order against a Debtor, a Reorganized Debtor, or the Wind Down Co or its property, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to, any of the foregoing Persons mentioned in this subsection (ii) or any property of any such transferee or successor; (iii) creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against a Debtor, a Reorganized Debtor, or the Wind Down Co or any of its property, or any direct or indirect transferee of any property of, or successor in interest to, any of the foregoing Persons mentioned in this subsection (iii) or any property of any such transferee or successor; (iv) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of this Plan to the full extent permitted by applicable law; and (v) commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of this Plan; _provided_, that nothing contained in this Plan shall preclude such Persons who have held, hold, or may hold Claims against, or Interests in, a Debtor, a Reorganized Debtor, or the Wind Down Co from exercising their respective rights and remedies, or obtaining benefits, pursuant to and consistent with the terms of this Plan.

(b)     By accepting distributions pursuant to this Plan, each holder of an Allowed Claim or Interest shall be deemed to have affirmatively and specifically consented to be bound by this Plan, including the injunctions set forth in Section 10.6 of this Plan and all transactions, documents, and agreements contemplated hereunder that govern the property that is the subject of such distributions.

10.7     _Releases._

(a)     **Release by Debtors.  As of the Effective Date, except for the rights and remedies that remain in effect from and after the Effective Date to enforce this Plan and the obligations contemplated by the Definitive Documents and the documents in the Plan Supplement or as otherwise provided in any order of the Bankruptcy Court, on and after the Effective Date, the Released Parties will be deemed conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged, by and on behalf of the Debtors, the Wind Down Co, the Reorganized Debtors, and the Estates, in each case on behalf of themselves and their respective successors, assigns, and representatives and any and all other Persons that may purport to assert any Cause of Action derivatively, by or through the foregoing Persons, from any and all Claims and Causes of Action (including any derivative claims, asserted or assertable on behalf of the Debtors, the Wind Down Co, the Reorganized Debtors, or their Estates), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, contract, tort, or otherwise, by statute, violations of federal or state securities laws or otherwise that the Debtors, the Wind Down Co, the Reorganized Debtors, the Estates, or any of their respective affiliates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other Person, based on or**

relating to, or in any manner arising from, in whole or in part, the Debtors, the Chapter 11 Cases, the Restructuring, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in this Plan, the business or contractual arrangements between any Debtor and any Released Party, the restructuring of Claims and Interests before or during the Chapter 11 Cases, the negotiation, formulation, preparation, execution, filing, and/or consummation of this Plan, the Restructuring Support Agreement, the Disclosure Statement, New QB First Lien Term Loan (if applicable), New QB First Lien Term Loan Credit Documents (if applicable), the New Shareholders Agreement, the New Warrant Agreement, the PH Sale Process, the Wendy's Sale Process, the WholeCo Sale Process, the Sale Transaction (if applicable), the Sale Documents (if applicable), the Rights Offering, the Definitive Documents and the documents in the Plan Supplement or related agreements, instruments, or other documents relating thereto, or the solicitation of votes with respect to the Plan, in all cases, based upon any act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date (such Claims and Causes of Action, the "*Debtor Claims*"). Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (i) any post-Effective Date obligations of any party or entity under this Plan, any transaction thereunder, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement this Plan or (ii) any individual from any claim related to an act or omission that is determined by a court of competent jurisdiction to have constituted a criminal act, intentional fraud, gross negligence or willful misconduct. Notwithstanding anything else herein, the holders of First Lien Secured Claims shall not pursue, prosecute or assert any of the Debtor Claims, but shall not waive any entitlement, on account of any First Lien Deficiency Claims, to any recovery resulting from of any party's pursuit, prosecution, resolution, settlement or adjudication of any Debtor Claims retained by any entity under or pursuant to the Plan (including any Retained Causes of Action), if any.

