## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

|  |  |
|---|---|
| In re: | Chapter 11 |
| NPC INTERNATIONAL, INC., *et al.*,[1] | Case No. 20–33353 (DRJ) |
| Debtors. | (Jointly Administered) |

## JOINT MOTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS AND THE DEBTORS TO ESTABLISH ALTERNATIVE DISPUTE RESOLUTION PROCEDURES FOR RESOLUTION OF <u>LITIGATION CLAIMS AND GRANTING RELATED RELIEF</u>

PLEASE NOTE THAT THROUGH THE ENTRY OF GENERAL ORDER 2020-10 ON MARCH 24, 2020, GENERAL ORDER 2020-11 ON APRIL 27, 2020, GENERAL ORDER 2020-17 ON JUNE 12, 2020, GENERAL ORDER 2020-18 ON JUNE 29, 2020, GENERAL ORDER 2020-19 ON AUGUST 7, 2020, AND GENERAL ORDER 2020-20 ON OCTOBER 19, 2020 THE COURT INVOKED AND THEN EXTENDED AND MODIFIED THE PROTOCOL FOR EMERGENCY PUBLIC HEALTH OR SAFETY CONDITIONS.

AUDIO COMMUNICATION WILL BE BY USE OF THE COURT'S DIAL-IN FACILITY. YOU MAY ACCESS THE FACILITY AT (832) 917-1510. YOU WILL BE RESPONSIBLE FOR YOUR OWN LONG DISTANCE CHARGES. ONCE CONNECTED, YOU WILL BE ASKED TO ENTER THE CONFERENCE ROOM NUMBER. JUDGE JONES' CONFERENCE ROOM NUMBER IS 205691.

YOU MAY VIEW VIDEO VIA GOTOMEETING. TO USE GOTOMEETING, THE COURT RECOMMENDS THAT YOU DOWNLOAD THE FREE GOTOMEETING APPLICATION. TO CONNECT, YOU SHOULD ENTER THE MEETING CODE "JUDGEJONES" IN THE GOTOMEETING APP OR CLICK THE LINK ON JUDGE JONES' HOME PAGE ON THE SOUTHERN DISTRICT OF TEXAS WEBSITE. ONCE CONNECTED, CLICK THE SETTINGS ICON IN THE UPPER RIGHT CORNER AND ENTER YOUR NAME UNDER THE PERSONAL INFORMATION SETTING.

HEARING APPEARANCES MUST BE MADE ELECTRONICALLY IN ADVANCE OF THE HEARING. TO MAKE YOUR ELECTRONIC APPEARANCE, GO TO THE SOUTHERN DISTRICT OF TEXAS WEBSITE AND SELECT "BANKRUPTCY COURT" FROM THE TOP MENU. SELECT "JUDGES' PROCEDURES," THEN "VIEW HOME PAGE" FOR JUDGE JONES. UNDER "ELECTRONIC APPEARANCE" SELECT "CLICK HERE TO SUBMIT ELECTRONIC APPEARANCE." SELECT THE CASE NAME, COMPLETE THE REQUIRED FIELDS AND CLICK "SUBMIT" TO COMPLETE YOUR APPEARANCE.

---

[1] The Debtors in these chapter 11 cases are: NPC International, Inc.; NPC Restaurant Holdings I LLC; NPC Restaurant Holdings II LLC; NPC Holdings, Inc.; NPC International Holdings, LLC; NPC Restaurant Holdings, LLC; NPC Operating Company B, Inc.; and NPC Quality Burgers, Inc.

IF YOU OBJECT TO THE RELIEF REQUESTED, YOU MUST RESPOND IN WRITING. UNLESS OTHERWISE DIRECTED BY THE COURT, YOU MUST FILE YOUR RESPONSE ELECTRONICALLY AT HTTPS://ECF.TXSB.USCOURTS.GOV/ WITHIN TWENTY-ONE DAYS FROM THE DATE THIS MOTION WAS FILED. OTHERWISE, THE COURT MAY TREAT THE PLEADING AS UNOPPOSED AND GRANT THE RELIEF REQUESTED.

The Official Committee of Unsecured Creditors (the "Committee") of NPC International, Inc. and its affiliated debtors in the above-captioned chapter 11 cases (the "Debtors" and, together with the Committee, the "Movants") and the Debtors, hereby jointly move this Court (the "Motion") for entry of an order, substantially in the form attached hereto as Exhibit A (the "Proposed Order"), authorizing the implementation of the alternative dispute resolution procedures described herein and attached as Exhibit 1 to the Proposed Order (the "ADR Procedures"), to facilitate the efficient resolution of prepetition personal injury and wrongful death claims (collectively, the "Litigation Claims") against the Debtors in these cases.  In support of the Motion, the Movants respectfully represent as follows:

## PRELIMINARY STATEMENT[2]

1.     As previewed at the Confirmation Hearing, the Movants seek Court approval of ADR Procedures designed to facilitate the expeditious and efficient resolution of certain prepetition personal injury and wrongful death claims asserted against the Debtors and their insurance carriers, including the Third Party Payors.  As of the general claims bar date, the Committee and the Debtors have identified numerous tort claims asserting personal injury and wrongful death relating to events that occurred prior to the Petition Date.  The asserted liquidated portion of these claims exceeds $100 million.  The Movants believe a streamlined process will help minimize expense for all interested parties and maximize distributable value for holders of allowed unsecured claims.

---

[2]     Capitalized terms used in this preliminary statement shall have the meaning ascribed to them elsewhere in this Motion.

2.      The ADR Procedures are designed to efficiently move the Litigation Claims forward while sparing the GUC Trust and the claimants the delay and costs attendant to litigation while safeguarding the claimants' due process rights.  The ADR Procedures will allow the GUC Trust to engage in an offer and exchange process with the goal of consensually resolving these claims.  If the offer and exchange process is unsuccessful, non-binding mediation will follow.  If the Procedures do not result in a consensual resolution, and to the extent this Court is not an appropriate forum to liquidate such claims, the claimants may seek to modify the Plan Injunction.

3.      Many of the claims at issue are contingent and unliquidated and present complex legal and factual issues.  Although the Debtors have insurance that may cover certain of these claims, the majority are unlikely to exceed the applicable self-insured retention amount. To the extent such claims are allowed and are not covered by insurance, the claimants will receive General Unsecured Claims entitled to their *pro rata* share of GUC Trust Assets.  For those claims that implicate insurance coverage, the ADR Procedures provide for participation by the Third Party Payors.  As such, the ADR Procedures balance the claimants' desire to resolve and liquidate their claims with the interests of the Third Party Payors while preserving the GUC Trust's limited resources.

4.      Prior to filing this Motion, the Movants sought the input of the Third Party Payors and those tort claimants that appeared at the confirmation hearing.  The ADR Procedures incorporate certain comments from these parties and the Movants will work to resolve any outstanding issues in advance of the hearing on the Motion to best position the GUC Trust to expeditiously resolve these claims.

3

## JURISDICTION

5.      This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334 and Article XI of the *Second Amended Joint Chapter 11 Plan of NPC International, Inc. and Its Affiliated Debtors* confirmed on January 29, 2021 (the "Plan").[3]

6.      This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

7.      Pursuant to Bankruptcy Rule 7008, the Movants consent to the entry of a final order by the Court in connection with this Motion to the extent it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

## BACKGROUND

8.      On July 1, 2020 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Texas, Houston Division (the "Court").

9.      On July 13, 2020, the Office of the United States Trustee for the Southern District of Texas appointed a three-member Committee consisting of: (i) Realty Income Corporation; (ii) International Pizza Hut Franchise Holders Association; and (iii) Jessica Padgett.

10.     On August 26, 2020, the Court entered the *Order (I) Establishing Deadline to File Proofs of Claim and (II) Approving Form and Manner of Notice Thereof*, establishing, among other deadlines, September 28, 2020 as the deadline, for each person or entity other than governmental units, to file proofs of prepetition claims (the "Bar Date").[4]  Over

---

[3]      Docket Nos. 1477, 1528.  Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Plan.

[4]      Docket No. 513.

3,300 claims have been filed against the Debtors asserting liquidated claims of approximately $2 billion.

11.     On January 18, 2021, the Debtors filed the Plan.  While the Plan originally contemplated both sale and reorganization options, the Debtors ultimately pursued a sale process that resulted in two transactions with the Stalking Horse Purchaser and the Wendy's Purchaser for substantially all of the Debtors' assets.  The sales were approved by the Court on January 25, 2021.[5]  The Debtors are currently working to close the Sale Transaction.

12.     The Plan is a liquidating plan incorporating multiple global case settlements, including the UCC Settlement.  In accordance with the UCC Settlement set forth in Section 5.2(b) of the Plan, the Plan provides for the establishment of the NPC International GUC Trust (the "GUC Trust").  On the effective date of the Plan (the "Effective Date"), the trustee of the GUC Trust (the "GUC Trustee") will be appointed to administer the GUC Trust.

13.     Pursuant to section 5.18 of the Plan and the GUC Trust Agreement, the GUC Trust will be established to administer certain post-Effective Date responsibilities under the Plan, including: (i) reconciling and resolving objections to certain General Unsecured Claims; (ii) making distributions to holders of certain Allowed General Unsecured Claims; and (iii) administering the GUC Trust Assets.[6]

14.     The GUC Trust Assets consist of (i) $3 million of sale proceeds; (ii) the GUC Trust Reserve; and (iii) the GUC Trust Causes of Action.  The Debtors have estimated an approximate 7% recovery for holders of Allowed General Unsecured Claims.[7]  Such projected

---

[5]     Docket Nos. 1474, 1475.

[6]     Plan, § 5.18.

[7]     *See Debtors' Updated Recovery Analysis* included as Exhibit C to the *Notice of Filing of Revised Exhibits to Disclosure Statement for First Amended Joint Chapter 11 Plan of NPC International, Inc. and its Affiliated Debtors.*  Docket No. 1458.

recoveries, however, depend on the GUC Trust's ability to efficiently reconcile unsecured claims to meet the Debtors' projected amount of $42 million of Allowed General Unsecured Claims.

15.     On January 29, 2021, the Court entered the *Findings of Fact, Conclusions of Law, and Order Confirming Second Amended Joint Chapter 11 Plan of NPC International, Inc. and Its Affiliated Debtors* (the "<u>Confirmation Order</u>").[8]  The Effective Date will not occur until the Debtors complete the Sale Transaction.

