IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re | § | Chapter 11 |
| | § | |
| NPC INTERNATIONAL, INC., | § | Case No. 20–33353 (DRJ) |
| *et al.*, | § | |
| Debtors.[1] | § | (Jointly Administered) |
| | § | |

**SUMMARY OF THIRD INTERIM AND FINAL FEE APPLICATION OF WEIL, GOTSHAL & MANGES LLP, ATTORNEYS FOR DEBTORS, FOR INTERIM AND FINAL ALLOWANCE OF COMPENSATION FOR PROFESSIONAL SERVICES RENDERED AND REIMBURSEMENT OF ACTUAL AND NECESSARY EXPENSES INCURRED FROM (I) THIRD INTERIM PERIOD OF JANUARY 1, 2021 THROUGH MARCH 31, 2021 AND (II) FINAL COMPENSATION PERIOD OF JULY 1, 2020 THROUGH AND INCLUDING MARCH 31, 2021**

| | |
|---|---|
| Name of Applicant: | Weil, Gotshal & Manges LLP |
| Applicant's Role in Case: | Attorneys for Debtors and Debtors in Possession |
| Date Order of Employment Signed: | August 14, 2020 [Docket No. 435] |

| Third Interim Fee Period | | |
|---|---|---|
| | **Beginning of Period** | **End of Period** |
| Time Period Covered by the Third Interim Fee Period: | January 1, 2021 | March 31, 2021 |
| Total Fees Requested in the Third Interim Fee Period: | | $6,673,028.50 |
| Total Attorney Fees Requested in the Third Interim Fee Period: | | $6,546,982.50 |
| Total Actual Attorney Hours Covered by the Third Interim Fee Period: | | 6,521.20 |
| Average Hourly Rate for All Attorneys in the Third Interim Fee Period: | | $1,003.95 |
| Total Paraprofessional Fees Requested in the Third Interim Fee Period: | | $126,046.00 |
| Total Actual Paraprofessional Hours Covered by Third Interim Fee Period: | | 300.10 |
| Average Hourly Rate for Paraprofessionals in the Third Interim Fee Period: | | $420.01 |
| Reimbursable Expenses Sought in the Third Interim Fee Period: | | $130,036.23 |

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are NPC International, Inc. (7298); NPC Restaurant Holdings I LLC (0595); NPC Restaurant Holdings II LLC (0595); NPC Holdings, Inc. (6451); NPC International Holdings, LLC (8234); NPC Restaurant Holdings, LLC (9045); NPC Operating Company B, Inc. (6498); and NPC Quality Burgers, Inc. (6457). The Debtors' corporate headquarters and service address is 4200 W. 115th Street Suite 200 Leawood, KS 66211.

| Final Compensation Period | | |
|---|---|---|
| | **Beginning of Period** | **End of Period** |
| **Time Period Covered by the Final Fee Period:** | July 1, 2020 | March 31, 2021 |
| **Time Period(s) Covered by Prior Applications:** | July 1, 2020 | September 30, 2020 |
| | October 1, 2020 | December 31, 2020 |
| **Total Fees Awarded in all Prior Applications:** | | $17,542,224.75 |
| **Total Expenses Awarded in all Prior Applications:** | | $111,626.17 |
| **Total Fees and Expenses Awarded in all Prior Applications:** | | $17,653,850.92 |
| **Total Fees Requested in the Final Compensation Period:** | | $24,215,253.25[2] |
| **Total Attorney Fees Requested in the Final Compensation Period:** | | $23,817,098.50 |
| **Total Actual Attorney Hours Covered by the Final Compensation Period:** | | 24,028.90 |
| **Average Hourly Rate for All Attorneys in the Final Compensation Period:** | | $991.19 |
| **Total Paraprofessional and Other Non-Legal Staff Fees Requested in Final Compensation Period:** | | $434,514.50 |
| **Total Actual Paraprofessional and Other Non-Legal Staff Hours Covered in the Final Compensation Period:** | | 1,127.70 |
| **Average Hourly Rate for Paraprofessionals and Other Non-Legal Staff in Final Compensation Period:** | | $385.31 |
| **Total Reimbursable Expenses Sought in the Final Compensation Period:** | | $241,662.40[3] |
| **Total to be Paid to Priority Unsecured Creditors:** | | Holders of Allowed Other Priority Claims shall receive the treatment provided for in Section 4.2 of the Plan. Holders of Priority Tax Claims shall receive the treatment provided for in Section 2.3 of the Plan. |
| **Anticipated % Dividend to Priority Unsecured Creditors:** | | 100% |
| **Total to be Paid to General Unsecured Creditors:** | | Holders of Allowed Unsecured Claims shall receive the treatment |

---

[2]   The total fees and expenses approved reflects a reduction in fees and expenses pursuant to the *Order Approving the Joint Stipulation and Agreed Order between United States Trustee and Weil, Gotshal & Manges LLP Regarding Second Interim Fee Application for Allowance of Compensation and Reimbursement of Expenses* (Docket No. 1630).  The total fees were reduced by $36,359.75 and expenses were reduced by $1,167.37.  The total of fees and expenses awarded $11,297,285.51 reflecting $11,217,084.25 in fees and $80,201.26 in expenses.

[3]   The total fees and expenses approved reflects a reduction in fees and expenses pursuant to the *Order Approving the Joint Stipulation and Agreed Order between United States Trustee and Weil, Gotshal & Manges LLP Regarding Second Interim Fee Application for Allowance of Compensation and Reimbursement of Expenses* (Docket No. 1630).  The total fees were reduced by $36,359.75 and expenses were reduced by $1,167.37.  The total of fees and expenses awarded $11,297,285.51 reflecting $11,217,084.25 in fees and $80,201.26 in expenses.

| | provided for in Section 4.8 of the Plan. |
|---|---|
| **Anticipated % Dividend to General Unsecured Creditors:** | Approximately 7%[4] |
| **Date of Confirmation Hearing:** | January 29, 2021 |
| **Indicate whether plan has been confirmed:** | The Debtors' Plan was confirmed on January 29, 2021.  [Docket No. 1528] |

---

[4]  Assuming General Unsecured Claims are allowed at approximately $42 million, the anticipated percentage dividend to general unsecured creditors is estimated at approximately 7% in a Sale Transaction; for the avoidance of doubt, the anticipated percentage dividend is subject to the final amount of Allowed General Unsecured Claims.  *See Notice of Filing of Revised Exhibits to Disclosure Statement for First Amended Joint Chapter 11 Plan of NPC International, Inc. and its Affiliated Debtors*, Exhibit C (Docket No. 1458).

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

|  |  |  |
|---|---|---|
| | § | |
| In re | § | **Chapter 11** |
| | § | |
| **NPC INTERNATIONAL, INC.,** | § | **Case No. 20–33353 (DRJ)** |
| ***et al.,*** | § | |
| Debtors.[1] | § | **(Jointly Administered)** |
| | § | |

**THIRD INTERIM AND FINAL FEE APPLICATION OF
WEIL, GOTSHAL & MANGES LLP, ATTORNEYS FOR DEBTORS,
FOR INTERIM AND FINAL ALLOWANCE OF COMPENSATION FOR
PROFESSIONAL SERVICES RENDERED AND REIMBURSEMENT OF ACTUAL
AND NECESSARY EXPENSES INCURRED FROM (I) THIRD INTERIM PERIOD OF
JANUARY 1, 2021 THROUGH MARCH 31, 2021 AND (II) FINAL COMPENSATION
PERIOD OF JULY 1, 2020 THROUGH AND INCLUDING MARCH 31, 2021**

---

**IF YOU OBJECT TO THE RELIEF REQUESTED, YOU MUST RESPOND IN WRITING, SPECIFICALLY ANSWERING EACH PARAGRAPH OF THIS PLEADING. UNLESS OTHERWISE DIRECTED BY THE COURT, YOU MUST FILE YOUR RESPONSE WITH THE CLERK OF THE BANKRUPTCY COURT WITHIN 21 DAYS FROM THE DATE YOU WERE SERVED WITH THIS APPLICATION. YOU MUST SERVE A COPY OF YOUR RESPONSE ON THE PERSON WHO SENT YOU THE NOTICE; OTHERWISE, THE COURT MAY TREAT THE APPLICATION AS UNOPPOSED AND GRANT THE RELIEF REQUESTED.**

---

Weil, Gotshal & Manges LLP ("**Weil**"), counsel to NPC International, Inc.

