IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | § | |
|---|---|---|
| In re | § | Chapter 11 |
| | § | |
| NPC INTERNATIONAL, INC., | § | Case No. 20–33353 (DRJ) |
| *et al.*, | § | |
| Debtors.[1] | § | (Jointly Administered) |
| | § | |

**DEBTORS' MOTION FOR ENTRY OF
FINAL DECREE CLOSING CERTAIN OF THE CHAPTER 11 CASES**

> **Please note that through the entry of General Order 2020-10 on March 24, 2020, General Order 2020-11 on April 27, 2020, General Order 2020-17 on June 12, 2020, General Order 2020-18 on June 29, 2020, and General Order 2020-19 on August 7, 2020 the Court invoked and then extended and modified the protocol for emergency public health or safety conditions.**
>
> **Audio communication will be by use of the Court's dial-in facility. You may access the facility at (832) 917-1510. You will be responsible for your own long-distance charges. Once connected, you will be asked to enter the conference room number. Judge Jones' conference room number is 205691.**
>
> **You may view video via GoToMeeting. To use GoToMeeting, the Court recommends that you download the free GoToMeeting application. To connect, you should enter the meeting code "JudgeJones" in the GoToMeeting app or click the link on Judge Jones' home page on the Southern District of Texas website. Once connected, click the settings icon in the upper right corner and enter your name under the personal information setting.**
>
> **Hearing appearances must be made electronically in advance of the hearing. To make your electronic appearance, go to the Southern District of Texas website and select "Bankruptcy Court" from the top menu. Select "Judges' Procedures," then "View Home Page" for Judge Jones. Under "Electronic Appearance" select "Click here to submit Electronic Appearance". Select the case name, complete the required fields and click "Submit" to complete your appearance.**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are NPC International, Inc. (7298); NPC Restaurant Holdings I LLC (0595); NPC Restaurant Holdings II LLC (0595); NPC Holdings, Inc. (6451); NPC International Holdings, LLC; (8234); NPC Restaurant Holdings, LLC (9045); NPC Operating Company B, Inc. (6498); and NPC Quality Burgers, Inc. (6457). The Debtors' corporate headquarters and service address is 4200 W. 115th Street, Suite 200, Leawood, KS 66211.

> **If you object to the relief requested, you must respond in writing. Unless otherwise directed by the Court, you must file your response electronically at https://ecf.txsb.uscourts.gov/ within twenty-one days from the date this motion was filed. Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**

NPC International, Inc. and its debtor affiliates in the above-captioned chapter 11 cases, as debtors and debtors in possession (collectively, the "**Debtors**"), respectfully represent as follows in support of this motion (the "**Motion**"):

## Relief Requested

1. Pursuant to section 350(a) of title 11 of the United States Code (the "**Bankruptcy Code**"), and Rule 3022 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), the Debtors seek entry of a final decree and order, substantially in the form attached hereto as **Exhibit A** (the "**Proposed Final Decree**"), closing certain of the chapter 11 cases of the Debtors on the list attached to the Proposed Final Decree as **Appendix 1** (collectively, the "**Closing Debtors**").

2. The chapter 11 case of Debtor NPC International, Inc. ("**NPCI**") (Case No. 20–33353 (DRJ)) (the "**NPC Remaining Case**") will remain open to provide the Debtors the opportunity to finalize the process of resolving any contested matters and reconciling, objecting to, and resolving claims.

## Jurisdiction

3. This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## Background

4. On July 1, 2020 (the "**Petition Date**"), each of the Debtors commenced with this Court a voluntary case under chapter 11 of the Bankruptcy Code. Prior to the Effective

Date (as defined below), the Debtors were authorized to continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5. The Debtors' chapter 11 cases were jointly administered for procedural purposes only pursuant to Bankruptcy Rule 1015(b) and Local Rule 1015-1.

6. On July 13, 2020, the United States Trustee for the Southern District of Texas (the "**U.S. Trustee**") appointed an official committee of unsecured creditors (the "**Creditors' Committee**"). *See Notice of Appointment of Committee of Unsecured Creditors* [Docket No. 193]. The Creditors' Committee was dissolved on the Effective Date pursuant to section 12.18 of the Plan (as defined below) except for certain limited purposes.