(b)    <u>Releases by Holders of Claims or Interests</u>.  As of the Effective Date, except as set forth in this Plan and except for the rights that remain in effect from and after the Effective Date to enforce this Plan, the Definitive Documents, and the documents in the Plan Supplement and the obligations contemplated by the Restructuring, on and after the Plan Effective Date, the Released Parties will be deemed conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged, to the maximum extent permitted by law, by the Releasing Parties, in each case from any and all Claims and Causes of Action whatsoever (including any derivative claims, asserted or assertable on behalf of the Debtors, the Wind Down Co, the Reorganized Debtors, or their Estates; such Claims or Causes of Action, the "*Additional Debtor Claims*"), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, existing or hereinafter arising, whether in law or equity, whether sounding in tort or contract, whether arising under federal or state statutory or common law, or any other applicable international, foreign, or domestic law, rule, statute, regulation, treaty, right, duty, requirement or otherwise, that such holders or their estates, affiliates, heirs, executors, administrators, successors, assigns, managers, accountants, attorneys, representatives, consultants, agents, and any other Persons claiming under or through them would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other Person, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Wind Down Co, the Reorganized Debtors, or their Estates, the Chapter 11 Cases, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in this Plan, the business or contractual arrangements or interactions between any Debtor and any Released Party, the Restructuring, the restructuring of any Claim or Interest before or during the Chapter 11 Cases, the negotiation, formulation, preparation, execution, filing, and/or consummation of this Plan, the Restructuring

4

Support Agreement, the Disclosure Statement, New QB First Lien Term Loan (if applicable), New QB First Lien Term Loan Credit Documents (if applicable), the New Shareholders Agreement, the New Warrant Agreement, the PH Sale Process, the Wendy's Sale Process, the WholeCo Sale Process, the Sale Transaction (if applicable), the Sale Documents (if applicable), the Rights Offering, the Definitive Documents and the documents in the Plan Supplement, and related agreements, instruments, and other documents, and the negotiation, formulation, preparation, or implementation thereof, the solicitation of votes with respect to this Plan, or any other act or omission related to any of the foregoing. Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (i) any post-Effective Date obligations of any party or entity under the Plan, any transaction thereunder, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement this Plan or (ii) any individual from any claim related to an act or omission that is determined by a court of competent jurisdiction to have constituted a criminal act, intentional fraud, gross negligence or willful misconduct.   Notwithstanding anything else herein, the holders of First Lien Secured Claims shall not pursue, prosecute or assert any of the Additional Debtor Claims, but shall not waive any entitlement, on account of any First Lien Deficiency Claims, to any recovery resulting from of any party's pursuit, prosecution, resolution, settlement or adjudication of any Additional Debtor Claims retained by any entity under or pursuant to the Plan (including any Retained Causes of Action), if any.

   10.8   *Exculpation.*

   To the fullest extent permitted by applicable law, no Exculpated Party will have or incur, and each Exculpated Party will be released and exculpated from, any Claim or Cause of Action in connection with or arising out of the administration of the Chapter 11 Cases; the negotiation, formulation, preparation, execution, filing, and/or consummation of the New QB First Lien Term Loan (if applicable), the New QB First Lien Term Loan Credit Documents (if applicable), the PH Sale Process, the Wendy's Sale Process, the WholeCo Sale Process, the Sale Documents (if applicable), the Management Incentive Plan, the Disclosure Statement, the Restructuring Support Agreement, the Restructuring, the Sale Transaction (if applicable), the Rights Offering, the New Shareholders Agreement, the New Warrant Agreement, and this Plan (including the Definitive Documents and the documents in the Plan Supplement), or the solicitation of votes for, or confirmation of, this Plan; the funding of this Plan and the transactions contemplated thereby; the Confirmation Order; the occurrence of the Effective Date; the administration of this Plan or the property to be distributed under this Plan; the issuance of Securities under or in connection with this Plan; the purchase, sale, or rescission of the purchase or sale of any Security of the Debtors or the Reorganized Debtors; or the transactions in furtherance of any of the foregoing; other than Claims or Causes of Action arising out of or related to any act or omission of an Exculpated Party that is a criminal act or constitutes intentional fraud, gross negligence, or willful misconduct as determined by a Final Order, but in all respects such Persons will be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to this Plan.  The Exculpated Parties have acted in compliance with the applicable provisions of the Bankruptcy Code with regard to the solicitation and distribution of securities pursuant to the Plan and, therefore, are not, and on account of such distributions will not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of this Plan or such distributions made pursuant to this Plan, including the issuance of Securities thereunder.  The exculpation will be in addition to, and not in limitation of, all other releases, indemnities, exculpations, and any other applicable law or rules protecting such Exculpated Parties from liability.