## THE LITIGATION CLAIMS

16.     As of the Petition Date, the Debtors operated approximately 1,600 Pizza Hut and Wendy's restaurants across the country.  In the course of their business, the Debtors are subject to various tort claims alleging, among other things, liability for claims relating to personal injury and wrongful death.  As of the Bar Date, numerous proofs of claims have been filed against the Debtors with respect to such Litigation Claims in amounts ranging from unliquidated claims, in whole or in part, to claims in excess of $10 million.  Collectively, the Litigation Claims exceed $100 million, plus contingent and unliquidated amounts.  The ultimate resolution of the Litigation Claims, and the costs associated with liquidating or disputing such claims, could materially impact distributions to holders of Allowed General Unsecured Claims.

17.     The Debtors maintain insurance policies that may provide coverage with respect to certain of the Litigation Claims.  Depending on the nature of the claim and the insurance policies implicated, certain of the Debtors' insurance policies impose a self-insured retention limit (the "<u>SIR</u>") of $1,000,000 per incident or a $500,000 deductible and exclude payment of the Debtors' defense or settlement costs.

---

[8]     Docket No. 1528.

18.     Prior to the entry of the Confirmation Order, several claimants sought relief from the automatic stay to pursue their respective claims in nonbankruptcy forums.  Given the pending bankruptcy cases and the cost of defending such actions in light of the SIR amounts, the Debtors objected to such requests, except to the extent that the claimant agreed to proceed solely against the Debtors' insurance.

19.     Although the automatic stay will terminate on the Effective Date, claimants will be prohibited from continuing to prosecute the Litigation Claims absent further relief from the Court.  In particular, Section 10.6(a) of the Plan (the "Plan Injunction") provides the following:

> [F]rom and after the Effective Date, all Persons who have held, hold, or may hold Claims or Interests, and other parties in interest, along with their respective present or former employees, agents, officers, directors, principals, and affiliates, are, with respect to any such Claim or Interest, permanently enjoined after the entry of the Confirmation Order from: (i) commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding of any kind (including any proceeding in a judicial, arbitral, administrative, or other forum) against or affecting, directly or indirectly, a Debtor, a Reorganized Debtor, the Wind Down Co, the Plan Administrator, the GUC Trust, or the GUC Trustee, or the property of any of the foregoing.[9]

Notwithstanding the entry of the Confirmation Order, claimants may file motions seeking to modify the Plan Injunction to proceed with their pending legal proceedings in other forums.

20.     As discussed at the Confirmation Hearing, the Movants recognize the complex legal issues at the intersection of bankruptcy and insurance law and the impact on the claimants, the Debtors' insurers or other third party payors, including their excess insurers (the "Third Party Payors"), the estates, and the GUC Trust if these issues are litigated.  The Movants

---

[9]     Plan, § 10.6(a).

are also cognizant of the potential untold costs of protracted litigation potentially across multiple jurisdictions and the impact on unsecured creditor recoveries.

### THE ADR PROCEDURES[10]

21.     In an effort to create a fair, efficient process to resolve Litigation Claims without depriving claimants of their due process rights, the Movants propose the following ADR Procedures.[11]

a)     <u>ADR Injunction</u>. To implement the ADR Procedures and ensure that parties comply, all Claimants will be enjoined from seeking to liquidate their Litigation Claims against the Debtors' estates other than through the ADR Procedures.  The ADR Injunction shall be in addition to, and cumulative with, the Plan Injunction.

b)     <u>Stage 1: Offer Exchange Procedure</u>. The first stage of the ADR Procedures is an offer and exchange process, requiring the parties to exchange information and settlement offers:

    1.     <u>ADR Notice</u>:  The GUC Trustee will mail the ADR Notice, which will inform the Claimants that the Litigation Claim is included in the ADR Procedures and either (1) make the Immediate Claim Settlement Offer, or (2) require the Claimant to return the ADR Notice with the Claim Information and Settlement Demand Form and supporting claim information.

---

[10]   Capitalized terms used in this summary and not otherwise defined shall have the meaning ascribed to such terms in the ADR Procedures.  This summary is qualified by the terms of the ADR Procedures and parties should review the terms of the ADR Procedures in their entirety for a complete understanding.  In the event of any inconsistencies or conflict between this summary and the terms of the ADR Procedures set forth on <u>Exhibit 1</u> to the Proposed Order, the terms of the ADR Procedures shall control.

[11]   Notably, the ADR Procedures do ***not*** apply to (i) workers' compensation claims; (ii) claims where there is a judgment entered or settlement fully executed by the applicable parties; (iii) direct claims against the Debtors' insurers arising out of claims for bodily injury in those states allowing direct actions against insurers; (iv) claims where the automatic stay has been lifted during the Chapter 11 Cases and which are being actively litigated in a nonbankruptcy forum; (v) Driver Reimbursements Claims, including Driver Claimant General Unsecured Claims and Driver Claimant Admin/Priority Claims, as such terms are used and defined in the Plan; (vi) any claims or actions relating to any claims between the Debtors' insurers, on one hand and the Debtors, on the other, including, but not limited to, any action relating to the claims of the insurers or actions relating to any and all irrevocable standby letters of credit or other collateral provided by or for the benefit of the Debtors to the insurers, including any letters of credit that were drawn down by a Third Party Payor prior to the Chapter 11 Cases (collectively, the "<u>Insurers' Collateral</u>"); and (vii) any declaratory judgment actions regarding insurance coverage issues.

2. <u>GUC Trustee's Response</u>: Within 45 days after the GUC Trust's receipt of a Claimant's Demand, or as soon thereafter as is practicable, the GUC Trust shall serve the GUC Trust's Response, which will either: (1) deny liability on the Litigation Claim; (2) accept the Claimant's Demand; (3) make a counter-offer to settle the Litigation Claim (the "<u>GUC Trust's Offer</u>"); or (4) request additional information.

3. <u>Claimant's Reply</u>: Each Claimant shall have 30 days after service of the GUC Trust's Offer within which to reply.

c) <u>Stage 2: Mediation Procedures</u>. If the offer exchange procedure does not result in settlement, the mediation shall occur within 60 days after appointment of a mediator.

d) <u>Stage 3: Relief from the Plan Injunction</u>. If the mediation does not result in settlement, a Claimant may then seek relief from the Plan Injunction by filing a motion with the Court and the GUC Trust and applicable Third Party Payor may oppose such relief or the Plan Injunction may be modified by stipulation executed by the GUC Trust and the Claimant.

e) <u>Litigation</u>. If a Claimant obtains an order modifying the Plan Injunction, litigation shall proceed in either (1) the nonbankruptcy forum in which the Litigation Claim was pending on the Petition Date, if any, subject to the GUC Trust's right to seek removal or transfer of venue; or (2) if the Litigation Claim was not pending in any forum on the Petition Date, then in the United States District Court for the Southern District of Texas or such other nonbankruptcy forum that has jurisdiction over the Litigation Claim.

f) <u>Failure to Comply with ADR Procedures</u>: If, absent written agreement with the GUC Trust, a Claimant fails to comply with the ADR Procedures, negotiate in good faith, or cooperate with the GUC Trust, the Court may, after notice and a hearing, find such conduct to be in violation of the ADR Order or an abandonment of or failure to prosecute the Litigation Claim, or both. Upon such finding(s), the Court may, among other things, disallow and expunge the Litigation Claim, in whole or in part, or grant such other remedy as is just and proper.

22.     The GUC Trust will provide the Third Party Payors, and the Debtors' insurance service providers, with notice (i) of all applicable Litigation Claims subject to the ADR Procedures, and (ii) any response to or offer of settlement made during the ADR Procedures concerning any Litigation Claim that is or could reasonably be expected to be covered, in whole or in part, by any applicable insurance policy (each a "Covered Claim").

23.     The Third Party Payors shall have the right to participate in any discussions, negotiations, dispute resolutions, mediations, and litigation (the "Proceedings").  If the Third Party Payor (i) participates in the Proceedings, or (ii) receives notice of a Covered Claim and (a) does not respond or (b) does not participate in the Proceedings, the Third Party Payor shall be bound by the result of the Proceedings and the outcome of the ADR Procedures. With respect to Covered Claims, if the Third Party Payor elects to participate in the ADR Procedures, the GUC Trust shall not make or accept any settlement offers without the prior written consent of the Third Party Payor.

24.     The ADR Procedures provide that before seeking relief from the Plan Injunction to pursue a Litigation Claim in a nonbankruptcy forum, the Claimant must in good faith participate in the ADR Procedures.  Any settlement that is reached, or any judgment that may thereafter be awarded after the Plan Injunction is lifted, will either (i) be paid by the applicable Third Party Payor in accordance with the applicable insurance policy, or (ii) to the extent the amount falls within a self-insured retention, be treated as an Allowed General Unsecured Claim and paid in accordance with the Plan.[12]

---

[12]     Neither the Debtors nor the GUC Trust shall be required to pay any amounts within a self-insured retention. Any amount of a Litigation Claim resolved by the ADR Procedures that falls within a self-insured retention shall be treated as a General Unsecured Claim and satisfied in accordance with the Plan.  With respect to payment of any deductible, the Third Party Payor shall be entitled to satisfy such amounts from the Insurer's Collateral.  If the Insurer's Collateral has been exhausted, then the Third Party Payor may assert a General Unsecured Claim for any such reimbursement, which shall be treated in accordance with the Plan.

25.     Overall, the ADR Procedures will establish a streamlined process for the resolution of tort claims following the Effective Date.  This will serve the dual interests of the GUC Trust in minimizing the expense associated with such claims, and the holders of the such claims in preserving the value that will ultimately be available to satisfy the holders of Allowed General Unsecured Claims.  The ADR Procedures are therefore in the best interests of the Debtors' estates and all unsecured creditors and should be approved.