("**NPC**") and its debtor affiliates, as debtors and debtors in possession (the "**Debtors**") hereby files

its third and final application (the "**Application**") for (i) interim allowance of compensation for

professional services performed by Weil during the period commencing January 1, 2021 through

and including March 31, 2021 (the "**Third Interim Period**") in the amount of $6,673,028.50, and

for reimbursement of its actual and necessary expenses in the amount of $130,036.23 incurred and

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are NPC International, Inc. (7298); NPC Restaurant Holdings I LLC (0595); NPC Restaurant Holdings II LLC (0595); NPC Holdings, Inc. (6451); NPC International Holdings, LLC (8234); NPC Restaurant Holdings, LLC (9045); NPC Operating Company B, Inc. (6498); and NPC Quality Burgers, Inc. (6457). The Debtors' corporate headquarters and service address is 4200 W. 115th Street Suite 200 Leawood, KS 66211.

(ii) final allowance of compensation for professional services performed by Weil during the period commencing July 1, 2020 through and including March 31, 2021 (the "**Final Compensation Period**" and, together with the Third Interim Period the "**Compensation Periods**") in the amount of $24,215,253.25 and reimbursement for its actual and necessary expenses incurred during the Final Compensation Period in the amount of $241,662.40 and respectfully represents as follows:

## Preliminary Statement

1.        During the Third Interim Period, Weil's professionals helped guide the Debtors through the final stages of the chapter 11 process, focusing on obtaining approval of and consummating the Sale Transaction as well as the Plan.  Weil's efforts included, among other things, (i) obtaining approval of the Sale Transaction on January 25, 2021 (Docket Nos. 1474-75) (the "**Sale Orders**"), (ii) drafting, negotiating, and filing the *Second Amended Joint Chapter 11 Plan of NPC International, Inc. and Its Affiliated Debtors* (Docket No. 1477) (the "**Plan**") and various supplements thereto, (iii) negotiating consensual resolutions to formal and informal objections to the Plan and supplements thereto, obtaining approval of the Plan on January 29, 2021 (Docket No. 1528) (the "**Confirmation Order**"), and (iv) successfully completing all conditions to effectiveness of the Plan on March 31, 2021.  During the Compensation Period prior to the Third Interim Period, Weil's professionals provided the Debtors guidance with respect to, among other things, (i) addressing adversary proceedings and numerous motions to lift the automatic stay, (ii) amending the RSA to include the Second Lien Lenders and memorializing the settlement with the Second Lien Lenders (Docket No. 920), (iii) negotiating, preparing and filing the *First Amended Joint Chapter 11 Plan of NPC International, Inc. and Its Affiliated Debtors* (Docket No. 951) and the *Disclosure Statement for First Amended Joint Chapter 11 Plan of NPC International, Inc. and Its Affiliated Debtors* (Docket No. 946) and Exhibits to Disclosure Statement (the "**Disclosure Statement**"), obtaining Court approval of the Disclosure Statement (Docket No. 947), and commencing the solicitation of votes to accept or reject the Plan,

(iv) conducting a marketing of and sales process for the business, leading to entry of an asset purchase agreement with Wend American Group LLC and Hut American Group LLC, led by Flynn Restaurant Group LP, as the stalking horse bidder and obtaining Court approval of the Debtors' selection of a stalking horse bidder (Docket No. 1051), (v) negotiating a settlement with the Creditors' Committee with respect to treatment of general unsecured creditors under the Plan and *Motion of the Official Committee of Unsecured Creditors for an Order Granting Leave, Standing and Authority to Commence, Prosecute and Settle Claims on behalf of the Debtors' Estates* (Docket No. 928), (vi) successfully completing sale mediation with parties in interest, whereby the principal stakeholders agreed to a modified sale transaction under which the stalking horse bidder will acquire substantially all of the Debtors' Pizza Hut assets and approximately half of the Debtors' Wendy's restaurants with the remaining Wendy's restaurants to be acquired by certain qualified Wendy's franchisees backstopped by Wendy's (the "**Sale Transaction**") and working towards obtaining the Court approval thereof, (vii) participating in and working towards the successful mediation and negotiation of a global settlement of claims with delivery drivers alleging under-reimbursement (the "**Driver Claimants**"), and (viii) negotiating and obtaining court approval of a settlement resolving the adversary proceeding between the Debtors and McLane Foodservice, Inc. (Docket No. 1341).

2.      The professional services performed and expenses incurred by Weil during the Compensation Period were actual and necessary to preserve and protect the value of the Debtors' estates and minimize any negative impact of the restructuring.  Given the circumstances of these chapter 11 cases and the speed and efficiency with which they have been administered thus far, Weil's charges for professional services performed and expenses incurred are reasonable and appropriate under applicable standards.  Weil respectfully requests that the Court grant the Application and allow interim compensation for professional services performed and reimbursement for expenses incurred.

3

## Relief Requested

3. This Application has been prepared in accordance with sections 330(a) and 331 of title 11 of the United States Code (the "**Bankruptcy Code**"), Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), Rule 2016-1 of the Local Bankruptcy Rules for the Southern District of Texas (the "**Local Rules**"), *Court Procedures for David R. Jones United States Bankruptcy Judge* (the "**Court Procedures**"), the *U.S. Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed under 11 U.S.C. § 330 by Attorneys in Larger Chapter 11 Cases Effective as of November 1, 2013* (the "**UST Fee Guidelines**," and, collectively, with the Court Procedures, the "**Fee Guidelines**"), and the *Order (I) Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals and (II) Granting Related Relief* (Docket No. 434) (the "**Interim Compensation Order**"), the Debtors request approval of Weil's Application.

4. A proposed form of order granting the relief requested herein is attached hereto as **Exhibit A** (the "**Proposed Order**").

## Jurisdiction

5. The Court has jurisdiction to consider this Application pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## Background

6. On July 1, 2020 (the "**Petition Date**"), the Debtors each commenced with this Court a voluntary case under chapter 11 of the Bankruptcy Code.

7. The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

8.     The Debtors' chapter 11 cases are being jointly administered for procedural purposes only pursuant to Rule 1015(b) of the Bankruptcy Rules and Rule 1015-1 of the Local Rules.

9.     On July 13, 2020, the United States Trustee for Region 7 (the "**U.S. Trustee**") appointed an official committee of unsecured creditors (the "**Creditors' Committee**"). No trustee or examiner has been appointed in these chapter 11 cases.

10.     Additional information regarding the Debtors' business, capital structure, and the circumstances leading to the commencement of these chapter 11 cases is set forth in the *Declaration of Eric Koza in Support of Debtors' Chapter 11 Petitions and First Day Relief*, sworn to on July 1, 2020 (Docket No. 4).[2]

### Debtors' Retention of Weil

11.     On July 14, 2020, the Debtors filed the *Application of Debtors for Authority to Retain and Employ Weil, Gotshal & Manges LLP as Attorneys for Debtors Effective as of Petition Date* (Docket No. 206) (the "**Retention Application**").

12.     On August 14, 2020, the Court entered an order approving the Retention Application (Docket No. 435) (the "**Retention Order**").  The Retention Order authorizes Weil to provide the following services to the Debtors:

a.     take all necessary action to protect and preserve the Debtors' estates, including the prosecution of actions on the Debtors' behalf, the defense of any actions commenced against the Debtors, the resolution of disputes in which the Debtors are involved and the preparation of objections to claims filed against the Debtors' estates;

b.     prepare on behalf of the Debtors, as debtors in possession, all necessary motions, applications, answers, orders, reports and other papers in connection with the administration of the Debtors' estates;

c.     take all necessary actions in connection with any chapter 11 plan and related disclosure statement and all related documents, including the proposed

---

[2]   Capitalized terms used but not otherwise defined herein shall have the respective meanings ascribed to such terms in the First Day Declaration or the Disclosure Statement, as applicable.

purchase of assets from Noble Energy, Inc., and such further actions as may be required in connection with the administration of the Debtors' estates; and

d.      perform all other necessary legal services in connection with the prosecution of these chapter 11 cases; *provided, however*, that to the extent Weil determines that such services fall outside the scope of services historically or generally performed by Weil as lead debtors' counsel in a bankruptcy case, Weil will file a supplemental declaration.

(Retention Order ¶ 2).

### Summary of Professional Compensation and Reimbursement of Expenses Requested

13.     Weil seeks interim allowance of compensation for professional services performed during (i) the Third Interim Period in the amount of $6,673,028.50 and for reimbursement of expenses incurred in connection with the rendition of such services in the amount of $130,036.23 and (ii) the Final Compensation Period in the amount of $24,215,253.25 and for reimbursement of expenses incurred in connection with the rendition of such services in the amount of $241,662.40.  During the Third Interim Period, Weil attorneys and paraprofessionals expended a total of 6,821.30 hours in connection with the necessary services performed.  During the Final Compensation Period, Weil attorneys, paraprofessionals, and other non-legal staff expended a total of 25,156.60 hours in connection with the necessary services performed.