7. On January 25, 2021, the Court entered the *Order (A) Authorizing the Sale of Acquired Assets Free and Clear of Liens, Claims, Encumbrances, and Other Interests, (B) Authorizing and Approving the Purchase Agreement for Such Sale, (C) Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases Related Thereto, and (D) Granting Related Relief* [Docket No. 1474], and the *Order (A) Authorizing the Sale of Acquired Wendy's Assets Free and Clear of Liens, Claims, Encumbrances, and Other Interests, (B) Authorizing and Approving the Wendy's Purchase Agreement for Such Sale, (C) Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases Related Thereto, and (D) Granting Related Relief* [Docket No. 1475], together approving the Sale Transaction with the Successful Bidders.[2] On March 24, 2021, the Sale Transaction closed and substantially all of the Debtors' Assets were sold to the Successful Bidders.

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan or the Confirmation Order (defined below), as applicable.

3

8. On January 29, 2021, the Court entered the *Findings of Fact, Conclusions of Law, and Order Confirming Second Amended Joint Chapter 11 Plan of NPC International, Inc. and Its Affiliated Debtors* [Docket No. 1528] (the "**Confirmation Order**"), confirming the *Second Amended Joint Chapter 11 Plan of NPC International, Inc. and Its Affiliated Debtors* [Docket No. 1477] (the "**Plan**"). Pursuant to paragraph 20 of the Confirmation Order, the Confirmation Order is a final order, and the period in which an appeal must be filed commenced upon entry of the Confirmation Order. No appeal was timely filed.

9. On March 31, 2021, all conditions to effectiveness of the Plan occurred and the Plan became effective (the "**Effective Date**"). On April 1, 2021, the Debtors filed the *Notice of (I) Entry of Order Confirming Joint Chapter 11 Plan of NPC International Inc. and its Affiliated Debtors, (II) Occurrence of Effective Date, (III) Administrative Expense Claim Bar Date, and (IV) Driver Claimant Admin Bar Date* [Docket No. 1643]. Upon the occurrence of the Effective Date, pursuant to sections 5.4(b) and 5.18 of the Plan, respectively, an entity was created to reconcile and resolve all Claims against the Debtors, other than with respect to General Unsecured Claims, and Wind Down the remaining Estates (the "**Liquidating Trust**"), and a separate trust for general unsecured creditors (the "**GUC Trust**") was created for the purposes of reviewing, reconciling, objecting to, and resolving disputed General Unsecured Claims and making appropriate distributions.

10. As contemplated and required by the Plan and the Confirmation Order, all documents and agreements necessary to implement the Plan were executed or will be executed in accordance with the terms of the Plan and the Confirmation Order.

11. All claims of creditors in the chapter 11 cases have been or will be paid, resolved, or disputed consistent with the relevant provisions of the Plan. There are a number of

claims at or related to the Closing Debtors that are outstanding and yet to be resolved, which will be resolved either through the Liquidating Trust or the GUC Trust in accordance with the Plan.

12. All professional fees, if not already paid, will be paid out of the Fee Escrow account funded by the Debtors in accordance with section 2.2 of the Plan by the NPC Remaining Case.

13. All expenses arising from the administration of the Closing Debtors' estates and chapter 11 cases, including court fees and fees arising under 28 U.S.C. § 1930(a)(6) (the "**Section 1930 Fees**"), have been paid or will be paid in accordance with paragraph 28 of the Confirmation Order. The total quarterly U.S. Trustee fees paid by the Closing Debtors for the first quarter of 2021 were approximately $501,500. The total quarterly U.S. Trustee fees paid by the Closing Debtors for the second quarter of 2021, if any, will be paid when they come due.

14. All transactions and distributions required to be made under the Plan have been made or will be made in accordance with the terms thereof. The Debtors have funded the amounts to be distributed under the Plan, including significant creditor distributions made on the Effective Date to holders of Allowed Priority Term Loan Secured Claims and Allowed First Lien Secured Claims, as well as the Fee Escrow Account, the Wind Down Budget, and necessary reserves on account of any disputed claims under the Plan. The Debtors have also funded the GUC Trust with the $3,000,000 in GUC Trust Assets and $500,000 in GUC Trust Reserve.

15. With respect to adversary proceedings related to the Closing Debtors, in the case of *NPC International, Inc. v. McLane Foodservice, Inc.* (Adv. Pro. No. 20-03353) (the "**McLane Adversary Proceeding**"), the Debtors and McLane Foodservice, Inc. filed the *Joint Stipulation of Dismissal of Adversary Proceedings* (Adv. Docket No. 60) on February 3,

2021, dismissing the McLane Adversary Proceeding with prejudice. No other adversary proceedings remain pending against the Closing Debtors.