WEIL:\97662622\9\65961.0004

### 10.9 *Injunction Related to Releases and Exculpation.*

The Confirmation Order shall permanently enjoin the commencement or prosecution by any Person or entity, whether directly, derivatively, or otherwise, of any Claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, losses, or liabilities released pursuant to this Plan, including the claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, and liabilities released or exculpated in this Plan or the Confirmation Order.

### Relevant Definitions Related to Release and Exculpation Provisions:

*"Exculpated Parties"* means, collectively, the Exculpated Fiduciaries and the Section 1125(e) Parties.

*"Exculpated Fiduciaries"* means, collectively, and in each case in their capacities as such during the Chapter 11 Cases (i) the Debtors, (ii) the Reorganized Debtors, (iii) the Creditors' Committee and each of its members in their capacity as such, and (iv) with respect to each of the foregoing Persons in clauses (i) through (iii), such Persons' Related Persons and their respective heirs, executors, estates, and nominees, in each case in their capacity as such.

*"Section 1125(e) Parties"* means, collectively, (i) the Consenting Creditors, (ii) each of the Prepetition Priority/1L Agents (solely in their capacity as such), and (iii) with respect to each of the foregoing Persons in clauses (i) and (ii), such Persons' Related Persons, and their respective heirs, executors, estates, and nominees, each in their capacity as such.

*"Related Parties"* means with respect to a Person, that Person's current and former Affiliates, and such Persons' and their current and former Affiliates' predecessors, successors, assigns, and current and former subsidiaries, officers, directors, principals, equity holders (regardless of whether such interests are held directly or indirectly), members, partners (including both general and limited partners), managers, employees, agents, advisory board members, management companies, managed accounts or funds, affiliated investment funds or investment vehicles, and Representatives.

*"Released Parties"* means, collectively, each in their respective capacities as such, (i) the Debtors, (ii) the Reorganized Debtors, (iii) the Consenting Creditors, (iv) the Sponsors, (v) Prepetition Priority/1L Agents, and (vi) with respect to each of the foregoing Persons, in clauses (i) through (v), all Related Parties. Notwithstanding the foregoing, any Person that opts out of the releases set forth in Section 10.7(b) of this Plan shall not be deemed a Released Party thereunder.

*"Releasing Parties"* means, collectively, each in their respective capacities as such, (i) the holders of all Claims or Interests that vote to accept this Plan, (ii) the holders of all Claims or Interests whose vote to accept or reject this Plan is solicited but that do not vote either to accept or to reject this Plan, (iii) the holders of all Claims or Interests that vote, or are deemed, to reject this Plan but do not opt out of granting the releases set forth herein, (iv) the holders of all Claims and Interests that were given notice of the opportunity to opt out of granting the releases set forth herein but did not opt out, and (v) the Released Parties.

**YOU ARE ADVISED AND ENCOURAGED TO CAREFULLY REVIEW AND CONSIDER THE PLAN, INCLUDING THE RELEASE, EXCULPATION AND INJUNCTION PROVISIONS, AS YOUR RIGHTS MIGHT BE AFFECTED.**

Dated: [●], 2020

/s/ *[DRAFT]*
WEIL, GOTSHAL & MANGES LLP
Alfredo R. Pérez (15776275)
700 Louisiana Street, Suite 1700
Houston, Texas  77002
Telephone:   (713) 546-5000
Facsimile:   (713) 224-9511
Email:      Alfredo.Perez@weil.com