## BASIS FOR RELIEF

26.     This Court has authority to authorize the establishment of mandatory alternative dispute resolution procedures and to grant the related relief requested herein. Settlements are favored in bankruptcy to facilitate the expeditious administration of claims and compromises.[13]  Courts increasingly prefer the use of alternative dispute resolution, such as mediation, as it serves as an "orderly and efficient mechanism" for the resolution of complex bankruptcy claims and proceedings.[14]

27.     This Court is also authorized under section 105 of the Bankruptcy Code to approve the ADR Procedures.  Under section 105, "[t]he court may issue any order, process or judgment that is necessary or appropriate to carry out the provisions of this title."[15]  This provision supports the use of alternative dispute resolution procedures in bankruptcy cases for

---

[13]     *Nat'l Board. Co., Inc. v. Bear Stearns & Co. Inc.*, 165 F.3d 184, 190 (2d Cir. 1999) (noting that there is a "strong federal policy favoring . . . alternative means of dispute resolution"); *Esso Exploration and Prod. Chad, Inc. v. Taylors Intern. Servs., Ltd.*, Case No. 06-4401, 2006 WL 3377595, *2 (S.D.N.Y. Nov. 14, 2006) (expressing that "it is difficult to overstate the strong federal policy in favor of [settlement procedures]"); *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968) (compromises and settlements are "a normal part of the process of reorganization.' "); *Myers v. Martin* (*In re Martin*), 91 F.3d 389, 393 (3d Cir. 1996) (holding that "[t]o minimize litigation and expedite the administration of a bankruptcy case, '[c]ompromises are favored in bankruptcy'") (quoting 9 Colliers, Bankruptcy ¶ 9019.03[1] (15th rev. ed. 1993)).

[14]     *Greyhound Lines, Inc. v. Rogers* (*In re Eagle Bus Mfg., Inc.*), 62 F.3d 730, 733 (5th Cir. 1995); *In re El Paso Electric Co.*, 77 F.3d 793 (5th Cir. 1996) (appointing a mediator to resolve a plan negotiation impasse).

[15]     11 U.S.C. § 105(a).

the expeditious resolution of disputed claims.[16]  In addition, bankruptcy courts are empowered to "issue an order . . . prescribing such limitations and conditions as the court deems appropriate to ensure that the case is handled expeditiously and economically."[17]

28.     The Movants further submit that the ADR Procedures are appropriate pursuant to Bankruptcy Rules 7016 and 9019(b).  While Federal Rule 16 generally applies to pretrial matters, courts have permitted the implementation of similar ADR procedures as special procedures to assist in resolving potentially difficult or protracted actions that may involve complex issues, multiple parties, difficult legal questions, or unusual proof problems.[18]  Court have similarly looked to Rule 9019(b) as authority in approving ADR procedures.[19]

29.     Finally, courts in this and other jurisdictions have granted similar relief in other large chapter 11 cases.[20]

---

[16]     *See In re A.H. Robins Co.*, 88 B.R. 742, 752 (Bankr. E.D. Va. 1988) (holding that 28 U.S.C. § 1334, section 105 of the Bankruptcy Code and the equitable power of the court permitted the court to approve channeling provisions, which included alternative dispute resolution procedures, to assist in the efficient administration of the debtors' estates and ensure an orderly and fair distribution to claimants*); In re Keene Corp.*, 168 B.R. 285, 292 (Bankr. S.D.N.Y. 1994) ("Under 11 U.S.C. § 105(a), the Court can 'use its equitable powers to assure the orderly conduct of the reorganization proceedings.'") (quoting *In re Neuman*, 71 B.R. 567, 571 (S.D.N.Y. 1987)); *Chinichian v. Campolongo (In re Chinichian)*, 784 F.2d 1440, 1443 (9th Cir. 1986) ("Section 105 sets out the power of the bankruptcy court to fashion orders as necessary pursuant to the purposes of the Bankruptcy Code.").

[17]     11 U.S.C. § 105(d)(2).

[18]     *See* Fed. R. Civ. Pro. 16(c)(2)(L).  *See, e.g., Matter of Sargeant Farms, Inc.*, 224 B.R. 842, 846 (Bankr. M.D. Fla. 1998) (holding that Bankruptcy Rule 7016 and Federal Rule 16 provide authority to approve ADR procedures); *In re Circuit City Stores, Inc.*, No. 08-35653 (KRH) [Docket Nos. 12820, 12855] (E.D. Vir. March 18, 2013) (applying Bankruptcy Rule 7016 in approving ADR procedures).

[19]     *See, e.g., In re Buffets, LLC*, No. 16-50557 (RBK) [Docket Nos. 675, 1377] (Bankr. W.D. Tex. Oct. 17, 2016) (approving ADR procedures for resolution of personal injury claims pursuant to Bankruptcy Rule 9019); *In re Lehman Bros. Holdings Inc.*, 433 B.R. 113, 120 n. 16 (Bankr. S.D.N.Y. 2010) (noting ADR procedures were approved by the court pursuant to Bankruptcy Rule 9019(b)).

[20]     *See, e.g., In re United States Brass Corp.*, 301 F.3d 296 (5th Cir. 2002) (mandating an alternative dispute resolution procedure for the liquidation of certain outstanding claims); *In re Buffets, LLC*, [Docket Nos. 675, 1377] (Bankr. W.D. Tex. Oct. 17, 2016) (approving alternative dispute resolution procedures for resolution of personal injury claims and employment related claims); *In re Eagle Bus Mgf., Inc.*, 134 B.R. 584, 591 (Bankr. S.D. Tex. 1991) (approving ADR procedures for resolution of personal injury, property damage, and workers' compensation claims); *see also In re Circuit City Stores, Inc.*, [Docket Nos. 12820, 12855] (Bankr. E.D. Vir. Mar. 18, 2013) (approving alternative dispute resolution procedures); *In re*

30.     Failure to implement appropriate ADR procedures will likely lead to protracted litigation that will, in the first instance, need to address a number of threshold issues including the Claimants' right to proceed with litigation to liquidate their claims and the availability of insurance coverage under applicable law.[21]  If the Court ultimately allows some or all of the Claimants to proceed to liquidate their Litigation Claims, the result will be costly litigation, potentially across multiple jurisdictions, that would deplete the GUC Trust's assets and distributable value for holders of Allowed General Unsecured Claims.  Moreover, given the Debtors' projected recoveries for holders of Allowed General Unsecured Claims, any recoveries may not result in meaningful amounts.

31.     Implementation of the ADR Procedures will allow the GUC Trust to resolve the Litigation Claims in an expeditious and efficient manner for the benefit of all stakeholders.  Specifically, the ADR Procedures will: (i) minimize the time and cost that would be required to litigate the claims; (ii) provide the claimants with the opportunity to promptly resolve their claims, which in most circumstances cannot be liquidated by the Court; and (iii) reduce the cost to the GUC Trust associated with protracted litigation.  Given the substantial size of the claims pool, and the large number of personal injury claims already filed, the Committee and the Debtors believe that the ADR Procedures are a fair and efficient mechanism

---

*Overseas Shipholding Group, Inc.*, No. 12-20000 (PJW) [Docket No. 2165] (Bankr. D. Del. Dec. 19, 2013) (same)*; In re Hostess Brands, Inc.*, No. 12-22052 (RDD) [Docket No. 1085] (Bankr. S.D.N.Y. June 11, 2012) (same); *In re The Great Atl. & Pac. Tea Co., Inc.*, No. 10-24549 (RDD) (Bankr. S.D.N.Y. Oct. 21, 2011) (approving procedures resolving personal injury and other claims that included pre-arbitration and pre-mediation settlement offer exchange procedures as well as arbitration and mediation procedures).

[21]     *See, e.g., Houston v. Edgeworth (In re Edgeworth)*, 993 F.2d 51 (5th Cir. 1993) (addressing whether discharge prevented medical malpractice plaintiff from pursuing lawsuit to collect judgment solely from the proceeds of malpractice liability policy); *Pak-Mor Mfg. Co. v. Royal Surplus Lines Ins. Co.*, 2005 WL 3487723 (W.D. Tex. Nov. 3, 2005) (addressing insurance providers obligation to make payment prior to exhaustion on self-insured retention).

13

to resolve disputed claims.  Accordingly, the relief requested in this Motion is warranted and in the best interests of the Debtors' estates and their creditors.

<u>**NOTICE**</u>

32.    Notice of this Motion has been provided to: (i) all parties who have requested notice pursuant to Rule 2002; (ii) all parties on the Litigation Claim List; (iii) the Third Party Payors; and (iv) any other party entitled to notice pursuant to Local Rule 9013-1(d).

WHEREFORE the Committee and the Debtors respectfully requests that the Court grant the relief requested herein and such other and further relief as it deems just and proper.

Dated: March 1, 2021
New York, New York

**KELLEY DRYE & WARREN LLP**

*/s/ Eric R. Wilson*
Eric R. Wilson (admitted *pro hac vice*)
Jason R. Adams (admitted *pro hac vice*)
Maeghan J. McLoughlin (admitted *pro hac vice*)
Email:  EWilson@KelleyDrye.com
        JAdams@KelleyDrye.com
        MMcLoughlin@KelleyDrye.com
101 Park Avenue
New York, New York 10178
Tel: (212) 808-7800
Fax: (212) 808-7897

*Counsel to the Official Committee of Unsecured Creditors of NPC International, Inc., et al.*


*/s/  Alfredo R. Perez*
WEIL, GOTSHAL & MANGES LLP
Alfredo R. Pérez (15776275)
700 Louisiana Street, Suite 1700
Houston, Texas  77002
Telephone:     (713) 546-5000
Facsimile:     (713) 224-9511
Email: Alfredo.Perez@weil.com

-and-


**WEIL, GOTSHAL & MANGES LLP**
Ray C. Schrock, P.C. (admitted *pro hac vice*)
Kevin Bostel (admitted *pro hac vice*)
Natasha Hwangpo (admitted *pro hac vice*)
767 Fifth Avenue
New York, New York 10153
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007
Email:  Ray.Schrock@weil.com

15

Kevin.Bostel@weil.com
Natasha.Hwangpo@weil.com

*Counsel to the Debtors and Debtors in Possession*

# **EXHIBIT A**

## **PROPOSED ORDER**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

|  |  |
|---|---|
| In re:<br><br>NPC INTERNATIONAL, INC., *et al.*,[1]<br><br>                  Debtors. | Chapter 11<br><br>Case No. 20–33353 (DRJ)<br><br>(Jointly Administered) |

## ORDER ESTABLISHING ALTERNATIVE DISPUTE RESOLUTION PROCEDURES

Upon the joint motion (the "Motion")[2] of the Official Committee of Unsecured Creditors (the "Committee") and the above-captioned debtors and debtors in possession (the "Debtors" and, together with the Committee, the "Movants"), seeking entry of an order establishing alternative dispute resolution procedures attached hereto as Exhibit 1 (the "ADR Procedures") for resolution of personal injury and wrongful death claims, and any related property damage claims (collectively, the "Litigation Claims") and granting related relief, all as more fully set forth in the Motion; and the Court having jurisdiction to consider the Motion and grant the requested relief in accordance with 28 U.S.C. §§ 157 and 1334; and consideration of the Motion being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having determined, based upon the legal and factual bases set forth in the Motion, that the Motion is in the best interests of the Debtors, their estates, creditors, and all parties in interest; and the Court having determined that the Movants have provided due and proper notice of the Motion and no further notice is

---

[1]      The Debtors in these chapter 11 cases are: NPC International, Inc.; NPC Restaurant Holdings I LLC; NPC Restaurant Holdings II LLC; NPC Holdings, Inc.; NPC International Holdings, LLC; NPC Restaurant Holdings, LLC; NPC Operating Company B, Inc.; and NPC Quality Burgers, Inc.