14.     There is no agreement or understanding between Weil and any other person, other than members of the firm, for the sharing of compensation to be received for services rendered in these chapter 11 cases.  During the Compensation Period, Weil received no payment or promises of payment from any source for services rendered, or to be rendered, in any capacity whatsoever in connection with the matters covered by this Application, other than the Debtors in accordance with the Interim Compensation Order, the *Order Approving First Fee Application of Weil, Gotshal & Manges LLP, as Attorneys for Debtors, for Interim Allowance of Compensation for Professional Services Rendered and Reimbursement of Actual and Necessary Expenses*

*Incurred from July 1, 2020 through and Including September 30, 2020* (Docket No. 1228) (the "**First Interim Fee Order**"), and the so-ordered *Joint Stipulation and Agreed Order between United States Trustee and Weil, Gotshal & Manges LLP Regarding Second Interim Fee Application for Allowance of Compensation and Reimbursement of Expenses* (Docket No. 1630) (the "**Second Interim Fee Stipulation Order**"), pursuant to which Weil agreed to certain reductions to its fees.

15.     Prior to the Petition Date, the Debtors paid fee advances to Weil for professional services to be performed and expenses to be incurred in connection with its representation of the Debtors and in preparation of the Debtors seeking relief under chapter 11 (the "**Fee Advance**").  Based on a reconciliation of all charges and expenses through the date of this Application, the balance of the Fee Advance is $372,056.88.

16.     The fees charged by Weil in these cases are billed in accordance with Weil's existing billing rates and procedures in effect during the Compensation Period.  The rates Weil charges for the services rendered by its professionals and paraprofessionals in these chapter 11 cases are no greater than the rates Weil charges for professional and paraprofessional services rendered in comparable bankruptcy and non-bankruptcy related matters.  Such fees are reasonable based on the customary compensation charged by comparably skilled practitioners in comparable bankruptcy and non-bankruptcy matters in a competitive national legal market.

### Supporting Documents

17.     Attached hereto as **Exhibit B** is the Certification of Kevin Bostel (the "**Bostel Certification**") regarding Weil's compliance with the Fee Guidelines.

18.     Attached hereto as **Exhibit C** is a schedule of all Weil attorneys and paraprofessionals who have performed services for the Debtors during the Compensation Periods, the capacities in which each individual is employed by Weil, the department in which each individual practices, the hourly billing rate charged by Weil for services performed by such

7

individuals, the year in which each attorney was first licensed to practice law, where applicable, and the aggregate number of hours expended in this matter and fees billed in connection therewith (the "**Schedule of Professional Fees**").

19.     Weil maintains computerized records of the time spent by all Weil attorneys and paraprofessionals in connection with the prosecution of these chapter 11 cases.  Attached hereto as **Exhibit D** is a schedule of Weil's computerized time records billed during the Compensation Periods using project categories hereinafter described in the format specified by the Fee Guidelines (the "**Time Records**").

20.     Attached hereto as **Exhibit E** is an itemized schedule of the expenses for which Weil is seeking reimbursement and a summary specifying the categories of expenses included in the schedule and the total amount for each such expense category (the "**Expenses**").

21.     Attached hereto as **Exhibit F** is a summary and comparison of the aggregate blended hourly rates billed by Weil's New York and Texas timekeepers to non-bankruptcy matters during the prior twelve-month period ending March 31, 2021, and the blended hourly rates billed to the Debtors during the Compensation Period (the "**Blended Rate Comparison Chart**").

22.     Attached hereto as **Exhibit G** is a budget prepared in connection with Weil's representation of the Debtors during the Compensation Period (the "**Budget**").

23.     Attached hereto as **Exhibit H** is a summary of Weil's staffing plan for the Compensation Period (the "**Staffing Plan**").

24.     To the extent that time or disbursement charges for services rendered or disbursements incurred relate to the Compensation Period, but were not processed prior to the preparation of this Application, Weil reserves the right to request additional compensation for such services and reimbursement of such expenses in a future application to the Court.

## Summary of Services Performed by
## Weil during Third Interim Period

25.     During the Third Interim Period, Weil devoted substantial resources and rendered significant professional services to ensure that the Debtors would be able to operate their business without interruption, enter into asset purchase agreements, negotiate, file, and prosecute the Plan, obtain the Court's approval of the Sale Transaction, and the Plan, and successfully complete all conditions to effectiveness of the Plan.  The following is a summary of the significant professional services among others rendered by Weil during the Third Interim Period, organized in accordance with Weil's internal time-tracking system, and broken down by project or task codes:

a.     Asset Disposition/363 Sales (Task Code 003)
    Fees:  $2,704,690.00; Total Hours:  2,549.40

- Negotiated and revised asset purchase agreements and related documents and corresponded with the Debtors, the Debtors' advisors, and sale participants and their advisors, regarding various issues related to asset purchase agreements.

- Communicated internally amongst Weil practice groups and the Debtors' advisors regarding issues related to the asset purchase agreements including, among other things, tax and employment considerations.

- Drafted, reviewed, and filed the *Declaration of Neil A. Augustine in Support of the Sale of Substantially All of the Debtors' Assets Free and Clear of Liens, Claims, Encumbrances, and Interests and Granting Related Relief* (Docket No. 1441).

- Drafted, negotiated, and filed the *Notice of Filing Proposed Orders (A) Authorizing the Sale of Substantially all of the Debtors' Assets Free and Clear of Liens, Claims, Encumbrances, and Other Interests, (B) Authorizing and Approving Purchase Agreements for Such Sales, (C) Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases Related Thereto, and (D) Granting Related Relief* (Docket No. 1383) (the "**Proposed Sale Orders**") and obtained the Court's approval thereof (Docket Nos.  1474-1475).

- Drafted, revised, and filed the *Notice of Final Desired 365 Contracts Designated for Assumption and Assignment in Connection with the Wendy's Sale Transaction* (Docket No. 1597) and the *Notice of Final*

*Desired 365 Contracts Designated for Assumption and Assignment in Connection with the (Flynn) Stalking Horse Sale Transaction* (Docket No. 1598).

- Communicated internally and participated on conference calls amongst Weil practice groups and the Debtors' advisors, and prepared the transition services agreement.

- Conducted research regarding various issues related to the Sale Transaction closing.

b.  Bar Date/Claims Reconciliation Issues (Task Code 005)
    Fees:  $341,480.00; Total Hours:  344.70

- Discussed strategy with the Debtors, the Debtors' advisors, and Weil's litigation team in connection with the settlement with the Driver Class Claimants (the "**Driver Claimants Settlement**").

- Reviewed and revised the Plan in connection with the Driver Claimants Settlement, and drafted, negotiated, and finalized related settlement notices and forms.

- Conducted research on various considerations with regards to implementing the Driver Claimants Settlement.

c.  Case Administration (Case Calendar and WIP) (Task Code 006)
    Fees:  $32,869.50; Total Hours:  51.10

- Prepared and continually updated case calendars and comprehensive work-in-process list for the Debtors', the Debtors' advisors, and internal use.

- Responded to a large volume of emails, calls, and correspondence related to the Chapter 11 Cases, including with respect to the work streams, issues, and matters described in this Application.

d.  Chapter 11 Plan/Confirmation (Task Code 009)
    Fees:  $1,163,558.50; Total Hours:  1,250.20

- Prepared for, and participated on, numerous telephone conferences with the Debtors, management, professionals, and parties in interest regarding the Plan and confirmation issues.

- Drafted, negotiated, and filed the Plan and various pleadings and documents related to the Plan including the supplements to the Plan containing certain documents, schedules, and forms of documents, schedules, and exhibits relevant to the implementation of the Plan (Docket Nos. 1457, 1486, 1502, 1624) (the "**Plan Supplements**"), the confirmation brief (Docket No. 1487), and numerous declarations in support of confirmation (Docket Nos. 1488, 1491-92).

- Coordinated with the Debtors, the Debtors' advisors, and various internal Weil practice groups regarding the information and documents to be included in the Plan Supplements.

- Conducted research regarding various confirmation issues, and prepared for the confirmation hearing, including reviewing and resolving objections received with respect to the Plan and confirmation.

- Drafted and negotiated the terms of the Confirmation Order and coordinated with the objecting parties, the Debtors, the Debtors' advisors, and various internal Weil practice groups regarding the terms of the Confirmation Order.

- Drafted, reviewed, and finalized various agreements including the liquidating trust agreement, the GUC trust agreement, the wind down budget, and the corporate documents in preparation for consummation of the Plan.

- Coordinated with the Debtors, the Debtors' advisors, the Creditors' Committee and their advisors, the Ad Hoc Priority/1L Group and their advisors, to prepare for consummation of the Plan, including finalization of the final funds flow, funding the professional fee escrow, and making significant initial distributions on the effective date.