### Basis for Relief

16. Section 350(a) of the Bankruptcy Code provides that "[a]fter an estate is fully administered and the court has discharged the trustee, the court shall close the case." 11 U.S.C. § 350(a). Bankruptcy Rule 3022, which implements section 350 of the Bankruptcy Code, further provides that "[a]fter an estate is fully administered in a chapter 11 reorganization case, the court, on its own motion or on motion of a party in interest, shall enter a final decree closing the case." Fed. R. Bankr. P. 3022.

17. The term "fully administered" is not defined in either the Bankruptcy Code or the Bankruptcy Rules. The Advisory Committee Note to Bankruptcy Rule 3022, however, sets forth the following non-exclusive factors to be considered in determining whether a case has been fully administered:

    a) whether the order confirming the plan has become final;

    b) whether deposits required by the plan have been distributed;

    c) whether the property proposed by the plan to be transferred has been transferred;

    d) whether the debtor or its successor has assumed the business or the management of the property dealt with by the plan;

    e) whether payments under the plan have commenced; and

    f) whether all motions, contested matters, and adversary proceedings have been finally resolved.

Fed. R. Bankr. P. 3022, Advisory Comm. Note (1991).

18. Courts have generally used the six factors listed in the Advisory Committee Note to determine whether a case has been fully administered. *See, e.g.*, *In re Clayton*, 1996 WL

661099, summary op. at *1–2 (5th Cir. 1996) ("Although rule 3022 does not define 'fully administered,' the Advisory Committee Notes provide some guidance, listing various factors a court should consider in determining whether an estate has been fully administered"); *In re JCP Props., Ltd.*, 540 B.R. 596, 605 (Bankr. S.D. Tex. 2015) (analyzing Advisory Committee Notes); *In re Valence Tech., Inc.*, Ch. 11 Case No. 12-11580-CAG, 2014 WL 5320632, at *3 (Bankr. W.D. Tex. Oct. 17, 2014); *In re Gould*, 437 B.R. 34, 37 (Bankr. D. Ct. 2010); *In re Jay Bee Enter., Inc.*, 207 B.R. 536, 538 (Bankr. E.D. Ky. 1997). The six factors, however, are merely guidelines that aid a court's determination, and each of the factors need not be present before a court enters a final decree. *See Mold Makers*, 124 B.R. 766, 768 (Bank. N.D. Ill. 1990) ("[A]ll of the factors in the Committee Note need not be present before the Court will enter a final decree"); *see also Walnut Associates v. Saidel*, 164 B.R 487, 493 (E.D. Pa. 1994).

19.     Courts have previously entered final decrees notwithstanding remaining future payments contemplated under a chapter 11 plan. *See, e.g., In re Gen. Dev. Corp.*, 180 B.R. 303, 306 (Bankr. S.D. Fla. 1995) (the fact that there might be further redistribution of stock and notes by reorganized debtor as well as continuing payments of cash to certain creditors did not prevent bankruptcy court from entering final decree closing consolidated Chapter 11 cases based on substantial consummation of Chapter 11 plan); *In re Johnson*, 402 B.R. 851, 856 (Bankr. N.D. Ind. 2009) ("Although the debtor has not completed the plan payments, that does not prevent a case from being fully administered."); *In re Mendez*, 464 B.R. 63, 65 (Bankr. D. Mass. 2011) (an individual Chapter 11 case need not remain open during the entire post-confirmation period only because a discharge has not been entered and plan payments have not been completed). Indeed, the Advisory Committee Notes to Bankruptcy Rule 3022 expressly provide that "entry of

a final decree closing a chapter 11 case should not be delayed solely because the payments required by the plan have not been completed." Fed. R. Bankr. P. 3022, Advisory Comm. Note.

20. In addition to the factors set forth in the Advisory Committee Note, courts have considered whether the plan has been substantially consummated. *See, e.g., JCP Props*, 540 B.R. at 605 ("[S]ubstantial consummation is the pivotal question here to determine the propriety of closing the [debtor's] case by Final Decree."); *In re Gates Cmty. Chapel of Rochester, Inc.*, 212 B.R. 220, 224 (Bankr. W.D.N.Y. 1997) (considering substantial consummation as a factor in determining whether to close a case); *Walnut Assocs.*, 164 B.R. at 493 (same). Section 1101(2) of the Bankruptcy Code defines "substantial consummation" as "(a) transfer of all or substantially all of the property proposed by the plan to be transferred; (b) assumption by the debtor or by the successor to the debtor under the plan of the business or of the management of all or substantially all of the property dealt with by the plan; and (c) commencement of distribution under the plan."