-and-

WEIL, GOTSHAL & MANGES LLP
Ray C. Schrock, P.C. (admitted *pro hac vice*)
Kevin Bostel (admitted *pro hac vice*)
Natasha Hwangpo (admitted *pro hac vice*)
767 Fifth Avenue
New York, New York 10153
Telephone:      (212) 310-8000
Facsimile:      (212) 310-8007
Email:      Ray.Schrock@weil.com
              Kevin.Bostel@weil.com
              Natasha.Hwangpo@weil.com

*Attorneys for Debtors*

**OPTIONAL:  RELEASE OPT OUT FORM**

You are receiving this opt out form (the "**Release Opt Out Form**") because you are or may be a holder of a Claim or Interest that is not entitled to vote on the *First Amended Joint Chapter 11 Plan of NPC International, Inc. and Its Affiliated Debtors* (the "**Plan**").[14]  A holder of Claims and/or Interests is deemed to grant the third-party releases set forth below unless such holder affirmatively opts out on or before the Opt Out Deadline (as defined below).

If you believe you are a holder of a Claim or Interest with respect to the Debtors and choose to opt out of the third-party releases set forth in Section 10.7(b) of the Plan, please complete, sign and date this Release Opt Out Form and return it promptly via first class mail (or in the enclosed reply envelope provided), overnight courier, or hand delivery to the Voting Agent at the address set forth below:

**IF YOU WISH TO OPT OUT, PLEASE COMPLETE, SIGN, AND DATE THIS RELEASE OPT OUT FORM AND RETURN IT TO THE VOTING AGENT BY MAIL, OVERNIGHT OR HAND DELIVERY**
**TO:**

| If by First-Class Mail: | If by Overnight Courier or Hand Delivery: |
|---|---|
| NPC International – Ballot Processing | NPC International – Ballot Processing |
| c/o Epiq Corporate Restructuring, LLC | c/o Epiq Corporate Restructuring, LLC |
| P.O. Box 4422 | 10300 SW Allen Blvd. |
| Beaverton, Oregon 97076-4422 | Beaverton, Oregon 97005 |

**Alternatively, you may submit your Opt Out Form via the Voting Agent's online Opt Out portal, visit https://dm.epiq11.com/npc.  Click on the "E-OPT OUT FORM PORTAL" section of the website and follow the instructions to submit your Opt Out Form.**

**The Voting Agent's online Opt Out portal is the sole manner in which Opt Outs will be accepted via electronic or online transmission. Opt Outs submitted by facsimile, email or other means of electronic transmission will not be counted.**

**Holders who cast an Opt Out Form using the Voting Agent's online portal should NOT also submit a paper Opt Out Form.**

**THIS RELEASE OPT OUT FORM MUST BE ACTUALLY RECEIVED BY THE VOTING AGENT BY DECEMBER 17, 2020 AT 11:59 P.M. (PREVAILING CENTRAL TIME) (THE "OPT OUT DEADLINE").  IF THE RELEASE OPT OUT FORM IS RECEIVED AFTER THE OPT OUT DEADLINE, IT WILL NOT BE COUNTED.**

**Item 1**.  **Amount of Claim**.  The undersigned certifies that, as of October 27, 2020, the undersigned was the holder of Class 1 (Other Secured Claims), Class 2 (Other Priority Claims), Class 3 (Priority Term Loan Secured Claims), Class 7 (Intercompany Claims), Class 8 (Subordinate Claims), and/or Class 9 (Existing Equity Interests), as indicated below:

---

[14]     Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan or the Disclosure Statement.

| | |
|---|---|
| Class 1 (Other Secured Claims) | **Amount $_____** |
| Class 2 (Other Priority Claims) | **Amount $_____** |
| Class 3 (Priority Term Loan Secured Claims) | **Amount $_____** |
| Class 7 (Intercompany Claims) | **Amount $_____** |
| Class 8 (Subordinate Claims) | **Amount $_____** |
| Class 9 (Existing Equity Interests) | **_____ shares of Existing Equity Interests** |