[2]      Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Motion.

necessary; and the Court having found that the legal and factual bases set forth in the Motion establish just and sufficient cause to grant the requested relief herein; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1.      The Motion is granted.

2.      The ADR Procedures, as set forth on <u>Exhibit 1</u>, are approved in all respects.

3.      All Litigation Claims shall be subject to the ADR Procedures.

4.      Once established, the GUC Trust shall be authorized to take any and all steps that are necessary or appropriate to implement the ADR Procedures, including, without limitation, by implementing any settlements with respect to the Litigation Claims achieved under the terms of the ADR Procedures.

5.      If a Claimant fails to comply with the ADR Procedures, negotiate in good faith or cooperate with the GUC Trust as may be necessary to effectuate the ADR Procedures, this Court may, among other things, disallow and expunge of the Litigation Claims, or grant such other or further relief.

6.      This Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation and/or enforcement of this Order.

Dated: _____, 2021
      Houston, Texas

                          _____
                          THE HONORABLE DAVID JONES
                          UNITED STATES BANKRUPTCY JUDGE

**EXHIBIT 1**

**ALTERNATIVE DISPUTE RESOLUTION PROCEDURES**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

|  |  |
|---|---|
| In re:<br><br>NPC INTERNATIONAL, INC., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 20–33353 (DRJ)<br><br>(Jointly Administered) |

## MANDATORY ALTERNATIVE DISPUTE RESOLUTION
## PROCEDURES FOR LITIGATION CLAIMS

The mandatory alternative dispute resolution procedures (the "ADR Procedures") will be implemented, administered, and coordinated by the NPC International GUC Trust (the "GUC Trust") established pursuant to the *Second Amended Joint Chapter 11 Plan of NPC International, Inc. and Its Affiliated Debtors* (the "Plan").[2] Pursuant to the Plan, the GUC Trust is authorized to evaluate, settle, or otherwise resolve all general unsecured claims that were either scheduled by or filed against the above-captioned debtors (the "Debtors") in the Chapter 11 Cases without further order of the Bankruptcy Court.

## I.    CLAIMS SUBJECT TO ADR PROCEDURES

Other than the Excepted Claims (as defined herein), the ADR Procedures apply to any individual or entity (the "Claimant") holding a claim arising before July 1, 2020 (the "Petition Date") for personal injury and/or wrongful death and any related property damage claims against the Debtors (or any of their predecessor in interest's current or former agents, representatives, drivers or employees) (the "Litigation Claims"), including any claim which is related thereto by way of, without limitation, subrogation, contribution, or indemnification.[3]

---

[1]    The Debtors in these chapter 11 cases are: NPC International, Inc.; NPC Restaurant Holdings I LLC; NPC Restaurant Holdings II LLC; NPC Holdings, Inc.; NPC International Holdings, LLC; NPC Restaurant Holdings, LLC; NPC Operating Company B, Inc.; and NPC Quality Burgers, Inc.

[2]    The Plan was confirmed by entry of an order dated January 29, 2021 [Docket No. 1528] (the "Confirmation Order"). Capitalized terms used but not otherwise defined shall have the meanings ascribed to them in the Plan.

[3]    Certain Litigation Claims may relate to claims against non-debtor third parties which claims are covered, in whole or in part, by the Debtors' insurance policies or for which the Debtors retain ultimate liability pursuant to contract, corporate bylaws and/or insurance policies and related agreements (such non-debtor third parties are collectively referred to as the "Indemnitees" and individually as "Indemnitee"). Indemnitees shall include, but are not limited to, (a) any person indemnified by the Debtors, (b) any person listed as an additional insured under the Debtors' liability insurance policies, (c) any current or former direct or indirect parent corporations, affiliates or subsidiaries of the Debtors, (d) the officers, directors, and/or employees of any such parent, affiliate, or subsidiary, and (e) any other entity or individual sharing coverage with the Debtors.

The following claims shall ***not*** be subject to the ADR Procedures and shall not be Litigation Claims (collectively, the "Excepted Claims"): (a) workers' compensation claims; (b) claims where there is a judgment entered or settlement fully executed by the applicable parties; (c) direct claims against the Debtors' insurers arising out of claims for bodily injury in those states allowing direct actions against insurers; (d) claims where the automatic stay has been lifted during the Chapter 11 Cases and which are being actively litigated in a nonbankruptcy forum; (e) Driver Reimbursement Claims, including Driver Claimant General Unsecured Claims and Driver Claimant Admin/Priority Claims, as such terms are used and defined in the Plan; (f) any claims or actions relating to any claims between the Debtors' insurers, on one hand and the Debtors, on the other, including, but not limited to, any action relating to the claims of the insurers or actions relating to any and all irrevocable standby letters of credit or other collateral provided by or for the benefit of the Debtors to the insurers, including any letters of credit that were drawn down by a Third Party Payor prior to the Chapter 11 Cases (collectively, the "Insurers' Collateral"); and (g) any declaratory judgment actions regarding insurance coverage issues.

For the avoidance of doubt, Driver Claimant General Unsecured Claims and Driver Claimant Admin/Priority Claims shall be separately reconciled by the Debtors or the Plan Administrator (as defined in the Plan).

A preliminary list of Claimants holding Litigation Claims that the GUC Trust seeks to liquidate through the ADR Procedures (the "Litigation Claims List") is annexed hereto as **Exhibit A**.  If the GUC Trust becomes aware of an additional Claimant with a claim that was omitted from the Litigation Claims List, the GUC Trust may classify such claim as an "Additional Litigation Claim," by filing notice with the Bankruptcy Court and serving such notice on the holder of the Additional Litigation Claim.  All Additional Litigation Claims shall be deemed included in the definition of "Litigation Claims" unless otherwise specified herein.

**A Claimant need not have commenced a litigation, lawsuit or other proceeding against one or more Debtors or their insurers to have a Litigation Claim.  However, in addition to following the ADR Procedures set forth below, except as otherwise agreed in writing by the GUC Trust or as ordered by the Bankruptcy Court, a Claimant must have filed a proof of claim in the Debtors' chapter 11 cases by September 28, 2020, which was the bar date established by the Bankruptcy Court for filing general unsecured claims (the "Bar Date").  Any proof of claim that was filed after the Bar Date may not be allowed and may be forever barred from consideration or payment, whether or not litigation is currently pending.**

## II.    **THIRD PARTY PAYORS**

The GUC Trust shall provide the Debtors' insurers or other third party payors, including Lexington Insurance Company, Republic-Vanguard Insurance Company, and Old Republic Insurance Company (collectively, the "Third Party Payors"), and the Debtors' insurance service providers, including but not limited to, Gallagher Bassett and Lockton, with notice of all applicable

---

Notwithstanding the foregoing, for the avoidance of doubt, nothing in the ADR Procedures shall limit, modify or otherwise affect any releases of non-Debtor Released Parties under the Plan or related injunctions prohibiting actions against any Released Parties under the Plan who also may be Indemnitees.

Litigation Claims subject to the ADR Procedures. If the applicable Third Party Payor(s) elect(s) to participate in any applicable stage of these ADR Procedures, the GUC Trust will send all relevant communications to the applicable Third Party Payor(s). Further details regarding the notice provided to the Third Party Payors and any election to participate are set forth in Section IV below.

The GUC Trust will provide notice to the applicable Third Party Payor(s) if any response to or offer of settlement during the ADR Procedures concerns any Litigation Claim that is or could reasonably be expected to be covered, in whole or in part, by any applicable insurance policy (each a "Covered Claim"). A Covered Claim shall include, but is not limited to, a claim for which (i) the demand in a proof of claim or in the Claimant's Demand (as defined herein) exceeds the applicable self-insured retention, (ii) the information in a Claimant's proof of claim reasonably indicates that a Third Party Payor may be responsible for payment, in whole or in part, including with respect to any applicable deductibles, and/or (iii) a Third Party Payor has been named as a party in a suit or similar action or a demand or claim has been tendered against the Third Party Payor directly.

The applicable Third Party Payor shall have the right, but not an obligation (except as may be provided in the applicable policy), to participate in any discussions, negotiations, dispute resolutions, mediations, and litigation (the "Proceedings") and the failure of the applicable Third Party Payor to respond to such notice or to decline to participate in the Proceedings at any time (i) shall not be construed as a waiver of the right to participate in the Proceedings, and (ii) shall not preclude the applicable Third Party Payor from intervening or participating, in any way, in the Proceedings at any time.

If the Third Party Payor (i) participates in the Proceedings, or (ii) receives notice of a Covered Claim and (a) does not respond or (b) does not participate in the Proceedings, the Third Party Payor shall be bound by the result of the Proceedings and the outcome of these ADR Procedures.

Under no circumstances shall the Debtors or the GUC Trust be required to pay any amounts within a self-insured retention; provided, however, nothing herein modifies the rights of any Third Party Payors under the applicable insurance policies. Any amount of a Litigation Claim resolved by these ADR Procedures that falls within a self-insured retention amount shall be treated as a General Unsecured Claim and satisfied in accordance with the Plan. With respect to payment of any deductible, the Third Party Payor shall be entitled to satisfy such amounts from the Insurer's Collateral. If the Insurer's Collateral has been exhausted, then the Third Party Payor may assert a General Unsecured Claim for any such reimbursement, which shall be satisfied in accordance with the Plan.