- Drafted, reviewed, and filed the *Notice of (I) Entry of Order Confirming Joint Chapter 11 Plan of NPC International Inc. and Its Affiliated Debtors, (II) Occurrence of Effective Date, (III) Administrative Expense Claim Bar Date, and (IV) Driver Claimant Admin Bar Date* (Docket No. 1643) and the related publication notice.

e.    Client Communication (Task Code 010)
      Fees: $126,809.00; Total Hours: 117.60

- Prepared for and participated in weekly meetings and on teleconferences with the Debtors' management team and the Debtors' advisors to discuss case strategy, coordination, Court filings and hearings, transaction negotiations, the Plan, confirmation, and numerous other case issues and pending matters.

f.    Corporate Governance/Securities (Task Code 011)
      Fees: $195,496.50; Total Hours: 206.30

- Prepared for and participated in regular telephonic meetings with the special committee and the board.

- Prepared materials for the special committee, the board, and the Debtors' senior management regarding the chapter 11 cases.

11

- Drafted and reviewed minutes from the special committee and board meetings.

- Drafted, reviewed, and revised documents related to corporate governance, including amendments to corporate organizational documents.

g.  Employee Issues (Task Code 014)
    Fees:  $139,352.00; Total Hours:  129.60

- Evaluated and conducted research regarding various labor and employment issues.

- Communicated internally amongst Weil practice groups and with the Debtors and Debtors' advisors regarding various labor and employment issues including employment agreements, policies, and compensation and benefits plans, as applicable.

h.  Executory Contracts/Leases/Real Property/Section 365 Issues (Task Code 016)
    Fees:  $651,567.00; Total Hours:  729.20

- Reviewed a significant volume of cure objections filed and corresponded with contract counterparties regarding cure objections and potential settlements and other inquiries related to Debtors' contracts and leases.

- Advised Debtors regarding the Bankruptcy Code's effects on leases and potential negotiations regarding lease amendments.

- Researched various legal issues related to real estate transactions and liabilities.

- Coordinated with the Debtors' advisors to review, revise, and negotiate lease amendments with landlords.

- Drafted, filed, and obtained Court's approval of *Emergency Second Motion of Debtors for Authority to Extend Time to Assume or Reject Unexpired Leases of Nonresidential Real Property* (Docket No. 1461).

- Drafted, and filed, and obtained Court's approval of several *Notice of Rejection of Certain Unexpired Leases of Nonresidential Real Property and Abandonment of Property in Connection therewith* (Docket Nos. 1508, 1509, 1519, 1521, 1522).

i.  General Case Strategy (Including Team Calls) (Task Code 017)
    Fees:  $224,921.50; Total Hours:  218.50

- Conducted numerous internal team meetings, conferences, and teleconferences regarding the status and administration of the Debtors' chapter 11 cases, various business-related issues and general case

strategy, and various work streams regarding the matters described in this Application.

- Prepared for and participated on numerous teleconferences with the Debtors' advisors and key stakeholders of the Debtors' cases to discuss various issues of the Debtors' chapter 11 cases.

j.   <u>Hearings and Court Matters (Task Code 018)</u>
     Fees:  $87,334.00; Total Hours:  108.00

- Prepared for and represented the Debtors at hearings and status conferences relating to, among other things, the Sale Transaction and confirmation of the Plan.

- Conducted witness preparation for hearings and drafted declarations and documents in support thereof for various motions and matters.

- Prepared, filed on the docket of these chapter 11 cases, and arranged service of various motions, notices and documents, including agendas, witness and exhibit lists, proposed orders, and certificates of no objection to avoid the expense of hearings on uncontested matters.

k.   <u>Pizza Hut Franchisor Issues (Task Code 022)</u>
     Fees:  $135,559.50; Total Hours:  131.10

- Communicated with the Pizza Hut Franchisor and its advisors regarding issues regarding the franchise agreements.

- Reviewed and conducted research regarding a cure objection filed by the Pizza Hut Franchisor and conferred with the Pizza Hut Franchisor and its advisors and other relevant parties in interest regarding the cure objection.

- Negotiated, drafted, and finalized the cure settlement with the Pizza Hut Franchisor.

l.   <u>Retention/Fee Applications: Other Professionals (Task Code 025)</u>
     Fees:  $101,410.00; Total Hours:  120.60

- Corresponded with Debtors and other professionals regarding retention issues and compensation procedures.

- Reviewed and noticed monthly fee statements submitted by the Debtors' professionals.

- Reviewed, filed, and obtained Court approval of the Debtors' professionals' interim fee applications (Docket Nos. 1554-58).

m.  <u>Retention/Fee Applications: Weil (Task Code 026)</u>
Fees:  $95,284.50; Total Hours:  138.60

- Drafted and filed *Second Interim Fee Application of Weil, Gotshal & Manges LLP, Attorneys for Debtors, for Interim Allowance of Compensation for Professional Services Rendered and Reimbursement of Actual and Necessary Expenses Incurred from October 1, 2020 through and Including December 31, 2020* (Docket No. 1553) (the "**Weil Second Interim Fee Application**,").

- Reviewed time records and disbursements for compliance with U.S. Trustee Guidelines.

- Drafted, reviewed, and noticed Weil's monthly fee statements.

n.  <u>Tax Issues (Task Code 029)</u>
Fees:  $92,589.00; Total Hours:  67.30

- Conducted research and analysis regarding various potential tax issues and advised the Debtors regarding potential tax implications of the Plan and the Sale Transaction.

- Researched, analyzed, and advised the Debtors on various other tax related issues in connection with the Sale Transaction and the Plan.

o.  <u>Unsecured Creditors Issues/Meetings (Task Code 030)</u>
Fees:  $311,369.00; Total Hours:  342.50

- Participated on weekly calls with the Creditors' Committee and the Debtors' advisors regarding case updates, diligence, and various other aspects of the chapter 11 cases.

- Conducted research, negotiated and coordinated with the Creditors' Committee including providing documents regarding the insurance policies and prepetition personal injury and wrongful death claims, in connection with the development alternative dispute resolution procedures to resolve certain litigation claims and jointly filed with the Creditors' Committee the *Joint Motion of the Official Committee of Unsecured Creditors and the Debtors to Establish Alternative Dispute Resolution Procedures for Resolution of Litigation Claims and Granting Related Relief* (Docket No. 1577).

p.  <u>Wendy's Franchisor Issues (Task Code 033)</u>
Fees:  $40,301.00; Total Hours:  47.10

- Corresponded and conferenced with the Debtors, the Debtors' advisors, Wendy's Franchisor, and Wendy's Franchisor's advisors regarding various issues related to the settlement with the Wendy's Franchisor in connection with the Sale Transaction.

14

26.     In addition to the foregoing, Weil prepared, on behalf of the Debtors, all necessary motions, applications, orders, responses, and other papers in support of positions taken by the Debtors.

27.     The foregoing professional services were necessary and appropriate to the administration of the Debtors' chapter 11 cases.  The professional services performed by Weil were in the best interests of the Debtors and their stakeholders.  Compensation for such services is commensurate with the complexity, importance, and nature of the issues and tasks that were involved in these cases.  All of Weil's professional services were performed skillfully and efficiently.

28.     The professional services performed by Weil's partners, counsel, associates, and paraprofessionals were rendered by the Restructuring, Corporate, Litigation, and Tax, Benefits & Executive Compensation Departments predominantly in the New York, Houston, and Dallas offices.  Weil has a preeminent Restructuring practice and enjoys a national reputation for its expertise in financial reorganizations and restructurings of distressed entities.

29.     The professional services performed by Weil on behalf of the Debtors during the Third Interim Period required an aggregate expenditure of 6,821.30 hours by Weil's partners, counsel, associates, paraprofessionals, and other non-legal staff.  Of the aggregate time expended, 2,510.50 recorded hours were expended by partners and counsel of Weil, 4,010.70 recorded hours were expended by associates, and 300.10 recorded hours were expended by paraprofessionals and other non-legal staff of Weil.  Of the 61 Weil attorneys who billed time, 19 billed fewer than 15 hours to this matter.  Of the 8 Weil paraprofessionals and non-legal staff who billed time, 6 billed fewer than 15 hours to this matter.

30.     During the Third Interim Period, Weil billed the Debtors for time expended by attorneys based on hourly rates ranging from $630.00 to $1,795.00 per hour for attorneys.  Allowance of compensation in the amount requested would result in a blended hourly billing rate

for Weil attorneys in this Application of approximately $1,003.95 (based on 6,521.20 recorded hours for attorneys at Weil's billing rates in effect at the time of the performance of services).