21. Bankruptcy courts have adopted the view that "these factors are but a guide in determining whether a case has been fully administered, and not all factors need to be present before the case is closed." *In re SLI, Inc.*, No. 02-12608 (WS), 2005 WL 1668396, at *2 (Bankr. D. Del. June 24, 2005) (citing *In re Mold Makers, Inc.*, 124 B.R. 766, 768-69 (Bankr. N.D. Ill. 1991)); *see also In re Federated Department Stores, Inc.*, 43 Fed. Appx. 820, 822 (6th Cir. 2002) ("A court should review each request for entry of a final decree on a case-by-case basis and analyze the factors set forth in Rule 3022, along with any other relevant factors, in determining whether an estate has been fully administered."); *In re Kliegl Bros. Universal Elec. Stage Lighting Co.*, Inc., 238 B.R. 531, 542 (Bankr. E.D.N.Y. 1999) (recognizing that bankruptcy courts weigh the factors contained in the advisory committee note when deciding whether to close a case); *Ericson v. IDC Servs., Inc. (In re IDC Servs., Inc.)*, Ch. 11 Case No. 93 B 45922 (SMB), 1998 WL 547085, at *3

(S.D.N.Y. Aug. 28, 1998) ("[T]he approach that looks to the Advisory Note provides a more complete and flexible standard for determining when to close a chapter 11 case, and is therefore preferable."); *In re Jay Bee Enters., Inc.*, 207 B.R. 536, 538 (Bankr. E.D. Ky. 1997) ("Rule 3022 allows the court flexibility. It does not require that a chapter 11 case be kept open until all awarded fees and allowed claims have been paid in accordance with the confirmed plan or until the statutory fees . . . have been paid."); *Walnut Assocs. v. Saidel*, 164 B.R 487, 493 (E.D. Pa. 1994) ("[A]ll of the factors in the Committee Note need not be present before the Court will enter a final decree.").

### Chapter 11 Cases of Closing Debtors Have Been Fully Administered

22. The Closing Debtors have been "fully administered" within the meaning of section 350 of the Bankruptcy Code, making it appropriate for the Court to enter a final decree closing these cases. The Confirmation Order was entered on January 29, 2021, and the Plan has been substantially consummated. Among other things:

   a) the Confirmation Order has become final and is non-appealable;

   b) all payments required to be made pursuant to the Plan have been paid or will be paid;

   c) there are no open contested matters or adversary proceedings that require the cases to remain open;

   d) substantially all of the distributions provided for under the Plan, including initial creditor distributions and funding of the Fee Escrow Account, the Wind Down Budget, and the GUC Trust, have been made and any remaining distributions will be made in accordance with the terms of the Plan;

   e) all of the transactions contemplated by the Plan have closed; and

   f) the Plan has been substantially consummated within the meaning of section 1101(2) of the Bankruptcy Code.

23. The foregoing factors support closing the Closing Debtors. The fact that the Debtors are still reviewing and resolving claims does not require that the Closing Debtors

remain open until all such claims are resolved and distributions are made. *Jay Bee Enters.*, 207 B.R. at 539 (finding that Bankruptcy Rule 3022 "does not require that a chapter 11 case be kept open until all awarded fees and allowed claims have been paid in accordance with the confirmed plan or until the statutory fees . . . have been paid"). The Court will retain jurisdiction over all remaining proofs of claim filed against all Debtors, including administrative expense claims filed against any of the Closing Debtors, through the NPC Remaining Case, and all distributions will be made as if grouped at the NPC Remaining Case. The Debtors are not seeking to close the NPC Remaining Case at this time. Notably, the majority of claims yet to be resolved are against the NPC Remaining Case.

24. This is consistent with section 5.16 of the Plan, which provides that "matters concerning Claims may be heard and adjudicated in one of the Debtors' Chapter 11 Cases that remains open regardless of whether the applicable Claim is against a Debtor in a Chapter 11 Case that is closed." And, pursuant to section 7.10 of the Plan, the Debtors have the authority to resolve all outstanding Claims against the Debtors in accordance with the Plan or any mechanism approved by the Bankruptcy Court. This authority extends to the Liquidating Trust. According to section 5.4(b) of the Plan, the Plan Administrator, on behalf of the Debtors and the Liquidating Trust, shall have the right and authority to "control and effectuate the Claims reconciliation process, including to object to, seek to subordinate, compromise or settle any and all Claims against the Debtors, other than with respect to the General Unsecured Claims." Further, section 5.16 of the Plan specifically provides the Debtors with the ability to "submit separate orders to the Bankruptcy Court under certification of counsel closing individual Chapter 11 Cases and changing the caption of the Chapter 11 Cases accordingly," notwithstanding ongoing wind-down efforts in the NPC Remaining Case.