**Item 2.  Releases.**

**The Plan contains the following release provisions:**

**NOTICE REGARDING CERTAIN RELEASE,
EXCULPATION, AND INJUNCTION PROVISIONS IN PLAN**

**If you (i) vote to accept the Plan, (ii) do not vote either to accept or to reject the Plan and do not opt out of granting the releases set forth in the Plan, or (iii) vote to reject the Plan but do not opt out of granting the releases set forth in the Plan, you shall be deemed to have consented to the releases contained in Section 10 of the Plan.**

**10.5**     *Injunction Against Interference With Plan.*

Except as otherwise provided in this Plan or in the Confirmation Order, upon the entry of the Confirmation Order, all holders of Claims and Interests and all other parties in interest, along with their respective present and former affiliates, employees, agents, officers, directors, and principals, shall be enjoined from taking any action to interfere with the implementation or the occurrence of the Effective Date.

**10.6**     *Plan Injunction.*

(a)     Except as otherwise provided in this Plan or in the Confirmation Order, from and after the Effective Date, all Persons who have held, hold, or may hold Claims or Interests, and other parties in interest, along with their respective present or former employees, agents, officers, directors, principals, and affiliates, are, with respect to any such Claim or Interest, permanently enjoined after the entry of the Confirmation Order from:  (i) commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding of any kind (including any proceeding in a judicial, arbitral, administrative, or other forum) against or affecting, directly or indirectly, a Debtor, a Reorganized Debtor, or the Wind Down Co, or the property of any of the foregoing, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to, any of the foregoing Persons mentioned in this subsection (i) or any property of any such transferee or successor; (ii) enforcing, levying, attaching (including any prejudgment attachment), collecting, or otherwise recovering in any manner or by any means, whether directly or indirectly, any judgment, award, decree, or order against a Debtor, a Reorganized Debtor, or the Wind Down Co or its property, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to, any of the foregoing Persons mentioned in this

9

subsection (ii) or any property of any such transferee or successor; (iii) creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against a Debtor, a Reorganized Debtor, or the Wind Down Co or any of its property, or any direct or indirect transferee of any property of, or successor in interest to, any of the foregoing Persons mentioned in this subsection (iii) or any property of any such transferee or successor; (iv) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of this Plan to the full extent permitted by applicable law; and (v) commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of this Plan; *provided*, that nothing contained in this Plan shall preclude such Persons who have held, hold, or may hold Claims against, or Interests in, a Debtor, a Reorganized Debtor, or the Wind Down Co from exercising their respective rights and remedies, or obtaining benefits, pursuant to and consistent with the terms of this Plan.

(b)     By accepting distributions pursuant to this Plan, each holder of an Allowed Claim or Interest shall be deemed to have affirmatively and specifically consented to be bound by this Plan, including the injunctions set forth in Section 10.6 of this Plan and all transactions, documents, and agreements contemplated hereunder that govern the property that is the subject of such distributions.

### *10.7   Releases.*

(a)     **Release by Debtors.  As of the Effective Date, except for the rights and remedies that remain in effect from and after the Effective Date to enforce this Plan and the obligations contemplated by the Definitive Documents and the documents in the Plan Supplement or as otherwise provided in any order of the Bankruptcy Court, on and after the Effective Date, the Released Parties will be deemed conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged, by and on behalf of the Debtors, the Wind Down Co, the Reorganized Debtors, and the Estates, in each case on behalf of themselves and their respective successors, assigns, and representatives and any and all other Persons that may purport to assert any Cause of Action derivatively, by or through the foregoing Persons, from any and all Claims and Causes of Action (including any derivative claims, asserted or assertable on behalf of the Debtors, the Wind Down Co, the Reorganized Debtors, or their Estates), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, contract, tort, or otherwise, by statute, violations of federal or state securities laws or otherwise that the Debtors, the Wind Down Co, the Reorganized Debtors, the Estates, or any of their respective affiliates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other Person, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Chapter 11 Cases, the Restructuring, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in this Plan, the business or contractual arrangements between any Debtor and any Released Party, the restructuring of Claims and Interests before or during the Chapter 11 Cases, the negotiation, formulation, preparation, execution, filing, and/or consummation of this Plan, the Restructuring Support Agreement, the Disclosure Statement, New QB First Lien Term Loan (if applicable), New QB First Lien Term Loan Credit Documents (if applicable), the New Shareholders Agreement, the New Warrant Agreement, the PH Sale Process, the Wendy's Sale Process, the WholeCo Sale Process, the Sale Transaction (if applicable), the Sale Documents (if applicable), the Rights Offering, the Definitive Documents and the documents in the Plan Supplement or related agreements, instruments, or other documents relating thereto, or the solicitation of votes with respect to the Plan, in all cases, based upon any act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date (such Claims and Causes of Action, the "*Debtor Claims*").  Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (i) any post-Effective Date obligations of any party or entity**