## III.   ADR AND PLAN INJUNCTION

Upon entry of the order of the United States Bankruptcy Court for the Southern District of Texas entered in the above-captioned cases establishing the ADR Procedures [Docket No.[__]], (the "ADR Order"), all Claimants (and any other persons or entities asserting an interest in the relevant Litigation Claim) shall be and shall continue to be, as applicable, enjoined from commencing or continuing any action or proceeding in any manner or any place, including the

Bankruptcy Court, seeking to establish, liquidate, collect or otherwise enforce any Litigation Claim against any Debtor other than through the ADR Procedures described herein (or as otherwise agreed by the parties) (collectively, the "ADR Injunction").  The ADR Injunction shall be in addition to, and cumulative with, the injunction applicable to the Litigation Claims and Claimants, including the injunctions under the Bankruptcy Code or set forth in the Plan (the "Plan Injunction").

In addition, the ADR Injunction shall enjoin Claimants to the fullest extent permitted by applicable law from proceeding against (i) all Indemnitees and (ii) all Third Party Payors, in each case solely with respect to the Litigation Claims, and with the exception of the Excepted Claims.

The ADR Injunction shall expire with respect to a Litigation Claim only when the ADR Procedures have been completed with respect to such Litigation Claim and only as provided for herein.  Except as expressly set forth herein or in a separate order of the Bankruptcy Court, the expiration of the ADR Injunction shall not extinguish, limit or modify the Plan Injunction, and the Plan Injunction shall remain in place.

## IV.    ADR PROCEDURES

Prior to sending the ADR Notice (as defined herein) to the Claimant(s), the GUC Trust shall provide the applicable Third Party Payors notice (the "Advance Notice") of any Litigation Claim that may be a Covered Claim.  If applicable, the Advance Notice may also include any Immediate Claim Settlement Offer (as defined herein) that the GUC Trust proposes to make to a Claimant.

Within 21 days of service of the Advance Notice, the Third Party Payor must advise the GUC Trust in writing (electronic mail being sufficient) if it elects to participate in the Offer Exchange Procedures (as defined herein) as to that particular Litigation Claim.  If the Third Party Payor does not respond to the GUC Trust within 21 days of service of the Advance Notice, the GUC Trust may proceed to engage in the Offer Exchange Procedures, and the Third Party Payor shall be bound by any resulting settlement.

With respect to Covered Claims, if the Third Party Payor elects to participate in the Offer Exchange Procedures, the GUC Trust shall not make or accept any settlement offers without the prior written consent of the Third Party Payor; provided, however, that if the settlement amount only implicates a self-insured retention, the GUC Trust may proceed to make or accept settlement offers without the consent of the Third Party Payor.

Any settlements in excess of $25,000 which implicate a deductible for which the Debtors have provided security shall be made in consultation with the Debtors or the Plan Administrator, as applicable.

### A.    Stage 1: Offer Exchange Procedures

The first stage of the ADR Procedures will be the following notice, information gathering, settlement offer and exchange procedure, requiring the parties to exchange information and

settlement offers and thereby providing the opportunity to resolve the Litigation Claim on a consensual basis without any further litigation (the "Offer Exchange Procedures").

If, after service of the ADR Notice, the Claimant fails to timely respond within any of the deadlines set forth in these Offer Exchange Procedures, the GUC Trust has the option of (i) advancing resolution of the Litigation Claim to mediation by advising the Claimant that the Litigation Claim will proceed to the next stage of the ADR Procedures, or (ii) pursuing its right under Section V herein.

1.      ADR Notice

Within 30 days of (i) for non-Covered Claims, the later of (a) the effective date of the Plan, or (b) the entry of an order approving the ADR Procedures, and (ii) for Covered Claims, the date the Advance Notice is served, the GUC Trust will mail a notice (the "ADR Notice") in the form annexed hereto as **Exhibit B** to the holders of Litigation Claims.  The ADR Notice will inform the Claimants that the Litigation Claim is included in the ADR Procedures and either (i) make the Immediate Claim Settlement Offer, or (ii) require the Claimant to return the ADR Notice with the Claim Information and Settlement Demand Form and provide supporting claim information.

The ADR Notice also shall (i) disclose the applicable insurance policies, if any, and whether the GUC Trust believes that the policy contains a deductible or a self-insured retention and (ii) require the Claimant to respond to the ADR Notice so that it is received by the GUC Trust no later than 21 days after the mailing of the ADR Notice (the "Claimant Response Deadline").

For purposes of the ADR Procedures, service on a Claimant shall be deemed adequate if such service is provided to the Claimant at the notice address specified in his or her filed proof of claim and their counsel of record in these cases, if any.

a.      Immediate Claim Settlement Offer

The GUC Trust may, but is not required to, include in the ADR Notice an offer to allow the Litigation Claim in the amount asserted by the Claimant or such lesser or different amount, as determined from the GUC Trust's reasonable review of the Litigation Claim ("Immediate Claim Settlement Offer").  If an Immediate Claim Settlement Offer is included, the Claimant shall have the option to sign and return the Immediate Claim Settlement Offer, without providing any additional information required by the ADR Procedures, in which case the Litigation Claim will be either (i) paid by the applicable Third Party Payor in accordance with the applicable insurance policy, or (ii) to the extent the amount falls within a self-insured retention, allowed as a nonpriority General Unsecured Claim in the amount set forth in the Immediate Claim Settlement Offer, and treated in accordance with the Plan.

**Failure to sign and return the Immediate Claim Settlement Offer or to complete the Claim Information and Settlement Demand Form by the Claimant Response Deadline shall result in the Claimant being deemed to have accepted the Immediate Claim Settlement Offer and to have agreed and consented to the proposed treatment of the Litigation Claim as set forth in the Immediate Claim Settlement Offer, and the Litigation Claim shall be allowed in**

5

**the amount and classification of the Immediate Claim Settlement Offer without any further action by the parties or the Bankruptcy Court**.

b.   Claim Information and Settlement Demand Form

The ADR Notice will (i) inform each Claimant that the Litigation Claim is included in the ADR Procedures, and (ii) include a form (the "Claim Information and Settlement Demand Form") that (a) requires the Claimant to make a settlement demand (the "Claimant's Demand"), and (b) provide the GUC Trust certain information and documentation that will enable the GUC Trust to evaluate the Litigation Claim and the Claimant's Demand.  The Claimant must return the completed ADR Notice and the Claim Information and Settlement Demand Form by the Claimant's Response Deadline.  The Claimant shall not be required to provide duplicative information to the extent the Claimant has already provided the requested claim information as supporting documentation attached to the relevant proof of claim.

The Claimant's Demand may not exceed the amount of, or improve the priority set forth in, the Claimant's most recent timely-filed proof of claim or scheduled claim if no proof of claim was filed.  The Claimant's Demand may liquidate any unliquidated amounts asserted in a proof of claim.  The amount proposed in the Claimant's Demand is presumed to be classified as a nonpriority General Unsecured Claim.  The Claimant may not return the Claim Information and Settlement Demand Form with an unknown, unliquidated, indefinite contingent, or similar demand.

**Any Claimant who does not timely return the completed ADR Notice and the Claim Information and Settlement Demand Form, unless otherwise agreed to in writing by the GUC Trust, (i) shall not be entitled to relief from the Plan Injunction, and (ii) may have its Litigation Claim disallowed in accordance with Section V.**

2.   GUC Trust's Response

Within 45 days after the GUC Trust's receipt of a Claimant's Demand, or as soon thereafter as is practicable, the GUC Trust shall serve a response on the Claimant and its counsel, if one is identified (the "GUC Trust's Response").  The GUC Trust's Response shall either: (a) deny liability on the Litigation Claim; (b) accept the Claimant's Demand; (c) make a counter-offer to settle the Litigation Claim (the "GUC Trust's Offer"); or (d) request additional information.

With respect to Covered Claims, the GUC Trust shall provide the applicable Third Party Payor with the Claimant's Demand.  If the GUC Trust elects to accept the Claimant's Demand or make a counteroffer, the GUC Trust will provide 21 days' prior notice to the applicable Third Party Payor.  If the Third Party Payor does not respond to the GUC Trust within 21 days of service of such notice, the GUC Trust may proceed to accept the offer or make the counteroffer, and the Third Party Payor shall be bound by any resulting settlement.

a.   Denial of Liability. If liability is denied by the GUC Trust, the GUC Trust shall provide a statement to the Claimant specifying the basis for the denial. Upon such denial of liability by the GUC Trust, the Offer Exchange Procedure shall be

6

terminated and the Claimant and the GUC Trust shall immediately proceed to mediation under the Mediation Procedures (as defined below).

        b.    <u>Acceptance of Claim</u>. The GUC Trust may accept the Litigation Claim as asserted in the Claimant's Demand.  In such event, the Litigation Claim will be either (i) paid by the applicable Third Party Payor in accordance with the applicable insurance policy, or (ii) to the extent the amount in the Claimant's Demand falls within a self-insured retention, allowed as a nonpriority General Unsecured Claim and treated in accordance with the Plan.

        c.    <u>GUC Trust's Offer</u>. The GUC Trust may make a written good faith offer of settlement based upon its review of such Litigation Claim.  Such offer will be made in consultation with the Third Party Payors with respect to Covered Claims.  Any settlements in excess of $25,000 which implicate a deductible for which the Debtors have provided security shall be made in consultation with the Debtors or the Plan Administrator, as applicable.

        d.    <u>Additional Information</u>. The GUC Trust may request supplemental information or clarification of information to assist in a good faith evaluation of any particular Litigation Claim.  The Claimant shall serve such additional information so that it is received by the GUC Trust within 14 days of such request.  If the Clamant timely responds, the time period within which the GUC Trust may otherwise respond to the Claimant's Demand shall be extended until 45 days after the supplemental information is provided.   The Litigation Claim will not be processed further until the additional information requested has been provided.

    3.    <u>Claimant's Reply</u>.

Each Claimant shall have 30 days after service of the GUC Trust's Offer within which to reply (the "<u>Reply Deadline</u>").  The Claimant's reply shall be in writing and signed by the Claimant or an authorized representative.

If the GUC Trust's Offer is accepted, the Litigation Claim shall be allowed as set forth in <u>Section IV.G.</u> below.  If the GUC Trust's Offer is rejected or the Claimant does not respond by the Reply Deadline, the Litigation Claim will automatically advance to the next stage of the ADR Procedures or the GUC Trust may seek relief in accordance with <u>Section V</u> herein.

Each Claimant may request supplemental information or clarification of information to assist in a good faith evaluation of the GUC Trust's Offer.  The GUC Trust shall serve such additional information so that it is received by the Claimant within 14 days of such request.