**Summary of Services Performed by
Weil During Final Compensation Period**

31.     During the course of the Final Compensation Period and as set forth in more detail above and in the *First Interim Fee Application of Weil, Gotshal & Manges LLP, Attorneys for Debtors, for Interim Allowance of Compensation for Professional Services Rendered and Reimbursement of Actual and Necessary Expenses Incurred from July 1, 2020 Through and Including September 30, 2020* (Docket No. 1058) (the "**Weil First Interim Fee Application**"), and the Weil Second Interim Fee Application, Weil provided extensive services to the Debtors necessary to the administration and success of these chapter 11 cases.  Some of the most significant services provided by Weil include the following:

a.     Adversary Proceedings (Task Code 002)
        Fees:  $452,339.50; Total Hours:  465.70

- Researched, drafted, and filed adversary complaint.  *See NPC International, Inc. v. McLane Company, Inc.*, Adversary Proc. No. 20-03353 (DRJ) (Bankr. S.D.T.X  Aug. 3, 2020) (Docket No. 1) (the "**McLane Adversary Proceeding**") seeking to compel performance under the prepetition service agreements between the Debtors and McLane Company, Inc., and researched and analyzed various legal and factual issues related to the McLane Adversary Proceeding.

- Researched, drafted, and filed *Debtors' Opposition to McLane Foodservice, Inc.'s Motion to (I) Dismiss Debtors' Amended Complaint for Violations of the Automatic Stay, to Compel Performance of Executory Contracts, and Declaratory Judgment, and (II) Grant Related Relief*.  *See* NPC McLane Adversary Proceeding (Docket No. 47).

- Communicated and conferred with opposing counsel in each adversary proceeding.

- Communicated with the Debtors to coordinate case strategy, draft various pleadings, and prepared for conferences with opposing counsel and the Court regarding the McLane Adversary Proceeding.

16

b.  <u>Asset Disposition/363 Sales (Task Code 003)</u>
    Fees:  $7,793,016.00; Total Hours:  7,565.40

- Negotiated non-disclosure agreements with sale participants and their advisors.

- Drafted, filed, and obtained Court approval of the *Motion of Debtors for Entry of Orders (I)(A) Approving Bid Procedures for Sale of Debtors' Assets, (B) Scheduling Auction for and Hearing to Approve Sale of Debtors' Assets, (C) Approving Form and Manner of Notice of Sale, Auction, and Sale Hearing, (D) Approving Assumption and Assignment Procedures, and (E) Granting Related Relief, and (II)(A) Approving Sale of Debtors' Assets, (B) Authorizing Assumption and Assignment of Executory Contracts and Unexpired Leases, and (C) Granting Related Relief* (Docket No. 510) to approve bidding procedures and framework for Debtors' sale processes.

- Drafted form asset purchase agreement.

- Communicated with the Debtors to coordinate strategy and information flow for sale processes.

- Reviewed bid materials submitted by potential bidders for the Debtors' assets in connection with sale process.

- Negotiated sale documents with sale participants and their advisors.

- Drafted, filed, and obtained Court approval of *Debtors' Emergency Motion for Entry of an Order (I) Approving the Debtors' Selection of a Stalking Horse Bidder, (II) Approving Bid Protections in Connection Therewith, and (III) Granting Related Relief* (Docket No. 994).

- Drafted, reviewed, and amended asset purchase agreements and corresponded with the Debtors and the Debtors' advisors regarding various issues related to asset purchase agreements.

- Communicated internally amongst Weil practice groups and the Debtors' advisors regarding sale process related issues including tax considerations, due diligence requests, bid process, and franchise consent issues.

- Drafted, reviewed and filed numerous notices of cure amounts (Docket Nos. 781, 949, 1286) and corresponded with counsel to contract counterparties in connection with objections to cure amounts.

- Drafted, negotiated, and filed the Proposed Sale Order.

- Drafted, revised, and filed the *Notice of Final Desired 365 Contracts Designated for Assumption and Assignment in Connection with the*

17

*Wendy's Sale Transaction* (Docket No. 1597) and the Notice *of Final Desired 365 Contracts Designated for Assumption and Assignment in Connection with the (Flynn) Stalking Horse Sale Transaction* (Docket No. 1598).

- Communicated internally and participated on conference calls amongst Weil practice groups and the Debtors' advisors, and prepared various documents regarding various issues related to the sale closing, such as the transition services agreement.

- Conducted Research regarding various issues related to the sale closing.

c. Automatic Stay (Task Code 004)
   Fees: $771,528.50; Total Hours: 860.00

   - Reviewed and analyzed 12 motions for relief from stay filed during the Compensation Period.

   - Drafted and filed objections to various motions for relief from stay.

   - Communicated and negotiated with opposing counsel to resolve motions for relief from stay.

   - Drafted and filed Debtors' *Reply in Support of Debtors' Motion Pursuant to Sections 105(a), 362, and 365 of the Bankruptcy Code to Enforce the Automatic Stay and Compel Performance of McLane's Obligations under an Executory Contract* (Docket No. 786).

d. Bar Date/Claims Reconciliation Issues (Task Code 005)
   Fees: $3,260,203.00; Total Hours: 3,572.40

   - Drafted, filed, and obtained Court approval of *Emergency Motion of Debtors for Order (I) Establishing Deadline to File Proofs of Claim and (II) Approving Form and Manner of Notice Thereof* (Docket No. 401) to set certain bar dates and procedures for asserting prepetition claims against the Debtors.

   - Reviewed, analyzed, conducted research on, and corresponded with counsel regarding the issues in connection with the Driver Claimants.

   - Drafted, reviewed, and filed *Debtors' Opposition to Motion of the Driver Class Claimants for Leave to File Class Proofs of Claims* (Docket No. 770) (the "**7023 Motion**").

   - Reviewed, analyzed, and researched issues relating to the Driver Claimants' claims including the treatment of the Driver Claimants' claims and Fair Labor Standards Act.

   - Drafted, reviewed, and filed *Debtors' (I) Emergency Motion to Establish Scheduling and Estimation Protocol and (II) Motion to*

18

*Estimate the Driver Claimants' Claims* (Docket No. 912) (the "**Estimation Motion**").

- Discussed case strategy with the Debtors, the Debtors' advisors, and Weil's litigation team and prepared for Court filings, hearings, negotiations, depositions, and numerous other issues in connection with the Driver Claimants' claims and the Estimation Motion.

- Corresponded with and engaged in extensive discovery process with opposing counsel regarding the Driver Claimants' claims and the Estimation Motion. *See Order (I) Scheduling Certain Hearing Dates and (II) Establishing Certain Protocols in Connection with the Estimation of the Driver Claimants' Claims* (Docket No. 1015) as later amended by Docket Nos. 1248 and 1336.

- Prepared for and participated in mediation over several weeks to ultimately resolve all issues related to the Driver Claimants' claims, the 7023 Motion, and the Estimation Motion.

- Discussed strategy with the Debtors, the Debtors' advisors, and Weil's litigation team in connection with the Driver Claimants Settlement.

- Reviewed and revised the Plan in connection with the Driver Claimants Settlement, and drafted, negotiated, and finalized related settlement notices and forms.

- Conducted research on various considerations with regards to implementing the Driver Claimants Settlement including reimbursement, class claim certification, and insurance claim issues.

e.   Case Administration (Case Calendar and WIP) (Task Code 006)
Fees:  $152,650.00; Total Hours:  243.30

- Prepared and continually updated case calendars and comprehensive work-in-process list for the Debtors', the Debtors' other professionals', and internal use.

- Responded to a large volume of emails, calls, and correspondence related to the chapter 11 cases, including with respect to the work streams, issues, and matters described in this Application.

f.   Cash Collateral/Adequate Protection (Task Code 007)
Fees:  $230,817.50; Total Hours:  243.30

- Drafted, filed and obtained interim and final Court approval of *Emergency Motion of Debtors for Interim and Final Orders (I) Authorizing the Debtors to Use Cash Collateral, (II) Granting Adequate Protection to Prepetition Secured Parties, (III) Modifying the Automatic Stay, (IV) Scheduling a Final Hearing, and (V) Granting*

19

*Related Relief* (Docket No. 7) (the "**Cash Collateral Motion**") to provide the Debtors with sufficient working capital and access to cash to fund their operations during the chapter 11 cases.

- Negotiated with the Creditors' Committee and certain other stakeholders to resolve certain informal objections to the Cash Collateral Motion.

- Drafted and filed the *Debtors' Reply to Objection of McLane to Emergency Motion of Debtors for Interim and Final Orders (I) Authorizing the Debtors to Use Cash Collateral, (II) Granting Adequate Protection to Prepetition Secured Parties, (III) Modifying the Automatic Stay, (IV) Scheduling a Final Hearing, and (V) Granting Related Relief* (Docket No. 362).

- Communicated internally amongst the various Weil practice groups and the Debtors' other advisors regarding Cash Collateral related issues.

- Conducted research regarding certain Cash Collateral related issues.

g.    Chapter 11 Plan/Confirmation (Task Code 009)
      Fees:  $2,086,175.50; Total Hours:  2,206.30

- Drafted, negotiated, and filed various versions of the Plan.