25. To the extent necessary, however, the Court will retain jurisdiction over any issues relating to the Closing Debtors, including the resolution of Claims, given that the NPC Remaining Case will remain open. Therefore, leaving the NPC Remaining Case open will provide an additional avenue for resolving any issues that may arise that relate to the Closing Debtors, without the need to reopen those cases. Other than resolving outstanding claims (which the Debtors propose to effectuate through the NPC Remaining Case), there is no other purpose for keeping the Closing Debtors open.

26. All fees under 28 U.S.C. § 1930(a)(6) ("**Section 1930 Fees**") that are due and owing in these Chapter 11 Cases have been paid or will be paid in the ordinary course. Any further Section 1930 Fees that may arise in the Debtors' Chapter 11 Cases (including those in relation to the Closing Debtors) will be paid as and when such fees come due. As such, closing the Closing Debtors complies with Bankruptcy Rule 3022.

27. In addition to the reasons explained above, closing the Closing Debtors will relieve the Court, the Office of the United States Trustee for the Southern District of Texas, and the Debtors from each of their administrative burdens with respect to the Closing Debtors. Indeed, closing the Closing Debtors will alleviate the Debtors' obligation to pay quarterly fees under section 1930 of title 28 of the United States Code for the Closing Debtors. *See In re A.H. Robins Co., Inc.*, 219 B.R. 145, 149 (Bankr. E.D. Va. 1998) (finding that "the obligation to pay UST fees terminates upon closure, dismissal, or conversion of a Chapter 11 case, and will not be paid *ad infinitum*"). The Debtors have paid approximately $1.5 million in U.S. Trustee fees in these cases and estimate that approximately $500,000 in U.S. Trustee fees will be due for the next quarterly payment due July 31, 2021 for the quarter ending June 30, 2021. Unless and until the Bankruptcy

Court enters a final decree closing the Closing Debtors, the Debtors must continue paying U.S. Trustee fees while the Closing Debtors unnecessarily remain open.

28. The Bankruptcy Court's role in administering the chapter 11 cases of the Closing Debtors is complete. "The court should not keep [a] case open only because of the possibility that the court's jurisdiction may be invoked in the future." Fed. R. Bankr. P. 3022, Advisory Comm. Notes (1991). Furthermore, any party in interest may petition the Bankruptcy Court to reopen any of the Closing Debtors' chapter 11 cases pursuant to section 350(b) of the Bankruptcy Code, despite the entry of the final decree closing those cases. *See* Fed. R. Bankr. P. 5010. Accordingly, entry of a final decree closing the chapter 11 cases of the Closing Debtors is warranted.

*[Remainder of the Page Intentionally Left Blank.]*

**Notice**

WHEREFORE the Debtors respectfully request that the Court grant the relief requested herein and such other and further relief as it deems just and proper.

Dated: May 28, 2021  
     Houston, Texas

/s/ *Alfredo R. Pérez*  
WEIL, GOTSHAL & MANGES LLP  
Alfredo R. Pérez (15776275)  
700 Louisiana Street, Suite 1700  
Houston, Texas 77002  
Telephone: (713) 546-5000  
Facsimile: (713) 224-9511  
Email: Alfredo.Perez@weil.com

– and –

WEIL, GOTSHAL & MANGES LLP  
Ray C. Schrock, P.C. (admitted *pro hac vice*)  
Kevin Bostel (admitted *pro hac vice*)  
Natasha Hwangpo (admitted *pro hac vice*)  
767 Fifth Avenue  
New York, New York 10153  
Telephone: (212) 310-8000  
Facsimile: (212) 310-8007  
Email: Ray.Schrock@weil.com  
       Kevin.Bostel@weil.com  
       Natasha.Hwangpo@weil.com

*Attorneys for Debtors, Debtors in Possession, and Liquidating Trust*

**Certificate of Service**

I hereby certify that, on May 28, 2021, a true and correct copy of the foregoing document was served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

>*/s/ Alfredo R. Pérez*
>Alfredo R. Pérez