10

under this Plan, any transaction thereunder, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement this Plan or (ii) any individual from any claim related to an act or omission that is determined by a court of competent jurisdiction to have constituted a criminal act, intentional fraud, gross negligence or willful misconduct. Notwithstanding anything else herein, the holders of First Lien Secured Claims shall not pursue, prosecute or assert any of the Debtor Claims, but shall not waive any entitlement, on account of any First Lien Deficiency Claims, to any recovery resulting from of any party's pursuit, prosecution, resolution, settlement or adjudication of any Debtor Claims retained by any entity under or pursuant to the Plan (including any Retained Causes of Action), if any.

(b)      **Releases by Holders of Claims or Interests.**  As of the Effective Date, except as set forth in this Plan and except for the rights that remain in effect from and after the Effective Date to enforce this Plan, the Definitive Documents, and the documents in the Plan Supplement and the obligations contemplated by the Restructuring, on and after the Plan Effective Date, the Released Parties will be deemed conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged, to the maximum extent permitted by law, by the Releasing Parties, in each case from any and all Claims and Causes of Action whatsoever (including any derivative claims, asserted or assertable on behalf of the Debtors, the Wind Down Co, the Reorganized Debtors, or their Estates; such Claims or Causes of Action, the "*Additional Debtor Claims*"), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, existing or hereinafter arising, whether in law or equity, whether sounding in tort or contract, whether arising under federal or state statutory or common law, or any other applicable international, foreign, or domestic law, rule, statute, regulation, treaty, right, duty, requirement or otherwise, that such holders or their estates, affiliates, heirs, executors, administrators, successors, assigns, managers, accountants, attorneys, representatives, consultants, agents, and any other Persons claiming under or through them would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other Person, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Wind Down Co, the Reorganized Debtors, or their Estates, the Chapter 11 Cases, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in this Plan, the business or contractual arrangements or interactions between any Debtor and any Released Party, the Restructuring, the restructuring of any Claim or Interest before or during the Chapter 11 Cases, the negotiation, formulation, preparation, execution, filing, and/or consummation of this Plan, the Restructuring Support Agreement, the Disclosure Statement, New QB First Lien Term Loan (if applicable), New QB First Lien Term Loan Credit Documents (if applicable), the New Shareholders Agreement, the New Warrant Agreement, the PH Sale Process, the Wendy's Sale Process, the WholeCo Sale Process, the Sale Transaction (if applicable), the Sale Documents (if applicable), the Rights Offering, the Definitive Documents and the documents in the Plan Supplement, and related agreements, instruments, and other documents, and the negotiation, formulation, preparation, or implementation thereof, the solicitation of votes with respect to this Plan, or any other act or omission related to any of the foregoing.  Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (i) any post-Effective Date obligations of any party or entity under the Plan, any transaction thereunder, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement this Plan or (ii) any individual from any claim related to an act or omission that is determined by a court of competent jurisdiction to have constituted a criminal act, intentional fraud, gross negligence or willful misconduct.  Notwithstanding anything else herein, the holders of First Lien Secured Claims shall not pursue, prosecute or assert any of the Additional Debtor Claims, but shall not waive any entitlement, on account of any First Lien Deficiency Claims, to any recovery resulting from of any party's pursuit, prosecution, resolution, settlement or

WEIL:\97662622\9\65961.0004

adjudication of any Additional Debtor Claims retained by any entity under or pursuant to the Plan (including any Retained Causes of Action), if any.