    4.    <u>Confidentiality of Offer Exchange Procedures</u>

All offers and communications during the Offer Exchange Procedures shall be confidential among the parties, and no party shall disclose the contents of such communications without the prior written consent of each of the other parties.  Any and all statements and offers made during

the Offer Exchange Procedures shall not be subject to discovery in any subsequent proceeding unless they are otherwise independently discoverable under applicable rules.

**B.    Stage 2: Mediation**

If a Litigation Claim is not resolved pursuant to the Offer Exchange Procedures, the second stage of the ADR Procedures will be mediation, and the following mediation procedures will apply (the "Mediation Procedures"). Any party may be represented by legal counsel, although the participation of legal counsel shall not be required to conduct the Mediation Procedures.

1.    Mediation Notice

If a Litigation Claim is not resolved pursuant to the Offer Exchange Procedures, the GUC Trust shall serve a notice of mediation (the "Mediation Notice") in the form annexed hereto as **Exhibit C** on the Litigation Claimant within 14 days after the completion of the Offer Exchange Procedures, or as soon thereafter as is reasonably practicable.

With respect to any potential Covered Claims, the GUC Trust will also serve the Mediation Notice on the applicable Third Party Payor within 14 days after the completion of the Offer Exchange Procedures, or as soon thereafter as is reasonably practicable. Within 14 days of service of the Mediation Notice, the Third Party Payor must advise the GUC Trust in writing if it elects to participate in the Mediation Procedures as to that particular Litigation Claim. If the Third Party Payor does not respond to the GUC Trust or declines to participate within 21 days of service of the Mediation Notice (electronic mail being sufficient), the GUC Trust may proceed to engage in the Mediation Procedures, and the Third Party Payor shall be bound by any resulting settlement.

If the Third Party Payor elects to participate in the Mediation Procedures, the GUC Trust shall not make or accept any settlement offers without the prior written consent of the Third Party Payor; provided, however, that if the settlement amount only implicates a self-insured retention, the GUC Trust may proceed to make or accept settlement offers without the consent of the Third Party Payor.

2.    Appointment of a Mediator.

The GUC Trust shall identify 3 experienced mediators for consideration by the Claimant. The Claimant shall select one of the mediators from the list. If the Claimant is not satisfied with the GUC Trust's list of proposed mediators, the Claimant may select 3 alternative mediators, and the GUC Trust (with, if applicable, the Third Party Payor) will have the right to select 1 of the alternative mediators proposed by Claimant. To the extent the parties cannot mutually agree on a mediator, the parties will jointly petition the Bankruptcy Court to appoint a mediator.

All mediators shall be impartial and neutral. No mediator shall have any financial or personal interest in or relation to the proceedings or, except where otherwise agreed by the parties, in any related matters. Mediators need not be court appointed.

3.    Fees and Costs of a Mediator.

The fees and costs of the mediator shall be divided evenly between Claimant(s), on the one hand, and the GUC Trust (or applicable Third Party Payor), on the other hand; provided, however, that the Claimant's portion shall not exceed $5,000. Each party shall bear the cost and expense of its own counsel, experts, witnesses, and prosecution. Nothing herein shall prejudice the right of the GUC Trust to seek insurance coverage for any Litigation Claim or any fees and costs of defending such Litigation Claim, including the GUC Trust's portion of the mediation fees and costs.

4.      Location and Scheduling of Mediation.

The Claimant and the GUC Trust (with, if applicable, the Third Party Payor with respect to Covered Claims) shall reasonably confer regarding the time, duration and location of the Mediation; provided, that the mediation shall occur within 60 days of appointment of the mediator. All mediation sessions may take place virtually. If the parties are unable to agree on a date, time, and location for mediation, then the parties can petition the Bankruptcy Court to set a date, time, and location.

5.      Mediation Statements.

On or before 21 days prior to the scheduled mediation, the Claimant shall serve on the mediator and the GUC Trust by electronic mail and no later than by 6:00 p.m. (New York time), a non-confidential (between the parties and the mediator), pre-mediation statement (the "Opening Statement") not to exceed 10 pages, excluding any attachments, setting forth all of the Claimant's claims and identifying each and every cause of action or theory the Claimant asserts, including a short and plain statement of the facts and law upon which the Claimant relies for recovery and maintains entitle it to relief. The Claimant shall include, as exhibits or annexes to the Opening Statement, any documents, affidavits or other evidentiary materials on which the Claimant relies, but which are not attached to the Claimant's proof of claim. On or before 14 days after service of the Opening Statement, the GUC Trust shall serve on the mediator and the Claimant, by electronic mail and no later than by 6:00 p.m. (New York time), a non-confidential (between the parties and the mediator) response statement (the "Response Statement") not to exceed 10 pages, excluding attachments. On or before 3 days after service of the Response Statement, the Claimant may serve on the mediator and the GUC Trust, by electronic mail and no later than by 6:00 p.m. (New York time), a reply to the Response Statement, not to exceed 5 pages. At the mediator's discretion and direction, the parties may submit additional, confidential letters or statements to the mediator only, addressing settlement amounts and such related negotiation matters as the mediator may request.

6.      Confidentiality of Mediation.

All meetings and proceedings, including any statements made and evidence introduced during the Mediation shall be confidential among the parties and the mediator, and no party shall disclose the contents of such meetings and proceedings without the prior written consent of each of the other parties. Any and all statements made and evidence introduced at these meetings and proceedings shall not be subject to discovery in any subsequent proceeding unless they are otherwise independently discoverable under applicable rules, nor may the mediator serve or be called as a witness in any subsequent proceeding relating to the Litigation Claim. For the

9

avoidance of doubt, the Mediation shall be subject to paragraphs 52-55 of the *Procedures for Complex Cases in the Southern District of Texas.*

       7.      <u>Conclusion of Mediation Procedure/Mediated Settlement.</u>

The mediator will work with all parties towards reaching a settlement. The mediator shall not have any authority to impose a settlement upon the parties. Unless otherwise agreed to by the Claimant and the GUC Trust in writing, the mediation process will terminate 90 days following appointment of the mediator. A settlement reached pursuant to the Mediation Procedure shall be allowed as set forth in <u>Section IV.G</u>. below.

       8.      <u>Mediation Report.</u>

At the conclusion of the Mediation or the final adjournment after any continuation thereof, the parties shall sign a written report (the "<u>Mediation Report</u>") before the mediator stating that the Claimant and the GUC Trust have completed the mediation process in good faith and otherwise complied with the Mediation Procedures, and either that: (i) the Litigation Claim has been settled and the terms of the settlement; or (ii) that the Claimant intends to seek to pursue litigation of the Litigation Claim outside of the ADR Procedures (the "<u>Litigation</u>").

**No Claimant may proceed with Litigation without completing the Mediation Procedures and obtaining the Mediation Report. If any party does not comply with the Mediation Procedures or refuses to sign the Mediation Report, the mediator shall prepare and sign the Mediation Report, which shall indicate the non-compliance by one or both of the parties with the Mediation. Within 10 days of the conclusion of mediation, the mediator shall email to each applicable party a copy of the Mediation Report completed and signed by the GUC Trust (if applicable, the Third Party Payor as well) and the Claimant.**

    **C.**      **<u>Stage 3: Relief from Plan Injunction</u>**

       1.      <u>Relief from Plan Injunction</u>.

Completion of the Offer Exchange Procedures and the Mediation Procedures is a prerequisite for a Claimant to obtain relief from the Plan Injunction. Except as provided below, the Plan Injunction remains in effect against each Claimant until relief from the Plan Injunction is granted by the Bankruptcy Court with respect to the relevant Litigation Claim or as otherwise provided for herein. No Claimant shall be granted relief from the Plan Injunction to commence or continue any action, suit or trial, to proceed with discovery, or to pursue its Litigation Claim in a nonbankruptcy forum until the Claimant has completed the Offer Exchange Procedures and the Mediation Procedures. The Plan Injunction may be modified by a joint stipulation executed by the GUC Trust and the Claimant (the "<u>Stipulation</u>") to permit the liquidation of a Litigation Claim that is not resolved through the ADR Procedures. To the extent the Claimant has completed the Offer Exchange Procedures and the Mediation Procedures and the GUC Trust and Claimant do not execute a Stipulation mutually agreeing to modify the Plan Injunction, the Claimant may seek relief from the Plan Injunction subject to the following terms and conditions:

a.      <u>When Motion for Relief from Plan Injunction May be Heard</u>. In the event a Litigation Claim has not been liquidated and allowed upon completion of the Offer Exchange Procedures and the Mediation Procedures, the Claimant shall have the right to seek relief from the Plan Injunction by filing a motion with the Bankruptcy Court. The motion shall be served upon the GUC Trust, the applicable Third Party Payor(s), and their counsel. Unless otherwise sought by the Claimant, the motion and the hearing on same shall be subject to Local Bankruptcy Rules for the Southern District of Texas, Houston Division.

b.      <u>Claimant's Certificate</u>. A Claimant's motion seeking relief from the Plan Injunction must include as an attachment, a certification signed by Claimant or its attorney certifying that Claimant has completed the ADR Procedures and that despite Claimant's good faith participation in such process the Litigation Claim remains unresolved and unliquidated. In the absence of this certification, the Bankruptcy Court may deny Claimant's motion.

c.      <u>Third Party Payor</u>. In the event that a Claimant obtains relief from the Plan Injunction to commence or continue any action, suit or trial, to proceed with discovery, or to pursue its Litigation Claim in the Bankruptcy Court or a nonbankruptcy forum, the Plan Injunction to the extent applicable to any Third Party Payor shall terminate as to the commencement or continuation of any action for declaratory relief.

d.      <u>No Waiver of Defenses</u>. The submission of any Litigation Claim to the ADR Procedures shall not constitute or serve as a waiver or release of any defenses or claims which the GUC Trust, on its own behalf or on behalf of the Debtors' estates, or the applicable Third Party Payor may have with respect to a Claimant's request for modification of the Plan Injunction. The GUC Trust, Third Party Payor, or other interested party, may oppose a Claimant's request for relief from the Plan Injunction on the basis that the Claimant has not participated in the ADR Procedure in good faith, or for any other appropriate reason, including the applicability of the Plan's discharge under section 524 of the Bankruptcy Code, and/or the costs that may be incurred by the GUC Trust or the Debtors' estates in litigating the Litigation Claim. Moreover, the submission of any Litigation Claim to the ADR Procedures shall not constitute or serve as a waiver or release of any claim or defense which may otherwise be available to the GUC Trust, on its own behalf or on behalf of the Debtors' estates, or the Third Party Payors, including any policy condition, that may exist at law or in equity and that may be asserted in defending against any Litigation Claim, or which impacts insurance coverage for any Litigation Claim, in the event that the Plan Injunction is modified by order of the Bankruptcy Court.