- Coordinated with the Debtors, the Debtors' other advisors, and various internal Weil practice groups regarding the Plan.

- Prepared for, and participated on, numerous telephone conferences with the Debtors, management, the Ad Hoc Priority/1L Group, and additional professionals related to the Plan, the amended Restructuring Support Agreement, and the Backstop Commitment Agreement.

- Conducted research regarding various potential chapter 11 issues in connection with the Plan, including issues relating to various aspects of the Plan and confirmation of the Plan.

- Drafted and filed *Motion of Debtors for Order (I) Approving the Rights Offerings Procedures and Related Forms, (II) Authorizing the Debtors to Conduct the Rights Offerings in Connection With the Debtor's Plan of Reorganization, (III) Authorizing Entry Into Backstop Agreement, (IV) Approving Obligations Thereunder, and (V) Granting Related Relief* (Docket No. 707) seeking court approval of the rights offering procedures contemplated in a Reorganization Transaction as well as approval of entry into a backstop commitment agreement for the Rights Offering.

- Drafted and filed *Notice of Cure Amounts with Respect to Executory Contracts and Unexpired Leases of Debtors in Connection with the Plan* (Docket No. 1286).

- Drafted, negotiated, and filed various pleadings and documents related to the Plan and confirmation of the Plan including the Plan Supplements.

- Coordinated with the Debtors, the Debtors' advisors, and various internal Weil practice groups regarding the Plan and wind down considerations including the creation of the wind down budget.

- Drafted the Plan and conducted research regarding various potential chapter 11 issues in connection with the Plan, including issues relating to various aspects of the Plan and confirmation of the Plan.

- Drafted and reviewed proposed confirmation order.

- Coordinated with the Debtors, the Debtors' advisors, and various internal Weil practice groups regarding the information and documents to be included in the Plan Supplements.

- Drafted, negotiated, and filed the Plan and various pleadings and documents related to the Plan including the supplements to the Plan containing certain documents and forms of documents, schedules, and the Plan Supplements, confirmation brief, and declarations in support of confirmation.

- Conducted research regarding various confirmation issues, and prepared for the confirmation hearing, including reviewing and resolving objections received with respect to the Plan and confirmation.

- Drafted, reviewed, and analyzed various agreements and corporate documents in preparation for consummation of the Plan.

- Communicated internally amongst Weil practice groups and with the Debtors' advisors regarding various agreements, including the liquidating trust agreement and plan administrator agreement, and various wind down issues including the creation of the wind down budget and the professional fee escrow.

- Analyzed various considerations in connection with the post-effective date status of the Debtors including the post-effective date responsibilities of the officers.

- Drafted, reviewed, and filed the *Notice of (I) Entry of Order Confirming Joint Chapter 11 Plan of NPC International Inc. and Its Affiliated Debtors, (II) Occurrence of Effective Date, (III) Administrative Expense Claim Bar Date, and (IV) Driver Claimant Admin Bar Date* (Docket No. 1643).

h.    <u>Client Communication (Task Code 010)</u>
Fees:  368,307.00; Total Hours:  339.80

- Prepared for and participated in weekly teleconferences with the Debtors' management team and the Debtors' other advisors to discuss case strategy and coordination, Court filings and hearings, transaction negotiations, the Plan, and numerous other case issues and pending matters.

i.    <u>Corporate Governance/Securities (Task Code 011)</u>
Fees:  $539,256.50; Total Hours:  555.50

- Advised the Special Committee regarding the Debtors' chapter 11 cases and various corporate governance issues in connection with the chapter 11 cases, and provided updates to the board.

- Prepared materials for and participated in numerous telephonic meetings with the Special Committee and the Debtors' senior management regarding the chapter 11 cases.

- Drafted minutes, resolutions, and other corporate governance documents.

- Drafted, reviewed, and revised documents related to corporate governance, including amendments to corporate organizational documents.

j.    <u>Customer/Vendor Issues and Reclamation/503(b)(9) Claims (Task Code 012)</u>
Fees:  $178,132.50; Total Hours:  200.50

- Corresponded with Debtors, Debtors' professionals regarding vendor issues.

- Researched and prepared the *Debtors' Motion Pursuant to Section 105(a), 362, 365 of the Bankruptcy Code to Enforce the Automatic Stay and Compel Performance of McLane's Obligations under an Executory Contract* (Docket No. 348).

- Drafted, negotiated, and finalized a settlement with McLane and *Debtors' Motion for Entry of an Order (I) Authorizing and Approving Settlement Agreement between Debtors and McLane Foodservice, Inc. and (II) Granting Related Relief* (Docket No. 1341).

k.    <u>Disclosure Statement/Solicitation/Voting (Task Code 013)</u>
Fees:  $522,619.50; Total Hours:  605.70

- Prepared ballots and discussed solicitation with Epiq Corporate Restructuring, LLC.

22

- Drafted and filed various versions of the Disclosure Statement and the *Motion of Debtors for Entry of an Order (I) Approving Proposed Disclosure Statement; (II) Establishing Solicitation and Voting Procedures; (III) Scheduling Confirmation Hearing; (IV) Establishing Notice and Objection Procedures for Confirmation of the Proposed Plan; and (V) Approving Notice and Objection Procedures for the Assumption of Executory Contracts and Unexpired Leases* (Docket No. 629).

- Communicated with the Debtors and their other advisors regarding information to be included in the Disclosure Statement and the exhibits thereto.

- Communicated with the Debtors, their other advisors, counsel to the Ad Hoc Priority/1L Group, and certain other stakeholders and parties in interest regarding the Debtors' Disclosure Statement and timeline.

- Conducted research regarding certain Disclosure Statement related issues.

- Drafted, filed, and obtained Court approval of *Disclosure Statement for First Amended Joint Chapter 11 Plan of NPC International, Inc. and Its Affiliated Debtors* (Docket No. 946).

l.  <u>Employee Issues (Task Code 014)</u>
    Fees:  $408,614.50; Total Hours:  418.70

- Obtained Court approval of *Emergency Motion of Debtors for Order (I) Authorizing Debtors to (A) Pay Prepetition Wages, Salaries, Reimbursable Expenses and Other Obligations on Account of Compensation and Benefits Programs and (B) Continue Compensation and Benefit Programs and (II) Granting Related Relief* (Docket No. 12) for authorization to satisfy certain employee-related obligations, and advised the Debtors regarding compliance therewith.

- Communicated with the Debtors and their other advisors regarding the creation of a key employee incentive plan and key employee retention plan.

- Drafted, filed, responded to objections to, and obtained Court approval of *Emergency Motion of Debtors for Order (I) Approving (A) the Key Employee Incentive Plan and (B) the Non-Insider Key Employee Retention Plan and (II) Granting Related Relief* (Docket No. 548).

- Conducted research and advised the Debtors regarding issues related to deferred compensation, and other employment compensation issues.

- Communicated internally amongst Weil practice groups and with the Debtors and Debtors' advisors regarding various labor and employment

issues including employment agreements, policies, and compensation and benefits plans as applicable.

m.   Executory Contracts/Leases/Real Property/Section 365 Issues (Task Code 016)
Fees:  $1,363,536.00; Total Hours:  1,528.80

- Advised the Debtors regarding the Bankruptcy Code's effects on leases and potential negotiations regarding lease amendments.

- Corresponded with landlords to ensure compliance with terms of the automatic stay and other inquiries related to Debtors' leases.

- Researched legal issues related to potential real estate transactions and liabilities.

- Coordinated with A&G, Weil Real Estate, and client counsel to review and revise lease amendments.

- Drafted, filed, and obtained Court's approval of the *Motion of Debtors for Entry of an Order (I) Approving Procedures for Rejection of Unexpired Leases of Nonresidential Real Property and Abandonment of Property in Connection Therewith and (II) Granting Related Relief* (Docket No. 664) and *Motion of Debtors for Authority to Extend Time to Assume or Reject Unexpired Leases of Nonresidential Real Property* (Docket No. 780).

- Reviewed a large volume of cure objections filed and corresponded with contract counterparties regarding cure objections and potential settlements and other inquiries related to Debtors' contracts and leases.

- Drafted, filed, and obtained Court's approval of *Emergency Second Motion of Debtors for Authority to Extend Time to Assume or Reject Unexpired Leases of Nonresidential Real Property* (Docket No. 1461).

- Drafted, and filed, and obtained Court's approval of several *Notice of Rejection of Certain Unexpired Leases of Nonresidential Real Property and Abandonment of Property in Connection therewith* (Docket Nos. 1508, 1509, 1519, 1521, 1522).

n.   General Case Strategy (Including Team Calls) (Task Code 017)
Fees:  $913,955.50; Total Hours:  904.60

- Conducted numerous internal team meetings, conferences and teleconferences regarding the status and administration of the Debtors' chapter 11 case, various business-related issues and general case strategy, and various work streams regarding the matters described in this Application.