### 10.8    *Exculpation.*

To the fullest extent permitted by applicable law, no Exculpated Party will have or incur, and each Exculpated Party will be released and exculpated from, any Claim or Cause of Action in connection with or arising out of the administration of the Chapter 11 Cases; the negotiation, formulation, preparation, execution, filing, and/or consummation of the New QB First Lien Term Loan (if applicable), the New QB First Lien Term Loan Credit Documents (if applicable), the PH Sale Process, the Wendy's Sale Process, the WholeCo Sale Process, the Sale Documents (if applicable), the Management Incentive Plan, the Disclosure Statement, the Restructuring Support Agreement, the Restructuring, the Sale Transaction (if applicable), the Rights Offering, the New Shareholders Agreement, the New Warrant Agreement, and this Plan (including the Definitive Documents and the documents in the Plan Supplement), or the solicitation of votes for, or confirmation of, this Plan; the funding of this Plan and the transactions contemplated thereby; the Confirmation Order; the occurrence of the Effective Date; the administration of this Plan or the property to be distributed under this Plan; the issuance of Securities under or in connection with this Plan; the purchase, sale, or rescission of the purchase or sale of any Security of the Debtors or the Reorganized Debtors; or the transactions in furtherance of any of the foregoing; other than Claims or Causes of Action arising out of or related to any act or omission of an Exculpated Party that is a criminal act or constitutes intentional fraud, gross negligence, or willful misconduct as determined by a Final Order, but in all respects such Persons will be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to this Plan.  The Exculpated Parties have acted in compliance with the applicable provisions of the Bankruptcy Code with regard to the solicitation and distribution of securities pursuant to the Plan and, therefore, are not, and on account of such distributions will not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of this Plan or such distributions made pursuant to this Plan, including the issuance of Securities thereunder.  The exculpation will be in addition to, and not in limitation of, all other releases, indemnities, exculpations, and any other applicable law or rules protecting such Exculpated Parties from liability.

### 10.9    *Injunction Related to Releases and Exculpation.*

The Confirmation Order shall permanently enjoin the commencement or prosecution by any Person or entity, whether directly, derivatively, or otherwise, of any Claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, losses, or liabilities released pursuant to this Plan, including the claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, and liabilities released or exculpated in this Plan or the Confirmation Order.

## Relevant Definitions Related to Release and Exculpation Provisions:

*"Exculpated Parties"* means, collectively, the Exculpated Fiduciaries and the Section 1125(e) Parties.

*"Exculpated Fiduciaries"* means, collectively, and in each case in their capacities as such during the Chapter 11 Cases (i) the Debtors, (ii) the Reorganized Debtors, (iii) the Creditors' Committee and each of its members in their capacity as such, and (iv) with respect to each of the foregoing Persons in clauses (i) through (iii), such Persons' Related Persons and their respective heirs, executors, estates, and nominees, in each case in their capacity as such.

WEIL:\97662622\9\65961.0004

*"**Section 1125(e) Parties**"* means, collectively, (i) the Consenting Creditors, (ii) each of the Prepetition Priority/1L Agents (solely in their capacity as such), and (iii) with respect to each of the foregoing Persons in clauses (i) and (ii), such Persons' Related Persons, and their respective heirs, executors, estates, and nominees, each in their capacity as such.

*"**Related Parties**"* means with respect to a Person, that Person's current and former Affiliates, and such Persons' and their current and former Affiliates' predecessors, successors, assigns, and current and former subsidiaries, officers, directors, principals, equity holders (regardless of whether such interests are held directly or indirectly), members, partners (including both general and limited partners), managers, employees, agents, advisory board members, management companies, managed accounts or funds, affiliated investment funds or investment vehicles, and Representatives.