2.      <u>Litigation in Other Courts.</u>

If the Claimant has obtained relief from the Plan Injunction, unless the GUC Trust and the Claimant agree otherwise, the Litigation Claim cannot be adjudicated in the Bankruptcy Court as a result of mandatory abstention or because of lack of or limitations upon subject matter jurisdiction (as determined by the Bankruptcy Court), then, litigation of such Litigation Claim shall proceed in either (a) the nonbankruptcy forum in which the Litigation Claim was pending on the Petition Date, if any, subject to the GUC Trust's right to seek removal or transfer of venue; or

11

(b) if the Litigation Claim was not pending in any forum on the Petition Date, then in the United States District Court for the Southern District of Texas or such other nonbankruptcy forum that has jurisdiction over the Litigation Claim.

### D.    Duty to Negotiate in Good Faith

During the period of these ADR Procedures, the Claimant and the GUC Trust shall negotiate in good faith in an attempt to reach an agreement for the compromise of the Litigation Claim; provided, however, that any dispute as to the underlying value of the claim shall not, in and of itself, constitute bad faith.

### E.    Admissibility of ADR Proceedings

Other than as expressly provided herein, the submission of any Litigation Claim to the ADR Procedures, the positions of the parties during compliance with the ADR Procedures, and any other admissions made during the ADR Procedures, shall not be admissible for any purpose in any case, matter or proceeding including, without limitation, trial by any party or third party, or any proceeding under 11 U.S.C. § 502, and are expressly determined by the provisions herein not to be admissions by either party.  Such positions and statements shall remain confidential among the parties and any mediator and protected by Rule 408 of the Federal Rules of Evidence.

The mediator may not be compelled to disclose to the Court or to any person outside the mediation conference any of the records, reports, summaries, notes, communications or other documents received or made by the mediator while serving in such capacity. The mediator may not testify or be compelled to testify regarding the mediation in connection with any arbitral, judicial or other proceeding. The mediator will not be a necessary party in any proceedings relating to the mediation. Nothing contained in this paragraph prevents the mediator from reporting the status, but not the substance, of the mediation effort to the Court.

### F.    Discovery

In order to avoid undue expense or delay, any materials, testimony or other evidence submitted by either party during the course of the ADR Procedures, and of the kind normally available in discovery proceedings may, upon written agreement of the parties, be treated as if submitted in pretrial discovery proceedings.

### G.    Allowance and Payment of Any Settlement or Judgment

**If you hold a Litigation Claim with respect to which settlement has been reached through the ADR Procedures or judgment has been entered in a Litigation, please read the following carefully.  To the extent the Debtors' insurance policies are not available to pay the amount of such settlement or judgment (because of the Debtors' self-insured retention obligations or otherwise), you will not receive a cash payment but only an Allowed General Unsecured Claim in the Debtors' Chapter 11 Cases to be treated and paid pursuant to the Plan.**

Nothing contained herein shall prevent the GUC Trust and Claimant from settling a Litigation Claim at any time during the ADR Procedures by written consent of the GUC Trust, such Claimant and, with respect to Covered Claims, any applicable Third Party Payor.

In all circumstances, any settlement discussions among the Claimant, the Debtors and Third Party Payors shall remain confidential and privileged and shall not be admissible as evidence in any subsequent litigation of the Litigation Claim or elsewhere.

Other than as expressly provided for herein, nothing shall in any way affect the liability of any insurance company or other Third Party Payor that is legally liable for all or any portion of a Litigation Claim under its insurance policies with the Debtors. Only to the extent a Litigation Claim settlement amount is a Covered Claim and regardless of whether the potential Covered Claim is at any time tendered to the applicable Third Party Payor for payment, the GUC Trust shall not offer or accept any settlement of a Covered Claim without first informing the applicable Third Party Payor as provided for herein. For the avoidance of doubt, to the extent that any settlement amount falls within the applicable self-insured retention, payment of any settlement of or judgment on a Litigation Claim against the Debtors shall be in the form of an Allowed General Unsecured Claim to be treated as set forth in the Plan, and the Third Party Payors shall be released from any liability on such Litigation Claim.

### H.    Administrative Convenience Settlement Offer

With the exception of Covered Claims, the GUC Trust may, at any given time, if it believes it economically beneficial and administratively convenient for certain Claimants, waive in writing the requirement that a Claimant follow exactly each of these ADR Procedures, and by appropriate resolution from time to time, settle a Litigation Claim for amounts approximating the cost of administering such Litigation Claim.

## V.    FAILURE TO COMPLY WITH ADR PROCEDURES

If, absent written agreement by the GUC Trust, a Claimant fails to comply with the ADR Procedures, negotiate in good faith, or cooperate with the GUC Trust as may be necessary to effectuate the ADR Procedures, the Bankruptcy Court may, after notice and a hearing, find such conduct to be in violation of the ADR Order or an abandonment of or failure to prosecute the Litigation Claim, or both. Upon such findings, the Bankruptcy Court may, among other things, disallow and expunge the Litigation Claim, in whole or in part, or grant such other or further remedy deemed just and appropriate under the circumstances.

## VI.   **MODIFICATION OF ADR PROCEDURES BY WRITTEN CONSENT**

Notwithstanding anything to the contrary contained herein, the ADR Procedures, including any related deadlines, may be modified or extended by the written consent of the GUC Trust and Claimant.

## VII.   **NOTICE**

Whenever notice or service of papers is required under the ADR Procedures, it shall be given in the manner provided in the relevant section as follows:

[To come]

14

**EXHIBIT A**

**Litigation Claims List**

| | Claimant | Claim No(s). |
|---|---|---|
| 1. | Smith, Tiffany | 20382 |
| 2. | Garrison, Sara | 486 |
| 3. | Roe, Jacob | 20459 |
| 4. | Rohner, Mark | 290 |
| 5. | Morales, Michael | 20190 |
| 6. | Clark, Phyllis | 20135 |
| 7. | Molkenbur, William | 506 |
| 8. | Khan, Alexis | 277, 278 |
| 9. | Davis, Lynette | 289 |
| 10. | Blunt, Andrea | 506 |
| 11. | Mack, Delta | 21093 |
| 12. | Cook, Jo Anne | 2087, 2105 |
| 13. | Sly, Kyle | 2068 |
| 14. | Ameren Power & Light | 20127, 20149 |
| 15. | Hunsinger, Kenneth | 222, 248, 20279, 20280, 20281, 20282, 20283,  20285, 20825, 20830, 20833, 20836, 20839, 20841, 20843 |
| 16. | Golden, Janice | 20641 |
| 17. | Dornemann, Bailey | 225 |
| 18. | Edwards, Felicia | 20284 |
| 19. | Lauer, Paul | 20681 |
| 20. | Hill, Tamajiah | 2450 |
| 21. | Allen, Iesha | 20643 |
| 22. | Sessions, Rachel Anne | 20567 |
| 23. | Diaz, Genaro | 2559 |
| 24. | Diaz, Isabella | 2560 |
| 25. | Porter, Charles | 276, 343, 365 |
| 26. | Farino, Lorena | 21180 |
| 27. | Swapsy, Yerubbaal | 20868 |
| 28. | Carson, Jessica | 20863 |
| 29. | De Giglio, Nicholas | 20490 |
| 30. | Molkenbur, Kaedin | 506 |
| 31. | Beron, Laura | 20551 |
| 32. | Moore, Geron | 2359 |
| 33. | Van Meter, James | 482 |
| 34. | Mason, Thomas, Bianca, Milan | 106, 2502 |

|  | Claimant | Claim No(s). |
|---|---|---|
| 35. | Johnson, Mary | 563 |
| 36. | Williams, Lemuel | 2066 |
| 37. | Eisenhart, Corinne | 353 |
| 38. | Sauseda,  Deborah | 20417 |
| 39. | Rebollozo, Jose | 42, 651 |
| 40. | Mims, Johnny | 2368 |
| 41. | Otterby, Emily | 2255, 2307, 20924 |
| 42. | Hawk, Peter | 218, 219, 604 |
| 43. | Hudson, Isiah | 21160 |

**<u>EXHIBIT B</u>**

**ADR Notice**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| In re:<br><br>NPC INTERNATIONAL, INC., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 20–33353 (DRJ)<br><br>(Jointly Administered) |

## ADR NOTICE AND DEADLINE FOR SUBMISSION OF INFORMATION

Service Date: _____

Claim No(s).: _____

Claimant: _____

Address: _____

Claimant's Attorney (if known): _____

Deadline to Respond ("Response Deadline"):_____

Deadline to Respond ("Response Deadline"):_____

      You are receiving this notice (the "ADR Notice") because your claim in the confirmed chapter 11 cases of NPC International, Inc. and its affiliated debtors (collectively, the "Debtors") has been submitted to alternative dispute resolution pursuant to the alternative dispute resolution procedures (the "ADR Procedures") established by order of the United States Bankruptcy Court for the Southern District of Texas entered in the above-captioned cases on _____, 2021 [Docket No.[__]] (the "ADR Order"). The ADR Procedures will be implemented, administered, and coordinated by the NPC International GUC Trust (the "GUC Trust").

      A copy of the ADR Procedures, as approved by the ADR Order, is annexed hereto. Any terms not defined herein or in any subsequent notices that you may receive regarding the ADR Procedures shall have the meanings attributed to them in the ADR Procedures.

      [The GUC Trust believes that your claims may be covered by an insurance policy of the Debtors.  The GUC Trust has provided notice of your claim to the Third Party Payor(s) identified below.  The applicable insurance policy has [a deductible in the amount of $_____ OR a self-insured retention in the amount of $_____.]

---

[1]     The Debtors in these chapter 11 cases are: NPC International, Inc.; NPC Restaurant Holdings I LLC; NPC Restaurant Holdings II LLC; NPC Holdings, Inc.; NPC International Holdings, LLC; NPC Restaurant Holdings, LLC; NPC Operating Company B, Inc.; and NPC Quality Burgers, Inc.

**YOU SHOULD CONSIDER CONSULTING A LAWYER.** Your participation in these ADR Procedures may either be by you or, if applicable, by a lawyer that has filed an appearance on your behalf in the Bankruptcy Court or the court in which your previously-filed lawsuit or other proceeding is pending.