24

- Prepared for and participated on numerous teleconferences with the Debtors' advisors and key stakeholders of the Debtors' cases to discuss various issues of the Debtors' chapter 11 cases.

o.   Hearings and Court Matters (Task Code 018)
     Fees: $588,785.00; Total Hours: 648.10

- Prepared for and represented the Debtors at hearings, including the first-day hearing, second-day hearing, the KEIP hearing, the bidding procedures hearing sale hearing, and confirmation hearing, status conferences, and mediations relating to, among other things, the McLane Adversary Proceeding, sale process, disclosure statement and the Driver Claimants issues.

- Conducted witness preparation for hearings and drafted declarations and documents in support thereof for various motions and matters.

- Reviewed, revised, and finalized proposed orders granting the Debtors' first-day and second-day motions and communicated with the Debtors, their other advisors, the U.S. Trustee, and certain other parties in interest regarding the same.

- Prepared, filed on the docket of these chapter 11 cases, and arranged service of various motions, notices and documents, including agendas, witness and exhibit lists, proposed orders, and certificates of no objection to avoid the expense of hearings on uncontested matters.

p.   Insurance and Workers Compensation Issues (Task Code 019)
     Fees: $136,120.00; Total Hours: 141.40

- Drafted and obtained Court approval of *Emergency Motion of Debtors for Interim and Final Orders (I) Authorizing Debtors to (A) Maintain Their Insurance Policies and Programs and Surety Bond Program and (B) Honor All Obligations with Respect Thereto, (II) Modifying Automatic Stay with Respect to Workers' Compensation Programs, and (III) Granting Related Relief* (Docket No. 125).

- Corresponded with various parties regarding insurance claims.

q.   Pizza Hut Franchisor Issues (Task Code 022)
     Fees: $508,944.00; Total Hours: 530.20

- Negotiated, drafted, filed and obtained Court approval of *the Emergency Joint Motion for Entry of an Order (I) Authorizing and Approving Settlement Agreement Between Debtors and Pizza Hut, LLC and (II) Granting Related Relief* (Docket No. 459) (the "**Closure Consent Agreement**") which allows for the consensual closure of up to 300 Pizza Hut Restaurants.

25

- • Reviewed, discussed, and responded to inquiries related to issues arising under the Closure Consent Agreement.

- • Researched and summarized issues relating to Closure Consent Agreement.

- • Reviewed press release and communication materials relating to Pizza Hut Closure Consent Agreement.

r.   Retention/Fee Applications: Other Professionals (Task Code 025)
Fees:  $362,998.00; Total Hours:  446.00

- • Drafted, reviewed, and filed applications and related declarations and other documents in connection with the retention of the Debtors' other professionals, including AlixPartners, LLP, A&G Realty Partners, LLC, Greenhill & Co., LLC, Ernst & Young LLP, and KPMG LLP.

- • Drafted and obtained Court approval of *Motion of Debtors for Entry of Order (I) Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Professionals and (II) Granting Related Relief* (Docket No. 205).

- • Participated on numerous calls with the U.S. Trustee and other advisors regarding retention applications.

- • Reviewed, filed and obtained Court approval of the Debtors' professionals' interim fee applications (Docket Nos. 1059, 1060, 1061, 1062) and corresponded with Debtors and other professionals regarding the interim compensation procedures.

s.   Retention/Fee Applications: Weil (Task Code 026)
Fees:  $237,559.50; Total Hours:  357.00

- • Drafted, filed and obtained Court approval of *Application of Debtors for Authority to Retain and Employ Weil, Gotshal & Manges LLP as Attorneys for the Debtors Effective as of Petition Date* (Docket No. 206) for the retention of Weil as attorneys for the Debtors; supporting affidavit, notice, and proposed order.

- • Reviewed time records and disbursements for compliance with U.S. Trustee Guidelines and drafted and reviewed Weil's monthly fee statements.

- • Drafted, filed and, obtained Court approval of the Weil First Interim Fee Application and drafted and filed the Weil Second Interim Fee Application

- • Drafted and filed supplemental declaration related to Weil's retention (Docket No. 1148).

- Reviewed time records and disbursements for compliance with U.S. Trustee Guidelines.

- Drafted, reviewed, and served Weil's monthly fee statements.

- Corresponded with the U.S. Trustee regarding the Weil Second Interim Fee Application and negotiated the terms and conditions of the Second Interim Fee Stipulation Order.

t.    Schedules/SOFAs/2015.3 Report (Task Code 027)
      Fees:  $54,726.50; Total Hours:  73.40

- Assisted the Debtors and coordinated with its advisors to prepare and file the Debtors' schedules of assets and liabilities and statements of financial affairs.

u.    Secured Creditor Issues/Meetings/Communications (Task Code 028)
      Fees:  $128,331.00; Total Hours:  125.80

- Attended regular meetings and calls with the Ad Hoc Priority/1L Group and their advisors and the Debtors' other advisors regarding case strategy, diligence, and various other aspects of the chapter 11 cases.

v.    Tax Issues (Task Code 029)
      Fees:  $703,724.50; Total Hours:  499.80

- Conducted research and analysis regarding various potential tax issues and advised the Debtors regarding potential tax implications of the Plan.

- Drafted tax-related sections of the Plan and the Disclosure Statement.

- Drafted, filed, and obtained the Court's approval of the *Emergency Motion of Debtors for Interim and Final Orders Establishing Notification Procedures and Approving Restrictions on (A) Certain Transfers of Interests in the Debtors and (B) Claims of Certain Worthless Stock Deductions* (Docket No. 11).

- Conducted research on and analyzed the tax implications of potential stock sales and preservation of tax attributes.

- Researched, analyzed, and advised the Debtors on various other tax-related issues, including the treatment of tax obligations in chapter 11 cases and the sale process under the Plan.

- Conducted research and analysis regarding various potential tax issues and advised the Debtors regarding potential tax implications of the Plan and the Sale Transaction.

w.    Unsecured Creditors Issues/Meetings (Task Code 030)
      Fees:  $1,658,333.50; Total Hours:  1,706.90

- Attended regular meetings and calls with the Creditors' Committee and the Debtors' other advisors regarding case strategy, diligence, and various other aspects of the chapter 11 cases.

- Communicated with counsel to Creditors' Committee in connection with the Creditors' Committee's diligence and discovery requests, produced documents.

- Conducted extensive document review and document production in response to the Creditors' Committee diligence and discovery requests.

- Communicated with counsel to Creditors' Committee and Debtors' advisors in connection with the Standing Motion.

- Communicated with counsel to Creditors' Committee and conducted extensive document review and document production in connection with the Creditors' Committee's Standing Motion diligence and discovery requests.

- Drafted, reviewed, and filed various pleadings in response to the Standing Motion including an opposition to the Standing Motion (Docket No. 1292) and declarations in support of the opposition (Docket Nos. 1294, 1296).

- Negotiated with the Debtors' advisors, the Creditors' Committee, and the Ad Hoc Priority/1L Group regarding the settlement of the Standing Motion.

- Conducted research and negotiated with the Creditors' Committee regarding the alternative dispute resolution procedures to resolve certain litigation claims, and reviewed and jointly filed the *Joint Motion of the Official Committee of Unsecured Creditors and the Debtors to Establish Alternative Dispute Resolution Procedures for Resolution of Litigation Claims and Granting Related Relief* (Docket No. 1577).

x.    Utility Adequate Assurance (Task Code 032)
      Fees:  $73,769.00; Total Hours:  93.80

- Reviewed, negotiated, and resolved additional assurance requests from various Utility Providers and responded to inquiries from Utility Providers.

- Coordinated with Debtor, Debtor professionals, and utility provider to secure shutoff of utility services for restaurants closed under Closure Consent Agreement.

28

- Reviewed and resolved questions regarding utility surety bonds and the draw on those bonds for prepetition amounts owed to Utility Providers.

y.    <u>Wendy's Franchisor Issues (Task Code 033)</u>
Fees:  $496,638.00; Total Hours:  507.80

- Researched and discussed with the Debtors and the Debtors' advisors regarding Wendy's franchise agreement and contractual rights.

- Filed various pleadings and prepared for and participated in mediation to resolve issues related to sale process regarding Wendy's consent and franchise agreement.

- Corresponded with the Debtors and the Debtors' advisors regarding various issues related to mediation with Wendy's including drafting mediation statements.

- Corresponded with the Debtors and the Debtors' advisors regarding various issues related to the settlement with the Wendy's Franchisor with respect to various issues related to the Sale Transaction, the Wendy's Franchisor's consent, and the franchise agreements.