*"**Released Parties**"* means, collectively, each in their respective capacities as such, (i) the Debtors, (ii) the Reorganized Debtors, (iii) the Consenting Creditors, (iv) the Sponsors, (v) Prepetition Priority/1L Agents, and (vi) with respect to each of the foregoing Persons, in clauses (i) through (v), all Related Parties.  Notwithstanding the foregoing, any Person that opts out of the releases set forth in Section 10.7(b) of this Plan shall not be deemed a Released Party thereunder.

*"**Releasing Parties**"* means, collectively, each in their respective capacities as such, (i) the holders of all Claims or Interests that vote to accept this Plan, (ii) the holders of all Claims or Interests whose vote to accept or reject this Plan is solicited but that do not vote either to accept or to reject this Plan, (iii) the holders of all Claims or Interests that vote, or are deemed, to reject this Plan but do not opt out of granting the releases set forth herein, (iv) the holders of all Claims and Interests that were given notice of the opportunity to opt out of granting the releases set forth herein but did not opt out, and (v) the Released Parties.

**PURSUANT TO THE PLAN, IF YOU, AS A HOLDER OF CLAIMS OR INTERESTS WHO HAS BEEN GIVEN NOTICE OF THE OPPORTUNITY TO OPT OUT OF GRANTING THE RELEASES SET FORTH IN SECTION 10.7(b) OF THE PLAN BUT DO NOT OPT OUT, YOU ARE AUTOMATICALLY DEEMED TO HAVE CONSENTED TO THE RELEASE PROVISIONS IN SECTION 10.7(b) OF THE PLAN.**

**By checking the box below, the undersigned holder of the Claims identified in Item 1 above, having received notice of the opportunity to opt out of granting the releases contained in Section 10.7(b) of the Plan:**

| |
|---|
| Elects to <u>opt out</u> of the releases contained in Section 10.7(b) of the Plan. |

**Item 3. Certifications.**  By signing this Release Opt Out Form, the undersigned certifies that:

WEIL:\97662622\9\65961.0004

(a)      as of the Voting Record Date, either: (i) the Holder is the Holder of the Claims or Interests set forth in Item 1; or (ii) the Holder is an authorized signatory for an entity that is a Holder of the Claims or Interests set forth in Item 1;

(b)      the undersigned has received a copy of the Notice of Non-Voting Status and the Release Opt Out Form and that the Release Opt Out Form is made pursuant to the terms and conditions set forth therein;

(c)      the undersigned has submitted the same election concerning the releases with respect to all Claims or Interests in a single Class set forth in Item 1; and

(d)      that no other Release Opt Out Form with respect to the amount(s) of Claims or Interests identified in Item 1 have been submitted or, if any other Release Opt Out Forms have been submitted with respect to such Claims or Interests, then any such earlier Release Opt Out Forms are hereby revoked.

Name of Holder:                 _____

Signature:                           _____

Name and Title of Signatory
(if different than Holder):      _____

Street Address:                    _____

City, State, Zip Code:           _____

Telephone Number:              _____

E-mail Address:                    _____

Date Completed:                   _____

**IF YOU WISH TO OPT OUT, PLEASE COMPLETE, SIGN, AND DATE THIS RELEASE OPT OUT FORM AND RETURN IT TO THE VOTING AGENT BY MAIL, OVERNIGHT OR HAND DELIVERY TO:**

| If by First-Class Mail: | If by Overnight Courier or Hand Delivery: |
| --- | --- |
| NPC International – Ballot Processing | NPC International – Ballot Processing |
| c/o Epiq Corporate Restructuring, LLC | c/o Epiq Corporate Restructuring, LLC |
| P.O. Box 4422 | 10300 SW Allen Blvd. |
| Beaverton, Oregon 97076-4422 | Beaverton, Oregon 97005 |

**THE OPT OUT DEADLINE IS <u>DECEMBER 17, 2020 AT 11:59 p.m. (PREVAILING CENTRAL TIME)</u>.**

14