[The GUC Trust has reviewed your and [in consultation with the above identified Third Party Payor,] offers the amounts set forth in the attached Immediate Claim Allowance Offer in full satisfaction of your claims.  You must respond to the Immediate Claim Allowance Offer either by (1) completing the Immediate Claim Allowance Offer and accepting such offer; or (2) by rejecting the offer and completing the attached Claim Information and Settlement Demand Form.  If you accept the offer, you do not need to complete the Claim Information and Settlement Demand Form.  If you reject the offer, you must complete and return the Claim Information and Settlement Demand Form, which must include a settlement demand.  **If you do not return the Immediate Claim Allowance Offer or the Claim Information and Settlement Demand Form so that it is received by the Response Deadline, you will be deemed to have accepted the Immediate Claim Allowance Offer and your claims will be deemed Allowed in the amount set forth therein without any further action by the parties or the Bankruptcy Court.**]

**[If you do not accept the Immediate Claim Allowance Offer] [T]o permit the GUC Trust to evaluate your claim, you are required to complete and return the attached Claims Information and Settlement Demand Form.  You must complete all sections of the Claims Information and Settlement Demand Form, including (1) the Section I Settlement Demand which is the amount you offer to settle your claim for; and (2) the Section II Claim information section, along with all supporting documentation.  The Claims Information and Settlement Demand Form must be returned to the GUC Trust by the Response Deadline.  If you fail to comply with this requirement, your claims may be disallowed, discharged, and waived.**

All responses must be sent to counsel to the GUC Trust:

[TO COME]

**Pursuant to the ADR Procedures and ADR Order, your Settlement Demand may not (i) include or make an unliquidated, unknown, or similar demand; and/or (ii) exceed the amount of, or improve the priority set forth in, your most recent timely-filed proof of claim. Your failure to return this ADR Notice and the Claim Information and Settlement Demand Form with a Settlement Demand for an amount certain may result in the GUC Trust seeking disallowance of the claim.**

**I HAVE READ AND UNDERSTAND THIS NOTICE.**

Date:_____

_____
Claimant Signature or Authorized Person

_____
Print Claimant or Authorized Person Name

**EACH CLAIMANT MUST SIGN THIS ADR NOTICE. ADDITIONAL CLAIMANTS MUST SIGN AND PRINT THEIR NAME ON A SEPARATE SHEET.**

*[optional]*

**IMMEDIATE CLAIM ALLOWANCE OFFER**

Based on a review of your filed Proof of Claim and supporting documentation attached thereto, the GUC Trust has determined that you have asserted your Claim in the amount of $_____, and hereby offer to allow such Claim as a nonpriority General Unsecured Claim in the amount of $[_____].

If you agree to allowance of your ADR Claim as a nonpriority General Unsecured Claim in the amount of $_____, please sign below and return this form to counsel to the GUC Trust at the addresses set forth above by the Response Deadline. If you accept this offer, you are not required to submit any additional documentation or information with the return of this form. If you do not accept this offer, you must complete and return the ADR Notice and the Claims Information and Settlement Demand Form according to the instructions set forth in the ADR Notice and the ADR Procedures.

**Allowance of your Claim as a nonpriority General Unsecured Claim in the amount of $___ _____ does not entitle you to cash payment in the amount of $_____. Rather, you will receive [(i) an allowed general unsecured claim in the amount of $_____ that will be treated in accordance with the Plan; and (ii) a cash payment from _____ in the amount of $_____].**

I agree to allowance of my claim as set forth in this Immediate Claim Allowance Offer

Date_____        _____
                                            Claimant Signature or Authorized Person

                                            _____
                                            Print Claimant or Authorized Person Name

                                            _____
                                            Relationship to Claimant if Authorized
                                            Person

EACH CLAIMANT MUST SIGN THIS FORM. ADDITIONAL CLAIMANTS MUST SIGN AND PRINT THEIR NAMES ON A SEPARATE SHEET.

SIGNATURE OF ATTORNEY

Date_____        _____
                                            Attorney for Claimant Signature

                                            _____
                                            Print Attorney for Claimant Name

7

## CLAIM INFORMATION AND SETTLEMENT DEMAND FORM[1]

### I.     SETTLEMENT DEMAND

YOU MUST INCLUDE AN OFFER FOR WHICH YOU WOULD SETTLE YOUR LITIGATION CLAIM.   PLEASE NOTE THAT IF YOUR OFFER IS ULTIMATELY ACCEPTED BY THE GUC TRUST AND INSURANCE IS NOT AVAILABLE TO COVER SOME OR ALL OF YOUR LITIGATION CLAIM, YOU WILL RECEIVE ONLY AN ALLOWED GENERAL UNSECURED CLAIM AGAINST THE DEBTORS, TO BE SATISFIED IN ACCORDANCE WITH THE PLAN.

Amount for which you offer to settle the Litigation Claim: $_____.

### II.     CLAIM INFORMATION

### CLAIMANT MUST PROVIDE THE FOLLOWING INFORMATION:

1.     Name, address and telephone number of counsel: _____

_____

_____

_____

2.     Names, addresses and telephone numbers of all Claimants:

_____

_____

_____

_____

3.     Debtor against whom the claim is brought: _____

4.     Your date of birth: _____

5.     Date of injury: _____

6.     Where did the incident occur?_____

_____

---

[1]     You shall not be required to provide information duplicative of supporting documentation attached to any relevant proof of claim filed in the chapter 11 cases.

_____

_____

Please specify the location and address.

7.      Are you pursuing this claim against any other party?Yes ❏ No ❏ If yes, against whom
        (list the name, the addresses and counsel for each party, if known)?

_____

_____

Attach additional sheets if necessary.

8.      Did you notify the Debtor(s) in writing of the incident? (If yes, attach a copy of such
        writing.)          Yes ❏ No ❏

9.      Is there a pending lawsuit regarding your claim? If yes, identify the court where the
        lawsuit is pending, the case number and the judge, if known and, attach a copy of the
        complaint.

_____

_____

10.     What type of injuries or damages do you have arising from the incident? Provide a medical
        description of any injuries. (Please state if the claim is based, in whole or in part, on an
        injury or damages to someone else.)

_____

_____

11.     How did the injury occur?

_____

_____

12.     Did you miss any work as a result of the incident? If so, how many days?

_____

_____

13.     Give the name and address of your employer(s) and your salary or rate of pay at the time
        of the incident.

_____

_____

_____

14.     Was anyone else injured or did anyone else sustain damages at the time of the incident?
        (If yes, list the names and addresses.)

_____
_____
_____

15.    List the names, addresses and phone numbers of all witnesses and people with relevant knowledge of your claim (including, but not limited to, any representatives or agents of the Debtors).

_____
_____
_____

16.    Are treatments still being given for any injury?    Yes ❑ No ❑

(If yes, provide the name and address of any and all doctors that are currently treating you for such injury and the nature of the treatment).

17.    Physician Data

a.    Give the name and address of any physician, clinic or hospitals that have treated this injury. Include treatment dates.
(Attach additional sheets if necessary)

_____
_____
_____

b.    Itemize all damages you claim, including any damages for emotional distress, loss of consortium or pain and suffering.

_____
_____
_____

c.    Give the total amount of the medical bills you incurred as a result of suffering your injury.

_____
_____
_____

d.    Itemize any other expenses you incurred as a result of the incident for which you are making a claim.

_____
_____
_____

10

e.      Give a list of medical expenses and amounts paid by your insurance company as a result of your injury.

_____
_____
_____

f.      Give the name, address and policy number of your insurance company.

_____
_____
_____

18.     Attach the following documents:

a.      All medical records and bills for medical services received by the Claimant as a result of the injury allegedly caused by the Debtor(s);

b.      Autopsy/Coroner report, if applicable;

c.      Death Certificate, if applicable; and

d.      Photographs, videotapes, and any other documentation you wish to be considered in the evaluation of your claim.

*[Signature Page Follows]*

11

NOTICE: UNDER FEDERAL LAW, CRIMINAL PENALTIES MAY BE IMPOSED FOR FILING A CLAIM CONTAINING FALSE OR MISLEADING STATEMENTS.

**I declare under penalty of perjury that the foregoing statements are correct.**

Date:_____

_____
Claimant Signature or Authorized Person

_____
Print Claimant or Authorized Person Name

_____
Relationship to Claimant if Authorized Person

**EACH CLAIMANT MUST SIGN THIS CLAIM INFORMATION FORM. ADDITIONAL CLAIMANTS MUST SIGN AND PRINT THEIR NAMES ON A SEPARATE SHEET.**

SIGNATURE OF ATTORNEY

Date:_____

_____
Attorney for Claimant Signature

_____
Print Attorney for Claimant Name

## EXHIBIT C

**Mediation Notice**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

|  |  |
|---|---|
| In re:<br><br>NPC INTERNATIONAL, INC., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 20–33353 (DRJ)<br><br>(Jointly Administered) |

### MEDIATION NOTICE

Service Date: _____

Claim No(s).: _____

Claimant: _____

Address: _____

Claimant's Attorney (if known): _____

By this Mediation Notice, the GUC Trust appointed in the above-captioned chapter 11 cases hereby submits the above-identified claim (the "Litigation Claim") in the Debtors' chapter 11 cases to mediation, pursuant to the alternative dispute resolution procedures (the "ADR Procedures") established by order of the United States Bankruptcy Court for the Southern District of Texas entered in the above-captioned cases on _____, 2021 [Docket No.[__]] (the "ADR Order").

The GUC Trust has been unable to resolve your Litigation Claim on a consensual basis with you through the offer exchange component of the ADR Procedures.  As provided for in the ADR Procedures, you and counsel to the GUC Trust shall work in good faith to select a mediator. The ADR Procedures require you to share the fees and costs of mediation charged by the mediator, up to a cap of $5,000.

A complete copy of the ADR Procedures is enclosed for your reference. Please refer to Section IV.B of the ADR Procedures concerning mediation.

[Signature of the GUC Trust]

---

[1]     The Debtors in these chapter 11 cases are: NPC International, Inc.; NPC Restaurant Holdings I LLC; NPC Restaurant Holdings II LLC; NPC Holdings, Inc.; NPC International Holdings, LLC; NPC Restaurant Holdings, LLC; NPC Operating Company B, Inc.; and NPC Quality Burgers, Inc.