32.    In addition to the foregoing, Weil prepared, on behalf of the Debtors, all necessary motions, applications, orders, notices, responses, and other papers in support of positions taken by the Debtors and in compliance with applicable law.

33.    The foregoing professional services were necessary and appropriate to the administration of the Debtors' chapter 11 cases.  The professional services performed by Weil were in the best interests of the Debtors and their stakeholders.  Compensation for such services is commensurate with the complexity, importance, and nature of the issues and tasks that were involved in these cases.  All of Weil's professional services were performed skillfully and efficiently.

34.    The professional services performed by Weil's partners, counsel, associates, and paraprofessionals, and other non-legal staff were rendered by the Restructuring, Corporate, Litigation, and Tax, Benefits & Executive Compensation Departments predominantly in the New York, Houston, and Dallas offices.  Weil has a preeminent Restructuring practice and

enjoys a national reputation for its expertise in financial reorganizations and restructurings of distressed entities.

35.     The professional services performed by Weil on behalf of the Debtors during the Final Compensation Period required an aggregate expenditure of approximately 25,156.60 hours by Weil's partners, counsel, associates, paraprofessionals, and other non-legal staff.  Of the aggregate time expended, approximately 8,888.50 recorded hours were expended by partners and counsel of Weil, approximately 15,140.40 recorded hours were expended by associates, and approximately 1,127.70 recorded hours were expended by paraprofessionals and other non-legal staff of Weil.  Of the 113 Weil attorneys who billed time, 33 billed fewer than 15 hours to this matter.  Of the 35 Weil paraprofessionals and non-legal staff who billed time, 19 billed fewer than 15 hours to this matter.

36.     During the Final Compensation Period, Weil billed the Debtors for time expended by attorneys based on hourly rates ranging from $595.00 to $1,795.00 per hour for attorneys.  Allowance of compensation in the amount requested would result in a blended hourly billing rate for Weil attorneys in this Application of approximately $991.19 (based on 24,028.90 recorded hours for attorneys at Weil's billing rates in effect at the time of the performance of services).

**Actual and Necessary Disbursements of Weil**

37.     As set forth in **Exhibit E** attached hereto, Weil has disbursed (i) $130,036.23 as expenses incurred in providing professional services during the Third Interim Period and (ii) $241,662.40 as expenses incurred in providing professional services during the Final Compensation Period.  These expenses are reasonable and necessary and were essential to the overall administration of these cases.

38.     Although Weil has not charged the Debtors for any overtime expenses, consistent with firm policy, attorneys and other employees of Weil who worked late into the

evenings or on weekends were reimbursed for their reasonable meal costs and their cost for transportation home from Weil's offices.  Weil's regular practice is not to include components of those charges in overhead when establishing billing rates and to charge its clients for these and all other out-of-pocket disbursements incurred during the regular course of the rendition of services. The reimbursement amounts do not exceed those set forth in the Fee Guidelines or the Local Rules.

39.     With respect to photocopying expenses, in compliance with the Fee Guidelines and Local Rule 2016-1, Weil charges all of its clients $0.10 per black-and-white page; Weil charges $0.50 per color page.  With respect to legal research, Weil does not charge more than the actual cost.  Each of these categories of expenses does not exceed the maximum rate set by the Fee Guidelines or the Local Rules.  These charges are intended to cover Weil's direct operating costs, which costs are not incorporated into Weil's hourly billing rates.  Only clients who actually use services of the types set forth in **Exhibit E** are separately charged for such services.  The effect of including such expenses as part of the hourly billing rates would impose that cost upon clients who do not require extensive photocopying and other facilities and services.  The amount of the standard photocopying charge is intended to allow Weil to cover the related expenses of its photocopying service.  A determination of the actual expenses per page for photocopying, however, is dependent on both the volume of copies and the total expenses attributable to photocopying on an annual basis.

40.     On certain occasions, overnight delivery of documents and other materials was required as a result of circumstances necessitating the use of such express services.  These disbursements are not included in Weil's overhead for the purpose of setting billing rates.  Weil has made every effort to minimize its disbursements in these cases.  The actual expenses incurred in providing professional services were those that were absolutely necessary, reasonable, and justified under the circumstances to serve the needs of the Debtors and their estates and creditors.

**Requested Compensation Should Be Allowed**

41.     Section 331 of the Bankruptcy Code provides for interim compensation of professionals and incorporates the substantive standards of section 330 to govern the Court's award of such compensation.  Section 330(a)(1) of the Bankruptcy Code provides that a Court may award a professional employed under section 327 of the Bankruptcy Code "reasonable compensation for actual, necessary services rendered [and] reimbursement for actual, necessary expenses." 11 U.S.C. § 330(a)(1).

42.     The Court of Appeals has held that the six factors found in section 330(a)(3) of the Bankruptcy Code are to be considered when awarding compensation to professionals.  *See In re Crager*, 691 F.3d 671, 676 (5th Cir. 2012).  Specifically, under section 330 of the Bankruptcy Code, courts "shall consider the nature, the extent, and the value of such services, taking into account all relevant factors," including—

> (A)     the time spent on such services;
>
> (B)     the rates charged for such services;
>
> (C)     whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;
>
> (D)     whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;
>
> (E)     with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and
>
> (F)     whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

11 U.S.C. § 330(a)(3).

43.     In the instant case, Weil submits that the services for which it seeks compensation and the expenditures for which it seeks reimbursement in this Application were necessary for and beneficial to the preservation and maximization of value for all stakeholders and to the orderly administration of the Debtors' estates.   The compensation requested herein is reasonable in light of the nature, extent, and value of such services to the Debtors, their estates, and all parties in interest.

44.     Compensation for the foregoing services as requested is commensurate with the complexity, importance, and nature of the issues and tasks involved.   Not only were Weil's professional services performed skillfully and efficiently, but whenever possible, Weil sought to minimize the cost of its services to the Debtors by utilizing talented junior attorneys and paraprofessionals to handle the more routine aspects of case administration.   In addition, groups of the same Weil attorneys were utilized for similar tasks in these cases to minimize the costs of intra-Weil communication and education about the Debtors' circumstances.   As described above, the complexity of these cases required the use of specialists in Tax, Mergers and Acquisitions, Banking and Finance, Capital Markets, Employee Benefits, and other Departments within Weil to achieve the progress the Debtors have reached thus far in these chapter 11 cases.

45.     In sum, the services rendered by Weil were necessary and beneficial to the Debtors' estates and were consistently performed in a timely manner commensurate with the types of issues involved in these chapter 11 cases.   Accordingly, approval of the compensation for professional services and reimbursement of expenses sought in this Application is warranted.

## **Notice**

46.     Notice of this Application will be provided in accordance with the procedures set forth in the Interim Compensation Order.   The Debtors respectfully submit that no further notice is required.

47.     No previous request for the relief sought herein has been made by Weil or the Debtors to this or any other Court.

### Conclusion

48.     Weil respectfully requests that the Court award (i) interim and final allowance of Weil's compensation for professional services rendered during the Third Interim Period in the amount of $6,893,064.73, consisting of $6,673,028.50 representing 100% of fees incurred during the Third Interim Period, and reimbursement in the amount of $130,036.23, representing 100% of actual and necessary expenses incurred during the Third Interim Period, and (ii) final allowance of Weil's compensation for professional services rendered during the Final Compensation Period in the amount of $24,456,915.65 consisting of $24,215,253.25 representing 100% of fees incurred during the Final Compensation Period, and reimbursement in the amount of $241,662.40, representing 100% of actual and necessary expenses incurred during the Final Compensation Period, and that such allowance be without prejudice to Weil's right to seek additional compensation for services performed and expenses incurred during the Compensation Periods in the event such fees and expenses were not processed at the time of this Application and grant such other and further relief as is proper and just.

Dated:  April 30, 2021
        Houston, Texas

                                     _/s/_ _Alfredo R. Pérez_

WEIL, GOTSHAL & MANGES LLP
Alfredo R. Pérez (15776275)
700 Louisiana Street, Suite 1700
Houston, Texas 77002
Telephone: (713) 546-5000
Facsimile:  (713) 224-9511
Email:  Alfredo.Perez@weil.com

-and-

WEIL, GOTSHAL & MANGES LLP
Ray C. Schrock, P.C. (admitted *pro hac vice*)
Kevin Bostel (admitted *pro hac vice*)
Natasha Hwangpo (admitted *pro hac vice*)
767 Fifth Avenue
New York, New York 10153
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007
Email: Ray.Schrock@weil.com
       Kevin.Bostel@weil.com
       Natasha.Hwangpo@weil.com

*Attorneys for Debtors and Debtors in Possession*

**<u>Certificate of Service</u>**

I hereby certify that on April 30, 2021, a true and correct copy of the foregoing document was served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

_/s/  Alfredo R. Pérez_
Alfredo R. Pérez